[NOT YET SCHEDULED FOR ORAL ARGUMENT]
**No. 26-5238**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

JANE DOE; MARY DOE; SARA DOE; EMILY DOE;
ZOE DOE; TORI DOE; OLIVIA DOE; SUSAN DOE;
LOIS DOE; SALLY DOE; WENDY DOE; RACHEL DOE,

*Plaintiffs-Appellees,*

v.

TODD BLANCHE, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE UNITED STATES;
WILLIAM K. MARSHALL, III, IN HIS OFFICIAL CAPACITY
AS DIRECTOR OF THE FEDERAL BUREAU OF PRISONS,

*Defendants-Appellants.*

---

# OPPOSED EMERGENCY MOTION OF BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, AND KEISHA WILLIAMS FOR LEAVE TO INTERVENE AND REQUEST FOR EXPEDITED CONSIDERATION

---


Brian J. Field
John Greil
*Counsel of Record*
Jessica Tong*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
bfield@schaerr-jaffe.com
jgreil@schaerr-jaffe.com
jtong@schaerr-jaffe.com

*Admission pending

*Counsel for Proposed Intervenors*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................... iii

GLOSSARY .................... v

INTRODUCTION .................... 1

BACKGROUND .................... 3

A. Movants documented the harms that biologically male inmates have caused them and obtained injunctive protection against those harms in *Fleming*. .................... 3

B. Movants moved to intervene in the district court in *Doe* one week after Defendants refused to protect Movants' constitutional and legal interests .................... 10

C. The district and appellate courts' schedules diverge. .................... 12

ARGUMENT .................... 13

I. Movants filed timely motions to intervene in both the district court and this Court. .................... 14

A. In the district court, Movants sought intervention only one week after Defendants refused to protect their interests. .................... 14

B. This motion is also timely in light of the pending motion to intervene below and the briefing schedule that Plaintiffs and Defendants (but not Movants) chose. .................... 16

II. Movants have legal interests because this appeal may impair their constitutional rights and the current injunction in *Fleming*. .................... 20

III. Neither party adequately represents Movants' interests because Movants are adverse to Plaintiffs in *Doe* and adverse to Defendants in *Fleming*. .................... 23

IV. Allowing Movants to intervene will not burden the Court or the parties. 25

CONCLUSION 27

CERTIFICATE OF COMPLIANCE 29

ADDENDUM 30

CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT 30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amalgamated Transit Union v. Donovan*,
771 F.2d 1551 (D.C. Cir. 1985) .......... 18

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022) .......... 14, 15, 16, 19, 26

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) .......... 24

*Doe v. Blanche*,
172 F.4th 901 (D.C. Cir. 2026) .......... 10

*Doe v. Blanche*,
No. 1:25-cv-00286-RCL, 2026 WL 1642068
(D.D.C. June 7, 2026) .......... 11, 12

*Doe v. Hill*,
141 F.4th 291 (D.C. Cir. 2025) .......... 5

*Doe v. McHenry*,
763 F. Supp. 3d 81 (D.D.C. 2025) .......... 10

*Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Assocs. Inc.*, 488 F.3d 88 (2d Cir. 2007) .......... 17

*Fleming v. Rule*,
No. 4:25-CV-0157-D, 2026 WL 1471884
(N.D. Tex. May 26, 2026) .......... 2

* *Huisha-Huisha v. Mayorkas*,
No. 22-5325, 2022 WL 19653946 (D.C. Cir. Dec. 16, 2022) .......... 14, 15

*Humane Soc'y of U.S. v. U.S. Dep't of Agric.*,
54 F.4th 733 (D.C. Cir. 2022) .......... 18

*Authorities upon which we principally rely are marked with an asterisk.

*Inst'l S'holder Servs. v. SEC*,
142 F.4th 757 (D.C. Cir. 2025)....................21

*Jones v. Prince George's County*,
348 F.3d 1014 (D.C. Cir. 2003)....................25

* *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*,
66 F.4th 282 (D.C. Cir. 2023)....................20, 22, 23

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)....................23

* *United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977)....................14, 15, 16

**Regulation**

Executive Order No. 14,168 (Jan. 20, 2025)....................10

**Rules**

Fed. R. App. P. 29....................26

Fed. R. Civ. P. 24....................20, 22, 26

D.C. Cir. R. 27....................2, 19

D.C. Cir. R. 28....................26

D.D.C. Loc. Civ. R. 7....................13

## GLOSSARY

| | |
|---|---|
| BOP | Federal Bureau of Prisons |
| FMC Carswell | Federal Medical Center-Carswell, Fort Worth, Texas |

## INTRODUCTION

Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams (collectively, "Movants") are incarcerated women who have been forced to live, shower, change, and use bathrooms with biological males in federal prison. They move to intervene in this litigation to defend their rights to bodily privacy and against cruel and unusual punishment that neither Plaintiffs nor Defendants have defended.

In related litigation, Movants developed a robust factual record showing the harms they suffered as women who are forced to share bathrooms and living spaces with biological male inmates. *See Fleming v. Rule*, No. 4:25-cv-00157-D (N.D. Tex.).[1] In *Fleming*, the Government defendants—including a defendant in this case—moved to dismiss Movants' complaint and opposed Movants' preliminary-injunction motion. The *Fleming* court nonetheless issued a preliminary injunction to protect Movants' rights, requiring the prison facility housing Movants

[1] References to case documents filed in the Northern District of Texas matter are cited as "Document Name, *Fleming*, ECF #."

to separate biological male inmates from female inmates. *See Fleming v. Rule*, No. 4:25-CV-0157-D, 2026 WL 1471884 (N.D. Tex. May 26, 2026).

Now, the same Government defendant has failed to protect the rights of female inmates while defending against Plaintiffs' claims in this case. Most notably, the Government defendants have not introduced the extensive evidence showing that female inmates are harmed by being housed with biological male inmates. Movants developed that record, and the Government defendants have ignored it—even after this Court remanded in part due to the lack of evidence in the record. If these proceedings continue without that record evidence, this Court's decision may cause Movants substantial harm.

Because Movants' motion to intervene is timely, they seek to protect their constitutional rights, this litigation threatens to impair their interests, and neither Plaintiffs' nor Defendants' interests align with Movants' interests, this Court should grant Movants' motion to intervene.

Movants respectfully request expedited consideration under Circuit Rule 27(e). The emergency arises from the Movants' motion to intervene in the district court remaining undecided. Defendants' opening brief is

due August 14, and absent prompt action Movants may lose an essential opportunity to participate as parties in an appeal that may impair their legal rights. Movants therefore request that the Court decide this motion by August 21 and, if intervention is granted, permit Movants to file their principal brief by August 28. That schedule would give Movants seven days after the Court's ruling to prepare their brief without altering the existing briefing deadlines for Plaintiffs or Defendants.

## BACKGROUND

### A. Movants documented the harms that biologically male inmates have caused them and obtained injunctive protection against those harms in *Fleming*.

Movants are biological women incarcerated in a federal women's prison. Movants are also Intervenor-Plaintiffs in related litigation pending in the United States District Court for the Northern District of Texas. *See Fleming v. Rule*, No. 4:25-cv-00157-D (N.D. Tex.).

In *Fleming*, Movants object to being housed with male inmates, including several convicted of rape, sex offenses, and other violent offenses. Movants assert that the federal government's policy and practice of housing biological males in women's prisons violate female inmates' constitutional rights, including their Fifth Amendment right to

bodily privacy and their Eighth Amendment right to be free from cruel and unusual punishment. *See* 1st Am. Prop. Complaint-in-Intervention, *Fleming*, ECF 125 ("*Fleming* Compl.").

The factual record in *Fleming* documents numerous harms caused by biological males at Federal Medical Center, Carswell ("FMC Carswell")—both the general indignity of being forced to shower or change where males can view Movants, as well as specific incidents of male inmates' threatening and sexual behavior directed at Movants and other female inmates.

For instance, Movant Kirk details why "the problem is not limited to where the male inmates sleep." Decl. of Brenda Leigh Kirk ¶3, *Fleming,* ECF 153[2] at APP.3-6 ("*Fleming* Kirk Decl."). Women in Two North (one of three general population housing units at FMC Carswell) must use the same elevator and other common spaces, and Ms. Kirk sees male inmates "in the elevator and in food service every day, often several times a day." *Id.* One male inmate ["Inmate A"] she regularly encounters

[2] Executed versions of the Movants' declarations in *Fleming* can be found at *Fleming,* ECF 204, 212, 214.

is a convicted sex offender.[3] That inmate has become "loud, hostile, and threatening," made hostile comments blaming women for restrictions placed on him, and "mutter[ed] violent things" at women. *Id.* ¶4. Ms. Kirk had to ride the elevator with him because "[t]here[] [was] only one elevator for the top floor," where she is housed. *Id.*

Another male inmate ["Inmate B"] verbally assaulted Movant Meabon in the FMC Carswell recreation area restroom. Decl. of Jasmine Meabon ¶3, *Fleming*, ECF 153 at APP.7-9 ("*Fleming* Meabon Decl."). Ms. Meabon was using the recreation-yard restroom when Inmate B entered while she was in a stall. *Id.* According to Ms. Meabon's sworn declaration, Inmate B "looked over the stall and asked me if I needed help wiping my vagina." *Id.* Ms. Meabon reported the incident to prison staff, and staff told her camera footage showed Inmate B entering the restroom while she was inside. *Id.* ¶4. But she does not believe staff took the matter

[3] The Plaintiffs in this case are proceeding under pseudonyms. Movants believe Plaintiffs have not overcome the "strong presumption against pseudonymous litigation." *See Doe v. Hill*, 141 F.4th 291, 292 (D.C. Cir. 2025). Moreover, as many of the operative documents in the district court are sealed or redacted, counsel for Movants does not know the identities of the Plaintiffs in this litigation. Nevertheless, out of an abundance of caution, Movants do not use the names of any biologically male inmates in this filing.

seriously. *Id.* The incident caused flashbacks for Ms. Meabon, who had previously been raped. *Id.* ¶5. Ms. Meabon was forced to continue seeing Inmate B in shared spaces, including outside and in the main line for food; by March 2026, she still saw him, and "when I did, he would be laughing." *Id.* ¶6.

Movant Morais also witnessed Inmate B entering the bathroom with Ms. Meabon inside. Decl. of Jessica Clemencio Morais ¶4, *Fleming*, ECF 153 at APP.10-12 ("*Fleming* Morais Decl."). After Inmate B came out, he asked Ms. Morais "a sexual question about having sex in exchange for commissary." *Id.* In March 2026, even after Ms. Morais was moved to a different location within FMC Carswell, Inmate B "stood directly behind the bench where I was sitting with another woman, stared at us, and listened to our conversation." *Id.* ¶9. Other male inmates also accosted Ms. Morais. For instance, when she was in a housing unit with other males, the males would "wink at women, blow kisses, come too close to women in the phone and computer lines, and be in places where they could see women in the showers." *Id.* ¶3.

Movant Williams also explained the indignity of being housed with male inmates. She stated that male inmates were housed with women

and "shared the same showers, restrooms, and living areas with us." Decl. of Keisha Williams ¶3, *Fleming,* ECF 153 at APP.13–16. She explained that "[t]here was no meaningful separation." *Id.* She "personally saw that men could see into the showers and bathrooms," and she "personally caught [Inmate B] watching" her. *Id.* Inmate B also acted aggressively in common areas, bumped her, used hostile language, and made her feel unsafe. *Id.* ¶4. Ms. Williams reported Inmate B's conduct but saw no meaningful staff action to protect her. *Id.* She also reported that another male inmate, ["Inmate C"], had tried to antagonize her, placed himself wherever she was, and filed a false Prison Rape Elimination Act allegation against her. *Id.* ¶5. Around the same time, she reported that Inmate C had threatened "to blow up the place when he leaves" and harm people with whom he had conflicts—presumably including Ms. Williams. *Id.* Even after Ms. Williams was subsequently moved to the FMC Carswell camp area, male inmates were present in shared spaces at the camp, including the mail room. *Id.* ¶6.

Elizabeth Ann Hardin, a *Fleming* declarant formerly at FMC Carswell (but not a proposed intervenor here), confirms that the women suffered these harms. Ms. Hardin saw a male inmate, ["Inmate D"], in

the women's bathroom around 4:00 a.m. shaving "with a visible erection." Decl. of Elizabeth Ann Hardin ¶3, *Fleming,* ECF 153 at APP.1-2 ("*Fleming* Hardin Decl."). Because male inmates were present in the bathroom and shower area, she changed her daily routine: She stopped coming out of the shower in a towel, got fully dressed inside the shower, stopped changing shirts openly in the bathroom, and avoided bathrooms with broken or non-locking doors. *Id.* ¶4. Hardin also describes another male inmate, ["Inmate E"], as giving her "weird looks" in shared elevator spaces, making her feel unsafe and uncomfortable. *Id.* ¶6. Her declarations also show the harm to women by being forced to live, sleep, change, and shower with biological males, even if the males did *not* threaten women with violence and unwanted sexual contact.

The declaration of Rhonda Fleming, plaintiff in *Fleming*, also speaks to the humiliation and indignity women suffer when men are placed in women's prisons. Ms. Fleming's declaration confirms that the harm to women is not abstract. FMC Carswell provides "very little privacy": women must "sleep, change clothes, and bathe in full view of one another," and the showers and restrooms are communal. Decl. of Rhonda Fleming ¶3, *Fleming*, ECF 59 at APP.100-105. Yet biological

males are housed in the same units, "use the same showers and restrooms," and "move freely about the compound." *Id.* ¶4. Ms. Fleming explains that many of these men "retain male genitalia" and that their presence has created "constant fear, anxiety, and humiliation" for women. *Id.* ¶5. She has personally witnessed male inmates "undressing and showering alongside women," entering restrooms while women were using them, and staring at women while they were naked or changing clothes. *Id.* ¶6. Those incidents, she states, are "deeply distressing" and violate her "most basic sense of modesty and dignity." *Id.*

Finally, the declarations in *Fleming* establish that the prison retaliated against women who opposed the prison's male-inmate policy. The Federal Bureau of Prisons ("BOP") moved Ms. Hardin to Minnesota, far from her family in Texas, as retaliation for the *Fleming* lawsuit. *Fleming* Hardin Decl. ¶¶7-8. Movant Kirk faced harassment and retaliation tied to her participation in the *Fleming* case: She lost the job she had in prison and was excluded from a training program. *Fleming* Kirk Decl. ¶12. Movant Meabon suffered flashbacks from Inmate B's restroom intrusion because she is a rape survivor and fears retaliation if she complains. *Fleming* Meabon Decl. ¶¶3-5, 8. Movant Morais suffered

humiliation, fear, and a mental breakdown after continued exposure to Inmate B and retaliatory treatment by staff. *Fleming* Morais Decl. ¶¶4-10, 13.

### B. Movants moved to intervene in the district court in *Doe* one week after Defendants refused to protect Movants' constitutional and legal interests

The consolidated *Doe* cases challenge BOP's implementation of Executive Order No. 14,168 (Jan. 20, 2025) as it pertains to placing biological males in women's federal prisons. In an earlier appeal, this Court vacated preliminary injunctions against the BOP's implementation of the Executive Order because the district court had not made the required findings about each plaintiff's vulnerabilities and BOP's responses. *Doe v. Blanche*, 172 F.4th 901, 917-19 (D.C. Cir. 2026). The Court remanded for further proceedings. *Id.* at 919. In recounting the prior proceedings, this Court noted that the district court had rejected the Government's reliance on female-inmate safety because Defendants had not even alleged, much less presented argument, that any plaintiff posed a threat to female inmates. *See id.* at 910 (discussing *Doe v. McHenry*, 763 F. Supp. 3d 81, 89-90 (D.D.C. 2025), *vacated and remanded*).

Before this Court issued its mandate, Plaintiffs moved in the district court for renewed emergency relief. Dkt. 117.[4] The Government opposed the motion on May 29, 2026. Dkt. 129. Despite this Court's admonition that Defendants had failed to document evidence of harm to women inmates, Defendants again chose not to present evidence of harm from the *Fleming* litigation, introduced no evidence from impacted female inmates, and did not advocate for the constitutional rights of female prisoners. Instead, Defendants cited BOP's general concern for female inmates. *See id.*

Days later, Movants filed their motion to intervene on June 5. Dkt. 141 (later re-filed at Dkt. 167). On June 7, the district court entered the injunction now on appeal. *Doe v. Blanche*, No. 1:25-cv-00286-RCL, 2026 WL 1642068, *1, *12 (D.D.C. June 7, 2026) (Dkt. 148); *see also* Order, Dkt. 147. The injunction requires BOP to maintain the covered Plaintiffs' housing status in women's facilities. Dkt. 147 at 2. The court also ordered the parties to propose a schedule for responses to intervention motions. Order ¶5, Dkt. 149 (June 7, 2026).

[4] References to case documents in the District Court proceedings here, originally *Doe v. McHenry,* now *Doe v. Blanche,* No. 1:25-cv-00286-RCL, are cited as "Dkt. #."

The injunction now on appeal acknowledged the *Fleming* injunction that protects Movants. *See Doe,* 2026 WL 1642068, *11-12 (referencing Government's Notice of Preliminary Injunction issued in *Fleming*, Dkt. 133). The *Fleming* injunction was issued on June 2. *See* Dkt. 133-1 (Prelim. Inj., *Fleming*, ECF 199). The *Fleming* court ordered BOP to house male inmates at FMC Carswell in a secure, segregated area and use separate movement, routing, scheduling, or other measures to prevent overlap with female inmates in housing and shared spaces. Dkt. 133 at 1; Dkt. 133-1 at 3.

### C. The district and appellate courts' schedules diverge.

The same day the district court granted the injunction on appeal, it also ordered Plaintiffs and Defendants (but not Movants) to propose a briefing schedule on Movants' motion to intervene. *See* Dkt. 149 ¶5 (June 7, 2026).

On June 17, Plaintiffs and Defendants jointly proposed that responses to intervention be due July 17. Jt. Prop. Briefing Schedule at 2, Dkt. 156.[5] The district court adopted that schedule. Order at 2 (June

---

[5] For opposing a motion, the district court's local rules provide "Within 14 days of the date of service or at such other time as the Court may

17, 2026), Dkt. 157. After both parties filed their oppositions to Movants' motion to intervene, Dkts. 179, 180, the district court set a July 29 hearing on the motion to intervene, Order (July 20, 2026), Dkt. 185. Movants replied on July 22, Dkt. 187. The court heard argument on Movants' motion to intervene on July 29. *See* Minute Entry for Mot. Hr'g (July 29, 2026). As of this filing, the district court has not yet ruled on the motion to intervene.

Meanwhile, Defendants noticed this appeal on June 22, Dkt. 162. This Court set July 24 deadlines for both Appellant and Appellee procedural motions. Clerk's Order (June 24, 2026). On July 7, this Court granted Defendants' motion to expedite the appeal and set August 14 for Appellants' opening brief deadline. Clerk's Order (July 7, 2026).

## ARGUMENT

Intervention will provide critical evidence and guard against a ruling that harms female inmates' constitutional rights.

When deciding whether to allow an intervention on appeal, this Court requires that: "(1) the application to intervene . . . be timely; (2) the

---

direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion." D.D.C. Loc. Civ. R. 7(b).

applicant . . . demonstrate a legally protected interest in the action; (3) the action . . . threaten to impair that interest; and (4) no party to the action . . . be an adequate representative of the applicant's interests." *Huisha-Huisha v. Mayorkas*, No. 22-5325, 2022 WL 19653946, *1 (D.C. Cir. Dec. 16, 2022) (per curiam) (citation omitted), *vacated and remanded on other grounds sub nom. Arizona v. Mayorkas*, 143 S.Ct. 1312 (2023). Movants satisfy all four requirements.

## I. Movants filed timely motions to intervene in both the district court and this Court.

### A. In the district court, Movants sought intervention only one week after Defendants refused to protect their interests.

The most important factor to determine timeliness is whether the applicant moved "as soon as it became clear" that existing parties would no longer protect the applicant's interest. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

Movants did just that. After this Court remanded for more particular findings, the Government filed an opposition that again omitted testimony from *any* affected woman and refused to put forth the constitutional theories that Movants have advanced. *See* Dkt. 129.

Movants sought intervention only seven days after that filing. Dkt. 141. They filed before the injunction that forms the ground of this appeal was issued and even before this Court issued its mandate to the district court on June 8. Thus, they sought intervention "as soon as it became clear" that intervention was necessary. *See Cameron*, 595 U.S. at 279-80 (quoting *United Airlines*, 432 U.S. at 394).

Thus, this case is distinguishable from *Huisha-Huisha v. Mayorkas*. There, the applicants sought district-court intervention almost a week *after* judgment even though they had known that the government's interests had diverged from theirs for eight to fourteen months. *See Huisha-Huisha*, 2022 WL 19653946, *2. This Court denied intervention because the applicants had ignored a clear pre-judgment opportunity to intervene in the district court. *Id.* Here, Movants used that pre-judgment opportunity to intervene in the district court. *See supra* pp. 12-13. That the district court has not yet ruled on that motion is beyond Movants' control.

Plaintiffs and Defendants argued that courts should consider the time between the filing of the complaint and intervention. But that is not the relevant period to consider. *Cameron* allowed intervention after years

of litigation because the applicant acted when the existing representative stopped protecting the relevant interest. *See* 595 U.S. at 279-80. In *United Airlines v. McDonald*, the Supreme Court held the motion to intervene was timely—even though the movant did not seek relief during *five years* of litigation—"because it was filed soon after the movant learned that the class representatives would not appeal." *See Cameron,* 595 U.S. at 280 (discussing *United Airlines*, 432 U.S. at 390, 394-96).

The redacted complaint and orders in this case underscore Movants' timeliness. Undersigned counsel still does not know the identities of the pseudonymous plaintiffs. Thus, it was impossible for Movants—incarcerated women without ordinary internet access—to learn of the complaint when it was filed.

### B. This motion is also timely in light of the pending motion to intervene below and the briefing schedule that Plaintiffs and Defendants (but not Movants) chose.

This Court has set deadlines for Appellants' and Appellees' procedural motions, but not for motions for any non-parties, including Movants.[6]

[6] Both Plaintiffs and Defendants in this case have insisted that Movants are non-parties to the litigation—importantly, Movants have been unable

Movants filed their motion to intervene in the district court on June 5. *See* Dkt. 141. Plaintiffs and Defendants both asked for a July 17 deadline to file oppositions, and the district court granted their request. Dkts. 156, 157; *see also* Dkts. 179 (Gov't Opp.), 180 (Pls.' Opp.). Defendants then sought expedited review of their appeal in this Court with Plaintiffs' assent. *See* Appellants' Unopposed Mot. for Expedited Briefing & Arg. at 3 (D.C. Cir. July 2, 2026). This Court granted that motion to expedite. *See* Clerk's Order at 1 (D.C. Cir. July 7, 2026). The district court then set a July 29 hearing date for Movants' motion to intervene. Order (July 20, 2026), Dkt. 185. Movants therefore reasonably awaited that court's ruling before seeking intervention here. *See Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Assocs. Inc.*, 488 F.3d 88, 94 (2d Cir. 2007) (acknowledging "authority for granting a motion to intervene in the Court of Appeals" while noting that "it will normally be the better practice for a district court to rule on a pending motion to intervene before ruling on the merits of pending litigation"). Now without

---

to access the many and significant filings in the district court that were filed under seal. Nevertheless, should this Court consider that a deadline governed Movants notwithstanding Movants' status as a non-party, Movants respectfully request that this motion be considered a motion to file out of time.

a ruling from the district court, Movants are between a rock and a hard place, and seek intervention here.

Thus, Movants here are distinguishable from those in cases where applicants' motions were not timely. In *Humane Society of the United States v. United States Department of Agriculture*, 54 F.4th 733 (D.C. Cir. 2022), the movant moved to intervene only after the panel had decided the merits, although they had long known that their interests could differ from the agency's, *id.* at 735-36 (Tatel, J., concurring). Moreover, the movant merely disagreed with the defendant's chosen form of review. *Id.* Here, by contrast, Movants do not merely disagree with the Government's strategy. Instead, the Government has *never* advanced Movants' Fifth and Eighth Amendment rights, currently opposes them in *Fleming*, and opposed the very injunction that currently protects Movants. Similarly, unlike Movants here who filed their motion within a week, in *Amalgamated Transit Union v. Donovan*, 771 F.2d 1551 (D.C. Cir. 1985) (per curiam), the applicant moved more than four months after oral argument and nearly two months after the panel decision; it had not intervened below and gave no sound explanation, *see id.* at 1552, 1554.

Even if Circuit Rule 27(g)(1)'s exceptional-circumstances standard governed leave to lodge this motion, the procedural posture would satisfy it. Circuit Rule 27(h) expressly contemplates lodging an untimely motion with a motion for leave in exceptional circumstances. Those exceptional circumstances are present here. The order from this Court named only the existing parties for procedural motions; Movants timely sought intervention in the district court; the existing parties (without Movants' input) selected an unhurried pace in the district court while expediting the appeal; and the district court set a hearing on the motion to intervene while this appeal is pending.

Finally, no party will suffer legal prejudice from intervention. Both Plaintiffs and Defendants know Movants' legal arguments and evidence. Movants will not reopen a completed stage of litigation, add evidence beyond what was before the district court, or seek more time. The progress of a case does not alone make intervention untimely, *Cameron*, 595 U.S. at 279, and an existing party is not prejudiced merely because another proper party will press arguments on appeal, *id.* at 281-82. Movants' intervention will cause neither delay nor disruption.

Therefore, Movants' motion to intervene is timely.

## II. Movants have legal interests because this appeal may impair their constitutional rights and the current injunction in *Fleming*.

Movants have legally protected interests in defending their constitutional rights—their right to bodily privacy under the Fifth Amendment and their right against cruel and unusual punishment under the Eighth Amendment. Movants also have a concrete legal interest that this appeal may impair—the *Fleming* injunction that currently protects them from again being incarcerated alongside males. Rule 24(a)(2) of the Federal Rules of Civil Procedure asks whether an applicant demonstrates an interest in the legal action at issue. *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*, 66 F.4th 282, 285 (D.C. Cir. 2023) ("[T]here is no requirement that the movant demonstrate the interest, if demonstrate means, as it often does, prove. All that is required is a claim." (internal quotation marks omitted)). Because Movants have claimed such interests, they meet the second requirement for motions to intervene in this Court.

Movants' sworn accounts concretely demonstrate their interests in protecting their Fifth and Eighth Amendment rights. Movants describe daily exposure at Carswell, including restroom use, shower sightlines,

and sexualized conduct. Dkt. 167-2 at 19, 22-23, 26, 29 (*Fleming* Kirk Decl. ¶3 (redacted); *Fleming* Meabon Decl. ¶¶2, 6 (redacted); *Fleming* Morais Decl. ¶3 (redacted); *Fleming* Williams Decl. ¶¶3, 6 (redacted)). Those injuries satisfy Article III standing. First, Movants have demonstrated that the presence of biological males in shared spaces (including elevators, dining areas, and recreation areas) has harmed them in the past, and will harm them in the future. Second, BOP's placement and movement practices cause those harms. And, third, an appellate ruling that requires lawful sex-separated measures can redress them. *Cf. Inst'l S'holder Servs. v. SEC*, 142 F.4th 757, 764-65 (D.C. Cir. 2025) (holding that defendant-intervenor had appellate standing because vacatur of rule reimposed harms the rule had mitigated, while reinstatement would alleviate them).

Yet Plaintiffs have asked the district court to place them in the general population of women's facilities or, alternatively, restore their access to programming, education, recreation, medical and mental-health care, and out-of-unit time comparable to general population. *See* Pls.' Mot. Enforce Prelim. Inj. at 3, Dkt. 183; Mem. of Law in Support at 25-26, Dkt. 183-1. Plaintiffs also argue that BOP's implementation of the

*Fleming* injunction violates federal regulations and their constitutional rights. *See* Dkt. 183 at 2-3; Dkt. 183-1 at 2, 14, 19-20. In other words, Plaintiffs in this case are requesting relief that could affect the same hallways, service areas, and programs addressed in Movants' declarations and the *Fleming* order.

BOP confirms that Plaintiffs' requested relief would affect the *Fleming* order. BOP's declarant states that BOP created the unit to comply with both the *Fleming* and *Doe* injunctions. Decl. of R. Stover ¶¶13-16, Dkt. 190-1. More importantly, the *Doe* litigation has *already* impacted Movants' legal rights. In *Fleming*, the Government has repeatedly argued that the *Doe* injunctions dictated BOP's housing choices at Carswell and barred the relief Movants sought. *See* Defs.' Resp. to Intervenor-Pls.' Mot. for Injunctive Relief at 2-6, 10, 12-14, *Fleming*, ECF 166; Jt. Notice at 2 n.2, *Fleming*, ECF 198.

Rule 24 does not require Movants to gamble that the appeal will spare their rights. *Mandan*, 66 F.4th at 286 (citing Fed. R. Civ. P. 24(a)(2)). Without intervention, Movants cannot prevent a settlement, seek rehearing, or press their own contentions if the judgment harms

them. *Id.* A provisional injunction in *Fleming* does not replace those party rights or shield Movants from legal rulings entered here.

## III. Neither party adequately represents Movants' interests because Movants are adverse to Plaintiffs in *Doe* and adverse to Defendants in *Fleming*.

Movants need only show that representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Mandan*, 66 F.4th at 285 (movant's burden of showing inadequate representation is "minimal"). Movants meet that burden in three ways.

First, the Government is their adversary in this litigation. In *Fleming*, the same BOP Director named here moved to dismiss Movants' claims and opposed their request for preliminary relief. *See* Defs.' Mot. to Dismiss 1st Am. Compl.-in-Intervention at 1-2, *Fleming*, ECF 147; ECF 166 at 1-2, 12-13. *Mandan* held that an agency that began as an ally but became the applicant's adversary could not serve as a faithful representative, finding "[t]hat in itself is enough." 66 F.4th at 285. The conflict is even stronger here because BOP contests Movants' claimed constitutional rights in active litigation.

Second, Movants' and the Government's interests differ. The Government seeks authority to run federal prisons without judicial

interference and has repeatedly enforced rules like administrative exhaustion and judicial non-reviewability that are necessarily adverse to Movants. At the same time, the Government has chosen *not* to assert the constitutional rights theories that would protect Movants. This Court has recognized that broad public interests that government entities pursue often do not account for the narrow private interests of the affected parties. *See Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) ("The District would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest.").

Third, the Government has not argued for the legal rights that Movants have asserted (and had protected) in the *Fleming* litigation. Defendants' opposition below relied on an administrator's declaration and general statements about female inmates' safety. *See* Dkt. 179 at 5. The Government has offered no affected woman's testimony and no argument that forced exposure violates Movants' own bodily-privacy or Eighth Amendment rights. Defendants have consistently chosen not to advocate for Movants' identified and articulated legal interests.

In the district court, the Government invoked *Jones v. Prince George's County*, 348 F.3d 1014 (D.C. Cir. 2003), but that case does not help them. *See* Dkt. 179 at 5. *Jones* rejected tactical quibbles where the existing party formally represented the applicant and their interests were identical. 348 F.3d at 1019-20. Here, BOP does not represent Movants, BOP has repeatedly refused to argue that Movants possess the Fifth and Eighth Amendment rights they are invoking, and BOP *is currently* advocating against them in *Fleming*.

If the Government got its way, Movants would have received no relief in *Fleming*, Movants would not have their constitutional rights defended in *Doe*, and Movants would not have the opportunity to advocate for their rights anywhere.

## IV. Allowing Movants to intervene will not burden the Court or the parties.

Finally, Movants accept this case as it stands. In the district court, Movants represented that they would not assert cross- or counter-claims, nor seek discovery that would delay the case. Mem. in Support of Mot. Intervene at 8, Dkt. 167-1. So too here. Movants will use the existing record, seek no discovery, add no claim or party, and seek no change to the existing parties' deadlines.

Movants will file on the Court's requested schedule, avoid repetition, and remain within the substantive limits placed on intervenors in this Court. Plaintiffs' September 22 brief would remain due 25 days after Movants' proposed August 28 brief—two days longer than the ordinary interval after an intervenor brief, typically filed seven days after Appellants' principal brief. Cir. R. 28(d)(3).

If Rule 24(a)(2)'s policies do not compel intervention, this Court should allow Movants to intervene in its discretion. *See Cameron*, 595 U.S. at 277-79. Movants' claims are necessary to answer the legal questions in this case. For instance, if biological females have a bodily-privacy right against sharing showers or housing with biological males, a court must consider that right when crafting Plaintiffs' equitable remedy.[7]

Movants' motion is timely. Movants seek to protect real legal interests—their constitutional rights and an injunction in *Fleming*. They

[7] Finally, although Movants believe they have satisfied the standard for appellate intervention, Movants request that this motion be considered, in the alternative, a motion for leave to file as *amici curiae* and to participate in oral argument. *See* Fed. R. App. P. 29.

cannot protect these interests adequately as an *amicus*, even more so in this case, where so many legally operative facts are filed under seal.

## CONCLUSION

Without intervention, this Court must evaluate Plaintiffs' claims without the benefit of the robust evidence showing that Plaintiffs' requested relief will harm the constitutional rights of female inmates—like Movants. And in doing so, this Court risks issuing an order that harms Movants' constitutional and legal rights. Those are precisely the types of circumstances where intervention is appropriate. The Court should allow Movants to intervene and participate in all further appellate proceedings in this Court.

August 14, 2026

Respectfully submitted,

*/s/ John Greil*

Brian J. Field
John Greil
*Counsel of Record*
Jessica Tong*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
bfield@schaerr-jaffe.com
jgreil@schaerr-jaffe.com
jtong@schaerr-jaffe.com

*Admission pending

*Counsel for Proposed Intervenors*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) & (6) and the 5,200-word type-volume limitation of Fed. R. App. P. 27(d)(2)(A) in that it uses Century Schoolbook 14-point type and contains 5,193 words. The number of words was determined through the word-count function of Microsoft Word.

*/s/ John Greil*
John Greil

## ADDENDUM

## CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1), counsel for Proposed Intervenors Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams, certifies as follows:

### A. Parties, Intervenors, and *Amici Curiae*

The parties appearing in the district court and in this Court are listed in the Appellants' Certificate of Parties, Rulings and Related Cases filed on July 2, 2026, except for the following. There were no *amici* in the district court.

In the district court, the following individuals moved to intervene as Defendants (the court has not yet ruled on their motion), and now move to appear as intervenors in this court:

Brenda Leigh Kirk, *Proposed Intervenor-Defendant*

Jasmine Meabon, *Proposed Intervenor-Defendant*

Jessica Clemencio Morais, *Proposed Intervenor-Defendant*

Keisha Williams, *Proposed Intervenor-Defendant*

### B. Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Proposed Intervenors Brenda Leigh Kirk, Jasmine Meabon,

Jessica Clemencio Morais, and Keisha Williams, through their undersigned counsel, state that they are individual persons, and thus, no disclosure statement is required.

/s/ *John Greil*
John Greil