[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 26-5238**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

JANE DOE, et al.,

Plaintiffs-Appellees,

v.

TODD BLANCHE, in his official capacity as Attorney General of the United States, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

**JOINT APPENDIX – VOLUME I**

**PUBLIC APPENDIX – SEALED MATERIAL IN SEPARATE SUPPLEMENT**

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

CHARLES W. SCARBOROUGH
MCKAYE L. NEUMEISTER
DOMENIC A. CANONICO
*Attorneys, Appellate Staff*
*Civil Division, Room 7246*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*

## TABLE OF CONTENTS

**Page**

## VOLUME I – PUBLIC APPENDIX

Docket Sheet, *Doe v. Blanche*, No. 1:25-cv-286 (D.D.C.)[1] ........................ JA1

Docket Sheet, *Jones v. Blanche*, No. 1:25-cv-401 (D.D.C.) .....................JA33

Docket Sheet, *Moe v. Trump*, No. 1:25-cv-653 (D.D.C.) ........................ JA48

Complaint for Declaratory and Injunctive Relief,
*Moe*, Dkt. 1 (Jan. 26, 2025) [REDACTED] ........................................JA59

Amended Complaint for Declaratory and Injunctive Relief,
*Jones*, Dkt. 35 (Feb. 28, 2025) [REDACTED] ...................................JA85

Second Amended Complaint,
Dkt. 58-2 (Mar. 14, 2025) [REDACTED] .......................................... JA119

Exhibits to Plaintiffs' Motions for Preliminary Injunction (May 13, 2026)
Declaration of Jennifer Fiorica Delgado, Dkt. 117-2 ......................... JA156
Declaration of Amy Jones, Dkt. 117-3 [REDACTED]........................ JA159
Declaration of Barbara Jones, Dkt. 117-4 [REDACTED] ................. JA166
Declaration of Carla Jones, Dkt. 117-5 [REDACTED]....................... JA170
Declaration of Donna Jones, Dkt. 117-6 [REDACTED] ....................JA180
Declaration of Emily Doe, Dkt. 117-7 [REDACTED]......................... JA191
Declaration of Jane Jones, Dkt. 117-8 [REDACTED] .......................JA198
Declaration of Lois Doe, Dkt. 117-9 [REDACTED] .......................... JA205
Declaration of Maria Moe, Dkt. 117-10 [REDACTED].......................JA211
Declaration of Mary Doe, Dkt. 117-11 [REDACTED] ........................ JA217
Declaration of Olivia Doe, Dkt. 117-12 [REDACTED].......................JA229
Declaration of Rachel Doe, Dkt. 117-13 [REDACTED] .....................JA237
Declaration of Sally Doe, Dkt. 117-14 [REDACTED].........................JA243
Declaration of Sara Doe, Dkt. 117-15 [REDACTED] ........................ JA248
Declaration of Wendy Doe, Dkt. 117-16 [REDACTED].....................JA254
Declaration of Zoe Doe, Dkt. 117-17 [REDACTED].......................... JA261
Declaration of Ryan Gorton, M.D., Dkt. 117-18 [REDACTED].........JA274
Exhibit A to Gorton Declaration, Dkt. 117-19.................................. JA298
Declaration of Dr. Dan Karasic, Dkt. 117-20 [REDACTED] ............ JA309

---

[1] Unless otherwise specified, "Dkt." refers to the docket in *Doe*.

Exhibit A to Karasic Declaration, Dkt. 117-21 .................................. JA334
Exhibit B to Karasic Declaration, Dkt. 117-22 .................................. JA356
Exhibit C to Karasic Declaration, Dkt. 117-23 .................................. JA408
Exhibit D to Karasic Declaration, Dkt. 117-24 .................................. JA416
Declaration of Randi Ettner, PHD, Dkt. 117-25 [REDACTED] ........ JA442
Exhibit A to Ettner Declaration, Dkt. 117-26 .................................. JA467
Declaration of Dr. Alix McLearen, Dkt. 117-27 ................................ JA481
Exhibit A to McLearen Declaration, Dkt. 117-28 .............................. JA501
Proposed Order, Dkt. 117-29 ........................................................ JA509

Exhibits to Government's Opposition to Motion for Preliminary Injunction (May 29, 2026)
Declaration of Rick Stover, Dkt. 129-1 [REDACTED] ....................... JA513
Declaration of Joel Roman, Dkt. 129-2 .......................................... JA543
Declaration of Dr. Edward Weidow, Dkt. 129-3 [REDACTED] ........ JA546

Exhibit to Reply Brief in Support of Motion for Preliminary Injunction (June 3, 2026), Supplemental Declaration of Randi Ettner, PH.D., Dkt. 135-1 ...................................................... JA555

Government's Illustrative Aid, Dkt. 143 (June 5, 2026) ............................................................ JA562

Plaintiffs' Illustrative Aid, Dkt. 145 (June 6, 2026) ............................................................ JA567

Amended Redacted Order Granting Preliminary Injunction, Dkt. 160 (June 18, 2026) .......................................................... JA583

Amended Redacted Memorandum Opinion, Dkt. 161 (June 18, 2026) ............................................................ JA587

Notice of Appeal, Dkt. 162 (June 22, 2026) ........................................ JA640

## <u>VOLUME II – SUPPLEMENT UNDER SEAL</u>

Complaint for Declaratory and Injunctive Relief, *Moe*, Dkt. 1 (Jan. 26, 2025) ............................................................ JA641

Amended Complaint for Declaratory and Injunctive Relief, *Jones*, Dkt. 36 (Feb. 28, 2025) ...................................................... JA665

Second Amended Complaint,
Dkt. 59 (Mar. 14, 2025) .................................................................... JA699

Exhibits to Plaintiffs' Motions for Preliminary Injunction (May 13, 2026)
Declaration of Amy Jones, Dkt. 116-4 .............................................JA736
Declaration of Barbara Jones, Dkt. 116-5.........................................JA743
Declaration of Carla Jones, Dkt. 116-6 .............................................JA747
Declaration of Donna Jones, Dkt. 116-7............................................ JA757
Declaration of Emily Doe, Dkt. 116-8 ...............................................JA768
Declaration of Jane Jones, Dkt. 116-9 ............................................... JA775
Declaration of Lois Doe, Dkt. 116-10 .................................................JA782
Declaration of Maria Moe, Dkt. 116-11 .............................................. JA788
Declaration of Mary Doe, Dkt. 116-12 ...............................................JA794
Declaration of Olivia Doe, Dkt. 116-13 ............................................. JA806
Declaration of Rachel Doe, Dkt. 116-14.............................................JA814
Declaration of Sally Doe, Dkt. 116-15 ............................................... JA820
Declaration of Sara Doe, Dkt. 116-16.................................................JA825
Declaration of Wendy Doe, Dkt. 116-17.............................................JA831
Declaration of Zoe Doe, Dkt. 116-18 ................................................. JA838
Declaration of Ryan Gorton, M.D., Dkt. 116-19 ................................ JA851
Declaration of Dr. Dan Karasic, Dkt. 116-21 .....................................JA875
Declaration of Randi Ettner, PHD, Dkt. 116-26................................ JA900

Exhibits to Government's Opposition to Motion for Preliminary
Injunction (May 29, 2026)
Declaration of Rick Stover, Dkt. 132-1 ..............................................JA925
Declaration of Dr. Edward Weidow, Dkt. 132-2 ................................JA955

Government's Illustrative Aid,
Dkt. 153 (June 7, 2026) .................................................................. JA964

Plaintiffs' Illustrative Aid,
Dkt. 154 (June 7, 2026) .................................................................. JA969

Sealed Order Granting Preliminary Injunction,
Dkt. 147 (June 7, 2026) .................................................................. JA988

Sealed Memorandum Opinion,
Dkt. 150 (June 8, 2026) ...................................................................JA992

APPEAL,CONSOL,PSEUDO−GR,STAYED,TYPE−D

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:25−cv−00286−RCL

DOE et al v. MCHENRY et al
Assigned to: Judge Royce C. Lamberth
Related Cases: 1:25−cv−00401−RCL
1:25−cv−00691−RCL
1:25−cv−04322−RCL
1:25−cv−00653−RCL
Case in other court: USCA, 25−05099
USCA, 25−05213
USCA, 25−05304
USCA, 25−05419
USCA, 26−05066
USCA, 26−05238
Cause: 28:1331 Fed. Question: Violation 5th & 8th Amendme

Date Filed: 01/30/2025
Jury Demand: None
Nature of Suit: 550 Prisoner Petition: Civil Rights (Other)
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**JANE DOE**

represented by

**Alexander Shalom**
LOWENSTEIN SANDLER
1 Lowenstein Drive
Roseland, NJ 07068
862−926−2029
Email: ashalom@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(646) 414−6962
Email: jdelgado@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street
Suite 950
Boston, MA 02108
617−426−1350
Email: jlevi@gladlaw.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
973−597−2500
Email: nkraner@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
AMERICAN CIVIL LIBERTIES UNION

FOUNDATION
425 California Street
Ste 7th Floor
San Francisco, CA 94104
415−343−1237
Email: aspiegel@rbgg.com
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415−365−1338
Email: awhelan@nclrights.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
ROSEN BIEN GALVAN & GRUNFELD, LLP
101 Mission Street, Sixth Floor
94105
San Francisco, CA 94105
415−433−6830
Email: bhattem@rbgg.com
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415−365−1320
Email: cstoll@nclrights.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest Galvan**
ROSEN BIEN GALVAN & GRUNFELD, LLP
101 Mission Street, Sixth Floor
94105
San Francisco, CA 94105
415−433−6830
Fax: 415−433−7104
Email: egalvan@rbgg.com
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara Jane Janssen**
ROSEN BIEN GALVAN & GRUNFELD
101 Mission Street
6th Floor
San Francisco, CA 94105
415−433−6830
Fax: 415−488−7104
Email: kjanssen@rbgg.com

*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
617−426−1350
Email: saustin@gladlaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
BROWN, GOLDSTEIN & LEVY, L.L.P.
120 E. Baltimore St.
Suite 2500
Baltimore, MD 21202
410−962−1030
Fax: 410−385−0869
Email: ehill@browngold.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARY DOE** represented by

**Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 05/12/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 05/12/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest Galvan**
(See above for address)
*TERMINATED: 05/12/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara Jane Janssen**
(See above for address)
*TERMINATED: 05/12/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SARA DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest Galvan**
(See above for address)
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kara Jane Janssen**
(See above for address)
*TERMINATED: 04/22/2026*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**EMILY DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ZOE DOE** represented by **Alexander Shalom**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**TORI DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**OLIVIA DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SUSAN DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LOIS DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SALLY DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 05/12/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**WENDY DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**RACHEL DOE** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Benjamin Hattem**
(See above for address)
*TERMINATED: 04/22/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ELLEN DOE**
*TERMINATED: 01/23/2026* represented by **Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrienne Spiegel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SOPHIA DOE** represented by

**Eve L. Hill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JAMES R. MCHENRY, III**
*in his official capacity as Acting Attorney General of the United States*

represented by

**Jean Lin**
U.S. DEPARTMENT OF JUSTICE
1100 L Street, NW
Room 11532
Washington, DC 20005
(202) 514−3716
Fax: (202) 616−8470
Email: jean.lin@usdoj.gov
*TERMINATED: 06/25/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
DOJ−CIV
1100 L Street NW
Washington, DC 20005
202−451−7478
Email: jared.littman2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Bombard**
DOJ−Tax
Civil Division
1100 L Street NW
Ste 12404
Washington, DC 20530
202−616−0773
Email: robert.bombard2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander James Yun**
U.S. Department of Justice
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202−305−8645
Email: Alex.Yun@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW

Washington, DC 20005
771−217−8107
Email: elizabeth.b.layendecker@usdoj.gov
*ATTORNEY TO BE NOTICED*

**John Robinson**
JACOBSON LAWYERS GROUP
5100 Wisconsin Ave., Suite 310
Washington, DC 20016
301−578−5071
Email: john@jacobsonlawyersgroup.com
*TERMINATED: 04/04/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM LOTHROP**
*in his official capacity as Acting Director of the Federal Bureau of Prisons*

represented by **Jean Lin**
(See above for address)
*TERMINATED: 06/25/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Bombard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander James Yun**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*TERMINATED: 04/04/2025*
*ATTORNEY TO BE NOTICED*

**Movant**

**BRENDA LEIGH KIRK**

represented by **Brian J. Field**
SCHAERR JAFFE LLP
1717 K Street, NW
Suite 900
Washington, DC 20006
(202) 787−1060
Fax: (202) 776−0136
Email: bfield@schaerr−jaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Greil**
SCHAERR JAFFE LLP
1717 K Street NW
Suite 900
Washington, DC 20006
202−787−1060
Email: jgreil@schaerr−jaffe.com
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Movant**

**JASMINE MEABON** represented by **Brian J. Field**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Greil**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**JESSICA CLEMENCIO MORAIS** represented by **Brian J. Field**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Greil**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**KEISHA WILLIAMS** represented by **Brian J. Field**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Greil**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/30/2025 | 1 | COMPLAINT against WILLIAM LOTHROP, JAMES R. MCHENRY III ( Filing fee $ 405 receipt number ADCDC−11444829) filed by JANE DOE, SARA DOE, MARY DOE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons − James R. McHenry III, Acting AG, # 3 Summons − William Lothrop, Acting Director, Federal BOP, # 4 Summons − Edward R. Martin Jr., U.S. Attorney for DC, # 5 Motion to File Under Seal and for Protective Order, # 6 Memorandum in Support of Motion to Seal, # 7 Text of Proposed Order)(Hill, Eve) (Entered: 01/30/2025) |
| 01/30/2025 | 2 | MOTION to File Under Seal *Motion for Temporary Restraining Order and Preliminary Injunction* by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Hill, Eve) Modified event on 1/30/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 3 | MOTION for Leave to Proceed Under Pseudonyms by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Hill, Eve) Modified event on 1/30/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 4 | NOTICE *Corrected Summonses − Summons − James R. McHenry III* by JANE DOE, MARY DOE, SARA DOE re 1 Complaint,, (Attachments: # 1 Summons − William Lothrop, # 2 Summons − Edward R. Martin Jr.)(Hill, Eve) (Entered: 01/30/2025) |
| 01/30/2025 | 5 | SEALED MOTION for Temporary Restraining Order and Preliminary Injunction filed by JANE DOE, MARY DOE, SARA DOE (Attachments: # 1 Memorandum in Support, # 2 Declaration of Eve Hill, # 3 Declaration of Loren Schechter, MD, # 4 Declaration of Jane Doe, # 5 Declaration of Ivana Kuc, # 6 Declaration of Frederic M. Ettner, MD, # 7 Text of Proposed Order)(Hill, Eve) Modified docket text on 1/31/2025 |

| | | |
|---|---|---|
| | | (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jennifer L. Levi, Filing fee $ 100, receipt number ADCDC−11446078. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration for Pro Hac Vice Admission, # 2 Supplemental Statement ISO Motion to Appear Pro Hac Vice, # 3 Certificate of Good Standing, # 4 Text of Proposed Order)(Hill, Eve) (Entered: 01/30/2025) |
| 01/31/2025 | 7 | ORDER: The Court ORDERS that: 1) Plaintiffs' 2 Motion to Seal and 3 Motion to Proceed Under Pseudonyms are GRANTED IN PART and DENIED IN PART; 2) All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; 3) Plaintiffs' 1 redacted Complaint shall remain on the public docket; 4) Their 5 unredacted TRO Motion shall remain under seal for now; and 5) Within five days of this Order, Plaintiffs shall file on the public docket a redacted version of their 5 Motion for a Temporary Restraining Order and Preliminary Injunction and associated documents; an unredacted version of their Complaint, filed under seal; and a declaration containing their real names and residential addresses, filed under seal. Signed by Chief Judge James E. Boasberg on January 31, 2025. (lcjeb3) (Entered: 01/31/2025) |
| 02/03/2025 | | Case Assigned to Judge Royce C. Lamberth. (zmtm) (Entered: 02/03/2025) |
| 02/03/2025 | 8 | SUMMONS (3) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 02/03/2025) |
| 02/03/2025 | 9 | ORDER: Upon consideration of the Motion 6 for Leave to Appear Pro Hac Vice, and the entire record herein, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/03/2025. (lcrcl2) (Main Document 9 replaced on 2/3/2025) (zsmc). (Entered: 02/03/2025) |
| 02/03/2025 | 10 | NOTICE of Appearance by Jennifer Levi on behalf of JANE DOE, MARY DOE, SARA DOE (Levi, Jennifer) (Entered: 02/03/2025) |
| 02/03/2025 | | NOTICE OF HEARING: Motion Hearing set for 2/4/2025 at 10:00 AM in Courtroom 15 (In Person) before Judge Royce C. Lamberth. (smc) (Entered: 02/03/2025) |
| 02/03/2025 | 11 | Memorandum in opposition to re 5 Sealed Motion, *for Temporary Restraining Order or Preliminary Injunction* filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP. (Attachments: # 1 Exhibit 1−Declaration of Rick Stover, # 2 Exhibit 2−2018 Transgender Offender Manual, # 3 Exhibit 3−2022 Transgender Offender Manual, # 4 Exhibit 4−Keohane v. Dixon Order, # 5 Text of Proposed Order)(Lin, Jean) (Entered: 02/03/2025) |
| 02/03/2025 | 12 | ENTERED IN ERROR.....SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Sealed declaration of Rick Stover, # 2 Text of Proposed Order)(Lin, Jean) Modified on 2/4/2025 (zdp). (Entered: 02/03/2025) |
| 02/03/2025 | 13 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Declaration of Eve Hill (Redacted), # 3 Exhibit Declaration of Loren Schechter (Redacted), # 4 Exhibit Declaration of Jane Doe (Redacted), # 5 Exhibit Declaration (Redacted), # 6 Exhibit Declaration of Frederic M. Ettner, MD, # 7 Text of Proposed Order)(Hill, Eve) (Entered: 02/03/2025) |
| 02/03/2025 | 14 | NOTICE of Appearance by John Robinson on behalf of JAMES R. MCHENRY, III, WILLIAM LOTHROP (Robinson, John) (Entered: 02/03/2025) |
| 02/03/2025 | 15 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Sarah K. Austin, Filing fee $ 100, receipt number ADCDC−11453369. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Certification of Sarah K. Austin, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/03/2025) |

| | | |
|---|---|---|
| 02/04/2025 | | NOTICE of AMENDED HEARING: Motion Hearing reset for 2/4/2025 at 11:00 AM (same day, different time) in Courtroom 15 (In Person) before Judge Royce C. Lamberth. (smc) (Entered: 02/04/2025) |
| 02/04/2025 | 16 | SEALED DOCUMENT filed by JANE DOE, MARY DOE, SARA DOE re 1 Complaint,, (This document is SEALED and only available to authorized persons.)(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | | Minute Entry for Motion Hearing held on 2/4/2025 before Judge Royce C. Lamberth: re 13 MOTION for Temporary Restraining Order and Preliminary Injunction. Oral arguments heard and TAKEN UNDER ADVISEMENT. Court Reporter: Lisa Edwards. (smc) (Entered: 02/04/2025) |
| 02/04/2025 | | NOTICE OF ERROR regarding 12 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP (This document is SEALED and only available to authorized persons.). The following error(s) need correction: Invalid attorney signature− signature on document must match PACER login. Please refile. (zdp) (Entered: 02/04/2025) |
| 02/04/2025 | 17 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Kara J. Janssen, Filing fee $ 100, receipt number ADCDC−11456399. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration for PHV Admission − Kara J. Janssen, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Adrienne Spiegel, Filing fee $ 100, receipt number ADCDC−11456420. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration for PHV Admission − Adrienne Spiegel, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | 19 | SEALED DOCUMENT filed by JANE DOE, MARY DOE, SARA DOE re 1 Complaint,, (This document is SEALED and only available to authorized persons.)(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | 20 | ERRATA by JANE DOE, MARY DOE, SARA DOE re 1 Complaint,,. (Attachments: # 1 Errata − Complaint)(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | 21 | ERRATA by JANE DOE, MARY DOE, SARA DOE re 13 Motion for TRO,, Motion for Preliminary Injunction,. (Attachments: # 1 Memorandum in Support (Errata))(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Benjamin Hattem, Filing fee $ 100, receipt number ADCDC−11456563. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration Benjamin Hattem, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/04/2025) |
| 02/04/2025 | 23 | MEMORANDUM & ORDER: Upon consideration of the plaintiffs' Motion 13 for a Temporary Restraining Order, the defendants' Opposition 11 thereto, and the entire record herein, and for the reasons contained in this Memorandum and Order, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are temporarily enjoined and restrained from implementing Sections 4(a) and 4(c) of Executive Order 14168 as to the plaintiffs, pending further Order of this Court; and it is further ORDERED that, pending further Order of this Court, defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025. Signed by Judge Royce C. Lamberth on 02/04/2025. (lcrcl2) (Entered: 02/04/2025) |
| 02/05/2025 | 24 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration of Rick Stover (sealed), # 2 Text of Proposed Order)(Robinson, John) (Entered: 02/05/2025) |
| 02/05/2025 | 25 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Amy Whelan, Filing fee $ 100, receipt number ADCDC−11458891. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration for PHV Admission − Amy Whelan, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) |

| | | |
|---|---|---|
| | | (Entered: 02/05/2025) |
| 02/05/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 24 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration of Rick Stover (sealed), # 2 Text of Proposed Order)(Robinson, John).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney−renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 2/12/2025. (zhcn) Modified on 2/6/2025 (zhcn). (Entered: 02/06/2025) |
| 02/06/2025 | 26 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Ernest J. Galvan, Filing fee $ 100, receipt number ADCDC−11462000. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration for PHV Admission − Ernest J. Galvan, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/06/2025) |
| 02/06/2025 | 27 | ORDER: Upon consideration of the Motion 15 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/06/2025. (lcrcl2) (Entered: 02/06/2025) |
| 02/06/2025 | 28 | ORDER: Upon consideration of the Motion 17 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/06/2025. (lcrcl2) (Entered: 02/06/2025) |
| 02/06/2025 | 29 | ORDER: Upon consideration of the Motion 18 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/06/2025. (lcrcl2) (Entered: 02/06/2025) |
| 02/06/2025 | 30 | ORDER: Upon consideration of the Motion 22 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/06/2025. (lcrcl2) (Entered: 02/06/2025) |
| 02/06/2025 | 31 | ORDER: Upon consideration of the Motion 25 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/06/2025. (lcrcl2) (Entered: 02/06/2025) |
| 02/06/2025 | 32 | ORDER: Upon consideration of the Motion 26 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/06/2025. (lcrcl2) (Entered: 02/06/2025) |
| 02/06/2025 | 33 | TRANSCRIPT OF MOTION HEARING before Judge Royce C. Lamberth held on February 4, 2025; Page Numbers: 1−41. Date of Issuance: February 6, 2025. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/27/2025. Redacted Transcript Deadline set for 3/9/2025. Release of Transcript Restriction set for 5/7/2025.(Edwards, Lisa) (Entered: 02/06/2025) |
| 02/07/2025 | 34 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the District of Columbia Attorney General. Date of Service Upon District of Columbia Attorney General 2/3/2025. Answer due for ALL D.C. DEFENDANTS by 2/24/2025. (Hill, Eve) (Entered: 02/07/2025) |
| 02/07/2025 | 35 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WILLIAM LOTHROP served on 2/3/2025 (Hill, Eve) (Entered: 02/07/2025) |
| 02/07/2025 | 36 | NOTICE of Appearance by Sarah K. Austin on behalf of JANE DOE, MARY DOE, SARA DOE (Austin, Sarah) (Entered: 02/07/2025) |
| 02/07/2025 | 38 | NOTICE of Appearance by Amy Whelan on behalf of All Plaintiffs (Whelan, Amy) (Entered: 02/07/2025) |
| 02/07/2025 | 39 | NOTICE of Appearance by Kara Jane Janssen on behalf of All Plaintiffs (Janssen, Kara) (Entered: 02/07/2025) |
| 02/07/2025 | 40 | NOTICE of Appearance by Ernest Galvan on behalf of All Plaintiffs (Galvan, Ernest) (Entered: 02/07/2025) |
| 02/07/2025 | 41 | NOTICE of Appearance by Adrienne Spiegel on behalf of All Plaintiffs (Spiegel, Adrienne) (Entered: 02/07/2025) |
| 02/10/2025 | 42 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Christopher F. Stoll, Filing fee $ 100, receipt number ADCDC−11467664. Fee Status: Fee Paid. by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration for PHV Admission − Christopher F. Stoll, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/10/2025) |
| 02/14/2025 | 43 | ORDER: Upon consideration of the Motion 42 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 02/14/2025. (lcrcl2) (Entered: 02/14/2025) |
| 02/18/2025 | 44 | ORDER: Upon consideration of the plaintiffs' Motion 13 for a Preliminary Injunction, the Opposition 11 thereto, and the entire record herein which is essentially unchanged since the issuance of the Temporary Restraining Order 23 , and for the reasons contained in the Temporary Restraining Order, it is hereby ORDERED that the plaintiffs' Motion for a Preliminary Injunction is GRANTED; and it is further ORDERED that the defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against plaintiffs Jane, Mary, and Sara Doe, pending further Order of this Court; and it is further ORDERED that, pending further Order of this Court, the defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 02/18/2025. (lcrcl2) (Entered: 02/18/2025) |
| 02/19/2025 | 45 | NOTICE of Appearance by Christopher F. Stoll on behalf of All Plaintiffs (Stoll, Christopher) (Entered: 02/19/2025) |

| | | |
|---|---|---|
| 02/21/2025 | 46 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 02/07/2025. (Hill, Eve) (Entered: 02/21/2025) |
| 02/21/2025 | 47 | AMENDED COMPLAINT against All Defendants filed by JANE DOE, SARA DOE, MARY DOE.(Hill, Eve) (Entered: 02/21/2025) |
| 02/21/2025 | 48 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 AMENDED COMPLAINT)(Hill, Eve) (Entered: 02/21/2025) |
| 02/21/2025 | 49 | MOTION to Proceed Under Pseudonyms by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Hill, Eve) (Entered: 02/21/2025) |
| 02/21/2025 | 50 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction *(Expanded)* by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum of Points and Authorities ISO Motion for TRO and Expanded PI, # 2 Declaration of Eve Hill ISO Motions for TRO and PI and to Proceed Under Pseudonym and Partially Seal the Record, # 3 Text of Proposed Order)(Hill, Eve) (Entered: 02/21/2025) |
| 02/21/2025 | 51 | SEALED DOCUMENT filed by JANE DOE, MARY DOE, SARA DOE re 50 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *(Expanded)* (This document is SEALED and only available to authorized persons.)(Hill, Eve) (Entered: 02/21/2025) |
| 02/23/2025 | 52 | Memorandum in opposition to re 50 Motion for TRO,, Motion for Preliminary Injunction, *(Redacted)* filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP. (Attachments: # 1 Declaration of Rick Stover (redacted), # 2 Text of Proposed Order)(Robinson, John) (Entered: 02/23/2025) |
| 02/23/2025 | 53 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Response to Plaintiffs' Motion for TRO, # 2 Declaration of Rick Stover, # 3 Text of Proposed Order)(Robinson, John) (Entered: 02/23/2025) |
| 02/24/2025 | 54 | REPLY *in Support of Motion for Temporary Restraining Order and Preliminary Injunction* filed by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Declaration of Lauren Meade, M.D. ISO Plaintiffs' Motion for TRO and Expanded PI)(Hill, Eve) (Entered: 02/24/2025) |
| 02/24/2025 | 55 | ORDER granting 50 Motion for TRO and Preliminary Injunction; It is hereby ORDERED that the plaintiffs' Motion is GRANTED; and it is further ORDERED that the defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against plaintiffs Jane, Mary, Sara, Emily, Zoe, Tori, Olivia, Susan, Lois, Sophia, Sally, and Wendy Doe, pending further Order of this Court; and it is further ORDERED that, pending further Order of this Court, the defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025. Signed by Judge Royce C. Lamberth on 2/24/2025. (lcrcl3) (Entered: 02/24/2025) |
| 02/24/2025 | 56 | NOTICE of Appearance by Benjamin Hattem on behalf of All Plaintiffs (Hattem, Benjamin) (Entered: 02/24/2025) |
| 02/27/2025 | 57 | ORDER granting Plaintiffs' Motion for Protective Order, ECF No. 1−5. See Order for details. Signed by Judge Royce C. Lamberth on 2/27/2025. (lcrcl3) (Entered: 02/27/2025) |
| 03/14/2025 | 58 | Consent MOTION for Leave to File 47 Amended Complaint by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Exhibit Redlined Second Amended Complaint, # 2 Exhibit Second Amended Complaint − Redacted)(Janssen, Kara) Modified event on 3/17/2025 (znmw). (Entered: 03/14/2025) |
| 03/14/2025 | 59 | SEALED DOCUMENT re 58 Motion for Leave to File filed by JANE DOE, MARY DOE, SARA DOE(This document is SEALED and only available to authorized |

| | | |
|---|---|---|
| | | persons.)(Janssen, Kara) Modified to add link on 3/17/2025 (znmw). (Entered: 03/14/2025) |
| 03/14/2025 | 60 | SEALED MOTION to Proceed Under Pseudonym filed by JANE DOE, MARY DOE, SARA DOE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Janssen, Kara) (Entered: 03/14/2025) |
| 03/14/2025 | 61 | MOTION for Temporary Restraining Order by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Kara Janssen ISO Motions for Temporary Restaining Order & to Proceed Under Pseudonynm, # 3 Declaration of Ellen Doe, # 4 Declaration of Rachel Doe, # 5 Text of Proposed Order)(Janssen, Kara) (Entered: 03/14/2025) |
| 03/14/2025 | 62 | SEALED DOCUMENT filed by JANE DOE, MARY DOE, SARA DOE re 61 MOTION for Temporary Restraining Order (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Ellen Doe (Unredacted), # 2 Declaration of Rachel Doe (Unredacted))(Janssen, Kara) (Entered: 03/14/2025) |
| 03/17/2025 | 63 | RESPONSE re 61 MOTION for Temporary Restraining Order *(redacted)* filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP. (Attachments: # 1 Declaration of Health Services Administrator, # 2 Declaration of Associate Warden, # 3 Text of Proposed Order)(Robinson, John) (Entered: 03/17/2025) |
| 03/17/2025 | 64 | SEALED OPPOSITION filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP. re 61 Motion for TRO, (Attachments: # 1 Declaration of Health Services Administrator, # 2 Declaration of Associate Warden)(Robinson, John) (Entered: 03/17/2025) |
| 03/18/2025 | 65 | REPLY to opposition to motion re 61 MOTION for Temporary Restraining Order filed by JANE DOE, MARY DOE, SARA DOE. (Janssen, Kara) Modified docket text on 3/25/2025 (zdp). (Entered: 03/18/2025) |
| 03/18/2025 | 66 | MOTION to Convert Pending Motion for Further Temporary Restraining Order to Motion for Further Preliminary Injunction or Temporary Restraining Order by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Janssen, Kara) (Entered: 03/18/2025) |
| 03/18/2025 | 67 | SEALED DOCUMENT filed by JANE DOE, MARY DOE, SARA DOE(This document is SEALED and only available to authorized persons.)(Janssen, Kara) (Entered: 03/18/2025) |
| 03/19/2025 | 68 | ORDER granting 58 Motion for Leave to File; granting 66 Motion to Convert/Motion for Preliminary Injunction; it is hereby ORDERED that the plaintiffs' Motion for a Preliminary Injunction is GRANTED; and it is further ORDERED that the defendants are hereby enjoined from implementing sections 4(a) and 4(c) of Executive Order 14168 with regard to Rachel Doe and Ellen Doe, pending further Order of this Court; and it is further ORDERED that the defendants shall immediately transfer plaintiffs Rachel Doe and Ellen Doe back to women's penitentiaries and reinstate or continue their gender dysphoria treatment, pending further Order of this Court. See Order for details. Signed by Judge Royce C. Lamberth on 3/19/2025. (lcrcl3) (Entered: 03/19/2025) |
| 03/31/2025 | 69 | NOTICE of Appearance by Elizabeth Brooke Layendecker on behalf of All Defendants (Layendecker, Elizabeth) (Main Document 69 replaced on 4/1/2025) (zdp). (Entered: 03/31/2025) |
| 04/01/2025 | 70 | NOTICE of Appearance by Alexander James Yun on behalf of All Defendants (Yun, Alexander) (Main Document 70 replaced on 4/1/2025) (zdp). (Entered: 04/01/2025) |
| 04/01/2025 | 71 | Consent MOTION for Extension of Time to File Answer by JAMES R. MCHENRY, III, WILLIAM LOTHROP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 04/01/2025) |
| 04/02/2025 | 72 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 44 Order on Motion for Preliminary Injunction,,, 55 Order on Motion for TRO,,, Order on Motion for Preliminary Injunction,, 68 Order on Motion for Leave to File,,, Order on Motion for TRO,,, Order on Motion for Miscellaneous Relief,, by JAMES R. |

| | | |
|---|---|---|
| | | MCHENRY, III, WILLIAM LOTHROP. Fee Status: No Fee Paid. Parties have been notified. (Layendecker, Elizabeth) Modified event on 8/22/2025 (znmw). (Entered: 04/02/2025) |
| 04/02/2025 | 73 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 72 Notice of Appeal to DC Circuit Court,. (zdp) Modified docket text on 4/2/2025 (zdp). (Entered: 04/02/2025) |
| 04/02/2025 | | USCA Case Number 25−5099 for 72 Notice of Appeal to DC Circuit Court, filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (zdp) (Entered: 04/03/2025) |
| 04/04/2025 | 74 | NOTICE OF WITHDRAWAL OF APPEARANCE as to WILLIAM LOTHROP, JAMES R. MCHENRY, III. Attorney John Robinson terminated. (Robinson, John) (Entered: 04/04/2025) |
| 04/11/2025 | 75 | ORDER: Upon consideration of the consent Motion 71 for an Extension of Time to Answer or Otherwise Respond to the Complaint, and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants' deadline to respond to the Complaint shall be extended to April 25, 2025. Signed by Judge Royce C. Lamberth on 04/10/2025. (lcrcl2) (Entered: 04/11/2025) |
| 04/24/2025 | 76 | Consent MOTION to Stay *Proceedings* by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 04/24/2025) |
| 04/25/2025 | 77 | ORDER granting 76 Motion to Stay. Signed by Judge Royce C. Lamberth on 4/25/2025. (lcrcl3) (Entered: 04/25/2025) |
| 04/28/2025 | | Case Stayed. (smc) (Entered: 04/28/2025) |
| 04/29/2025 | 78 | Joint MOTION for Protective Order by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Text of Proposed Order)(Layendecker, Elizabeth) (Entered: 04/29/2025) |
| 05/06/2025 | 79 | ORDER: Upon consideration of the parties' joint Motion 78 for a Protective Order, and the entire record herein, it is hereby ORDERED that the Motion is GRANTED. See Order for details as to the Protective Order. Signed by Judge Royce C. Lamberth on 05/06/2025. (lcrcl2) (Entered: 05/06/2025) |
| 05/12/2025 | 80 | NOTICE of Voluntary Dismissal re Sophia Doe by JANE DOE, MARY DOE, SARA DOE (Janssen, Kara) (Entered: 05/12/2025) |
| 05/12/2025 | 81 | Unopposed MOTION for Preliminary Injunction *Unopposed Motion for Renewed Preliminary Injunction* by JANE DOE, MARY DOE, SARA DOE. (Attachments: # 1 Memorandum in Support Memorandum of Points & Authorities, # 2 Exhibit A − Declaration of Zoe Doe, # 3 Exhibit B − Declaration of Olivia Doe, # 4 Exhibit C − Declaration of Susan Doe, # 5 Exhibit D − Declaration of Sally Doe, # 6 Exhibit E − Declaration of Emily Doe, # 7 Exhibit F − Declaration of Lois Doe, # 8 Exhibit G − Declaration of Mary Doe, # 9 Exhibit H − Declaration of Wendy Doe, # 10 Exhibit I − Declaration of Sara Doe, # 11 Text of Proposed Order)(Janssen, Kara) (Entered: 05/12/2025) |
| 05/12/2025 | 82 | SEALED DOCUMENT filed by JANE DOE, MARY DOE, SARA DOE re 81 Unopposed MOTION for Preliminary Injunction *Unopposed Motion for Renewed Preliminary Injunction* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit B − Declaration of Olivia Doe (Unredacted), # 2 Exhibit C − Declaration of Susan Doe (Unredacted), # 3 Exhibit D − Declaration of Sally Doe (Unredacted), # 4 Exhibit E − Declaration of Emily Doe (Unredacted), # 5 Exhibit F − Declaration of Lois Doe (Unredacted), # 6 Exhibit G − Declaration of Mary Doe (Unredacted), # 7 Exhibit H − Declaration of Wendy Doe (Unredacted), # 8 Exhibit I − Declaration of Sara Doe (Unredacted))(Janssen, Kara) (Entered: 05/12/2025) |
| 05/15/2025 | 83 | ORDER: Upon consideration of the unopposed Motion 81 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs |

| | | |
|---|---|---|
| | | from May 25, 2025 to August 23, 2025; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 05/15/2025. (lcrcl2) (Entered: 05/15/2025) |
| 06/04/2025 | 84 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT by JAMES R. MCHENRY, III, WILLIAM LOTHROP. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) Modified event on 8/22/2025 (znmw). (Entered: 06/04/2025) |
| 06/04/2025 | 85 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 84 Notice of Appeal to DC Circuit Court. (zdp) (Entered: 06/04/2025) |
| 06/05/2025 | | USCA Case Number 25−5213 for 84 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (zdp) (Entered: 06/05/2025) |
| 06/27/2025 | 86 | NOTICE of Appearance by M. Jared Littman on behalf of All Defendants (Littman, M.) (Main Document 86 replaced on 7/1/2025) (zdp). (Entered: 06/27/2025) |
| 08/15/2025 | 87 | Unopposed MOTION for Preliminary Injunction *Unopposed Motion for Renewed Preliminary Injunction* by JANE DOE, MARY DOE, SARA DOE, EMILY DOE, ZOE DOE, TORI DOE, OLIVIA DOE, SUSAN DOE, LOIS DOE, SALLY DOE, WENDY DOE, RACHEL DOE, ELLEN DOE. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Adrienne Spiegel, # 3 Text of Proposed Order)(Spiegel, Adrienne) (Entered: 08/15/2025) |
| 08/19/2025 | 88 | Consent MOTION to Stay *Proceedings* by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 08/19/2025) |
| 08/20/2025 | 89 | ORDER: Upon consideration of the unopposed Motion 87 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs from August 23, 2025 to November 21, 2025; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 08/20/2025. (lcrcl1) (Entered: 08/20/2025) |
| 08/20/2025 | 90 | ORDER granting 88 Motion to Stay. All proceedings in this case are STAYED until November 21, 2025, except as stated herein. Signed by Judge Royce C. Lamberth on 08/20/2025. (lcrcl1) (Entered: 08/20/2025) |
| 08/21/2025 | 91 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 89 Order,, by JAMES R. MCHENRY, III, WILLIAM LOTHROP. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) Modified event title on 8/22/2025 (znmw). (Entered: 08/21/2025) |
| 08/22/2025 | 92 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 91 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 08/22/2025) |
| 08/22/2025 | | USCA Case Number 25−5304 for 91 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (mg) (Entered: 08/25/2025) |
| 11/13/2025 | 93 | Unopposed MOTION for Preliminary Injunction *Unopposed Motion for New Preliminary Injunction* by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support Memorandum of Points & Authorities, # 2 Declaration of Adrienne Spiegel, # 3 Text of Proposed Order)(Spiegel, Adrienne) (Entered: 11/13/2025) |

| | | |
|---|---|---|
| 11/17/2025 | 94 | ORDER: Upon consideration of the unopposed Motion 93 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs from November 21, 2025 to February 19, 2026; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 11/17/2025. (lcrcl1) (Entered: 11/17/2025) |
| 11/19/2025 | 95 | Consent MOTION to Stay *Proceedings* by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 11/19/2025) |
| 11/20/2025 | 96 | ORDER granting 95 Motion to Stay. All proceedings in this case are STAYED until February 19, 2026, except as stated herein. Signed by Judge Royce C. Lamberth on 11/20/2025. (lcrcl1) (Entered: 11/20/2025) |
| 11/21/2025 | 97 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 94 Order on Motion for Preliminary Injunction,, by JAMES R. MCHENRY, III, WILLIAM LOTHROP. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) (Entered: 11/21/2025) |
| 11/21/2025 | 98 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 97 Notice of Appeal to DC Circuit Court. (mg) (Entered: 11/21/2025) |
| 11/26/2025 | | USCA Case Number 25−5419 for 97 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (znmw) (Entered: 12/01/2025) |
| 01/23/2026 | 99 | NOTICE of Voluntary Dismissal re Ellen Doe *Notice of Voluntary Dismissal of Claims of Plaintiff Ellen Doe* by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (Spiegel, Adrienne) (Entered: 01/23/2026) |
| 02/02/2026 | 100 | Unopposed MOTION for Preliminary Injunction *Unopposed Motion for New Preliminary Injunction* by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support Memorandum of Points & Authorities, # 2 Declaration of Ben Hattem, # 3 Text of Proposed Order)(Hattem, Benjamin) (Entered: 02/02/2026) |
| 02/12/2026 | 101 | ORDER granting 100 Motion for Preliminary Injunction. It is ORDERED that Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against any plaintiff in this action for the period of February 19, 2026 to May 20, 2026. See Order for more details. Signed by Judge Royce C. Lamberth on 2/12/2026. (lcrcl1) (Entered: 02/12/2026) |
| 02/13/2026 | 102 | Consent MOTION to Stay by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 02/13/2026) |
| 02/18/2026 | 103 | ORDER granting 102 Motion to Stay. All proceedings in this case are stayed until May 20, 2026 except as to any motions to extend or renew the preliminary injunctions, any issue that may arise from compliance with those preliminary injunctions, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues. Either Plaintiffs or Defendants may move to life the stay at any time. Signed by Judge Royce C. Lamberth on 2/18/2026. (lcrcl1) (Entered: 02/18/2026) |
| 02/23/2026 | 104 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 101 Order on Motion for Preliminary Injunction, by JAMES R. MCHENRY, III, WILLIAM LOTHROP. Fee Status: No Fee Paid. (Yun, Alexander) (Entered: 02/23/2026) |
| 02/23/2026 | 105 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 104 Notice of Appeal to DC Circuit Court. (zjm) (Entered: |

| | | |
|---|---|---|
| | | 02/23/2026) |
| 02/24/2026 | | USCA Case Number 26−5066 for 104 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (znmw) (Entered: 02/25/2026) |
| 04/07/2026 | 106 | NOTICE *Notice of Death of Plaintiff Susan Doe* by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (Galvan, Ernest) (Entered: 04/07/2026) |
| 04/22/2026 | 107 | NOTICE OF WITHDRAWAL OF APPEARANCE as to EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, TORI DOE, WENDY DOE, ZOE DOE. Attorney Kara Jane Janssen; Adrienne Spiegel; Ernest Galvan and Benjamin Hattem terminated. (Attachments: # 1 Exhibit Notices of Withdrawal)(Galvan, Ernest) (Entered: 04/22/2026) |
| 04/30/2026 | 108 | NOTICE of Appearance by Alexander Shalom on behalf of EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (Shalom, Alexander) (Entered: 04/30/2026) |
| 04/30/2026 | 109 | NOTICE of Appearance by Natalie J. Kraner on behalf of All Plaintiffs (Kraner, Natalie) (Entered: 04/30/2026) |
| 04/30/2026 | 110 | NOTICE of Appearance by Jennifer Fiorica Delgado on behalf of All Plaintiffs (Delgado, Jennifer) (Entered: 04/30/2026) |
| 05/11/2026 | 111 | Unopposed MOTION to Consolidate Cases by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/11/2026) |
| 05/12/2026 | 112 | MOTION for Leave to File Excess Pages *in Memorandum of Law in Support of Omnibus Motion for Temporary Restraining Order and a Preliminary Injunction* by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/12/2026) |
| 05/12/2026 | 113 | NOTICE OF WITHDRAWAL OF APPEARANCE as to EMILY DOE, LOIS DOE, MARY DOE, SALLY DOE, TORI DOE. Attorney Kara Jane Janssen; Adrienne Spiegel; Ernest Galvan and Benjamin Hattem terminated. (Galvan, Ernest) (Entered: 05/12/2026) |
| 05/13/2026 | 114 | RESPONSE re 112 MOTION for Leave to File Excess Pages *in Memorandum of Law in Support of Omnibus Motion for Temporary Restraining Order and a Preliminary Injunction* filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Littman, M.) (Entered: 05/13/2026) |
| 05/13/2026 | 115 | ORDER granting 111 Motion to Consolidate Cases. It is ORDERED that the following cases are consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a): 1:25−cv−00286, 1:25−cv−00401, and 1:25−cv−00653. All future filings and papers related to the consolidated cases shall be filed only in Doe, et al. v. Blanche, et al., 1:25−cv−00286. Signed by Judge Royce C. Lamberth on 5/12/2026. (lcrcl1) (Entered: 05/13/2026) |
| 05/13/2026 | 116 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion to File Documents Under Seal, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, # 4 Declaration of Amy Jones, # 5 Declaration of Barbara Jones, # 6 Declaration of Carla Jones, # 7 Declaration of Donna Jones, # 8 Declaration of Emily Doe, # 9 Declaration of Jane Jones, # 10 Declaration of Lois Doe, # 11 Declaration of Maria Moe, # 12 Declaration of Mary Doe, # 13 Declaration of Olivia Doe, # 14 Declaration of Rachel Doe, # 15 |

| | | |
|---|---|---|
| | | Declaration of Sally Doe, # 16 Declaration of Sara Doe, # 17 Declaration of Wendy Doe, # 18 Declaration of Zoe Doe, # 19 Declaration of Ryan Nicholas Gorton, M.D., # 20 Exhibit A to Gorton Declaration, # 21 Declaration of Dr. Dan H. Karasic, # 22 Exhibit A to Karasic Declaration, # 23 Exhibit B to Karasic Declaration, # 24 Exhibit C to Karasic Declaration, # 25 Exhibit D to Karasic Declaration, # 26 Declaration of Randi Ettner, Ph.D., # 27 Exhibit A to Ettner Declaration, # 28 Declaration of Dr. Alix McLearen, # 29 Exhibit A to McLearen Decl, # 30 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/13/2026) |
| 05/13/2026 | 117 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (redacted), # 2 Declaration of Jennifer Fiorica Delgado, # 3 Declaration of Amy Jones (redacted), # 4 Declaration of Barbara Jones (redacted), # 5 Declaration of Carla Jones (redacted), # 6 Declaration of Donna Jones (redacted), # 7 Declaration of Emily Doe (redacted), # 8 Declaration of Jane Jones (redacted), # 9 Declaration of Lois Doe (redacted), # 10 Declaration of Maria Moe (redacted), # 11 Declaration of Mary Doe (redacted), # 12 Declaration of Olivia Doe (redacted), # 13 Declaration of Rachel Doe (redacted), # 14 Declaration of Sally Doe (redacted), # 15 Declaration of Sara Doe (redacted), # 16 Declaration of Wendy Doe (redacted), # 17 Declaration of Zoe Doe (redacted), # 18 Declaration of Ryan Nicholas Gorton, M.D. (redacted), # 19 Exhibit A to Gorton Declaration, # 20 Declaration of Dr. Dan H. Karasic (redacted), # 21 Exhibit A to Karasic Declaration, # 22 Exhibit B to Karasic Declaration, # 23 Exhibit C to Karasic Declaration, # 24 Exhibit D to Karasic Declaration, # 25 Declaration of Randi Ettner, Ph.D (redacted), # 26 Exhibit A to Ettner Declaration, # 27 Declaration of Dr. Alix McLearen (redacted), # 28 Exhibit A to McLearen Declaration, # 29 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/13/2026) |
| 05/13/2026 | | Cases Consolidate. The following cases have been consolidated with this case: 25cv401, 25cv653 pursuant to 115 Order on Motion to Consolidate Cases. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (znmw) (Entered: 05/21/2026) |
| 05/13/2026 | 128 | SEALED DOCUMENT (Memorandum in Support) filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. re 117 Motion for TRO, Motion for Preliminary Injunction. (See Docket Entry 116 for sealed exhibits). (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 05/26/2026) |
| 05/14/2026 | 118 | ORDER granting 112 Motion for Leave to File Excess Pages. Signed by Judge Royce C. Lamberth on 5/14/2026. (lcrcl1) (Entered: 05/14/2026) |
| 05/14/2026 | 119 | ORDER granting 116 Sealed Motion for Leave to File Document Under Seal. See Order for more details. Signed by Judge Royce C. Lamberth on 5/14/2026. (lcrcl1) (Entered: 05/14/2026) |
| 05/14/2026 | 120 | ORDER: Upon consideration of 117 Plaintiffs' Motion for Temporary Restraining Order & Preliminary Injunction, a hearing is set on the preliminary injunction for 6/8/2026 at 11:00 AM in Courtroom 15 − In Person before Judge Royce C. Lamberth. The parties are ORDERED to submit a joint briefing schedule for the Motion for Preliminary Injunction by 5/14/2026 at 4:00 PM. As the plaintiffs raise in their motion, the existing preliminary injunction, 101 , is set to expire on 5/20/2026. The D.C. Circuit's mandate, however, will not issue in this case until 6/8/2026. Plaintiffs represent that Defendants are only able to provide a complete set of the fifteen plaintiffs' medical and correctional records by 5/22/2026. The parties are therefore further ORDERED to file a joint status report addressing whether they will consent to the Court extending the existing preliminary injunction through the time that the Circuit's mandate shall issue. The joint status report is due by 5/18/2026 at 4:00 PM. Signed by Judge Royce C. Lamberth on 5/14/2026. (lcrcl1) (Entered: 05/14/2026) |
| 05/18/2026 | 121 | Joint STATUS REPORT *and Proposed Briefing Schedule* by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Littman, M.) (Entered: 05/18/2026) |

| | | |
|---|---|---|
| 05/18/2026 | 122 | ORDER setting Emergency Status Hearing for 5/20/2026 at 11:00 AM in Courtroom 15 − in person before Judge Royce C. Lamberth. The parties are ORDERED to come prepared to address this Court's jurisdiction, if any, to act with regard to the existing preliminary injunction, 101 , and Plaintiffs' requested TRO and PI, 117 , during the period from now until the D.C. Circuit's mandate issues on 6/8/2026. Signed by Judge Royce C. Lamberth on 5/18/2026. (lcrcl1) (Entered: 05/18/2026) |
| 05/19/2026 | 123 | Emergency MOTION to Continue *Tomorrow's Emergency Status Hearing by Four Hours* by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Littman, M.) (Entered: 05/19/2026) |
| 05/19/2026 | 124 | Memorandum in opposition to re 123 Emergency MOTION to Continue *Tomorrow's Emergency Status Hearing by Four Hours* filed by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Hill, Eve) (Entered: 05/19/2026) |
| 05/19/2026 | 125 | ORDER renewing preliminary injunction; vacating 122 Emergency Status Hearing set for 5/20/2026 at 11:00 AM; and finding as moot 123 Motion to Continue. It is ORDERED that Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against any plaintiff in this action for the period running from May 21, 2026, until the D.C. Circuit's mandate issues on June 8, 2026. See Order for more details. Signed by Judge Royce C. Lamberth on 5/19/2026. (lcrcl1) (Entered: 05/19/2026) |
| 05/19/2026 | 126 | ORDER adopting joint briefing schedule for 117 Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. Defendants' opposition is due by 5/29/2026 at 12:00 PM (up to 65 pages); Plaintiffs' reply is due by 6/5/2026 (up to 20 pages). Signed by Judge Royce C. Lamberth on 5/19/2026. (lcrcl1) (Entered: 05/19/2026) |
| 05/21/2026 | 127 | ORDER staying Plaintiffs' challenge to Section 4(c) of Executive Order 14168, pending final adjudication of the class claims in Kingdom v. Trump, No. 25−cv−691. Plaintiffs' challenge to Section 4(a) of the Executive Order may proceed. See Order for more details. Signed by Judge Royce C. Lamberth on 5/21/2026. (lcrcl1) (Entered: 05/21/2026) |
| 05/29/2026 | 129 | Memorandum in opposition to re 117 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *(Redacted)* filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Exhibit Stover Declaration (Redacted), # 2 Exhibit Roman Declaration, # 3 Exhibit Weidow Declaration (Redacted))(Littman, M.) (Entered: 05/29/2026) |
| 05/29/2026 | 130 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Response to Plaintiffs' Emergency Motion for TRO and Preliminary Injunction − UNREDACTED, UNDER SEAL, # 2 Exhibit Ex. 1 (Stover Decl.), UNREDACTED, UNDER SEAL, # 3 Exhibit Ex. 3 (Weidow Decl.), UNREDACTED, UNDER SEAL)(Littman, M.) (Entered: 05/29/2026) |
| 05/29/2026 | 131 | ORDER granting 130 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Royce C. Lamberth on 5/29/2026. (lcrcl3) (Main Document 131 replaced on 6/1/2026) (zsmc). (Entered: 05/29/2026) |
| 05/29/2026 | 132 | SEALED OPPOSITION filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III re 117 Motion for TRO, Motion for Preliminary Injunction (Attachments: # 1 Exhibit 1, # 2 Exhibit 3)(znmw) (Entered: 06/03/2026) |
| 06/03/2026 | 133 | NOTICE *of Preliminary Injunction Issue in Fleming v. Rule (N.D. Tex.)* by WILLIAM LOTHROP, JAMES R. MCHENRY, III (Attachments: # 1 Exhibit Fleming v. Rule: Preliminary Injunction)(Littman, M.) (Entered: 06/03/2026) |
| 06/03/2026 | 134 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Jennifer Fiorica Delgado, # 2 Exhibit Plaintiffs' Reply Brief in |

| | | |
|---|---|---|
| | | Support of Their Motion for a Preliminary Injunction, # 3 Text of Proposed Order)(Shalom, Alexander) (Entered: 06/03/2026) |
| 06/03/2026 | 135 | REPLY to opposition to motion re 117 Motion for TRO,,,,,, Motion for Preliminary Injunction,,,,,, filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Declaration (Supplemental) of Randi Ettner, PH.D.)(Delgado, Jennifer) (Entered: 06/03/2026) |
| 06/04/2026 | 136 | ORDER granting 134 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Royce C. Lamberth on 6/4/2026. (lcrcl1) (Entered: 06/04/2026) |
| 06/04/2026 | 137 | NOTICE *of Updated Bureau of Justice Statistics' Prison Sexual Victimization Report* by WILLIAM LOTHROP, JAMES R. MCHENRY, III (Attachments: # 1 Exhibit BJS Sexual Victimization Report, 2023−24)(Littman, M.) (Entered: 06/04/2026) |
| 06/04/2026 | 138 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Plaintiffs' Unopposed Motion to Seal Filings, # 2 Text of Proposed Order)(Delgado, Jennifer) (Entered: 06/04/2026) |
| 06/04/2026 | 139 | MOTION To Partially Close Courtroom for June 8, 2026 Hearing *and Seal Corresponding Sections of the Transcript* by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion to Partially Close the Courtroom on June 8, 2026 and Seal Corresponding Sections of the Transcript, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 06/04/2026) |
| 06/04/2026 | 140 | SEALED REPLY TO OPPOSITION filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE re 117 Motion for TRO, Motion for Preliminary Injunction, (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 06/05/2026) |
| 06/05/2026 | 141 | MOTION to Intervene by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A (Fleming Record Documents), # 3 Exhibit B (proposed Answer), # 4 Exhibit C (Proposed TRO/PI Opposition), # 5 Text of Proposed Order)(Field, Brian) (Entered: 06/05/2026) |
| 06/05/2026 | 142 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Notice of Illustrative Aid, # 2 Exhibit Illustrative Aid)(Littman, M.) (Entered: 06/05/2026) |
| 06/05/2026 | 143 | NOTICE *of Illustrative Aid* by WILLIAM LOTHROP, JAMES R. MCHENRY, III (Attachments: # 1 Exhibit Illustrative Aid − Redacted)(Littman, M.) (Entered: 06/05/2026) |
| 06/06/2026 | 144 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Notice of Illustrative Aid, # 2 Exhibit Illustrative Aid − Amy Jones, # 3 Exhibit Illustrative Aid − Barbara Jones, # 4 Exhibit Illustrative Aid − Carla Jones, # 5 Exhibit Illustrative Aid − Emily Doe, # 6 Exhibit Illustrative Aid − Jane Jones, # 7 Exhibit Illustrative Aid − Lois Doe, # 8 Exhibit Illustrative Aid − Maria Moe, # 9 Exhibit Illustrative Aid − Mary Doe, # 10 Exhibit Illustrative Aid − Olivia Doe, # 11 Exhibit Illustrative Aid − Rachel Doe, # 12 Exhibit Illustrative Aid − Sally Doe, # 13 Exhibit Illustrative Aid − Sara Doe, # 14 Exhibit Illustrative Aid − Wendy Doe, # 15 Exhibit Illustrative Aid − Zoe Doe)(Delgado, Jennifer) (Entered: 06/06/2026) |
| 06/06/2026 | 145 | NOTICE *of Illustrative Aid* by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI |

| | | |
|---|---|---|
| | | DOE, WENDY DOE, ZOE DOE (Attachments: # 1 Exhibit Illustrative Aid − Amy Jones (redacted), # 2 Exhibit Illustrative Aid − Barbara Jones (redacted), # 3 Exhibit Illustrative Aid − Carla Jones (redacted), # 4 Exhibit Illustrative Aid − Emily Doe (redacted), # 5 Exhibit Illustrative Aid − Jane Jones (redacted), # 6 Exhibit Illustrative Aid − Lois Doe (redacted), # 7 Exhibit Illustrative Aid − Maria Moe (redacted), # 8 Exhibit Illustrative Aid − Mary Moe (redacted), # 9 Exhibit Illustrative Aid − Olivia Doe (redacted), # 10 Exhibit Illustrative Aid − Rachel Doe (redacted), # 11 Exhibit Illustrative Aid − Sally Doe (redacted), # 12 Exhibit Illustrative Aid − Sara Doe (redacted), # 13 Exhibit Illustrative Aid − Wendy Doe (redacted), # 14 Exhibit Illustrative Aid − Zoe Doe (redacted))(Delgado, Jennifer) (Entered: 06/06/2026) |
| 06/07/2026 | 146 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− John Greil, Filing fee $ 100, receipt number ADCDC−12471972. Fee Status: Fee Paid. by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Attachments: # 1 Declaration of John Greil, # 2 Text of Proposed Order)(Field, Brian) (Entered: 06/07/2026) |
| 06/07/2026 | 147 | ORDER granting 117 Motion for Preliminary Injunction. Defendants are enjoined from implementing Section 4(a) of Executive Order 14168 against Plaintiffs for the period from 6/8/2026 to 9/6/2026. Defendants shall maintain and continue Plaintiffs housing status in women's facilities, including women's prisons and women's halfway houses. See accompanying redacted memorandum opinion. Signed by Judge Royce C. Lamberth on 6/7/2026. (lcrcl1) (Entered: 06/07/2026) |
| 06/07/2026 | 148 | REDACTED MEMORANDUM OPINION re: Order 147 . Signed by Judge Royce C. Lamberth on 6/7/2026. (lcrcl1) (Entered: 06/07/2026) |
| 06/07/2026 | 149 | ORDER: The hearing set for 6/8/2026 is VACATED. It is further ORDERED: 138 Sealed Motion for Leave to File Document Under Seal is GRANTED; 139 Motion to Partially Close the Courtroom is DENIED AS MOOT; 142 Sealed Motion for Leave to File Document Under Seal is GRANTED; 144 Sealed Motion for Leave to File Document Under Seal is GRANTED; Joint proposed modifications to 148 Redacted Memorandum Opinion are due by 6/11/2026; Joint Briefing Schedule re 141 Motion to Intervene is due by 6/17/2026. See Order for more details. Signed by Judge Royce C. Lamberth on 6/7/2026. (lcrcl1) (Entered: 06/07/2026) |
| 06/07/2026 | 153 | SEALED DOCUMENT (Notice of Illustrative Aid) filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Errata)(znmw) (Entered: 06/11/2026) |
| 06/07/2026 | 154 | SEALED DOCUMENT (Notice of Illustrative Aid) filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Illustrative Aid − Amy Jones, # 2 Exhibit Illustrative Aid − Barbara Jones, # 3 Exhibit Illustrative Aid − Carla Jones, # 4 Exhibit Illustrative Aid − Emily Doe, # 5 Exhibit Illustrative Aid − Jane Jones, # 6 Exhibit Illustrative Aid − Lois Doe, # 7 Exhibit Illustrative Aid − Maria Moe, # 8 Exhibit Illustrative Aid − Mary Doe, # 9 Exhibit Illustrative Aid − Olivia Doe, # 10 Exhibit Illustrative Aid − Rachel Doe, # 11 Exhibit Illustrative Aid − Sally Doe, # 12 Exhibit Illustrative Aid − Sara Doe, # 13 Exhibit Illustrative Aid − Wendy Doe, # 14 Exhibit Illustrative Aid − Zoe Doe)(znmw) (Entered: 06/11/2026) |
| 06/08/2026 | 150 | SEALED MEMORANDUM OPINION re: Order 147 . Signed by Judge Royce C. Lamberth on June 7, 2026.(smc) (Entered: 06/08/2026) |
| 06/08/2026 | 151 | MANDATE of USCA as to 97 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III, 91 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III, 72 Notice of Appeal to DC Circuit Court, filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III, 84 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III, 104 Notice of Appeal to DC Circuit Court filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III ; USCA Case Number 25−05099, 25−05213, 25−05304, 25−05419, 26−05066. (Attachments: # 1 USCA Judgment 4/17/2026)(znmw) (Entered: 06/08/2026) |

| | | |
|---|---|---|
| 06/11/2026 | 152 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion to Seal Filings, # 2 Exhibit 1 − Proposed Redacted Filings, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 06/11/2026) |
| 06/16/2026 | 155 | ORDER granting 146 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Royce C. Lamberth on 6/15/2026. (lcrcl1) (Entered: 06/16/2026) |
| 06/17/2026 | 156 | PROPOSED BRIEFING SCHEDULE *(Joint) Regarding Intervention Pursuant to the Court's June 7, 2026 Order* by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Text of Proposed Order)(Delgado, Jennifer) (Entered: 06/17/2026) |
| 06/17/2026 | 157 | ORDER adopting 156 Briefing Schedule. Plaintiffs' and Defendants' opposition to Proposed Intervenors' Motion is due by 7/17/2026. Signed by Judge Royce C. Lamberth on 6/17/2026. (lcrcl1) (Entered: 06/17/2026) |
| 06/17/2026 | 158 | NOTICE of Appearance by John Greil on behalf of BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS (Greil, John) (Entered: 06/17/2026) |
| 06/18/2026 | 159 | ORDER granting 152 Sealed Motion for Leave to File Document Under Seal. Proposed Intervenor−Defendants shall comply with the protective orders in this litigation. The Clerk of Court shall permanently seal Proposed Intervenor−Defendants' Motion to Intervene and for Unsealing (141−1 to 141−5). Proposed Intervenor−Defendants shall file new versions of these documents on the public docket with redactions consistent with those proposed in Exhibit 1, as soon as practicable. Signed by Judge Royce C. Lamberth on 6/17/2026. (lcrcl1) (Entered: 06/18/2026) |
| 06/18/2026 | | MINUTE ORDER: In light of the parties' additional redactions to 147 Order and 148 Memorandum Opinion, which Plaintiffs provided to the Court and Defendants did not oppose, it is hereby ORDERED that the Clerk of Court seal those documents. Signed by Judge Royce C. Lamberth on 6/18/2026. (lcrcl1) (Entered: 06/18/2026) |
| 06/18/2026 | 160 | AMENDED 147 ORDER granting 117 Motion for Preliminary Injunction to include redactions provided by Plaintiffs and which Defendants did not oppose. Signed by Judge Royce C. Lamberth on 6/18/2026. (lcrcl1) (Entered: 06/18/2026) |
| 06/18/2026 | 161 | AMENDED 148 REDACTED MEMORANDUM OPINION re: ORDER 147 to include redactions provided by Plaintiffs and which Defendants did not oppose. Signed by Judge Royce C. Lamberth on 6/18/2026. (lcrcl1) (Entered: 06/18/2026) |
| 06/22/2026 | 162 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 147 Order on Motion for TRO,, Order on Motion for Preliminary Injunction, 148 Memorandum & Opinion, 160 Order, 161 Order by JAMES R. MCHENRY, III, WILLIAM LOTHROP. Fee Status: No Fee Paid. (Littman, M.) (Entered: 06/22/2026) |
| 06/23/2026 | 163 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 162 Notice of Appeal to DC Circuit Court,. (znmw) (Entered: 06/23/2026) |
| 06/24/2026 | | MINUTE ORDER: granting nunc pro tunc 48 Sealed Motion for Leave to File Document Under Seal; granting 49 Motion to Proceed Under Pseudonym; granting 53 Sealed Motion for Leave to File Document Under Seal; granting 60 Sealed Motion to Proceed Under Pseudonym. Signed by Judge Royce C. Lamberth on 6/24/2026. (lcrcl1) (Entered: 06/24/2026) |
| 06/24/2026 | | USCA Case Number 26−5238 for 162 Notice of Appeal to DC Circuit Court, filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (znmw) (Entered: 06/24/2026) |

| | | |
|---|---|---|
| 06/24/2026 | 165 | SEALED DOCUMENT (First Amended Complaint) filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, SALLY DOE, SARA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE, SOPHIA DOE. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 06/25/2026) |
| 06/24/2026 | 166 | SEALED DOCUMENT (Response) filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. re 5 Sealed Motion,. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration)(znmw) (Entered: 06/25/2026) |
| 06/25/2026 | 164 | NOTICE OF WITHDRAWAL OF APPEARANCE as to WILLIAM LOTHROP, JAMES R. MCHENRY, III. Attorney Jean Lin terminated. (Lin, Jean) (Entered: 06/25/2026) |
| 07/06/2026 | 167 | RESPONSE TO ORDER OF THE COURT re 159 Order on Sealed Motion for Leave to File Document Under Seal,, filed by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Attachments: # 1 Memorandum in Support (Redacted), # 2 Exhibit A: Declarations (Redacted), # 3 Exhibit B: Prop. Answer of Intervenor−Defs., # 4 Exhibit C: (Redacted) Prop. Opp'n to Mot. TRO & Prelim. Inj., # 5 Text of Proposed Order)(Field, Brian) (Entered: 07/06/2026) |
| 07/15/2026 | 168 | NOTICE *of Anticipated Transfer of Additional Plaintiffs to FMC Carswell, a Female Medical Center* by WILLIAM LOTHROP, JAMES R. MCHENRY, III (Littman, M.) (Entered: 07/15/2026) |
| 07/15/2026 | 169 | RESPONSE re 168 Notice (Other) *and Emergency Motion to Preserve the Status Quo Pending Plaintiffs' Forthcoming Motion to Enforce the Preliminary Injunction* filed by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Text of Proposed Order)(Hill, Eve) (Entered: 07/15/2026) |
| 07/15/2026 | 175 | MOTION to Preserve Status Quo by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (See Docket Entry 169 to view document).(znmw) (Entered: 07/17/2026) |
| 07/16/2026 | 170 | RESPONSE re 175 MOTION to Preserve Status Quo filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Littman, M.) Modified event and link on 7/17/2026 (znmw). (Entered: 07/16/2026) |
| 07/16/2026 | 171 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Notice of Anticipated Transfer)(Littman, M.) (Entered: 07/16/2026) |
| 07/16/2026 | 172 | NOTICE OF FILING REDACTED DOCUMENT − *Notice of Anticipated Transfer of Additional Plaintiffs* by WILLIAM LOTHROP, JAMES R. MCHENRY, III (Littman, M.) (Entered: 07/16/2026) |
| 07/16/2026 | | MINUTE ORDER granting 171 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Royce C. Lamberth on 7/16/2026. (lcrcl1) (Entered: 07/16/2026) |
| 07/16/2026 | 173 | MOTION for Reconsideration re 159 Order on Sealed Motion for Leave to File Document Under Seal,, by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Field, Brian) (Entered: 07/16/2026) |
| 07/16/2026 | 174 | SEALED DOCUMENT filed by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS re 173 MOTION for Reconsideration re 159 Order on Sealed Motion for Leave to File Document Under Seal,, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2, # 2 Exhibit 3)(Field, Brian) (Entered: 07/16/2026) |
| 07/16/2026 | 176 | SEALED DOCUMENT (Notice) filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 07/17/2026) |

| | | |
|---|---|---|
| 07/17/2026 | 177 | ORDER: Plaintiffs are ORDERED to inform the Court by 7/20/2026 at 10:00 AM whether the relief they seek enjoining the government from transferring transgender women to a segregated housing unit within a women's facility but separate from cisgender women, is contemplated by the existing complaint and if so, how. Signed by Judge Royce C. Lamberth on 7/17/2026. (lcrcl1) (Entered: 07/17/2026) |
| 07/17/2026 | 178 | Unopposed MOTION for Leave to File *to file Reply in Support of Motion to Intervene [ECF No. 167]* by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Attachments: # 1 Text of Proposed Order)(Field, Brian) (Entered: 07/17/2026) |
| 07/17/2026 | 179 | Memorandum in opposition to re 141 MOTION to Intervene filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Layendecker, Elizabeth) (Entered: 07/17/2026) |
| 07/17/2026 | 180 | Memorandum in opposition to re 141 MOTION to Intervene filed by EMILY DOE, ELLEN DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Attachments: # 1 Text of Proposed Order [Proposed] Order)(Delgado, Jennifer) (Entered: 07/17/2026) |
| 07/17/2026 | 181 | RESPONSE re 177 Order,, Set Deadlines, filed by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE. (Delgado, Jennifer) (Entered: 07/17/2026) |
| 07/17/2026 | 182 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Motion to File Documents under Seal, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Memorandum in Support of Motion to Enforce, # 4 Declaration of Emily Doe, # 5 Declaration of Mary Doe, # 6 Declaration of Zoe Doe, # 7 Declaration of Carla Jones, # 8 Declaration of Randi Ettner, # 9 Exhibit A to Ettner Declaration, # 10 Text of Proposed Order)(Delgado, Jennifer) (Entered: 07/17/2026) |
| 07/17/2026 | 183 | MOTION to Enforce by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support of Motion to Enforce, # 2 Declaration of Emily Doe, # 3 Declaration of Mary Doe, # 4 Declaration of Zoe Doe, # 5 Declaration of Carla Jones, # 6 Declaration of Randi Ettner, # 7 Exhibit A to Ettner Declaration, # 8 Text of Proposed Order)(Delgado, Jennifer). Added MOTION for Temporary Restraining Order, MOTION for Preliminary Injunction on 7/20/2026 (znmw). (Entered: 07/17/2026) |
| 07/19/2026 | 184 | REPLY re 181 Response to Document − *Reply to Plaintiffs' Response to the Court's July 17, 2026, Order, ECF No. 177* filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Littman, M.) (Entered: 07/19/2026) |
| 07/20/2026 | | MINUTE ORDER granting 178 Motion for Leave to File. Proposed Intervenor−Defendants' reply is due by 7/22/2026 and shall be no longer than five pages. Signed by Judge Royce C. Lamberth on 7/20/2026. (lcrcl1) (Entered: 07/20/2026) |
| 07/20/2026 | 185 | ORDER: It is hereby ORDERED that Defendants' opposition to 183 Plaintiffs' Motion to Enforce is due by 7/24/2026 at 5:00 PM EST. Plaintiffs' reply is due by 7/27/2026 at 5:00 PM EST. It is further ORDERED that a motion hearing on 141 Motion to Intervene and 183 Plaintiffs' Motion to Enforce is set for 7/29/2026 at 11:00 AM in Courtroom 15 − in person before Judge Royce C. Lamberth. Signed by Judge Royce C. Lamberth on 7/20/2026. (lcrcl1) (Entered: 07/20/2026) |
| 07/22/2026 | 186 | ORDER granting 182 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Royce C. Lamberth on 7/22/2026. (lcrcl1) (Entered: 07/22/2026) |
| 07/22/2026 | 187 | REPLY to opposition to motion re 141 Motion to Intervene, filed by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Field, Brian) (Entered: 07/22/2026) |
| 07/22/2026 | 188 | SEALED DOCUMENT (Memorandum in Support) filed by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE. re 183 Motion to Enforce, Motion for TRO, Motion for Preliminary Injunction. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Emily Doe, # 2 |

| | | |
|---|---|---|
| | | Declaration of Mary Doe, # 3 Declaration of Zoe Doe, # 4 Declaration of Carla Jones, # 5 Declaration of Randi Ettner, # 6 Exhibit A to Ettner Declaration)(znmw) (Entered: 07/23/2026) |
| 07/24/2026 | 189 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support DEFENDANTS RESPONSE TO PLAINTIFFS EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE, MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, # 2 Exhibit Stover Declaration, # 3 Exhibit Warden Declaration with Attachments, # 4 Exhibit Acting Chief Psychologist Declaration with Attachments)(Littman, M.) (Entered: 07/24/2026) |
| 07/24/2026 | 190 | RESPONSE re 183 MOTION to Enforce MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Exhibit Stover Declaration Redacted, # 2 Exhibit Warden Declaration with Attachments Redacted, # 3 Exhibit Acting Chief Psychologist Declaration with Attachments Redacted)(Littman, M.) (Entered: 07/24/2026) |
| 07/27/2026 | 191 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support of Motion to File Documents under Seal, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Memorandum in Support (Reply) of Motion to Enforce, # 4 Declaration of Mary Doe, # 5 Declaration of Alexander Shalom, # 6 Text of Proposed Order)(Delgado, Jennifer) (Entered: 07/27/2026) |
| 07/27/2026 | 192 | REPLY to opposition to motion re 182 Motion to Enforce filed by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE. (Attachments: # 1 Declaration (Supplemental) of Mary Doe, # 2 Declaration of Alexander Shalom)(Delgado, Jennifer) Modified link on 7/28/2026 (znmw). (Entered: 07/27/2026) |
| 07/27/2026 | 193 | MOTION to Partially Close Courtroom for July 29, 2026 Hearing and Seal Corresponding Sections of the Transcript by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE. (Attachments: # 1 Memorandum in Support of Motion to Partially Close Courtroom, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 07/27/2026) |
| 07/28/2026 | 194 | ORDER attached granting 193 Motion to Partially Close the Courtroom on July 29, 2026, and Seal Corresponding Sections of the Transcript. Signed by Judge Royce C. Lamberth on July 28, 2026. (lcrcl2) (Entered: 07/28/2026) |
| 07/28/2026 | 197 | SEALED OPPOSITION filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III re 183 Motion to Enforce, Motion for TRO, Motion for Preliminary Injunction (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration)(znmw) (Entered: 07/30/2026) |
| 07/28/2026 | 198 | SEALED REPLY TO OPPOSITION filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE re 183 Motion to Enforce, Motion for TRO, Motion for Preliminary Injunction (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Declaration)(znmw) (Entered: 07/30/2026) |
| 07/29/2026 | | Minute Entry for Motion Hearing held on 7/29/2026 before Judge Royce C. Lamberth: re 183 MOTION to Enforce and 141 MOTION to Intervene. Oral arguments heard and TAKEN UNDER ADVISEMENT. Plaintiff to submit proposed order within 5 days. Parties to submit proposed scheduling order for trial. Court Reporter: Sonja Reeves. (smc) (Entered: 07/29/2026) |
| 07/30/2026 | 199 | TRANSCRIPT OF MOTION HEARING before Judge Royce C. Lamberth held on July 29, 2026; Page Numbers: 1−52. Court Reporter Sonja L. Reeves, RDR, CRR, Telephone number (202) 354−3246, Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/20/2026. Redacted Transcript Deadline set for 8/30/2026. Release of Transcript Restriction set for 10/28/2026.(Reeves, Sonja) (Entered: 07/30/2026) |
| 07/31/2026 | 200 | Memorandum in opposition to re 173 MOTION for Reconsideration re 159 Order on Sealed Motion for Leave to File Document Under Seal,, filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (Delgado, Jennifer) (Entered: 07/31/2026) |
| 07/31/2026 | 201 | SEALED MOTION FOR LEAVE TO FILED DOCUMENT UNDER SEAL filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE (Attachments: # 1 Memorandum in Support of Plaintiffs' Unopposed Motion to Seal Filings, # 2 Exhibit 1 to Motion, # 3 Text of Proposed Order)(Delgado, Jennifer) Modified event on 8/3/2026 (znmw). (Entered: 07/31/2026) |
| 08/04/2026 | 202 | ORDER attached directing the Clerk of Court to docket under seal the plaintiffs' in camera submission titled [Proposed] Findings of Fact and Law in Support of Order Granting Plaintiffs' Motion to Enforce the Court's June 7, 2026, Preliminary Injunction or, in the Alternative, Motion for a TRO and Preliminary Injunction. In addition, it is ORDERED that the defendants shall file under seal any opposition on or before 5:00pm on August 7, 2026. Signed by Judge Royce C. Lamberth on August 4, 2026. (lcrcl2) (Entered: 08/04/2026) |
| 08/04/2026 | 203 | SEALED DOCUMENT (Proposed Findings of Fact) filed by EMILY DOE, JANE DOE, LOIS DOE, MARY DOE, OLIVIA DOE, RACHEL DOE, SALLY DOE, SARA DOE, SOPHIA DOE, SUSAN DOE, TORI DOE, WENDY DOE, ZOE DOE. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 08/04/2026) |
| 08/04/2026 | 204 | NOTICE of Appearance by Robert Bombard on behalf of All Defendants (Bombard, Robert) (Entered: 08/04/2026) |
| 08/04/2026 | 205 | MOTION for Extension of Time to *respond to Plaintiffs proposed findings of fact and law* by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Attachments: # 1 Exhibit Transcript of Motion Hearing, # 2 Text of Proposed Order)(Bombard, Robert) (Entered: 08/04/2026) |
| 08/04/2026 | 206 | Memorandum in opposition to re 205 MOTION for Extension of Time to *respond to Plaintiffs proposed findings of fact and law* filed by EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE. (Whelan, Amy) (Entered: 08/04/2026) |
| 08/05/2026 | 207 | REPLY to opposition to motion re 205 Motion for Extension of Time to *respond to Plaintiffs' proposed findings of fact and law* filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Bombard, Robert) (Entered: 08/05/2026) |
| 08/05/2026 | 208 | ORDER granting in part and denying in part 205 Motion for Extension of Time to Respond to Plaintiffs' Proposed Findings of Fact and Law. Response due by 8/10/2026 at 5:00 p.m.Signed by Judge Royce C. Lamberth on 8−5−2026. (lcrcl1) (Entered: 08/05/2026) |
| 08/06/2026 | 209 | REPLY to opposition to motion re 173 Motion for Reconsideration, filed by BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, KEISHA WILLIAMS. (Field, Brian) (Entered: 08/06/2026) |

| | | |
|---|---|---|
| 08/10/2026 | 210 | SEALED DOCUMENT filed by WILLIAM LOTHROP, JAMES R. MCHENRY, III re 203 Sealed Document, (This document is SEALED and only available to authorized persons.)(Layendecker, Elizabeth) (Entered: 08/10/2026) |
| 08/10/2026 | 211 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: MARRISSA HUNT − Request to Join as Plaintiff. Reason(s): Filer is not a party to the case. (znmw) (Entered: 08/12/2026) |
| 08/12/2026 | 212 | REDACTED MEMORANDUM ORDER attached finding as moot 175 Motion to Preserve Status Quo and denying 183 Motion to Enforce Preliminary Injunction, or in the Alternative, Motion for Temporary Restraining Order and Preliminary Injunction. Signed by Judge Royce C. Lamberth on 8/12/2026. (lcrcl1) (Entered: 08/12/2026) |
| 08/12/2026 | 213 | SEALED MEMORANDUM ORDER (This document is SEALED and only available to authorized persons.): Re: 212 Redacted Memorandum Order. Signed by Judge Royce C. Lamberth on August 12, 2026.(smc) (Entered: 08/12/2026) |

CONSOL,PSEUDO−GR,STAYED,TYPE−E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:25−cv−00401−RCL

JONES v. TRUMP et al
Assigned to: Judge Royce C. Lamberth
Lead case: 1:25−cv−00286−RCL
Member case: (View Member Case)
Related Case: 1:25−cv−00286−RCL
Case in other court: USCA, 25−05101
USCA, 25−05210
USCA, 25−05306
USCA, 25−05420
USCA, 26−05069
Cause: 28:1331 Fed. Question: Violation 5th & 8th Amendme

Date Filed: 02/10/2025
Jury Demand: None
Nature of Suit: 550 Prisoner Petition: Civil Rights (Other)
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**JANE JONES**

represented by

**Alexander Shalom**
LOWENSTEIN SANDLER
1 Lowenstein Drive
Roseland, NJ 07068
862−926−2029
Email: ashalom@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Markiana Julceus**
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
973−597−2500
Email: mjulceus@lowenstein.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
973−597−2500
Email: nkraner@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne Fang**
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
973−597−2500
Email: wfang@lowenstein.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811

415−365−1338
Email: awhelan@nclrights.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415−365−1320
Email: cstoll@nclrights.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street
Suite 950
Boston, MA 02108
617−426−1350
Email: jlevi@gladlaw.org
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
617−426−1350
Email: saustin@gladlaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(646) 414−6962
Email: jdelgado@lowenstein.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AMY JONES** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Markiana Julceus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne Fang**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DONNA JONES** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Markiana Julceus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne Fang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CARLA JONES** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Markiana Julceus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne Fang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BARBARA JONES** represented by **Alexander Shalom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Markiana Julceus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne Fang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the United States*
*TERMINATED: 02/28/2025*

represented by

**Alexander James Yun**
U.S. Department of Justice
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202−305−8645
Email: Alex.Yun@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
JACOBSON LAWYERS GROUP
5100 Wisconsin Ave., Suite 310
Washington, DC 20016
301−578−5071
Email: john@jacobsonlawyersgroup.com
*TERMINATED: 04/04/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW
Washington, DC 20005
771−217−8107

Email: elizabeth.b.layendecker@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAMES R. MCHENRY, III**
*in his official capacity as Acting Attorney General of the United States*

represented by

**Alexander James Yun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*TERMINATED: 04/04/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
DOJ−CIV
1100 L Street NW
Washington, DC 20005
202−451−7478
Email: jared.littman2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM LOTHROP**
*in his official capacity as Acting Director of the Federal Bureau of Prisons*

represented by

**Alexander James Yun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*TERMINATED: 04/04/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**

represented by

**Alexander James Yun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*TERMINATED: 04/04/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/10/2025 | 1 | COMPLAINT *(REDACTED)* against All Defendants ( Filing fee $ 405 receipt number ADCDC−11470734) filed by JANE JONES. (Attachments: # 1 Civil Cover Sheet)(Delgado, Jennifer) (Entered: 02/10/2025) |
| 02/10/2025 | 2 | NOTICE OF RELATED CASE by JANE JONES. Case related to Case No. 1:25−cv−286 and Moe v Trump, 1:25−cv−10195 (D. Mass). (Delgado, Jennifer) (Main Document 2 replaced on 2/11/2025) (znmw). (Entered: 02/10/2025) |
| 02/11/2025 | 3 | SEALED MOTION for Leave to Proceed Under Pseudonym *Proceed Under Pseudonym, Seal Documents, and for a Protective Order* by JANE JONES. (Delgado, Jennifer) Modified event on 2/11/2025 (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | 4 | MEMORANDUM re 3 MOTION for Leave to Proceed Under Pseudonym , *Proceed Under Pseudonym and for a Protective Order* filed by JANE JONES by JANE JONES. (Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/11/2025 | 5 | DECLARATION *of Jennifer Fiorica Delgado (REDACTED)* by JANE JONES re 3 MOTION for Leave to Proceed Under Pseudonym , *Proceed Under Pseudonym and for a Protective Order*. (Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/11/2025 | 6 | DECLARATION *of Jane Jones (REDACTED)* by JANE JONES re 3 MOTION for Leave to Proceed Under Pseudonym , *Proceed Under Pseudonym and for a Protective Order*. (Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/11/2025 | 7 | DECLARATION *of Lauren B. Meade M.D. and Curriculum Vitae* by JANE JONES re 3 MOTION for Leave to Proceed Under Pseudonym , *Proceed Under Pseudonym and for a Protective Order*. (Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/11/2025 | 8 | NOTICE of Proposed Order by JANE JONES re 3 MOTION for Leave to Proceed Under Pseudonym , *Proceed Under Pseudonym and for a Protective Order* (Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/11/2025 | | NOTICE OF NEW CASE ERROR regarding 1 Complaint. The following error(s) need correction: Incorrect civil cover sheet. Please file the Civil Cover Sheet (JS44) form at www.dcd.uscourts.gov/new−case−forms & file using the event Civil Cover Sheet. For future filings, all parts of a motion must be uploaded to one motion docket entry, not filed separately. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (znmw) (Entered: 02/11/2025) |
| 02/11/2025 | 9 | CIVIL COVER SHEET by JANE JONES filed by JANE JONES.(Delgado, Jennifer) (Main Document 9 replaced on 2/11/2025) (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | 10 | WITHDRAWN PURSUANT TO NOTICE FILED 2/14/2025..... MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jennifer L. Levi, Filing fee $ 100, receipt number ADCDC−11473108. Fee Status: Fee Paid. by JANE JONES. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Delgado, Jennifer) Modified on 2/14/2025 (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Markiana J. Julceus, Filing fee $ 100, receipt number ADCDC−11473201. Fee Status: Fee Paid. by JANE JONES. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/11/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Wayne Fang, Filing fee $ 100, receipt number ADCDC−11473211. Fee Status: Fee Paid. by JANE JONES. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 02/11/2025) |
| 02/13/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Sarah K. Austin, Filing fee $ 100, receipt number ADCDC−11479751. Fee Status: Fee Paid. by JANE JONES. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of |

| | | |
|---|---|---|
| | | Proposed Order)(Delgado, Jennifer) (Entered: 02/13/2025) |
| 02/13/2025 | 14 | MEMORANDUM OPINION AND ORDER: The Court accordingly ORDERS that: 1) Plaintiff's 3 Motion to Proceed Under Pseudonym, Partially Seal Documents, and for a Protective Order is GRANTED; 2) All parties shall use the pseudonym listed in the Complaint and redact information that would identify Plaintiff in all documents filed in this action; 3) Defendants shall not disclose Plaintiff's identity to any third party unless such disclosure is necessary to defend against this action; 4) Plaintiff's 1 redacted Complaint shall remain on the public docket; and 5) Within five days of this Order, Plaintiff shall file on the public docket: a) An unredacted version of her Complaint, filed under seal; and b) A declaration containing her real name and residential address, filed under seal. Signed by Chief Judge James E. Boasberg on 2/13/2025. (lcjeb4) (Entered: 02/13/2025) |
| 02/14/2025 | 15 | ENTERED IN ERROR....NOTICE OF WITHDRAWAL OF MOTION by JANE JONES re 10 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jennifer L. Levi, Filing fee $ 100, receipt number ADCDC−11473108. Fee Status: Fee Paid. (Delgado, Jennifer) Modified on 2/18/2025 (zdp). (Entered: 02/14/2025) |
| 02/14/2025 | | Case Assigned to Judge Royce C. Lamberth. (znmw) (Entered: 02/14/2025) |
| 02/14/2025 | | NOTICE OF NEW CASE ERROR regarding 1 Complaint. The following error(s) need correction: Missing summonses− U.S. government. When naming a U.S. government agent or agency as a defendant, you must supply a summons for each defendant & two additional summonses for the U.S. Attorney & U.S. Attorney General. Please submit using the event Request for Summons to Issue. (znmw) (Entered: 02/14/2025) |
| 02/18/2025 | | NOTICE OF ERROR regarding 15 Notice of Withdrawal of Motion. The following error(s) need correction: Incorrect format (Letter)− correspondence is not permitted (LCvR 5.1(a)). Please refile. (zdp) (Entered: 02/18/2025) |
| 02/18/2025 | 16 | REQUEST FOR SUMMONS TO ISSUE filed by JANE JONES. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons)(Delgado, Jennifer) (Entered: 02/18/2025) |
| 02/18/2025 | 17 | NOTICE OF WITHDRAWAL OF MOTION by JANE JONES (Delgado, Jennifer) (Entered: 02/18/2025) |
| 02/18/2025 | 18 | SEALED DOCUMENT filed by JANE JONES re 14 Order,,,, Memorandum & Opinion,,, (This document is SEALED and only available to authorized persons.)(Delgado, Jennifer) (Entered: 02/18/2025) |
| 02/18/2025 | 19 | SEALED DOCUMENT filed by JANE JONES re 14 Order,,,, Memorandum & Opinion,,, (This document is SEALED and only available to authorized persons.)(Delgado, Jennifer) (Entered: 02/18/2025) |
| 02/20/2025 | 20 | SUMMONS (4) Issued Electronically as to WILLIAM LOTHROP, JAMES R. MCHENRY, III, DONALD J. TRUMP, AND U.S. Attorney (zdp) (Entered: 02/20/2025) |
| 02/21/2025 | 21 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by JANE JONES. (Attachments: # 1 Memorandum in Support (REDACTED), # 2 Declaration of Jennifer Fiorica Delgado (REDACTED), # 3 Declaration of Jane Jones (REDACTED), # 4 Declaration of Lauren B Meade M.D. and Curriculum Vitae, # 5 Text of Proposed Order)(Delgado, Jennifer) (Entered: 02/21/2025) |
| 02/21/2025 | 22 | SEALED DOCUMENT filed by JANE JONES(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Jennifer Fiorica Delgado, # 2 Declaration of Jane Jones)(Delgado, Jennifer) (Entered: 02/21/2025) |
| 02/21/2025 | 23 | DECLARATION *of Jennifer Fiorica Delgado (Supplemental)* by JANE JONES re 21 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction . (Attachments: # 1 Exhibit A − Email exchange (REDACTED))(Delgado, Jennifer) (Entered: 02/21/2025) |
| 02/22/2025 | 24 | Memorandum in opposition to re 21 Motion for TRO,, Motion for Preliminary Injunction, *(Redacted)* filed by DONALD J. TRUMP, JAMES R. MCHENRY, III, WILLIAM LOTHROP. (Attachments: # 1 Declaration of Rick Stover, # 2 Text of |

| | | |
|---|---|---|
| | | Proposed Order)(Robinson, John) (Entered: 02/22/2025) |
| 02/22/2025 | 25 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DONALD J. TRUMP, JAMES R. MCHENRY, III, WILLIAM LOTHROP (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Defendants' Response to Plaintiff's Motion for TRO, # 2 Declaration of Rick Stover, # 3 Text of Proposed Order)(Robinson, John) (Entered: 02/22/2025) |
| 02/24/2025 | 26 | REPLY to opposition to motion re 21 Motion for TRO,, Motion for Preliminary Injunction, *(REDACTED)* filed by JANE JONES. (Attachments: # 1 Declaration of Lauren Meade, M.D. (Supplemental) (REDACTED), # 2 Exhibit A − 2020 Article, # 3 Exhibit B − 2022 Study)(Delgado, Jennifer) (Entered: 02/24/2025) |
| 02/24/2025 | 27 | ENTERED IN ERROR.....SEALED REPLY TO OPPOSITION filed by JANE JONES re 21 Motion for TRO,, Motion for Preliminary Injunction, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Lauren Meade, M.D. (Supplemental), # 2 Exhibit A, # 3 Exhibit B)(Delgado, Jennifer) Modified on 2/25/2025 (zdp). (Entered: 02/24/2025) |
| 02/24/2025 | 28 | ORDER granting 21 Motion for TRO and Preliminary Injunction: It is hereby ORDERED that the plaintiff's Motion is GRANTED; and it is further ORDERED that the defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against Plaintiff Jane Jones, pending further Order of this Court; and it is further ORDERED that, pending further Order of this Court, the defendants shall maintain and continue the plaintiff's housing status and medical care as they existed immediately prior to January 20, 2025. Signed by Judge Royce C. Lamberth on 2/24/2025. (lcrcl3) (Entered: 02/24/2025) |
| 02/24/2025 | 29 | ORDER granting 13 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 2/24/2025. (lcrcl3) (Entered: 02/24/2025) |
| 02/24/2025 | 30 | ORDER granting 11 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 2/24/2025. (lcrcl3) (Entered: 02/24/2025) |
| 02/24/2025 | 31 | ORDER granting 12 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 2/24/2025. (lcrcl3) (Entered: 02/24/2025) |
| 02/25/2025 | | NOTICE OF ERROR regarding 27 Sealed Reply,. The following error(s) need correction: Incorrect court case number. Please refile. (zdp) (Entered: 02/25/2025) |
| 02/25/2025 | 32 | Amended MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jennifer L. Levi, Filing fee $ 100, receipt number ADCDC−11502692. Fee Status: Fee Paid. by JANE JONES. (Attachments: # 1 Declaration, # 2 Supplement Statement, # 3 Exhibit Certificate of Good Standing, # 4 Text of Proposed Order)(Delgado, Jennifer) (Entered: 02/25/2025) |
| 02/25/2025 | 33 | SEALED REPLY TO OPPOSITION filed by JANE JONES re 21 Motion for TRO,, Motion for Preliminary Injunction, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Lauren Meade, M.D. (Supplemental), # 2 Exhibit A, # 3 Exhibit B)(Delgado, Jennifer) (Entered: 02/25/2025) |
| 02/26/2025 | 34 | ORDER granting 32 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 2/26/2025. (lcrcl3) (Entered: 02/26/2025) |
| 02/28/2025 | 35 | AMENDED COMPLAINT against All Defendants filed by JANE JONES, AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES.(Delgado, Jennifer) (Entered: 02/28/2025) |

| | | |
|---|---|---|
| 02/28/2025 | 36 | SEALED DOCUMENT filed by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES(This document is SEALED and only available to authorized persons.)(Delgado, Jennifer) (Entered: 02/28/2025) |
| 02/28/2025 | 37 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES. (Attachments: # 1 Memorandum in Support (REDACTED), # 2 Declaration of Jennifer Fiorica Delgado, # 3 Declaration of Amy Jones (REDACTED), # 4 Declaration of of Barbara Jones (REDACTED), # 5 Declaration of Carla Jones (REDACTED), # 6 Declaration of Donna Jones (REDACTED), # 7 Text of Proposed Order)(Delgado, Jennifer) (Entered: 02/28/2025) |
| 02/28/2025 | 38 | ENTERED IN ERROR.....SEALED MOTION filed by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES (Attachments: # 1 Declaration of Amy Jones, # 2 Declaration of Barbara Jones, # 3 Declaration of Carla Jones, # 4 Declaration of Donna Jones)(Delgado, Jennifer) Modified on 3/6/2025 (zdp). (Entered: 02/28/2025) |
| 02/28/2025 | 39 | MOTION to Proceed Under Pseudonym, Seal Documents, and for a Protective Order by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Declaration of Amy Jones (REDACTED), # 4 Declaration of Barbara Jones (REDACTED), # 5 Declaration of Carla Jones (REDACTED), # 6 Declaration of Donna Jones (REDACTED), # 7 Text of Proposed Order)(Delgado, Jennifer) (Entered: 02/28/2025) |
| 02/28/2025 | 40 | SEALED DOCUMENT filed by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Barbara Jones, # 2 Declaration of Carla Jones, # 3 Declaration of Donna Jones)(Delgado, Jennifer) (Entered: 02/28/2025) |
| 02/28/2025 | 41 | NOTICE of Appearance by Sarah K. Austin on behalf of AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES (Austin, Sarah) (Entered: 02/28/2025) |
| 02/28/2025 | 48 | SEALED DOCUMENT filed by JAMES R. MCHENRY, III, WILLIAM LOTHROP. re 25 Sealed Motion for Leave to File Document Under Seal,. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration)(zdp) (Entered: 03/06/2025) |
| 03/01/2025 | 42 | RESPONSE re 37 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by PAMELA BONDI, WILLIAM LOTHROP. (Attachments: # 1 Exhibit 1 Declaration of Rick Stover (redacted), # 2 Exhibit 2 BOP Memorandum, # 3 Text of Proposed Order)(Robinson, John) (Entered: 03/01/2025) |
| 03/01/2025 | 43 | SEALED DOCUMENT filed by PAMELA BONDI, WILLIAM LOTHROP re 42 Response to motion, (This document is SEALED and only available to authorized persons.)(Robinson, John) (Entered: 03/01/2025) |
| 03/01/2025 | 44 | ENTERED IN ERROR.....REPLY to opposition to motion re 37 Motion for TRO,, Motion for Preliminary Injunction, filed by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES. (Delgado, Jennifer) Modified on 3/6/2025 (zdp). (Entered: 03/01/2025) |
| 03/03/2025 | 46 | ORDER granting 37 Motion for TRO and Preliminary Injunction: It is hereby ORDERED that the plaintiffs' Motion is GRANTED; and it is further ORDERED that the defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against Plaintiffs Amy, Barbara, Carla, and Donna Jones, pending further Order of this Court; and it is further ORDERED that, pending further Order of this Court, the defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025. Signed by Judge Royce C. Lamberth on 3/3/2025. (lcrcl3) (Entered: 03/03/2025) |
| 03/04/2025 | 47 | ORDER granting 39 Motion to proceed under pseudonyms, to partially seal documents, and for a protective order. See Order for details. Signed by Judge Royce C. Lamberth on 3/3/3035. (lcrcl3) (Entered: 03/04/2025) |

| | | |
|---|---|---|
| 03/06/2025 | | NOTICE OF ERROR regarding 44 Reply to opposition to Motion, 38 SEALED MOTION filed by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES. The following error(s) need correction: Incorrect format (Letter)− correspondence is not permitted (LCvR 5.1(a)). Please refile. (zdp) (Entered: 03/06/2025) |
| 03/06/2025 | 49 | NOTICE of Appearance by Markiana Julceus on behalf of All Plaintiffs (Julceus, Markiana) (Entered: 03/06/2025) |
| 03/06/2025 | 50 | NOTICE of Appearance by Wayne Fang on behalf of All Plaintiffs (Fang, Wayne) (Entered: 03/06/2025) |
| 03/12/2025 | 52 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Amy Whelan, Filing fee $ 100, receipt number ADCDC−11538044. Fee Status: Fee Paid. by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 03/12/2025) |
| 03/12/2025 | 53 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Christopher Stoll, Filing fee $ 100, receipt number ADCDC−11538048. Fee Status: Fee Paid. by AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Delgado, Jennifer) (Entered: 03/12/2025) |
| 03/14/2025 | 54 | ORDER granting 53 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 3/13/2025. (lcrcl3) Modified to correct date signed on 3/17/2025 (smc). (Entered: 03/14/2025) |
| 03/14/2025 | 55 | ORDER granting 52 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 3/13/2025. (lcrcl3) Modified to correct date signed on 3/17/2025 (smc). (Entered: 03/14/2025) |
| 03/19/2025 | 56 | NOTICE of Appearance by Jennifer Levi on behalf of AMY JONES, DONNA JONES, CARLA JONES, BARBARA JONES, JANE JONES (Levi, Jennifer) (Entered: 03/19/2025) |
| 03/19/2025 | 57 | NOTICE of Appearance by Amy Whelan on behalf of All Plaintiffs (Whelan, Amy) (Entered: 03/19/2025) |
| 03/19/2025 | 58 | NOTICE of Appearance by Christopher F. Stoll on behalf of All Plaintiffs (Stoll, Christopher) (Entered: 03/19/2025) |
| 03/31/2025 | 59 | NOTICE of Appearance by Elizabeth Brooke Layendecker on behalf of All Defendants (Layendecker, Elizabeth) (Main Document 59 replaced on 4/1/2025) (zdp). (Entered: 03/31/2025) |
| 04/01/2025 | 60 | NOTICE of Appearance by Alexander James Yun on behalf of All Defendants (Yun, Alexander) (Main Document 60 replaced on 4/1/2025) (zdp). (Entered: 04/01/2025) |
| 04/02/2025 | 61 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 28 Order on Motion for TRO,,, Order on Motion for Preliminary Injunction,, 46 Order on Motion for TRO,,, Order on Motion for Preliminary Injunction,, by PAMELA J. BONDI, WILLIAM LOTHROP. Fee Status: No Fee Paid. Parties have been notified. (Layendecker, Elizabeth) Modified event on 8/22/2025 (znmw). (Entered: 04/02/2025) |
| 04/02/2025 | 62 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 61 Notice of Appeal to DC Circuit Court,. (zdp) (Entered: 04/02/2025) |
| 04/03/2025 | | USCA Case Number 25−5101 for 61 Notice of Appeal to DC Circuit Court, filed by PAMELA J. BONDI, WILLIAM LOTHROP. (zdp) (Entered: 04/04/2025) |
| 04/04/2025 | 63 | NOTICE OF WITHDRAWAL OF APPEARANCE as to PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III. Attorney John Robinson terminated. (Robinson, John) (Entered: 04/04/2025) |

| | | |
|---|---|---|
| 04/14/2025 | 64 | NOTICE of Appearance by Alexander Shalom on behalf of All Plaintiffs (Shalom, Alexander) (Entered: 04/14/2025) |
| 04/30/2025 | 65 | Consent MOTION to Stay by PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 04/30/2025) |
| 05/08/2025 | 66 | NOTICE of Appearance by Natalie J. Kraner on behalf of All Plaintiffs (Kraner, Natalie) (Entered: 05/08/2025) |
| 05/13/2025 | 67 | ORDER: Upon consideration of the consent Motion 65 to Stay Proceedings, and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that all proceedings in this case are STAYED until August 30, 2025, except as to any motions to extend or renew the preliminary injunctions, any issue that may arise from compliance with those preliminary injunctions, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues. Signed by Judge Royce C. Lamberth on 05/12/2025. (lcrcl2) (Entered: 05/13/2025) |
| 05/16/2025 | 68 | Unopposed MOTION for Preliminary Injunction *(Renewed)* by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/16/2025) |
| 05/22/2025 | 69 | ORDER: Upon consideration of the unopposed Motion 68 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs from May 25, 2025 to August 23, 2025; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 05/22/2025. (lcrcl2) (Entered: 05/22/2025) |
| 06/04/2025 | 70 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 69 Order on Motion for Preliminary Injunction,, by JAMES R. MCHENRY, III, DONALD J. TRUMP, WILLIAM LOTHROP, PAMELA J. BONDI. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) Modified event on 8/22/2025 (znmw). (Entered: 06/04/2025) |
| 06/04/2025 | 71 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 70 Notice of Appeal to DC Circuit Court. (zdp) (Entered: 06/04/2025) |
| 06/05/2025 | | USCA Case Number 25−5210 for 70 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III. (zdp) (Entered: 06/05/2025) |
| 06/27/2025 | 72 | NOTICE of Appearance by M. Jared Littman on behalf of All Defendants (Littman, M.) (Main Document 72 replaced on 7/1/2025) (zdp). (Entered: 06/27/2025) |
| 08/18/2025 | 73 | Unopposed MOTION for Preliminary Injunction *(Renewed)* by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Jennifer Fiorica Delgado, # 3 Exhibit A, # 4 Text of Proposed Order)(Delgado, Jennifer) (Entered: 08/18/2025) |
| 08/19/2025 | 74 | Consent MOTION to Stay *Proceedings* by PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 08/19/2025) |
| 08/20/2025 | 75 | ORDER: Upon consideration of the unopposed Motion 73 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs from August 23, 2025 to November 21, 2025; and it is further ORDERED that, during |

| | | |
|---|---|---|
| | | that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 08/20/2025. (lcrcl1) (Entered: 08/20/2025) |
| 08/20/2025 | 76 | ORDER granting 74 Motion to Stay. All proceedings in this case are STAYED until November 21, 2025, except as stated herein. Signed by Judge Royce C. Lamberth on 08/20/2025. (lcrcl1) (Entered: 08/20/2025) |
| 08/21/2025 | 77 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 75 Order,, by JAMES R. MCHENRY, III, DONALD J. TRUMP, WILLIAM LOTHROP, PAMELA J. BONDI. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) Modified event on 8/22/2025 (znmw). (Entered: 08/21/2025) |
| 08/22/2025 | 78 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 77 Notice of Appeal to DC Circuit Court,. (znmw) (Entered: 08/22/2025) |
| 08/25/2025 | | USCA Case Number 25−5306 for 77 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III. (mg) (Entered: 08/25/2025) |
| 11/13/2025 | 79 | Unopposed MOTION for Preliminary Injunction *(New)* by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES. (Attachments: # 1 Memorandum in Support (redacted), # 2 Declaration of Alexander Shalom, Esq., # 3 Exhibit A to Declaration of Alexander Shalom, Esq., # 4 Text of Proposed Order)(Delgado, Jennifer) (Entered: 11/13/2025) |
| 11/13/2025 | 80 | SEALED DOCUMENT filed by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES re 79 Unopposed MOTION for Preliminary Injunction *(New)* (This document is SEALED and only available to authorized persons.)(Delgado, Jennifer) (Entered: 11/13/2025) |
| 11/17/2025 | 81 | ORDER: Upon consideration of the unopposed Motion 79 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs from November 21, 2025 to February 19, 2026; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 11/17/2025. (lcrcl1) (Entered: 11/17/2025) |
| 11/19/2025 | 82 | Consent MOTION to Stay *Proceedings* by PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 11/19/2025) |
| 11/20/2025 | 83 | ORDER granting 82 Motion to Stay. All proceedings in this case are STAYED until February 19, 2026, except as stated herein. Signed by Judge Royce C. Lamberth on 11/20/2025. (lcrcl1) (Entered: 11/20/2025) |
| 11/21/2025 | 84 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 81 Order on Motion for Preliminary Injunction,, by JAMES R. MCHENRY, III, DONALD J. TRUMP, WILLIAM LOTHROP, PAMELA J. BONDI. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) (Entered: 11/21/2025) |
| 11/21/2025 | 85 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 84 Notice of Appeal to DC Circuit Court. (mg) (Entered: 11/21/2025) |
| 11/26/2025 | | USCA Case Number 25−5420 for 84 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III. (znmw) (Entered: 12/01/2025) |
| 02/02/2026 | 86 | Unopposed MOTION for Preliminary Injunction *(New)* by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Memorandum in Support (redacted), # 2 Declaration of Alexander Shalom, Esq., # 3 Exhibit A to Declaration of Alexander Shalom, Esq., # 4 Text of Proposed Order)(Shalom, Alexander) (Entered: 02/02/2026) |
| 02/02/2026 | 87 | SEALED DOCUMENT filed by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES re 86 Unopposed MOTION for Preliminary Injunction *(New)* (This document is SEALED and only available to authorized persons.)(Shalom, Alexander) (Entered: 02/02/2026) |
| 02/12/2026 | 88 | ORDER granting 86 Motion for Preliminary Injunction. It is ORDERED that Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against any plaintiff in this action for the period of February 19, 2026 to May 20, 2026. See Order for more details. Signed by Judge Royce C. Lamberth on 2/12/2026. (lcrcl1) (Entered: 02/12/2026) |
| 02/13/2026 | 89 | Consent MOTION to Stay by PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 02/13/2026) |
| 02/18/2026 | 90 | ORDER granting 89 Motion to Stay. All proceedings in this case are stayed until May 20, 2026 except as to any motions to extend or renew the preliminary injunctions, any issue that may arise from compliance with those preliminary injunctions, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues. Either Plaintiffs or Defendants may move to life the stay at any time. Signed by Judge Royce C. Lamberth on 2/18/2026. (lcrcl1) (Entered: 02/18/2026) |
| 02/23/2026 | 91 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 88 Order on Motion for Preliminary Injunction, by JAMES R. MCHENRY, III, DONALD J. TRUMP, WILLIAM LOTHROP, PAMELA J. BONDI. Fee Status: No Fee Paid. (Yun, Alexander) (Entered: 02/23/2026) |
| 02/23/2026 | 92 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 91 Notice of Appeal to DC Circuit Court. (zjm) (Entered: 02/23/2026) |
| 02/26/2026 | | USCA Case Number 26−5069 for 91 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III. (znmw) (Entered: 02/26/2026) |
| 05/12/2026 | 93 | MOTION for Leave to File Excess Pages *in Memorandum of Law in Support of Omnibus Motion for Temporary Restraining Order and a Preliminary Injunction* by AMY JONES, BARBARA JONES, CARLA JONES, DONNA JONES, JANE JONES. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/12/2026) |
| 05/13/2026 | 94 | RESPONSE re 93 MOTION for Leave to File Excess Pages *in Memorandum of Law in Support of Omnibus Motion for Temporary Restraining Order and a Preliminary Injunction* filed by PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III. (Littman, M.) (Entered: 05/13/2026) |
| 05/13/2026 | | Cases Consolidated. This case has been consolidated with case 25cv286 RCL. From this date forward, all pleadings shall be filed ONLY in the lead case, 25cv286 RCL. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (znmw) (Entered: 05/21/2026) |
| 06/08/2026 | 95 | MANDATE of USCA as to 84 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, 77 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, 61 Notice of Appeal to DC Circuit Court, filed by PAMELA J. BONDI, WILLIAM LOTHROP, 70 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III, 91 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, JAMES R. MCHENRY, III ; USCA Case Number 25−05101, 25−05210, 25−05306, 25−05420, 26−05069. (Attachments: # 1 USCA Judgment |

| | | |
|---|---|---|
| | | 4/17/2026)(znmw) (Entered: 06/08/2026) |

CONSOL,PSEUDO−GR,STAYED,TYPE−E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:25−cv−00653−RCL

MOE v. TRUMP et al
Assigned to: Judge Royce C. Lamberth
Related Case: 1:25−cv−00286−RCL
Case in other court: USCA, 25−05108
USCA, 25−05215
USCA, 25−05305
USCA, 25−05427
USCA, 26−05067
Cause: 28:1331 Fed. Question: Violation 5th & 8th Amendme

Date Filed: 03/06/2025
Jury Demand: None
Nature of Suit: 550 Prisoner Petition: Civil Rights (Other)
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**MARIA MOE**

represented by

**Alexander Shalom**
LOWENSTEIN SANDLER
1 Lowenstein Drive
Roseland, NJ 07068
862−926−2029
Email: ashalom@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Fiorica Delgado**
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(646) 414−6962
Email: jdelgado@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Levi**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street
Suite 950
Boston, MA 02108
617−426−1350
Email: jlevi@gladlaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie J. Kraner**
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
973−597−2500
Email: nkraner@lowenstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy E. Whelan**
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415−365−1338
Email: awhelan@nclrights.org

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher F. Stoll**
NATIONAL CENTER FOR LESBIAN RIGHTS
1401 21st St.
Ste #11548
Sacramento, CA 95811
415−365−1320
Email: cstoll@nclrights.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah K. Austin**
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
617−426−1350
Email: saustin@gladlaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the United States*

represented by **Alexander James Yun**
U.S. Department of Justice
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202−305−8645
Email: Alex.Yun@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
771−217−8107
Email: elizabeth.b.layendecker@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
DOJ−CIV
1100 L Street NW
Washington, DC 20005
202−451−7478
Email: jared.littman2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**
*in her official capacity as Attorney General of the United States*

represented by **Alexander James Yun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM LOTHROP**
*in his official capacity as Acting Director of the Federal Bureau of Prisons*

represented by **Alexander James Yun**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Brooke Layendecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**M. Jared Littman**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/26/2025 | 1 | COMPLAINT (Redacted) against All Defendants, filed by Maria Moe. (Attachments: # 1 Civil Cover Sheet)(BAH) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] (Entered: 01/26/2025) |
| 01/26/2025 | 2 | ELECTRONIC NOTICE of Case Assignment. Judge George A. OToole, Jr assigned to case. (BAH) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/26/2025) |
| 01/26/2025 | 5 | MOTION to File under Seal, MOTION Proceed under Pseudonym, and MOTION for Protective Order by Maria Moe.(BAH) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/26/2025) |
| 01/26/2025 | 6 | MEMORANDUM in Support re 5 MOTION to Partially Seal, MOTION Proceed under Pseudonym, and MOTION for Protective Order filed by Maria Moe. (Attachments: # 1 Declaration of Jennifer L. Levi, # 2 Declaration of Lauren B. Meade, M.D., # 3 Proposed Order)(BAH) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/26/2025) |
| 01/26/2025 | 7 | Judge George A. OToole, Jr: ELECTRONIC ORDER entered granting 5 Motion to Seal, 5 Motion to Proceed using Pseudonym; 5 Motion for Protective Order. The motions are granted, and the case is ordered sealed, subject to further consideration by the court. (BAH) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/26/2025) |
| 01/26/2025 | 12 | Judge George A. OToole, Jr: TEMPORARY RESTRAINING ORDER, ENTERED. Motion Hearing set for 1/28/2025 at 4:00 PM in Courtroom 22 (In person only) before Judge George A. OToole Jr. (BAH) (Copy of Order provided to counsel of record by email.)[Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/26/2025) |
| 01/27/2025 | 13 | Judge George A. OToole, Jr: ELECTRONIC ORDER entered. Any response to the Plaintiff's 3 Emergency Motion for a Temporary Restraining Order and Preliminary Injunction is due by 1:00 PM on Tuesday, January 28, 2025. (FGD)[Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/27/2025) |
| 01/28/2025 | 14 | NOTICE of Appearance by John Robinson on behalf of Donald J. Trump, James R. McHenry, III, William Lothrop. (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 |

| | | |
|---|---|---|
| | | (znmw). (Entered: 01/28/2025) |
| 01/28/2025 | 15 | NOTICE of Appearance by Jean Lin on behalf of Donald J. Trump, James R. McHenry, III, William Lothrop. (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/28/2025) |
| 01/28/2025 | 16 | NOTICE of Appearance by Rayford A. Farquhar on behalf of Donald J. Trump, James R. McHenry, III, William Lothrop. (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/28/2025) |
| 01/28/2025 | 18 | MOTION to Seal Document 17 Response to Motion, by Donald J. Trump, James R. McHenry, III, William Lothrop.(FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/28/2025) |
| 01/29/2025 | 19 | Electronic Clerk's Notes for proceedings held before Judge George A. O'Toole, Jr: Case sealed. Motion Hearing held on 1/28/2025 re 3 Emergency Motion for a Temporary Restraining Order and Preliminary Injunction filed by Plaintiff. Current status of Plaintiff discussed. Parties to decide which documents will remain under seal. Merits argument continued to 2:00 PM on Thursday, January 30, 2025. (Court Reporter: Jamie Halpin at jkhhalpin@gmail.com.) (Attorneys present: J. Levi and S. Austin for the Plaintiff; R. Farquhar, J. Lin and J. Robinson for the Defendants.) (JMF) Modified on 2/6/2025 to correct date of hearing (JMF). [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/29/2025) |
| 01/29/2025 | 20 | ELECTRONIC NOTICE Setting Hearing on Motion 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction, 18 MOTION to Seal Document 17 Response to Motion, : Motion Hearing set for 1/30/2025 02:00 PM in Courtroom 22 (In person only) before Judge George A. O'Toole Jr.. (JMF) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/29/2025) |
| 01/30/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice for admission of Amy Whelan by Maria Moe. (Attachments: # 1 Certification of Amy Whelan). (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 23 | MOTION for Leave to Appear Pro Hac Vice for admission of Natalie J. Kraner by Maria Moe. (Attachments: # 1 Certification of Natalie J. Kraner). (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 24 | MOTION for Leave to Appear Pro Hac Vice for admission of Alexander Shalom by Maria Moe. (Attachments: # 1 Certification of Alexander Shalom). (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 25 | MOTION for Leave to Appear Pro Hac Vice for admission of Christopher F. Stoll by Maria Moe. (Attachments: # 1 Certification of Christopher F. Stoll). (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 26 | MOTION for Leave to Appear Pro Hac Vice for admission of Sarah K. Austin by Maria Moe. (Attachments: # 1 Certification of Sarah K. Austin). (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 27 | Judge George A. OToole, Jr: ORDER entered. Order to Unseal Case. The case and docket entries 1 , 2 , and 20 shall be unsealed. All other presently sealed matters shall remain sealed until further order of the Court. (FGD)[Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 28 | Filing fee/payment: $ 125, receipt number 100010474 for 26 MOTION for Leave to Appear Pro Hac Vice for admission of Sarah K. Austin. (FGD) [Transferred from |

| | | |
|---|---|---|
| | | Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 29 | Judge George A. OToole, Jr: ELECTRONIC ORDER entered GRANTING 26 Motion for Leave to Appear Pro Hac Vice Added Sarah K. Austin.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 30 | Electronic Clerk's Notes for proceedings held before Judge George A. O'Toole, Jr: Motion Hearing held on 1/30/2025 re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction and 18 MOTION to Seal Document 17 Response to Motion. Counsel for Plaintiff and Defendants present. Current status of Plaintiff and Pro Hac Vice filings discussed. Arguments held re: 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction. Matter taken under advisement. (Court Reporter: Kelly Mortellite at mortellite@gmail.com.) (Attorneys present: S. Austin and J. Levi for the Plaintiff; R. Farquhar and J. Lin for the Defendants.) (JMF) [Transferred from Massachusetts on 2/10/2025.][Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 31 | Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* by Maria Moe. (Attachments: # 1 REDACTED Memorandum of Law in Support of Plaintiffs' Ex−Parte Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, # 2 Declaration of Jennifer L. Levi in Support of Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction and to Proceed Under Pseudonym, Partially Seal The Record, and for a Protective Order, # 3 REDACTED Declaration of Maria Moe's Mother, # 4 Declaration of Lauren B Meade, M.D. and Curriculum Vitae)(Klein, Bennett) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 32 | MOTION to Seal *,Proceed Under Pseudonym, and for Protective Order* by Maria Moe. (Attachments: # 1 Memorandum of Law in Support of Motion to Proceed Under Pseudonym, to Partially Seal Documents and for Protective Order, # 2 Declaration of Jennifer L. Levi in Support of Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction and to Proceed Under Pseudonym, Partially Seal The Record, and for a Protective Order, # 3 REDACTED Declaration of Maria Moe's Mother, # 4 Declaration of Lauren B Meade, M.D. and Curriculum Vitae, # 5 Proposed Order Granting Plaintiff's Motion to Proceed Under Pseudonym, to File Under Seal, and for Protective Order)(Klein, Bennett)[Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/30/2025 | 33 | REPLY to Response to 31 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Maria Moe. (Klein, Bennett) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/30/2025) |
| 01/31/2025 | 34 | **ELECTRONIC NOTICE TO COUNSEL**: Pursuant to the CM/ECF Administrative Procedures Section (G) Number (4): Any memorandum of law or other attachment filed in support of a main document shall be filed as a separate document, using the proper event. For future filings, please make sure all memorandums in support and any exhibits are filed correctly in their own separate entry from the motion. (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on |

| | | |
|---|---|---|
| | | 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/31/2025) |
| 01/31/2025 | 35 | Judge George A. OToole, Jr: ELECTRONIC ORDER entered. Docket entries 7 , 12 , 13 , 14 , 15 , 16 , and 19 shall be unsealed. All other presently sealed matters shall remain sealed until further order of the Court. The Court acknowledges 31 Emergency Motion for Temporary Restraining Order and Preliminary Injunction and 32 Motion to Seal, Proceed Under Pseudonym, and for Protective Order as redacted versions of previously−filed documents. The Court has ruled on these Motions at 7 and 12 . (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 01/31/2025) |
| 02/03/2025 | 36 | NOTICE of Appearance by Sarah K Austin on behalf of Maria Moe (Austin, Sarah) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/03/2025) |
| 02/05/2025 | 37 | RESPONSE to Motion re 31 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction (redacted version of sealed response at ECF No. 17)* filed by Donald J. Trump, James R. McHenry, III, William Lothrop. (Attachments: # 1 Declaration of Rick Stover (redacted), # 2 Transgender Offender Manual 2022, # 3 Transgender Offender Manual 2018, # 4 Keohane Order)(Robinson, John) [Transferred from Massachusetts on 2/10/2025.][Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/05/2025) |
| 02/05/2025 | 39 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above−captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/05/2025) |
| 02/07/2025 | 40 | Judge George A. OToole, Jr: ORDER entered. OPINION AND ORDER. (FGD) [Transferred from Massachusetts on 2/10/2025.] [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/07/2025) |
| 02/07/2025 | 41 | Case transferred to the District in which Plaintiff is currently confined; Original file certified copy of transfer order and docket sheet sent to Clerk in that district. (FGD) [Transferred from Massachusetts on 2/10/2025.][Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/07/2025) |
| 02/10/2025 | 45 | NOTICE of Appearance by Jessica Braverman on behalf of Maria Moe. (Braverman, Jessica) [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/10/2025) |
| 02/10/2025 | 46 | MOTION for Admission Pro Hac Vice for Attorney Alexander Shalom. Filing fee $ 150, receipt number [Redacted] filed by Maria Moe. (Braverman, Jessica) [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/10/2025) |
| 02/10/2025 | 47 | MOTION for Admission Pro Hac Vice for Attorney Natalie J. Kraner. Filing fee $ 150, receipt number [Redacted] filed by Maria Moe. (Braverman, Jessica) [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/10/2025) |
| 02/11/2025 | 51 | NOTICE of Appearance by Ann M Bildtsen on behalf of Donald J Trump, James R. McHenry, III, William Lothrop. (kt) Document QC'd on 2/27/2025 (JME). [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/11/2025) |
| 02/14/2025 | 52 | Motion Regarding Continued Sealing 45 Notice of Appearance, 50 Order on Motion for Pro Hac Vice, 49 Temporary Restraining Order, 51 Notice of Appearance, 43 Notice re: Non−Admitted Attorney,,,, 48 Order on Motion for Pro Hac Vice, 42 Case Transferred In − District Transfer, 44 Notice re: Removed and Transferred Cases,, filed by Maria Moe. (Braverman, Jessica) [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/14/2025) |
| 02/24/2025 | 54 | SEALED LETTER to District Judge by Maria Moe. (Shalom, Alexander) [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/24/2025) |
| 02/24/2025 | 55 | SEALED PROPOSED ORDER TO JUDGE re Temporary Restraining Order by Maria Moe. (Shalom, Alexander) [Transferred from [Redacted] on 3/6/2025.] Modified on |

| | | |
|---|---|---|
| | | 4/11/2025 (znmw). (Entered: 02/24/2025) |
| 02/26/2025 | 57 | SEALED Plaintiff's Motion to Transfer and Supporting Memorandum of Law by Maria Moe. (Attachments: # 1 Meet and Confer Statement Pursuant to L.Civ.R.7.1(a)(1), # 2 Proposed Order)(Braverman, Jessica) Modified text/event on 2/27/2025 (CLK). Modified text on 2/27/2025 (CLK). [Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/26/2025) |
| 02/27/2025 | 58 | SEALED NOTICE by Donald J Trump, James R. McHenry, III, William Lothrop re 57 Sealed Document *Defendants' Notice of Consent to Plaintiff's Motion to Transfer Venue* (Bildtsen, Ann) Modified text on 2/27/2025 (MMP).[Transferred from [Redacted] on 3/6/2025.] Modified on 4/11/2025 (znmw). (Entered: 02/27/2025) |
| 03/06/2025 | 60 | Case transferred in from District of [Redacted]; Case Number [Redacted]. Original file ,transfer order and docket sheet received. Modified on 4/11/2025 (znmw). (Entered: 03/06/2025) |
| 03/07/2025 | 61 | Case directly reassigned to Judge Royce C. Lamberth as related. Judge Loren L. AliKhan is no longer assigned to the case. (ztnr) (Entered: 03/10/2025) |
| 03/10/2025 | 62 | SEALED ORDER (This document is SEALED and only available to authorized persons.) See ORDER for further details. Signed by Judge Royce C. Lamberth on 3/10/2025.(zcll) (Main Document 62 replaced on 4/3/2025) (zsmc). (Entered: 03/10/2025) |
| 03/10/2025 | | Set/Reset Deadlines: Show Cause deadline as to why the case shall remain under seal due by 12:30PM EST on 3/12/2025. (zcll) (Entered: 03/10/2025) |
| 03/17/2025 | 63 | REQUEST FOR SUMMONS TO ISSUE filed by MARIA MOE. (Attachments: # 1 Summons, # 2 Summons)(zdp) (Entered: 03/21/2025) |
| 03/21/2025 | | SUMMONS (3) Issued as to PAMELA BONDI, WILLIAM LOTHROP, and U.S. Attorney. (Emailed to Attorney of Record) (zdp) (Entered: 03/21/2025) |
| 04/02/2025 | 64 | ORDER: this case is hereby UNSEALED; All parties shall use the pseudonym listed in the Complaint and redact information that would identify Plaintiff in all documents filed in this action; and this case will proceed under protective order. See Order for details. Signed by Judge Royce C. Lamberth on 4/2/2025.(smc) (Entered: 04/03/2025) |
| 04/02/2025 | | ***Case Unsealed Pursuant to 4/2/2025 Order (zdp) (Entered: 04/04/2025) |
| 04/02/2025 | 65 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 62 Sealed Order by PAMELA J. BONDI, WILLIAM LOTHROP, DONALD J. TRUMP. Fee Status: NO Fee Paid. Parties have been notified. (zdp) Modified event on 8/22/2025 (znmw). (Entered: 04/07/2025) |
| 04/07/2025 | 66 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 65 Notice of Appeal to DC Circuit Court. (zdp) (Entered: 04/07/2025) |
| 04/09/2025 | | USCA Case Number 25−5108 for 65 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP. (zdp) (Entered: 04/09/2025) |
| 04/10/2025 | 67 | ORDER: this case is hereby UNSEALED; All parties shall use the pseudonym listed in the Complaint and redact information that would identify Plaintiff in all documents filed in this action; this case will proceed under protective order; and the Court's prior unsealing order 64 is amended as noted in this Order. See Order for details.(smc) (Entered: 04/10/2025) |
| 04/11/2025 | | ***Case Unsealed pursuant to 67 Order filed 4/10/2025. (znmw) (Entered: 04/11/2025) |
| 04/14/2025 | 68 | NOTICE of Appearance by Alexander Shalom on behalf of MARIA MOE (Shalom, Alexander) (Entered: 04/14/2025) |
| 04/16/2025 | 69 | NOTICE of Appearance by Alexander James Yun on behalf of All Defendants (Yun, Alexander) (Entered: 04/16/2025) |

| | | |
|---|---|---|
| 04/18/2025 | 70 | NOTICE of Appearance by Jennifer Levi on behalf of All Plaintiffs (Levi, Jennifer) (Main Document 70 replaced on 4/18/2025) (zdp). (Entered: 04/18/2025) |
| 04/18/2025 | 71 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Sarah K. Austin, Filing fee $ 100, receipt number ADCDC−11627008. Fee Status: Fee Paid. by MARIA MOE. (Attachments: # 1 Declaration Declaration of Sarah K. Austin, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Levi, Jennifer) (Entered: 04/18/2025) |
| 04/30/2025 | 72 | Consent MOTION to Stay by PAMELA J. BONDI, WILLIAM LOTHROP, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 04/30/2025) |
| 05/08/2025 | 73 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Amy Whelan, Filing fee $ 100, receipt number ADCDC−11678099. Fee Status: Fee Paid. by MARIA MOE. (Attachments: # 1 Declaration of Amy Whelan, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Shalom, Alexander) (Entered: 05/08/2025) |
| 05/08/2025 | 74 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Christopher Stoll, Filing fee $ 100, receipt number ADCDC−11678126. Fee Status: Fee Paid. by MARIA MOE. (Attachments: # 1 Declaration of Christopher Stoll, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Shalom, Alexander) (Entered: 05/08/2025) |
| 05/13/2025 | 75 | ORDER: Upon consideration of the Consent Motion 72 to Stay Proceedings, and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that all proceedings in this case are STAYED until September 6, 2025, except as to any motions to extend or renew the preliminary injunction, any issue that may arise from compliance with the preliminary injunction, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues. Signed by Judge Royce C. Lamberth on 05/12/2025. (lcrcl2) (Entered: 05/13/2025) |
| 05/13/2025 | 76 | ORDER: Upon consideration of the Motion 71 for Leave to Appear Pro Hac Vice, and the entire record herein, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 05/12/2025. (lcrcl2) (Entered: 05/13/2025) |
| 05/14/2025 | 77 | ORDER: Upon consideration of the Motion 73 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 05/14/2025. (lcrcl2) (Entered: 05/14/2025) |
| 05/14/2025 | 78 | ORDER: Upon consideration of the Motion 74 for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Royce C. Lamberth on 05/14/2025. (lcrcl2) (Entered: 05/14/2025) |
| 05/15/2025 | 79 | NOTICE of Appearance by Amy Whelan on behalf of All Plaintiffs (Whelan, Amy) (Entered: 05/15/2025) |
| 05/15/2025 | 80 | NOTICE of Appearance by Christopher F. Stoll on behalf of All Plaintiffs (Stoll, Christopher) (Entered: 05/15/2025) |
| 05/15/2025 | 81 | NOTICE of Appearance by Sarah K. Austin on behalf of MARIA MOE (Austin, Sarah) (Entered: 05/15/2025) |
| 05/16/2025 | 82 | Unopposed MOTION for Preliminary Injunction *(Renewed)* by MARIA MOE. (Shalom, Alexander) (Entered: 05/16/2025) |
| 05/16/2025 | 83 | MEMORANDUM re 82 Unopposed MOTION for Preliminary Injunction *(Renewed)* by MARIA MOE. (Attachments: # 1 Text of Proposed Order)(Shalom, Alexander) (Entered: 05/16/2025) |

| | | |
|---|---|---|
| 05/22/2025 | 84 | ORDER: Upon consideration of the unopposed Motion 82 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiff from June 8, 2025 to August 23, 2025; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiff's housing status in women's facilities and shall continue to provide her gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 05/22/2025. (lcrcl2) (Entered: 05/22/2025) |
| 06/04/2025 | 85 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 84 Order on Motion for Preliminary Injunction,, by WILLIAM LOTHROP, PAMELA J. BONDI, DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) Modified event on 8/22/2025 (znmw). (Entered: 06/04/2025) |
| 06/05/2025 | 86 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 85 Notice of Appeal to DC Circuit Court. (zdp) (Entered: 06/05/2025) |
| 06/09/2025 | | USCA Case Number 25−5215 for 85 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP. (zdp) (Entered: 06/09/2025) |
| 06/27/2025 | 87 | NOTICE of Appearance by M. Jared Littman on behalf of All Defendants (Littman, M.) (Main Document 87 replaced on 7/1/2025) (zdp). (Entered: 06/27/2025) |
| 08/18/2025 | 88 | Unopposed MOTION for Preliminary Injunction *(Renewed)* by MARIA MOE. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Alexander Shalom, # 3 Exhibit A, # 4 Text of Proposed Order)(Shalom, Alexander) (Entered: 08/18/2025) |
| 08/19/2025 | 89 | Consent MOTION to Stay *Proceedings* by PAMELA J. BONDI, WILLIAM LOTHROP, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 08/19/2025) |
| 08/20/2025 | 90 | ORDER: Upon consideration of the unopposed Motion 88 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiff from August 23, 2025 to November 21, 2025; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiff's housing status in women's facilities and shall continue to provide her gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 08/20/2025. (lcrcl1) (Entered: 08/20/2025) |
| 08/20/2025 | 91 | ORDER granting 89 Motion to Stay. All proceedings in this case are STAYED until November 21, 2025, except as stated herein. Signed by Judge Royce C. Lamberth on 08/20/2025. (lcrcl1) (Entered: 08/20/2025) |
| 08/21/2025 | 92 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 90 Order,, by WILLIAM LOTHROP, PAMELA J. BONDI, DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) Modified event on 8/22/2025 (znmw). (Entered: 08/21/2025) |
| 08/22/2025 | 93 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 92 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 08/22/2025) |
| 08/22/2025 | | USCA Case Number 25−5305 for 92 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP. (mg) (Entered: 08/25/2025) |
| 11/13/2025 | 94 | Unopposed MOTION for Preliminary Injunction *(New)* by MARIA MOE. (Attachments: # 1 Memorandum in Support (redacted), # 2 Declaration of Alexander Shalom, Esq., # 3 Exhibit A to Declaration of Alexander Shalom, Esq., # 4 Text of Proposed Order)(Shalom, Alexander) (Entered: 11/13/2025) |

| | | |
|---|---|---|
| 11/13/2025 | 95 | SEALED DOCUMENT filed by MARIA MOE re 94 Unopposed MOTION for Preliminary Injunction *(New)* (This document is SEALED and only available to authorized persons.)(Shalom, Alexander) (Entered: 11/13/2025) |
| 11/17/2025 | 96 | ORDER: Upon consideration of the unopposed Motion 94 for a Renewed Preliminary Injunction and the entire record herein, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the defendants are ENJOINED from implementing Sections 4(a) and 4(c) of Executive Order 14168 against the plaintiffs from November 21, 2025 to February 19, 2026; and it is further ORDERED that, during that period, the defendants shall maintain and continue the plaintiffs' housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025. See Order for details. Signed by Judge Royce C. Lamberth on 11/17/2025. (lcrcl1) (Entered: 11/17/2025) |
| 11/19/2025 | 97 | Consent MOTION to Stay *Proceedings* by PAMELA J. BONDI, WILLIAM LOTHROP, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 11/19/2025) |
| 11/20/2025 | 98 | ORDER granting 97 Motion to Stay. All proceedings in this case are STAYED until February 19, 2026, except as stated herein. Signed by Judge Royce C. Lamberth on 11/20/2025. (lcrcl1) (Entered: 11/20/2025) |
| 11/21/2025 | 99 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 96 Order on Motion for Preliminary Injunction,, by WILLIAM LOTHROP, PAMELA J. BONDI, DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Yun, Alexander) (Entered: 11/21/2025) |
| 11/21/2025 | 100 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 99 Notice of Appeal to DC Circuit Court. (mg) (Entered: 11/21/2025) |
| 12/01/2025 | | USCA Case Number 25−5427 for 99 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP. (znmw) (Entered: 12/01/2025) |
| 02/02/2026 | 101 | Unopposed MOTION for Preliminary Injunction *(New)* by MARIA MOE. (Attachments: # 1 Memorandum in Support (redacted), # 2 Declaration of Alexander Shalom, Esq., # 3 Exhibit A to Declaration of Alexander Shalom, Esq., # 4 Text of Proposed Order)(Shalom, Alexander) (Entered: 02/02/2026) |
| 02/02/2026 | 102 | SEALED DOCUMENT filed by MARIA MOE re 101 Unopposed MOTION for Preliminary Injunction *(New)* (This document is SEALED and only available to authorized persons.)(Shalom, Alexander) (Entered: 02/02/2026) |
| 02/12/2026 | 103 | ORDER granting 101 Motion for Preliminary Injunction. It is ORDERED that Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against any plaintiff in this action for the period of February 19, 2026 to May 20, 2026. See Order for more details. Signed by Judge Royce C. Lamberth on 2/12/2026. (lcrcl1) (Entered: 02/12/2026) |
| 02/13/2026 | 104 | Consent MOTION to Stay by PAMELA J. BONDI, WILLIAM LOTHROP, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Yun, Alexander) (Entered: 02/13/2026) |
| 02/18/2026 | 105 | ORDER granting 104 Motion to Stay. All proceedings in this case are stayed until May 20, 2026, except as to any motions to extend or renew the preliminary injunctions, any issue that may arise from compliance with those preliminary injunctions, the entry of any protective order, any motions to amend the complaint to add new plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case management issues. Either Plaintiff or Defendants may move to life the stay at any time. Signed by Judge Royce C. Lamberth on 2/18/2026. (lcrcl1) (Entered: 02/18/2026) |
| 02/23/2026 | 106 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 103 Order on Motion for Preliminary Injunction, by WILLIAM LOTHROP, PAMELA J. BONDI, DONALD J. TRUMP. Fee Status: No Fee Paid. (Yun, Alexander) (Entered: 02/23/2026) |

| | | |
|---|---|---|
| 02/23/2026 | 107 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 106 Notice of Appeal to DC Circuit Court. (zjm) (Entered: 02/23/2026) |
| 02/25/2026 | | USCA Case Number 26−5067 for 106 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP. (znmw) (Entered: 02/25/2026) |
| 05/12/2026 | 108 | MOTION for Leave to File Excess Pages *in Memorandum of Law in Support of Omnibus Motion for Temporary Restraining Order and a Preliminary Injunction* by MARIA MOE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Delgado, Jennifer) (Entered: 05/12/2026) |
| 05/13/2026 | 109 | RESPONSE re 108 MOTION for Leave to File Excess Pages *in Memorandum of Law in Support of Omnibus Motion for Temporary Restraining Order and a Preliminary Injunction* filed by PAMELA J. BONDI, WILLIAM LOTHROP, DONALD J. TRUMP. (Littman, M.) (Entered: 05/13/2026) |
| 05/13/2026 | | Cases Consolidated. This case has been consolidated with case 25cv286 RCL. From this date forward, all pleadings shall be filed ONLY in the lead case, 25cv286 RCL. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (znmw) (Entered: 05/21/2026) |
| 06/08/2026 | 110 | MANDATE of USCA as to 99 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, 65 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, 92 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, 106 Notice of Appeal to DC Circuit Court filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP, 85 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, PAMELA J. BONDI, WILLIAM LOTHROP ; USCA Case Number 25−05108, 25−05215, 25−05305, 25−05427, 26−05067. (Attachments: # 1 USCA Judgment 4/17/2026)(znmw) (Entered: 06/08/2026) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MARIA MOE,

Plaintiff,

v.

DONALD TRUMP, in his official capacity as President of the United States; JAMES R. MCHENRY III, in his official capacity as Acting Attorney General of the United States; WILLIAM LOTHROP, in his official capacity as Acting Director of the Federal Bureau of Prisons,

Defendants.

Civil Action No. 1:25-cv-10195

**<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

1. This Action is a federal constitutional challenge to Sections 4(a) and 4(c) of Executive Order 14166, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," which President Donald Trump issued just hours after his inauguration on January 20, 2025. The Order directly targets transgender Americans by attempting to deny them legal recognition under federal law and to strip them of long-established legal protections. Under Sections 4(a) and 4(c) of the Order, transgender women who are incarcerated in federal prisons will be unlawfully transferred to men's facilities and denied medically necessary healthcare.

**MATERIAL UNDER SEAL DELETED**

2. Plaintiff Maria Moe is an adult transgender woman incarcerated in a low-security federal prison for women [redacted]. Maria Moe is diagnosed with gender dysphoria, a rare but serious medical condition and disability. The medical standard of care for treatment of gender dysphoria is to allow a transgender person to live in a sex different than their birth sex through counseling, medications, surgical care, and social transition.

3. Consistent with this standard of care, Maria Moe has lived as a woman and has taken hormones continuously since she was a teenager. During her term of incarceration, she has always been treated as a woman by federal correctional officials and her peers. She has never been housed in a men's facility and has never stopped taking hormones. Until January 23, 2025, publicly available records from the Bureau of Prisons (BOP) identified her sex as "female." On January 25, the same records classified her as "male" because of the Executive Order.

4. On January 21, 2025, one day after Defendant Trump signed Executive Order 14166, BOP officials removed Maria Moe from the general population at [redacted] and placed her in the Special Housing Unit (SHU). BOP officials informed her that because of the Order, she was being transferred to a men's facility. Maria Moe remains in the SHU pending transfer. She has not been permitted to have contact with others for at least four days.

5. If Maria Moe is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

6. Maria Moe is also at imminent risk of losing access to the medical care she needs to treat her gender dysphoria. Executive Order 14166 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people. The Order categorically bans transgender healthcare regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to independent medical judgment. This blanket ban will deprive Maria Moe of essential medication she has taken continuously since she was a teenager, putting her at high risk of serious harm.

7. Maria Moe brings claims for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Maria Moe seeks declaratory and injunctive relief to enjoin enforcement of Sections 4(a) and 4(c) of Executive Order 14166. Without the injunctive relief sought, Maria Moe will experience irreparable injury.

## JURISDICTION AND VENUE

8. This action arises under the Constitution of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

9. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

10. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the Plaintiff is domiciled in this district.

## PARTIES

11. Plaintiff Maria Moe is a transgender adult woman. She is domiciled in Massachusetts, where she resided prior to her incarceration and where she faced criminal prosecution and sentencing to BOP's custody. Maria Moe is a pseudonym.

12. Defendant Donald Trump is sued in his official capacity as the President of the United States. Defendant Trump issued and will oversee the implementation of Executive Order 14166.

13. Defendant James R. McHenry III is sued in his official capacity as Acting Attorney General of the United States. The Acting Attorney General oversees the Department of Justice, including the Bureau of Prisons, and has responsibility for overseeing the enforcement and implementation of Sections 4(a) and 4(c) of Executive Order 14166 with respect to the Bureau of Prisons.

14. Defendant William Lothrop is sued in his official capacity as Acting Director of the Federal Bureau of Prisons (BOP). The Acting Director of BOP has responsibility for overseeing enforcement and implementation of Executive Order 14166 by all BOP staff.

## FACTS

### I. Maria Moe's Sudden and Unjustified Removal From General Population and Risk of Transfer to a Men's Facility

15. BOP maintains separate housing facilities for men and women. With respect to transgender women, BOP applies an individualized assessment process to determine appropriate housing, consistent with the safety and security of all individuals. Based on this assessment,

transgender women may be housed in women's facilities when doing so promotes safety and security.[1]

16. Maria Moe has been housed in a women's facility since her arrest. She remained in a women's facility through her arraignment, pre-sentence detention, and subsequent incarceration.

17. On January 20, 2025, the President issued an Executive Order directing the BOP to disregard its established policy and any associated safety and security risks concerning the housing and care of transgender women.

18. Pursuant to this Executive Order, the BOP removed Maria Moe from the general population of the women's facility where she had been housed.

19. Maria Moe was subsequently placed in the SHU. She was told that the reason she was removed from general population was because of the Executive Order.

20. She was also informed that she will be imminently transferred to a men's facility because of the Executive Order.

21. On January 23, 2025, Marie Moe's publicly accessible BOP classification of her sex was "female." On January 25, that classification indicated "male."

22. Maria Moe has no ability to contest her placement in the SHU, and BOP officials told her she could not challenge the transfer because it was required by the Executive Order.

[1] U.S. Dep't of Just., Transgender Offender Manual §§ 5–6 (2022), available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

23. Maria Moe's removal from general population, placement in the SHU, and anticipated transfer to a men's facility have caused her significant distress and raise serious and imminent concerns regarding her safety and well-being.

## II. **<u>Gender Dysphoria</u>**

24. Gender dysphoria a serious medical condition marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex. The condition is highly treatable. When left untreated, however, it causes serious physical and emotional harms.

25. Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

26. The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

27. The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows a transgender person to live in their target sex. These protocols are endorsed by the major medical and mental health associations in the United States, including but not limited to the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

28. Under these accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications, including hormones, and a range of surgeries. The treatment prescribed for a particular patient depends on an individualized assessment of the

**MATERIAL UNDER SEAL DELETED**

patient's health and needs. Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

## III. Maria Moe's Gender Dysphoria Diagnosis and Gender Transition

29. Maria Moe is a [redacted] transgender woman from [redacted], Massachusetts.

30. Maria Moe identified as female at a young age. This mismatch between her birth sex and who she knew herself to be caused her significant distress, which manifested as depression, anxiety, and lack of self-esteem.

31. In middle school, Maria Moe disclosed to her mother that she felt like a girl and believed she was transgender. Her mother contacted medical and mental health providers, who diagnosed Maria with gender dysphoria.

32. Maria Moe began living as female, used a female name, and was socialized as a girl among family and friends. When she entered high school, she matriculated as a girl. Throughout her time in high school, she was integrated in the school community as other girls. She used the girls' bathroom at school, [redacted]

33. Based on the recommendations of her healthcare providers, Maria Moe began taking hormones to treat her gender dysphoria and to allow her to live as female at around age 15. Since then, she has continuously taken hormones to treat her gender dysphoria according to her medical providers' judgment and advice.

34. Maria Moe has lived as a woman for the last [redacted] years. She is acknowledged, accepted, and treated as a woman by her peers, her friends, her close family. [redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

35. [redacted] she has always been housed in a women's facility while in federal custody. She has no violent disciplinary history, poses no threat to her female peers, and her presence in the women's facility has not caused any disruption or interference with prison operations.

36. [redacted] Prior to January 20, 2025, Maria Moe was consistently receiving this medically necessary treatment and had no reason to believe it would be terminated.

**IV. Executive Order 14166 Will Cause Maria Moe Irreparable Injury**

37. Executive Order 14166 began causing harm to Maria Moe almost immediately. As a result of the Order, she has already suffered significant distress. The Order also raises serious concerns for her safety and well-being going forward.

38. Section 2 of the Order includes a definition of "sex" that is intentionally designed to discriminate against transgender people. Specifically, Section 2 defines "sex" as "an individual's immutable biological classification as either male or female." In turn, it defines "male" as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "female" as "a person belonging, at conception to the sex that produces the large

reproductive cell." It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

39. Section 4(a) of the Order then directs federal agencies to implement this discriminatory provision, including requiring the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security. That section acknowledges that the requirement contradicts federal regulations found at 28 C.F.R. § 115.41.

40. On January 21, 2025, BOP officials informed Maria Moe that because of the Order, she would be transferred to a men's facility. They then placed her in the SHU, where she has no contact with others, pending transfer.

41. On January 25, 2025, BOP changed Maria Moe's sex designation on publicly available records. Prior to January 25, the same records identified Maria Moe as "female." Now, solely because of her birth sex, they designate her as "male."

42. Maria Moe has never been housed in a men's facility. If she is transferred to a men's facility, she will face serious risk of victimization and sexual violence. She will not be safe. Evidence, research, case law, and practical experience show that transgender women housed in men's prisons face near constant sexual harassment and extremely high levels of violence and sexual assault. Federal regulations recognize transgender status as a risk factor for sexual assault. *See* 28 C.F.R. §§ 115.41(d)(7), 115.42(c)–(f). A 2013 study by the Department of Justice estimated that nearly 35% of transgender inmates in state and federal prisons were sexually assaulted between 2007 and 2012. U.S. Dep't of Justice Off. of Justice Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–12*, NCJ No. 241399,

**MATERIAL UNDER SEAL DELETED**

Supplemental Table 1 (2013).[2] From 2011 to 2012, transgender people were sexually assaulted at nearly ten times the rate for the general incarcerated population.[3]

43. In a men's facility, Maria Moe will be at extremely high risk of rape and sexual assault. She may also be subjected to humiliating, terrifying, and dangerous circumstances like being strip searched by male correctional officers and forced to shower among men, with her female body, including her breasts, exposed and vulnerable to sexual violence.

44. Further, Maria Moe will predictably experience a worsening gender dysphoria in a men's facility. She may be forced to wear men's clothing and undergarments, prevented from styling her hair as female, referred to as a man, and addressed by her stereotypically male former name rather than the female name she has had for over [redacted] years. Treating a transgender woman with gender dysphoria as a man is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

45. Section 4(c) of the Order will also cause Maria Moe serious, irreparable injury. Section 4(c) eliminates Maria Moe's ability to continue taking female hormones to treat her gender dysphoria and that her body has adjusted to receiving for the last [redacted] years. Specifically, the provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."

---

[2] Available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

[3] *Compare id.* (noting a 39.9% sexual victimization rate for transgender people from 2011 to 2012), *with* the full report at 6 (reflecting a 4.0% rate of sexual victimization in the general prison population from 2011 to 2012), available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112.pdf.

**MATERIAL UNDER SEAL DELETED**

46. The BOP is aware that gender dysphoria creates a serious medical need for gender transition treatments, including hormone therapy, and that Maria Moe has a serious medical need for such treatment. BOP policy expressly allows hormone therapy as a treatment for gender dysphoria based on an "individualized assessment" by medical staff.[4] If providers determine that hormone therapy is appropriate for an individual, hormone therapy "will be provided."[5] Consistent with this policy, the BOP has consistently provided hormone therapy to Maria Moe for years.

47. If Maria Moe's medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), she will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormones for medical care recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts.

48. In addition, Ms. Doe [redacted]

[4] U.S. Dep't of Just., Transgender Offender Manual § 8 (2022), available at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf.

[5] *Id.*

## V. Executive Order 14166 Facially Classifies on Behalf of Sex and Transgender Status and Was Motivated By Discriminatory Animus

49. Executive Order 14166 classifies individuals on the basis of sex and transgender status. It was motivated by a sex-based discriminatory purpose and animus against transgender people.

50. Defendant Trump has been transparent about his hostility toward transgender people and openly stated his intentions to create legal obstacles to eliminate legal protections for transgender people and to deter them from obtaining medical care or being able to live in a sex other than their birth sex. On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[6] He pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[7]

51. Throughout his campaign, Defendant Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged,"[8] and victims of "madness"[9]

[6] ABC Action News, *(Full Speech) Former President Trump announces 2024 presidential bid* at 48:40-49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJ1_htE; *id.* at 50:39-53 (suggesting he would attempt to ban transgender people from military service).

[7] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, Trump Vance: Make America Great Again! 2025 (Feb. 1, 2023), https://www.donaldjtrump.com/agenda47/president-trumps-plan-to-protect-children-from-left-wing-gender-insanity.

[8] Gabriel Bertrand, *Trump's Shocking Admission Exposes GOP's Bigoted Agenda*, Medium (June 17, 2023), https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f.

[9] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

and "insanity."[10] He falsely claimed transgender identity was "never heard of in all of human history" and described transgender healthcare as "mutilation."[11]

52. Defendant Trump's campaign devoted substantial resources to promoting anti-transgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[12] These advertisements comprised over 40 percent of all pro-Trump campaign messaging in the weeks before the 2024 election.[13]

53. Defendant Trump's official campaign platform included a "Plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[14]

---

[10] Jackson Walker, *Trump vows to remove 'transgender insanity' and critical race theory from US schools*, IdahoNews (Dec. 23, 2024, 8:37AM), https://idahonews.com/news/nation-world/trump-vows-to-remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoeniz-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-trans-gender-lgbt; *Trump and Vance make anti-transgender attacks central to their campaign's closing argument*, NBC News (Nov. 1, 2024, 10:23 AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy/donald-trump-jd-vance-transgender-2024-election-rcna178390; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; Gabriel Bertrand, *supra* note 8; Joe Middleton, *Trump attacks transgender rights at Waco rally saying he will ban 'disfigurement of our youth'*, The Independent (Mar. 26, 2023), https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html.

[11] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[12] Audrey Kemp, *What Trump's win – and $215m worth of anti-trans ads – mean for the future of campaigning*, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[13] Lauren Barrón-López et al., *Why anti-transgender political ads are dominating the airwaves this election*, PBS News (Nov. 2, 2024 5:35 PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

[14] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

54. On December 23, 2024, after winning the election, Defendant Trump reaffirmed his intent to implement discriminatory policies through executive action, stating "with a stroke of [his] pen on day one," he would "stop the transgender lunacy" and "get transgender out of the military and out of our elementary schools and middle schools and high schools."[15]

55. Executive Order 14166, issued on Defendant Trump's first day in office, implements these campaign promises, demonstrating that the discriminatory animus expressed throughout his campaign was the driving force behind the Order's restrictions on incarcerated transgender people for medical care and housing.

56. The timing, content, and context of Executive Order 14166 demonstrate it was motivated by and implements the same discriminatory animus Defendant Trump repeatedly expressed during his campaign, rather than any legitimate government purpose.

## CLAIMS FOR RELIEF

## COUNT I

**Challenge to Sections 4(a) and 4(c)**
**Fifth Amendment to the United States Constitution**
**Due Process Clause - Deprivation of Equal Protection of the Laws**
**Against All Defendants in Their Official Capacities**

57. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

58. Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

---

[15] Azcentral.com and The Arizona Republic, *Turning Point USA Donald Trump full speech: The 'golden age of America' begins now, says Trump*, Youtube (Dec. 23, 2024), https://www.youtube.com/watch?v=XuIeXJw6BA8, at 57:02-24.

59. Sections 4(a) and 4(c) unjustifiably discriminate based on sex. They are facial sex classifications and use explicitly sex-based language to dictate government decision-making. Section 4(a) compels the BOP to exclude "males" from "women's prisons." Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance *to that of the opposite sex*." Section 4(c)'s express purpose is to deter all medical treatment deemed inconsistent with birth sex.

60. Sections 4(a) and 4(c) require BOP to treat incarcerated people differently depending on their sex. Under section 4(a), women who are not transgender can go on living in a women's facility, while otherwise similarly situated transgender women must be transferred to a men's facility based on their birth sex. Similarly, under Section 4(c), women who are not transgender are able to obtain the same medical treatments that are prohibited if they are prescribed for transgender women.

61. Under the Fifth Amendment, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

62. Sections 4(a) and 4(c) also discriminate based on transgender status. Section 4(a) requires dangerous transfers to men's facilities for all transgender women, solely because they are transgender. Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender.

63. Under the Fifth Amendment, classifications based on transgender status are sex-based classifications that are subject to heightened scrutiny.

64. Classifications based on transgender status are also subject to heightened scrutiny because transgender people constitute a quasi-suspect class. Transgender people are a discrete

and identifiable group of people with one shared distinguishing characteristic: they identify and seek to live as a sex different than their birth sex. This defining characteristic bears no relation to a transgender person's ability to contribute to society. Nevertheless, transgender people have faced historical discrimination in law and in fact, and they have been unable to secure equality through the political process.

65. There is no legitimate penological purpose or other legitimate basis for Section 4(a)'s dangerous transfer requirement or Section 4(c)'s categorical healthcare ban.

66. Neither Section 4(a) nor Section 4(c) is narrowly tailored to further a compelling government interest or substantially related to an important government interest. Moreover, Sections 4(a) and 4(c) are not even rationally related to a government interest. Accordingly, these aspects of Executive Order 14166 violate the Fifth Amendment.

67. If Section 4(a) and 4(c) are implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT II

**Challenge to Section 4(a)**
**Eighth Amendment to the United States Constitution**
**Failure to Protect**
**Against All Defendants in Their Official Capacities**

68. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

69. Under the Eighth Amendment, Maria Moe is entitled to be free from a known and substantial risk of serious harm while in BOP custody.

70. Transferring Maria Moe to a men's prison will pose a substantial risk of serious harm, including an extremely high risk of violence and sexual assault from other incarcerated people and BOP staff. In a men's prison, Maria Moe will also be at high risk of worsening gender dysphoria, which can lead to serious physical and mental health conditions including severe depression and suicidality. These risks are obvious, well-documented, and well known to BOP officials.

71. The risk of sexual violence to transgender people in prison is recognized in existing federal regulations. 28 C.F.R. § 115.41(d)(7) requires BOP officials to consider an individual's transgender status as a factor increasing their "risk of sexual victimization." An individual's sexual victimization risk must be considered as part of all housing and transfer decisions. *Id.* § 115.41. Decisions about whether to house a transgender person in a men's or women's facility must be made "on a case-by-case basis" to ensure the individual's "health and safety" and the security of the facility. *Id.* § 115.42(c). Given the extremely high safety risks for transgender people in BOP custody, housing placements for transgender people "shall be reassessed at least twice a year to review any threats to safety." *Id.* § 115.42(d).

72. Section 4(a) of the Order contains a citation to 28 C.F.R. § 115.41, indicating that Defendant Trump was aware of transgender women's heightened risk of sexual victimization and the federal regulatory scheme that requires individualized housing placements to ensure their safety. Nevertheless, Defendant Trump intentionally directed the Attorney General to "amend[]" § 115.41 "as necessary" to ensure that all transgender women would be transferred to men's facilities, no matter how dangerous, without regard for their safety and security. The President's

intentional disregard of a known and substantial risk of serious harm to transgender women in BOP custody, including Maria Moe, violates the Eighth Amendment.

73. Defendants McHenry and Lathrop are well aware of the grave risks Maria Moe will face if she is transferred to a men's prison, but they are actively enforcing Section 4(a) and have caused BOP officials to initiate her transfer anyway. Their decision to disregard the known and substantial risks of serious harm violates Maria Moe's rights under the Eighth Amendment.

74. If Section 4(a) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT III

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

75. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

76. A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

77. Maria Moe has a serious medical need for hormone therapy as treatment for her gender dysphoria, which is a rare and serious health condition. Abrupt termination of this treatment would violate the applicable standard of care and subject her to a known and substantial risk of serious harm.

**MATERIAL UNDER SEAL DELETED**

78. Terminating Maria Moe's hormone therapy would contravene her medical providers' consistent professional judgment that she needs continuous treatment for her gender dysphoria, as both the BOP [redacted] have recognized. Denying Maria Moe this medically necessary healthcare would constitute deliberate indifference to her serious medical needs and would violate the Eighth Amendment's prohibition on cruel and unusual punishment.

79. Section 4(c) of the Order, which was issued by Defendant Trump and is being implemented by all other Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment. As such, Section 4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

80. If Section 4(c) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT IV

**Challenge to Section 4(a)**
**Rehabilitation Act of 1973, Section 504**
**Failure to Accommodate a Disability**
**Against All Defendants in Their Official Capacities**

81. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

**MATERIAL UNDER SEAL DELETED**

82. Maria Moe has a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

83. Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself.

84. Housing Maria Moe in a women's facility is a reasonable accommodation for her gender dysphoria and is part of the recommended treatment protocol set forth by the applicable standards of care and clinical practice guidelines.

85. Continuing to house Maria Moe at [redacted] or another women's facility would not materially impair the safe and efficient operation of the facility or the BOP generally, present a safety hazard to any staff or other incarcerated person, threaten the security of the facility, or otherwise cause undue hardship.

86. Continuing to house Maria Moe at [redacted] or another women's facility would not fundamentally alter the nature of any service, program, or activity.

87. Involuntarily transferring Maria Moe to a men's facility under Section 4(a) of the Order would be a cruel and unnecessary revocation of this reasonable accommodation and would deny her equal benefits of correctional and rehabilitative programs and services, including but not limited to safe housing, showers, and healthcare consistent with accepted medical standards. Accordingly, Section 4(a) violates Section 504 of the Rehabilitation Act of 1973.

88. If Section 4(a) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT V

**Challenge to Section 4(c)**
**Rehabilitation Act of 1973, Section 504**
**Disability Discrimination**
**Against All Defendants in Their Official Capacities**

89. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

90. Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"—meaning treatments are banned only if they are prescribed to treat gender dysphoria.

91. Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Maria Moe, from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need. Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

92. If Section 4(c) is implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT VI

**Challenge to Sections 4(a) and 4(c)**
**Administrative Procedures Act**
**Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action**
**Taken Without Observance of Procedure Required By Law**
**Against Defendant Lothrop in His Official Capacity**

93. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

94. BOP's actions to implement Sections 2, 4(a), and 4(c) of the Executive Order constitute final agency action that has harmed Maria Moe, affected her legal rights, and subjected her to an imminent risk of further harm.

95. BOP's decision to transfer Maria Moe to a men's facility and the imminent threat to deny her necessary medical care solely because of her birth sex and transgender status are unconstitutional.

96. BOP's decision to transfer Maria Moe to a men's facility solely because of her birth sex and transgender status is arbitrary and capricious.

97. BOP's decision to deny Maria Moe medically necessary care to treat her gender dysphoria solely because of her birth sex and transgender status is arbitrary and capricious.

98. BOP's decision to transfer Maria Moe to a men's facility solely because of her birth sex and transgender status is contrary to law as set forth in 28 C.F.R. §§ 115.41–42.

99. For BOP's transfer decision to be lawful, amendments to 28 C.F.R. §§ 115.41–42 would have to be made through notice-and-comment rulemaking. Section 4(a) directs the Attorney General to make such an "amendment," but no amendment has been made at this time. BOP's decision to transfer Maria Moe prior to a valid amendment to 28 C.F.R. §§ 115.41–42 was made without observance of procedure required by law.

100. BOP's decision to transfer Maria Moe without conducting an individualized assessment of all relevant circumstances, including her safety, was made without observance of procedure required by law.

101. If Sections 4(a) and 4(c) are implemented, Maria Moe will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1) Issue a judgment under 28 U.S.C. §§ 2201–02 declaring that Sections 4(a) and 4(c) of Executive Order 14166 violate Plaintiff's rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, and the Administrative Procedure Act for the reasons and on the Counts set forth above;

(2) Enter a preliminary and permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from enforcing Sections 4(a) and 4(c) of Executive Order 14166, and requiring Defendants to maintain Plaintiff's housing and medical treatment consistent with the status quo before January 20, 2025;

(3) Award Plaintiff nominal damages, as well as her costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 12205, and other applicable laws; and

(4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/Jennifer Levi
Jennifer L. Levi (Bar No. 562298)
Bennett Klein (Bar No. 550702)
Sarah Austin (*pro hac vice* pending)
**GLBTQ Legal Advocates & Defenders**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
bklein@glad.org
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (*pro hac vice* pending)
Amy Whelan (*pro hac vice* pending)
**National Center for Lesbian Rights**
870 Market Street, Suite 370
San Francisco, CA 94102
(415) 392-6257
cstoll@nclrights.org
awhelan@nclrights.org

Alexander Shalom (*pro hac vice* pending)
Natalie Kraner (*pro hac vice* pending)
**Lowenstein Sandler LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
ashalom@lowenstein.com
nkraner@lowenstein.com

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Maria Moe

**(b)** County of Residence of First Listed Plaintiff: Essex
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

GLBTQ Legal Advocates & Defenders; National Center for Lesbian Rights; Lowenstein Sandler, LLP

## DEFENDANTS

Donald Trump (official capacity), et al.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☒ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
5 U.S.C. § 704 and the United States Constitution

Brief description of cause:
Federal constitutional challenge to Sections 4(a) and 4(c) of Executive Order 14166

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE: 1/26/2025

SIGNATURE OF ATTORNEY OF RECORD: /s/Jennifer Levi

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

**Additional Attorneys for Plaintiff:**

GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350

National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
(415) 392-6257

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029

**Additional Defendants:**

DONALD TRUMP, in his official capacity as President of the United States;
JAMES R. MCHENRY III, in his official capacity as Acting Attorney General of the United States;
WILLIAM LOTHROP, in his official capacity as Acting Director of the Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE JONES; AMY JONES; BARBARA JONES; CARLA JONES; DONNA JONES<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States; WILLIAM LOTHROP, in his official capacity as Acting Director of the Federal Bureau of Prisons,<br><br>Defendants. | Civil Action No. 25-cv-00401-RCL |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This Action is a federal constitutional challenge to Sections 4(a) and 4(c) of Executive Order 14168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," ("Executive Order 14168" or "the Order") which President Donald Trump issued just hours after his inauguration on January 20, 2025. The Order directly targets transgender individuals by attempting to deny them legal recognition under federal law and to strip them of long-established legal protections with the stroke of a pen. Under Sections 4(a) and 4(c) of the Order, transgender women who are incarcerated in federal prisons will be unlawfully transferred to men's facilities and denied medically necessary healthcare.

**MATERIAL UNDER SEAL DELETED**

2. Plaintiff Jane Jones is an adult transgender woman who, until [redacted], was incarcerated in [redacted]. Jane Jones is diagnosed with gender dysphoria, a rare but serious medical condition and disability. The medical standard of care for treatment of gender dysphoria is to allow a transgender person to live in a sex different than their birth sex through counseling, medications, surgical care, and social transition.

3. Consistent with this standard of care, Jane Jones has lived as a woman and has taken hormones continuously since [redacted]. Additionally, she has had sex-reassignment surgeries, including a vaginoplasty, and legally changed her name and sex markers on her identifications to reflect that she is a woman. During her term of incarceration, she has always been treated as a woman by federal correctional officials and her peers. Other than during a brief period of time after the issuance of Executive Order 14168, she has never been housed in a men's facility. As of the date of this filing, publicly available records from the Bureau of Prisons (BOP) identified her sex as "female."

4. On [redacted], BOP officials removed Jane Jones from the general population of the [redacted] and transferred her to the men's unit of the [redacted]. BOP officials provided her no prior notice of the transfer and did not allow her to bring the vast majority of her belongings. They placed her in the Special Housing Unit ("SHU") within the men's prison, which Plaintiff described as a "shoebox" where she felt like a "zoo animal" that everyone comes to stare at.

**MATERIAL UNDER SEAL DELETED**

5. Jane Jones feared that she would be imminently transferred to a men's general population unit because a high-ranking prison official came to her cell on [redacted], and asked her what men's unit she would like to be sent to.

6. On [redacted], Jane Jones was transferred back to the [redacted]. She now fears that at any moment she will again be transferred to a men's prison pursuant to Executive Order 14168.

7. Jane Jones is not safe in any men's prison. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will be at a high risk of worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

8. Plaintiff Amy Jones is an adult transgender woman incarcerated in [redacted]. She [redacted] in the custody of the Bureau of Prisons (BOP). Amy Jones is also diagnosed with gender dysphoria.

9. Consistent with the standard of care for gender dysphoria, Amy Jones has lived as a woman and has taken hormones since [redacted]. Since [redacted], she has been consistently held in all women's facilities. As of February 27, 2025, publicly available records from the BOP identified her sex as "female."

10. Amy Jones is not safe in any men's prison or [redacted]. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men

**MATERIAL UNDER SEAL DELETED**

who are incarcerated. And she will be at a high risk of worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

11. Plaintiff Barbara Jones is an adult transgender woman incarcerated in [redacted]. Barbara Jones is also diagnosed with gender dysphoria.

12. Consistent with the standard of care, Barabara Jones has lived as a woman and has taken hormones since [redacted]. Since [redacted], she has been consistently held in all women's facilities. As of February 27, 2025, publicly available records from the BOP identified her sex as "female."

13. Barbara Jones is not safe in any men's prison. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will be at a high risk of worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

14. Plaintiff Carla Jones is an adult transgender woman incarcerated in [redacted]. Carla Jones is diagnosed with gender dysphoria.

15. Consistent with the standard of care, Carla Jones has lived as a woman and taken hormones since [redacted]. Since [redacted], she has been consistently held in all women's facilities, without incident. As of February 27, 2025, publicly available records from the BOP identified her as female.

**MATERIAL UNDER SEAL DELETED**

16. Carla Jones is not safe in any men's prison. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will be at a high risk of worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

17. Plaintiff Donna Jones is an adult transgender woman incarcerated in [redacted]. Donna Jones is diagnosed with gender dysphoria.

18. Consistent with accepted standard of care, Donna Jones has lived as a woman and taken hormones since [redacted]. Since [redacted], she has been consistently held in all women's facilities, without incident. As of February 27, 2025, publicly available records from the BOP identified her as female.

19. Donna Jones is not safe in any men's prison. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will be at a high risk of worsening gender dysphoria, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

20. In addition to facing immediate transfers to men's facilities, Plaintiffs are also at imminent risk of losing access to the medical care they each need to treat their gender dysphoria. Executive Order 14168 singles out transgender people to deny them essential healthcare while continuing to provide such healthcare to others. The Order categorically bans this care regardless of medical necessity. It prohibits prison medical providers from treating transgender patients'

gender dysphoria on an individual basis according to their independent medical judgment. This blanket ban will deprive Plaintiffs of essential medical care, including medication they have taken continuously for years, putting them at high risk of serious harm.

21. Plaintiffs bring claims for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Plaintiffs seek declaratory and injunctive relief to enjoin enforcement of Sections 4(a) and 4(c) of Executive Order 14168. Without the injunctive relief sought, Plaintiffs will experience irreparable injury.

**JURISDICTION AND VENUE**

22. This action arises under the Constitution of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

23. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

24. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) and (B) because all defendants reside in the district and a substantial part of the events giving rise to the claim occurred in the district.

**PARTIES**

25. Plaintiff Jane Jones is a transgender adult woman. Jane Jones is a pseudonym.

26. Plaintiff Amy Jones is a transgender adult woman. Amy Jones is a pseudonym.

27. Plaintiff Barbara Jones is a transgender adult woman. Barbara Jones is a pseudonym.

28. Plaintiff Carla Jones is a transgender adult woman. Carla Jones is a pseudonym.

29. Plaintiff Donna Jones is a transgender adult woman. Donna Jones is a pseudonym.

30. Defendant Pamela Bondi is sued in her official capacity as Attorney General of the United States. The Attorney General oversees the Department of Justice, including the Bureau of Prisons, and has responsibility for overseeing the enforcement and implementation of Sections 4(a) and 4(c) of Executive Order 14168 with respect to the Bureau of Prisons.

31. Defendant William Lothrop is sued in his official capacity as Acting Director of the Federal Bureau of Prisons (BOP). The Acting Director of BOP has responsibility for overseeing enforcement and implementation of Executive Order 14168 by all BOP staff.

## FACTS

### I. Jane Jones's Sudden and Unjustified Transfer to a Men's Facility and Barbara Jones, Carla Jones, and Donna Jones's Transfer to Segregated Housing.

32. The BOP maintains separate housing facilities for men and women. Before January 20, 2025, with respect to transgender women, the BOP applied an individualized assessment process to determine appropriate housing, consistent with the safety and security of all individuals. Based on this assessment, transgender women could be housed in women's facilities when doing so promoted safety and security.[1]

[1] U.S. Dep't of Just., Transgender Offender Manual §§ 5–6. This policy was previously available on the BOP website at https://www.bop.gov/policy/progstat/5200-08-cn-1.pdf. It was still available as of the date of Plaintiff Jane Jones's initial filing on February 10, 2025. However, as of February 27, 2025, the page is unavailable and states the following: "This content is temporarily unavailable as we implement the Executive Order on 'Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.'"

**MATERIAL UNDER SEAL DELETED**

33. Jane Jones has been housed in women's facilities within the BOP since [redacted].

34. On January 20, 2025, the President issued Executive Order 14168 directing the BOP to disregard its established policy and any associated safety and security risks concerning the housing and care of transgender women.

35. Pursuant to Executive Order 14168, the BOP removed Jane Jones from the general population of the [redacted] women's facility where she had been housed and transferred her to a [redacted] men's facility where she was placed in the Special Housing Unit (SHU).

36. She was also informed that she would be transferred to another men's facility and would be imminently placed in a male general population unit.

37. On [redacted], Jane Jones was then transferred back to the women's facility.

38. Jane Jones remains at risk of being transferred to a men's facility, as she was before, and has no ability to contest the Executive Order or her placement in a men's prison.

39. Jane Jones's removal from general population, placement in the SHU of a men's prison, and anticipated second transfer to a men's facility have caused her significant distress and raise serious concerns regarding her safety and well-being.

40. Pursuant to Executive Order 14168, the BOP removed Barbara Jones, Carla Jones, and Donna Jones from the general population of the low-security women's facility where they had been housed and moved them to the SHU. They were told by staff to prepare to be

MATERIAL UNDER SEAL DELETED

transferred to a men's prison. They were also told that their medical care would stop after they were transferred.

41. They remained in the SHU for [redacted], before they were returned to general population. They remain at risk of being transferred to men's facilities.

42. Barbara Jones, Carla Jones, and Donna Jones's removal from general population and transfer to the SHU and anticipated transfer to men's prisons have caused them significant distress and raise serious concerns regarding their safety and well-being.

## II. <u>Gender Dysphoria</u>

43. Gender dysphoria is a serious medical condition marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex. The condition is highly treatable. When left untreated, however, it causes serious physical and emotional harms.

44. Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

45. The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

46. The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows a transgender person to live in their target sex. These protocols are endorsed by the major medical and mental health associations in the United States, including but not limited to the American Medical

**MATERIAL UNDER SEAL DELETED**

Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

47. Under these accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications, including hormones, and a range of surgeries. The treatment prescribed for a particular patient depends on an individualized assessment of the patient's health and needs. Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

## III. Plaintiffs' Gender Dysphoria Diagnoses and Gender Transitions

48. Jane Jones was born on [redacted]. Her sex at birth was identified as male and her parents gave her a male-associated name. From a young age, Jane Jones gravitated toward traditionally feminine activities, including playing with dolls and liked to wear feminine clothing. Jane Jones recalls her earliest memories as being shaped by tendencies that she recognized as intrinsically female. As she grew older, her sense of being a woman intensified.

49. Jane Jones attended [redacted] and became an [redacted]. She eventually owned and operated an [redacted]. But Jane Jones still struggled with feelings that her birth sex did not match her female identity.

50. Jane Jones began seeing a therapist in approximately [redacted]. She was diagnosed with gender dysphoria. In [redacted], she began hormone therapy and began living as a woman.

51. In [redacted], Jane Jones received facial reconstructive and breast augmentation surgery. In [redacted], she received a vaginoplasty.

**MATERIAL UNDER SEAL DELETED**

52. Around [redacted], Jane Jones legally changed her name and her gender marker to female on her driver's license, her [redacted], with [redacted], and with the social security office.

53. On [redacted], Jane Jones was convicted of a non-violent [redacted] and was sentenced to less than [redacted] in prison.

54. She was sent to a women's facility.

55. Amy Jones was born on [redacted]. Her sex at birth was identified as male and her parents gave her a male-associated name. From a young age, Amy Jones knew she was a girl. As she grew older the disconnect between who she was and how she presented to the world caused her increasing distress.

56. In [redacted], Amy Jones was diagnosed with gender dysphoria. She began taking hormones and living as a woman. In [redacted], she legally changed her name and the gender markers on her birth certificate.

57. Since [redacted], Amy Jones has been housed in women's facilities. In [redacted], with less than two years remaining on her sentence, she was sent to [redacted].

58. Barbara Jones was born on [redacted]. Her sex at birth was identified as male and her parents gave her a male-associated name. From a young age, Barbara Jones knew she was a girl. As she grew older the disconnect between who she was and how she presented to the world caused her increasing distress. Before she was incarcerated, she took female hormones and began to use a female-associated name.

59. In [redacted], Barbara Jones was diagnosed with gender dysphoria. She began taking hormones and living as a woman.

**MATERIAL UNDER SEAL DELETED**

60. Since [redacted], she has been housed exclusively in women's facilities.

61. Carla Jones is [redacted] years old. Her sex at birth was identified as male and her parents gave her a male-associated name. For [redacted], Carla Jones knew she was a woman. The disconnect between who she was and how she presented to the world caused her significant distress. [redacted].

62. In [redacted], Carla Jones was diagnosed with gender dysphoria. She began taking hormones and living as a woman.

63. Since [redacted], she has been housed exclusively in women's facilities.

64. Donna Jones is [redacted] years old. Her sex at birth was identified as male and her parents gave her a male-associated name. Since childhood, Donna Jones knew she was a girl. Although she initially tried to suppress the fact that she was transgender, as she grew older, she told more and more people that she felt like a woman trapped in a man's body.

65. In [redacted], Donna Jones was diagnosed with gender dysphoria. She began taking hormones and living as a woman.

66. Since [redacted], she has been housed exclusively in women's facilities.

## IV. <u>Executive Order 14168 Will Cause Plaintiffs Irreparable Injury</u>

67. Executive Order 14168 began causing harm to Plaintiffs almost immediately. As a result of the Order, they have already suffered significant distress. The Order also raises serious concerns for their safety and well-being going forward.

68. Section 2 of the Order includes a definition of "sex" that is intentionally designed to discriminate against transgender people. Specifically, Section 2 defines "sex" as "an

MATERIAL UNDER SEAL DELETED

individual's immutable biological classification as either male or female." In turn, it defines "male" as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "female" as "a person belonging, at conception to the sex that produces the large reproductive cell." It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

69. Section 4(a) of the Order then directs federal agencies to implement this discriminatory provision, including requiring the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security. That section acknowledges that the requirement contradicts federal regulations found at 28 C.F.R. § 115.41 by directing the Attorney General to amend those regulations as necessary to implement Section 4(a).

70. On the evening of [redacted], BOP officials informed Jane Jones that because of the Order, she would be transferred to a men's facility. This was a shock to Jane Jones, who at the time, was being held in a [redacted]. Jane Jones had always been housed with other women and given access to all items available to other women. She was able to live as a woman in all respects at the [redacted].

71. BOP officials made Jane Jones change into an orange jumpsuit and shoes, which denotes high risk inmates, gave her men's boxer shorts, hand-cuffed her, and transferred her to a men's medium security facility at [redacted].

72. Jane Jones asked why she was being transferred, and the Corrections Officers said that they had been told to bring her to the men's [redacted]. Jane Jones asked if she could bring her possessions and she was denied that request, except that the corrections officers allowed her to

**MATERIAL UNDER SEAL DELETED**

bring what remained of her hormone therapy medication (a less than 30-day supply). They advised, however, that she would not be permitted to obtain another prescription from the prison once these medications run out.

73. In both female prisons in which she has was housed since receiving her sentence, Jane Jones has been subjected to searches by female Corrections Officers only. Jane Jones also has a flawless disciplinary record.

74. Jane Jones was placed in the Special Housing Unit ("SHU") upon transfer to the men's prison. She was housed alone in solitary confinement in a tiny cell with nothing to do all day. She had no one to talk to and did not go outside. She was only provided with men's toiletries.

75. Jane Jones has expressed that she felt like a zoo animal. The corrections officers went by the small window to her cell and looked at her. Male guards were also able to watch her use the restroom, as she was under 24/7 video surveillance. She no longer had access to email or to other inmates. She was only allowed very limited contact with her spouse.

76. Jane Jones greatly fears what will happen when BOP terminates her medical treatment. Jane Jones has been taking hormones for [redacted] years. If she stops taking hormones, the physical and psychological impact will be devastating. This will cause her extreme emotional distress and could cause physical harm given how long she has been taking the hormones. Moreover, because she no longer has the anatomy to produce male sex hormones, she needs replacement hormones in order to maintain bone density and blood pressure regulation.

77. On [redacted], a BOP official came to Jane Jones and informed her she would be placed in general population.

**MATERIAL UNDER SEAL DELETED**

78. Though Jane Jones was transferred back to a women's facility on [redacted], she lives in constant fear of being transferred to a men's prison again.

79. Other than the [redacted] days in which she was housed in the SHU, Jane Jones has never been housed in a men's facility.

80. Before [redacted], Amy Jones had been housed in men's prisons, where she was subjected to sexual and physical assaults.

81. Before [redacted], Barbara Jones was housed in men's prisons, where she experienced severe depression and attempted suicide. Since [redacted], Barbara Jones, has only been housed in women's prisons, where her mental and physical health have improved dramatically.

82. Before Carla Jones was housed in women's prisons, she was subjected to repeated sexual assaults, including at low-security men's prisons.

83. Donna Jones was subjected to sexual assault while incarcerated in a men's prison.

84. If Plaintiffs are transferred to men's facilities, they will face an extremely high risk of sexual victimization and sexual and physical violence. They will not be safe. Evidence, research, case law, and practical experience, including Plaintiffs' own experience, show that transgender women housed in men's prisons face near constant sexual harassment and extremely high levels of violence and sexual assault. Federal regulations recognize transgender status as a risk factor for sexual assault. *See* 28 C.F.R. §§ 115.41(d)(7), 115.42. A 2013 study by the Department of Justice estimated that nearly 35% of transgender inmates in state and federal prisons were sexually assaulted between 2007 and 2012. U.S. Dep't of Justice Off. of Justice Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–12*, NCJ No.

241399, Supplemental Table 1 (2013).[2] From 2011 to 2012, transgender people were sexually assaulted at nearly ten times the rate for the general incarcerated population.[3]

85. In men's facilities, Plaintiffs may also be subjected to humiliating, terrifying, and dangerous circumstances like being strip searched by male correctional officers and forced to shower among men, with their female bodies exposed and vulnerable to sexual violence.

86. Further, Plaintiffs will predictably experience worsening gender dysphoria in men's facilities. They may be forced to wear men's clothing and undergarments, prevented from styling their hair as female, and referred to as men. Treating a transgender woman with gender dysphoria as a man is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

87. Section 4(c) of the Order will also cause Plaintiffs serious, irreparable injury. Section 4(c) eliminates Plaintiffs' ability to continue their medical care, including taking hormone medications to treat their gender dysphoria and that their bodies have adjusted to receiving for years. Specifically, the provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."

88. The BOP is aware that gender dysphoria creates a serious medical need for gender transition treatments, including hormone therapy, and that Plaintiffs each have a serious medical

---

[2] Available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

[3] *Compare id.* (noting a 39.9% sexual victimization rate for transgender people from 2011 to 2012), *with* the full report at 6 (reflecting a 4.0% rate of sexual victimization in the general prison population from 2011 to 2012), available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112.pdf.

need for such treatment. Before January 20, 2025, BOP policy expressly allowed hormone therapy as a treatment for gender dysphoria based on an "individualized assessment" by medical staff.[4] Under that policy, if providers determine that hormone therapy is appropriate for an individual, hormone therapy "will be provided."[5] Consistent with that policy, the BOP has consistently provided hormone therapy to Plaintiffs for years.

89. If Plaintiffs' medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), they will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormones for medical care recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts. This harm is amplified for transgender individuals like Jane Jones who have undergone surgeries that prevent them from producing endogenous hormones.

## V. **Executive Order 14168 Was Motivated by Discriminatory Animus Toward Transgender People**

90. Executive Order 14168 was motivated by a sex-based discriminatory purpose and animus against transgender people. Such animus is evident on the face of the Order.

91. The Order provides no evidence of problems with the prior policy of housing transgender women in female facilities, and entirely disregards extensive documentation of

[4] U.S. Dep't of Just., Transgender Offender Manual § 8.

[5] *Id.*

disproportionate rates of sexual assault and violence against incarcerated transgender people. No urgent safety or security concerns precipitated this dramatic policy shift.

92. President Trump has been transparent about his hostility toward transgender people and has openly stated his intentions to eliminate legal protections for transgender people, to deter them from obtaining medical care, and to prevent them from being able to live in a sex other than their birth sex. On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[6] President Trump pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[7]

93. Throughout his campaign, President Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged,"[8] and victims of "madness"[9]

[6] ABC Action News, *(Full Speech) Former President Trump Announces 2024 Presidential Bid* at 48:40-49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJ1_htE; *id.* at 50:39-53 (indicating he would attempt to ban transgender people from military service).

[7] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, Trump Vance: Make America Great Again! 2025 (Feb. 1, 2023), https://www.donaldjtrump.com/agenda47/president-trumps-plan-to-protect-children-from-left-wing-gender-insanity.

[8] Gabriel Bertrand, *Trump's Shocking Admission Exposes GOP's Bigoted Agenda*, Medium (June 17, 2023), https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f.

[9] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* n.6.

and "insanity."[10] He falsely claimed transgender identity was "never heard of in all of human history"[11] and described transgender healthcare as "mutilation."[12]

94. President Trump's campaign devoted substantial resources to promoting anti-transgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[13] These advertisements comprised over 40% of all pro-Trump campaign messaging in the weeks before the 2024 election.[14]

---

[10] Joe Middleton, *Trump Attacks Transgender Rights at Waco Rally Saying He Will Ban 'Difigurement of Our Youth'*, The Independent (Mar. 26, 2023), https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html; https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; *Trump and Vance Make Anti-Transgender Attacks Central to Their Campaign's Closing Argument*, NBC News (Nov. 1, 2024, 10:23 AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy/donald-trump-jd-vance-transgender-2024-election-rcna178390; https://idahonews.com/news/nation-world/trump-vows-to-remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoeniz-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-trans-gender-lgbt.

[11] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* n.6.

[12] *Id.*

[13] Audrey Kemp, *What Trump's Win – and $215m Worth of Anti-Trans Ads – Mean for the Future of Campaigning*, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[14] Lauren Barrón-López et al., *Why Anti-Transgender Political Ads Are Dominating the Airwaves this Election*, PBS News (Nov. 2, 2024 5:35 PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

95. President Trump's official campaign platform included a "Plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[15]

96. On December 23, 2024, after winning the election, President Trump reaffirmed his intent to implement discriminatory policies through executive action, stating "with a stroke of [his] pen on day one," he would "stop the transgender lunacy" and "get transgender out of the military and out of our elementary schools and middle schools and high schools."[16]

97. Executive Order 14168, issued on President Trump's first day in office, implements these campaign promises virtually verbatim, demonstrating that the discriminatory animus expressed throughout his campaign was the driving force behind the Order's restrictions on medical care and housing.

98. Executive Order 14168 was part of a broader pattern of targeted discrimination against transgender people. Beginning on January 20, 2025, President Trump also issued a series of executive orders specifically reversing protections for transgender people in schools, healthcare, military service, federal funding, shelters, and more. *See, e.g.*, Exec. Order No. 14190, 90 Fed. Reg. 8853 (Jan. 29, 2025) (schools); Exec. Order No. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025) (healthcare); Exec. Order No. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025) (military service); Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (federal funding and shelters).

[15] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, supra n.6.

[16] Azcentral.com and The Arizona Republic, *Turning Point USA Donald Trump Full Speech: The 'Golden age of America' Begins Now, Says Trump*, YouTube (Dec. 23, 2024), https://www.youtube.com/watch?v=XuIeXJw6BA8, at 57:02-24.

99. Since President Trump's inauguration, federal agencies have systematically removed research, data, and information about transgender individuals from government websites. *See*, *e.g.*, Nico Lang, "*Trump Is Purging Federal Websites of LGBTQ+ Content. Here's What's Been Affected So Far*," Them, (Feb. 7, 2025), https://www.them.us/story/trump-administration-federal-websites-lgbtq-content-deleted-cdc-doe-usaid (documenting systematic removal of LGBTQ+ content across federal websites); Judd Legum & Rebecca Crosby, *The NSA's 'Big Delete'* Popular Information (Feb 10, 2025), https://popular.info/p/the-nsas-big-delete?utm_campaign=post&utm_medium=web (revealing directive to eliminate references to "transgender" and "gender identity" from federal websites).

100. The timing, content, and context of Executive Order 14168 demonstrate it was motivated by and implements the same discriminatory animus President Trump repeatedly expressed during his campaign, rather than any legitimate government purpose.

## CLAIMS FOR RELIEF

## COUNT I

### Challenge to Sections 4(a) and 4(c)
### Fifth Amendment to the United States Constitution
### Due Process Clause - Deprivation of Equal Protection of the Laws
### Against All Defendants in Their Official Capacities

101. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

102. Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

103. Sections 4(a) and 4(c) unjustifiably discriminate based on sex. They are facial sex classifications and use explicitly sex-based language to dictate government decision-making. Section 4(a) compels the BOP to exclude "males" from "women's prisons." Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance *to that of the opposite sex*." Section 4(c)'s express purpose is to prohibit all medical treatment deemed inconsistent with birth sex.

104. Sections 4(a) and 4(c) require the BOP to treat incarcerated people differently depending on their sex. Under section 4(a), women who are not transgender can go on living in a women's facility, while otherwise similarly situated transgender women must be transferred to a men's facility based on their male birth sex. Similarly, under Section 4(c), women who are not transgender are able to obtain the same medical treatments that are prohibited if they are prescribed for transgender women.

105. Under the Fifth Amendment, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

106. Sections 4(a) and 4(c) also discriminate based on transgender status. Section 4(a) requires dangerous transfers to men's facilities for all transgender women, solely because they are transgender. Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender.

107. Under the Fifth Amendment, classifications based on transgender status are sex-based classifications that are subject to heightened scrutiny.

108. Classifications based on transgender status are also subject to heightened scrutiny because transgender people constitute a quasi-suspect class. Transgender people are a discrete and identifiable group of people with one shared distinguishing characteristic: they identify and seek to live as a sex different than their birth sex. This defining characteristic bears no relation to a transgender person's ability to contribute to society. Nevertheless, transgender people have faced historical discrimination in law and in fact, and they have been unable to secure equality through the political process.

109. There is no legitimate penological purpose or other legitimate basis for Section 4(a)'s dangerous transfer requirement or Section 4(c)'s categorical healthcare ban.

110. Neither Section 4(a) nor Section 4(c) is narrowly tailored to further a compelling government interest or substantially related to an important government interest.

111. Moreover, Sections 4(a) and 4(c) are not even rationally related to a government interest.

112. The Order was motivated by discriminatory animus against transgender people and therefore fails Equal Protection analysis under any standard of review. Section 2 of the Order patently demonstrates this Administration's hostility toward transgender individuals.

113. The Order cites no urgent safety or security concerns necessitating its implementation. It instead reflects the President's pattern and practice of expressing discriminatory animus towards transgender people, who he has characterized as "deranged," victims of "madness," and "insanity." Even before his inauguration, President Trump was transparent about his goal to "stop the transgender lunacy," with a "stroke of [the] pen, on day one."

114. The Order was the first in a series of executive orders issued by President Trump in his first 10 days in office seeking to eliminate protections for transgender people across multiple domains, including schools, healthcare, military service, federal funding, shelters, and, as here, prisons.

115. The proximity and pattern of these official actions across unrelated domains evidence discriminatory intent without any rational basis for reversing pre-existing protections, signifying animus targeted toward transgender people.

116. Accordingly, these aspects of Executive Order 14168 violate the Fifth Amendment.

117. If Section 4(a) and 4(c) are implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT II

**Challenge to Section 4(a)**
**Eighth Amendment to the United States Constitution**
**Failure to Protect**
**Against All Defendants in Their Official Capacities**

118. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

119. Under the Eighth Amendment, Plaintiffs are entitled to be free from a known and substantial risk of serious harm while in BOP custody.

120. Placing Plaintiffs in men's prisons will pose a substantial risk of serious harm, including an extremely high risk of violence and sexual assault from other incarcerated people and BOP staff. In men's prisons, Plaintiffs will also be at high risk of worsening gender dysphoria, which can lead to serious physical and mental health conditions including severe depression and suicidality. These risks are obvious, well-documented, and well known to BOP officials.

121. The risk of sexual violence to transgender people in prison is recognized in existing federal regulations. 28 C.F.R. § 115.41(d)(7) requires BOP officials to consider an individual's transgender status as a factor increasing their "risk of sexual victimization." An individual's sexual victimization risk must be considered as part of all housing and transfer decisions. *Id.* § 115.41. Decisions about whether to house a transgender person in a men's or women's facility must be made "on a case-by-case basis" to ensure the individual's "health and safety" and the security of the facility. *Id.* § 115.42(c). Given the extremely high safety risks for transgender people in BOP custody, housing placements for transgender people "shall be reassessed at least twice a year to review any threats to safety." *Id.* § 115.42(d).

122. Section 4(a) of the Order contains a citation to 28 C.F.R. § 115.41, indicating that President Trump was aware of transgender women's heightened risk of sexual victimization and the federal regulatory scheme that requires individualized housing placements to ensure their safety. Nevertheless, President Trump intentionally directed the Attorney General to "amend[]" § 115.41 "as necessary" to ensure that all transgender women would be transferred to men's facilities, no matter how dangerous, without regard for their safety and security. The President's intentional disregard of a known and substantial risk of serious harm to transgender women in BOP custody, including Plaintiffs, violates the Eighth Amendment.

123. Defendants are well aware of the grave risks Plaintiffs will face if they are transferred to men's prisons, but they are actively enforcing Section 4(a) and caused BOP officials to transfer Jane Jones to a men's facility at least once already. Their decision to disregard the known and substantial risks of serious harm violates Plaintiffs' rights under the Eighth Amendment.

124. If Section 4(a) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**COUNT III**

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

125. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

126. A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

127. Plaintiffs all have a serious medical need for hormone therapy as treatment for their gender dysphoria, which is a rare and serious health condition. Abrupt termination of this treatment would violate the applicable standard of care and subject Plaintiffs to a known and substantial risk of serious harm.

128. Terminating Plaintiffs' hormone therapies would contravene their medical providers' consistent professional judgment that they need continuous treatment for their gender dysphoria, as the BOP has previously recognized by placing Plaintiffs on these medications. Denying Plaintiffs this medically necessary healthcare would constitute deliberate indifference to their serious medical needs and would violate the Eighth Amendment's prohibition on cruel and unusual punishment.

129. Section 4(c) of the Order, which was issued by President Trump and is being implemented by all other Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment. As such, Section

**MATERIAL UNDER SEAL DELETED**

4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

130. If Section 4(c) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**<u>COUNT IV</u>**

**Challenge to Section 4(a)**
**Rehabilitation Act of 1973, Section 504**
**Failure to Accommodate a Disability**
**Against All Defendants in Their Official Capacities**

131. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

132. Plaintiffs each have a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

133. Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself.

134. Housing Plaintiffs in women's facilities is a reasonable accommodation for their gender dysphoria and is part of the recommended treatment protocol set forth by the applicable standards of care and clinical practice guidelines.

135. Continuing to house Jane Jones at [redacted], Amy Jones in [redacted], Barbara Jones at [redacted], Carla Jones at [redacted], and Donna Jones at [redacted] would not materially impair the safe and efficient operation of these facilities

**MATERIAL UNDER SEAL DELETED**

or the BOP generally, present a safety hazard to any staff or other incarcerated person, threaten the security of the facility, or otherwise cause undue hardship.

136. Continuing to house Jane Jones at [redacted], Amy Jones in [redacted], Barbara Jones at [redacted], Carla Jones at [redacted], and Donna Jones at [redacted] would not fundamentally alter the nature of any service, program, or activity.

137. Involuntarily transferring Plaintiffs to men's facilities under Section 4(a) of the Order would be a cruel and unnecessary revocation of this reasonable accommodation and would deny them equal benefits of correctional and rehabilitative programs and services, including but not limited to safe housing, showers, and healthcare consistent with accepted medical standards. Accordingly, Section 4(a) violates Section 504 of the Rehabilitation Act of 1973.

138. If Section 4(a) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**COUNT V**

**Challenge to Section 4(c)**
**Rehabilitation Act of 1973, Section 504**
**Disability Discrimination**
**Against All Defendants in Their Official Capacities**

139. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

140. Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"—meaning treatments are banned only if they are prescribed to treat gender dysphoria.

141. Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Plaintiffs, from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need. Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

142. If Section 4(c) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT VI

### Challenge to Sections 4(a) and 4(c)
### Administrative Procedure Act
### Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action Taken Without Observance of Procedure Required By Law Against Defendant Lothrop in His Official Capacity

143. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

144. BOP's actions to implement Sections 2, 4(a), and 4(c) of the Executive Order constitute final agency action that has harmed Plaintiffs, affected their legal rights, and subjected them to an imminent risk of further harm.

145. BOP's decision to transfer Plaintiffs to men's facilities and the imminent threat to deny their necessary medical care solely because of their birth sex are unconstitutional.

146. BOP's decision to transfer Plaintiffs to men's facilities solely because of their birth sex and transgender status is arbitrary and capricious.

147. BOP's decision to deny Plaintiffs medically necessary care to treat their gender dysphoria solely because of their birth sex and transgender status is arbitrary and capricious.

148. BOP's decision to transfer Plaintiffs to men's facilities solely because of their birth sex is contrary to law as set forth in 28 C.F.R. §§ 115.41–42.

149. For BOP's first transfer of Jane Jones and any future transfer of Plaintiffs to a men's prison to be lawful, amendments to 28 C.F.R. §§ 115.41–42 would have to be made through notice-and-comment rulemaking. Section 4(a) directs the Attorney General to make such an "amendment," but no amendment has been made at this time. BOP's transfer of Jane Jones and decision to transfer all Plaintiffs to men's facilities prior to a valid amendment to 28 C.F.R. §§ 115.41–42 was made without observance of procedure required by law.

150. BOP's decision to transfer Plaintiffs to men's facilities without conducting an individualized assessment of all relevant circumstances, including their safety, was made without observance of procedure required by law.

151. If Sections 4(a) and 4(c) are implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT VII

**Challenge to Section 4(c)**
**Violation of Separation of Powers**
**Ultra Vires Presidential Action in Excess of Authority**
**Usurping the Legislative Function**
**Violation of Bicameralism and Presentment Clauses**
**Against All Defendants in Their Official Capacities**

152. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

153. Defendants, as part of the Executive branch of the United States government, cannot directly and unilaterally amend or cancel appropriations Congress has duly enacted, nor can Defendants order federal agencies to do so.

154. BOP receives federal funds to provide necessary medical care to incarcerated people, including medically necessary treatment for gender dysphoria. Section 4(c) of the Executive Order directs the withholding of this funding: by its terms, the Attorney General "shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." The Executive Order issues this directive without regard to any statute regarding funds appropriated to the Bureau of Prisons, or any applicable regulations.

155. By directing the Bureau of Prisons to terminate or withhold congressionally appropriated funds based on the President's own policy preferences, Section 4(c) of the Executive Order attempts to amend, repeal, rescind, or circumvent duly enacted federal appropriations.

156. By directing the Bureau of Prisons to terminate or withhold congressionally appropriated funds, Section 4(c) of the Executive Order attempts to allocate public funds to advance the President's policy preferences, rather than those of Congress. These actions exceed the President's Article II powers, unconstitutionally infringe upon Congress's powers, and attempt to amend federal legislation while bypassing Article I's Bicameralism and Presentment Clauses.

157. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that Section 4(c) of the Executive Order violates the separation of powers and impermissibly arrogates to the Executive power that is reserved to Congress.

158. Plaintiffs are further entitled to an injunction preventing Defendants from enforcing or implementing Section 4(c) of the Executive Order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(1) Issue a judgment under 28 U.S.C. §§ 2201–02 declaring that Sections 4(a) and 4(c) of Executive Order 14168 violate Plaintiffs' rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, and the Administrative Procedure Act for the reasons and on the Counts set forth above;

(2) Enter a permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from enforcing Sections 4(a) and 4(c) of Executive Order 14168, and requiring Defendants to maintain Plaintiffs' housing and medical treatment consistent with the status quo;

(3) Award Plaintiffs nominal damages, as well as their costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 12205, and other applicable laws; and

(4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jennifer Fiorica Delgado
Jennifer Fiorica Delgado (Bar No. NY296)
Alexander Shalom (admission forthcoming)
Natalie Kraner (admission forthcoming)
Wayne Fang (*pro hac vice*)
Markiana J. Julceus (*pro hac vice*)
**Lowenstein Sandler LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
jdelgado@lowenstein.com
ashalom@lowenstein.com
nkraner@lowenstein.com
wfang@lowenstein.com
mjulceus@lowenstein.com

Jennifer L. Levi (*pro hac vice*)
Sarah Austin (*pro hac vice*)
**GLBTQ Legal Advocates & Defenders**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (*pro hac vice* forthcoming)
Amy Whelan (*pro hac vice* forthcoming)
**National Center for Lesbian Rights**
870 Market Street, Suite 370
San Francisco, CA 94102
(415) 392-6257
cstoll@nclrights.org
awhelan@nclrights.org

# EXHIBIT 2

**MATERIAL UNDER SEAL DELETED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

JANE DOE; MARY DOE; SARA DOE; EMILY DOE; ZOE DOE; TORI DOE; OLIVIA DOE; SUSAN DOE; LOIS DOE; SOPHIA DOE; SALLY DOE; WENDY DOE; RACHEL DOE; and ELLEN DOE

Plaintiffs,

v.

PAMELA BONDI, *in her official capacity* as Attorney General of the United States; and WILLIAM LOTHROP, *in his official capacity* as Acting Director of the Federal Bureau of Prisons,

Defendants.

Case No.: 1:25-cv-00286-RCL

**SECOND AMENDED COMPLAINT**

1. This Action is a federal statutory and constitutional challenge to Sections 4(a) and 4(c) of Executive Order 14168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," (the "Order") which President Donald Trump issued just hours after his inauguration on January 20, 2025. The Order directly targets transgender individuals and attempts to strip them of established legal protections. Under Sections 4(a) and 4(c) of the Order, all transgender women who are incarcerated in federal prisons will be transferred to men's facilities, regardless of safety concerns, and all transgender people who are incarcerated in federal prisons will be denied medically necessary healthcare for gender dysphoria.

2. Plaintiff Jane Doe is a transgender woman incarcerated in a [redacted] for women located in [redacted] Jane is diagnosed with gender dysphoria, a rare but serious medical condition and

**MATERIAL UNDER SEAL DELETED**

disability. The medical standard of care for treatment of gender dysphoria is to allow a transgender person to live in a sex different than their birth sex through medications, surgical care, and social transition.

3. Consistent with this standard of care, Jane has lived as a woman and has taken hormones continuously for nearly a decade. She is currently housed in a women's facility [redacted]

4. Pursuant to [redacted] and the recommendations of BOP staff members, Jane has been housed in a women's facility since [redacted]. She has been designated as a minimum recidivism risk, poses no threat to her female peers, and her presence in the women's facility has not caused any disruption or interference with prison operations.

5. If Jane is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She has previously been sexually assaulted in BOP men's facilities before she was moved to a women's facility. If transferred, she may also be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

6. Plaintiff Mary Doe is a transgender woman who is also incarcerated at [redacted] and is diagnosed with gender dysphoria.

7. Consistent with the standard of care, Mary has lived as a woman and has taken hormones for [redacted]. She has been housed in a women's

**MATERIAL UNDER SEAL DELETED**

facility for [redacted]. Prior to that she was housed in women's facilities in [redacted].

8. If Mary is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. When she was previously housed in BOP men's facilities, she was raped multiple times. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

9. Plaintiff Sara Doe is a transgender woman who is incarcerated at [redacted] and is diagnosed with gender dysphoria. She also has [redacted].

10. Consistent with the standard of care, Sara has lived as a woman and has taken hormones for several years, including [redacted]. Prior to her incarceration, she had several surgeries, including [redacted]. Since her arrest [redacted].

11. If Sara is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated, and her breasts and female genitalia will be exposed and vulnerable to sexual harassment, assault, and rape.

**MATERIAL UNDER SEAL DELETED**

12. In a men's facility, Sara will also predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including worsening [redacted] and dramatically increased risks of suicidality and depression.

13. Plaintiff Emily Doe is a transgender woman who is incarcerated at [redacted] and is diagnosed with gender dysphoria.

14. Consistent with the standard of care, she has lived as a woman, been treated as a woman, and taken hormones for over [redacted] years, all while in BOP custody. When Emily was housed in male facilities, she was not able to participate in programming due to her fears about her safety, and she [redacted]. She was transferred to [redacted] by BOP's Transgender Executive Committee in [redacted]. Since being housed at a female facility, she has started [redacted].

15. If Emily is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

16. Plaintiff Zoe Doe is a transgender woman who is incarcerated in [redacted]. Zoe Doe is diagnosed with gender dysphoria.

17. Consistent with the standard of care, Zoe has lived as a woman and has taken hormones since [redacted] She was first diagnosed with "gender identity disorder" in [redacted] by a psychiatrist. She has repeatedly been diagnosed with gender dysphoria by BOP medical

**MATERIAL UNDER SEAL DELETED**

personnel as well. She has been housed in a federal women's facility for [redacted]

18. If Zoe were transferred to a men's facility, she would not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria without medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

19. Plaintiff Tori Doe is a transgender woman who is also incarcerated in [redacted] Tori is diagnosed with gender dysphoria.

20. Consistent with the standard of care, Tori has lived as a woman and has taken hormones for more than [redacted]. In [redacted] prior to her incarceration, [redacted] Tori has been treated as a woman by federal correctional officials and has been housed in a women's facility for over [redacted].

21. If Tori is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She has previously experienced sexual assault and sexual harassment while housed in a men's facility. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view

MATERIAL UNDER SEAL DELETED

of men who are incarcerated. And she will predictably experience worsening gender dysphoria without medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

22. Plaintiff Olivia Doe is a transgender woman who is incarcerated at [redacted] and is diagnosed with gender dysphoria.

23. Consistent with the standard of care, Olivia has lived as a woman and has taken hormones since [redacted]. When Olivia entered BOP custody, her hormone treatment abruptly ended. But her treatment was eventually restored, and she has been consistently receiving hormones again [redacted]. Olivia has been housed at a female facility since [redacted].

24. If Olivia is transferred to a men's facility, she will not be safe. When previously housed in BOP men's facilities, Olivia was brutally raped; [redacted] She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

25. Plaintiff Susan Doe is a transgender woman who is incarcerated at [redacted]. She is diagnosed with gender dysphoria.

26. Consistent with the standard of care, Susan has lived as a woman for over [redacted] years. She has known she was a woman for a very long time, and she has been taking hormones since [redacted] Susan was transferred to [redacted] by BOP's Transgender Executive

**MATERIAL UNDER SEAL DELETED**

Committee in [redacted]. Since being placed in a women's facility, she finally feels like she can move around without worrying about being attacked and needing to defend herself.

27. If Susan is transferred to a men's facility, she will not be safe. When previously housed in BOP men's facilities, she was the victim of an attempted rape and was always on alert to guard against being attacked. [redacted]. If returned to a male facility, Susan may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

28. Plaintiff Lois Doe is a transgender woman who is incarcerated at [redacted]. She is diagnosed with gender dysphoria.

29. Consistent with the standard of care, Lois has lived as a woman and been taking hormones since [redacted]. She began dressing as a woman and feminizing her voice and her hair at that time. Lois was transferred to [redacted] by BOP's Transgender Executive Committee in [redacted].

30. If Lois is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. When she was previously housed with men at a [redacted], Lois was raped [redacted] At a male BOP facility, Lois may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. In a men's facility, she will also predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including worsening anxiety and dramatically increased risks of suicidality and depression.

**MATERIAL UNDER SEAL DELETED**

31. Plaintiff Sophia Doe is a transgender woman who is incarcerated at [redacted]. She is diagnosed with gender dysphoria.

32. Consistent with this standard of care, Sophia has been living as a woman and presenting as a woman for over [redacted] years. She has taken hormones for more than [redacted] years, [redacted]. Sophia has had persistent gender dysphoria since she was a child. Sophia has been housed in a women's facility for over [redacted].

33. If Sophia is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

34. Plaintiff Sally Doe is a transgender woman who is incarcerated at [redacted] and is diagnosed with gender dysphoria.

35. Consistent with the standard of care, Sally has received hormone treatment for [redacted] and she receives [redacted]. She was transferred to [redacted] in [redacted]. Sally has had gender dysphoria since childhood. She has suffered with [redacted] for most of her life. Treatment for her gender dysphoria has been the only effective way of alleviating those symptoms.

36. If Sally is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria

**MATERIAL UNDER SEAL DELETED**

exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

37. Plaintiff Wendy Doe is a transgender woman who is incarcerated at [redacted] and is diagnosed with gender dysphoria.

38. Consistent with the standard of care, Wendy has been living as a woman and taking hormones since [redacted] In [redacted], before entering BOP custody, Wendy received [redacted]. Since entering BOP custody in [redacted] Wendy [redacted].

39. Wendy has been living at [redacted]

40. If Wendy is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

41. In addition to facing immediate transfers to men's facilities, Plaintiffs are at imminent risk of losing access to the medical care they each need to treat their gender dysphoria. Executive Order 14168 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people. The Order

**MATERIAL UNDER SEAL DELETED**

categorically bans transgender healthcare regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to independent medical judgment. This blanket ban will deprive Plaintiffs of essential treatment, putting them at high risk of serious harm.

42. Plaintiff Rachel Doe is a transgender woman who is incarcerated in [redacted]. Rachel was diagnosed with gender dysphoria in [redacted] when she was [redacted].

43. Consistent with the standard of care, Rachel has lived as a woman since then and been on hormones [redacted]

44. Until [redacted], Rachel had been housed in women's facilities while in federal custody. [redacted] On [redacted], Rachel was sent to [redacted] where she was again housed with women.

45. On or about [redacted], BOP transferred Rachel from the women's side to the men's side of [redacted]. In early [redacted], BOP transferred her to [redacted] which houses only men. When she left [redacted] Rachel was subjected to a visual strip search by two male officers with no female officers present. In front of these two men, Rachel had to remove all of her clothes and while nude, lift her breasts, bend over, squat, spread her behind and genital area with her hands, and cough. Since being housed with men, Rachel has experienced daily sexual harassment by male inmates. When she walks to the facility to get her meals, men stare, whistle, clap, and knock on their windows. Several male inmates have told her

**MATERIAL UNDER SEAL DELETED**

verbally and in writing to meet them in various places in the prison for sex. She has reported these incidents [redacted]

46. Rachel also has not been issued a bra or women's underwear, and she is unable to access those items through commissary. These deprivations are exacerbating Rachel's gender dysphoria and placing her at a heightened risk of sexual assault.

47. BOP has denied Rachel her hormone treatment since she arrived at [redacted]. She is being denied this medication [redacted]. As a direct result of these deprivations of medical care, Rachel currently faces a serious risk of medical injury and complications.

48. Plaintiff Ellen Doe is a transgender woman who is incarcerated in [redacted]. Ellen was diagnosed with gender dysphoria [redacted].

49. Consistent with the standard of care, Ellen has been living as a woman and receiving hormone treatment for [redacted], all while in BOP custody. Prior to February 2025, Ellen had been housed with women for two years at [redacted] pursuant to the recommendation of the Transgender Executive Council. Ellen was also in the process of being evaluated [redacted].

50. In [redacted], BOP transferred Ellen to [redacted] and then to [redacted], which houses only men. When she left [redacted] and again when she arrived at [redacted], Ellen was subjected to a visual strip search by male officers. Since arriving in [redacted] Ellen has been propositioned for sex and threatened by inmates. She is terrified of

**MATERIAL UNDER SEAL DELETED**

being assaulted in her room or in the shower, which have no locks. When Ellen was previously housed in a men's facility, she [redacted]

51. Ellen has not been issued a bra or women's underwear, and she is unable to access those items through commissary. These deprivations are exacerbating Ellen's gender dysphoria and placing her at a heightened risk of sexual assault.

52. Although Ellen is still receiving her hormone treatment, she is at imminent risk of losing access to this medical care she needs to treat her gender dysphoria. Executive Order 14168 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people. The Order categorically bans transgender healthcare regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to independent medical judgment. This blanket ban will deprive Ellen of essential treatment, putting her at high risk of serious harm.

53. Plaintiffs bring claims for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; the Separation of Powers; and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Plaintiffs seek declaratory and injunctive relief to enjoin enforcement of Sections 4(a) and 4(c) of Executive Order 14168. Without the injunctive relief sought, Plaintiffs will experience irreparable injury.

## JURISDICTION AND VENUE

54. This action arises under the Constitution and statutes of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**MATERIAL UNDER SEAL DELETED**

55. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

56. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the Defendants are domiciled in this district.

## PARTIES

57. Plaintiff Jane Doe is a transgender woman. She is incarcerated in [redacted] Jane Doe is a pseudonym.

58. Plaintiff Mary Doe is a transgender woman. She is incarcerated in [redacted]. Mary Doe is a pseudonym.

59. Plaintiff Sara Doe is a transgender woman. She is incarcerated in [redacted] Sara Doe is a pseudonym.

60. Plaintiff Emily Doe is a transgender woman. She is incarcerated in [redacted]. Emily Doe is a pseudonym.

61. Plaintiff Olivia Doe is a transgender woman. She is incarcerated in [redacted] Olivia Doe is a pseudonym.

62. Susan Doe is a transgender woman. She is incarcerated [redacted]. Susan Doe is a pseudonym.

63. Lois Doe is a transgender woman. She is incarcerated at [redacted]. Lois Doe is a pseudonym

64. Plaintiff Sally Doe is a transgender woman. She is incarcerated in [redacted]. Sally Doe is a pseudonym.

**MATERIAL UNDER SEAL DELETED**

65. Plaintiff Sophia Doe is a transgender woman. She is incarcerated [redacted]. Sophia Doe is a pseudonym.

66. Plaintiff Sally Doe is a transgender woman. She is incarcerated at [redacted]. Sally Doe is a pseudonym.

67. Wendy Doe is a transgender woman. She is incarcerated [redacted]. Wendy Doe is a pseudonym.

68. Zoe Doe is a transgender woman. She is incarcerated [redacted]. Zoe Doe is a pseudonym.

69. Tori Doe is a transgender woman. She is incarcerated [redacted]. Tori Doe is a pseudonym.

70. Rachel Doe is a transgender woman. She is incarcerated at [redacted]. Rachel Doe is a pseudonym.

71. Ellen Doe is a transgender woman. She is incarcerated at [redacted]. Ellen Doe is a pseudonym.

72. Defendant Pamela Bondi is sued in her official capacity as Attorney General of the United States. The Attorney General oversees the Department of Justice, including the Federal Bureau of Prisons (BOP), and has responsibility for overseeing the enforcement and implementation of Sections 4(a) and 4(c) of Executive Order 14168 with respect to the Bureau of Prisons.

/ / /

/ / /

/ / /

**MATERIAL UNDER SEAL DELETED**

73. Defendant William Lothrop is sued in his official capacity as Acting Director of the Federal Bureau of Prisons. The Acting Director of BOP has responsibility for overseeing enforcement and implementation of Executive Order 14168 by all BOP staff.

## FACTS

### Plaintiffs' Sudden and Unjustified Removal from General Population and Risk of Transfer to a Men's Facility

74. BOP maintains separate housing facilities for men and women. Before January 20, 2025, BOP applied an individualized assessment process to determine appropriate housing for transgender women, consistent with the safety and security of all individuals and pursuant to the federal Prison Rape Elimination Act (PREA) and its implementing regulations. Based on this assessment, transgender women may be housed in women's facilities when doing so promotes safety and security.[1]

75. On January 20, 2025, President Trump issued an Executive Order directing the BOP to disregard its established policy and any associated safety and security risks concerning the housing and care of transgender women.

76. On January 24, 2025, pursuant to this Executive Order, the BOP removed Plaintiffs Jane Doe, Mary Doe, and the other Plaintiffs incarcerated at [redacted] from the general population of [redacted].

77. BOP officials placed Plaintiffs in separate housing with other transgender women. All of these women, including Plaintiffs, were told they were removed from general population because of the Executive Order.

---

[1] U.S. Dep't of Just., Transgender Offender Manual §§ 5–6 (2022), *see* Dkt. 11-3.

**MATERIAL UNDER SEAL DELETED**

78. Plaintiffs were also informed that they would be imminently transferred to men's facilities because of the Executive Order. When they were placed into the segregated unit, BOP officials told them they would be transferred no later than Thursday, January 30, 2025. BOP officials told several of the Plaintiffs that the transfer paperwork had already been processed.

79. On January 28, 2025, after transgender individuals at [redacted] began contacting counsel, the Plaintiffs at [redacted] were returned to general population housing but continued to be told that they would be imminently transferred to men's facilities.

80. Similarly, on January 25, 2025, the BOP removed Sara Doe from the general population at [redacted]. BOP officials allowed Sara to make a phone call to her family and then placed her in the Special Housing Unit (SHU) with another transgender woman.

81. BOP officials told Sara Doe that she was being transferred to a men's facility, and that her cell was being cleaned out and she would not be permitted to return.

82. Sara Doe's mother and sister emailed [redacted] on January 25, 2025, to request that they reconsider the decision to transfer Sara to a men's prison. They wrote: "Sending her to an all-male prison will be the end of her. No one deserves this. There needs to be another way, we beg for your sympathy. She will get sexually assaulted and even possibly killed for being who she is. She is a citizen designated as a female and deserves protection like any other human. . . . This could mean life or death and she has not received a death penalty as her sentence."

83. In response to the email from Sara Doe's family, the BOP stated that they could not house Sara at [redacted] or any other women's facility because of the Executive Order.

MATERIAL UNDER SEAL DELETED

84. On about January 29, 2025, Sara Doe was returned to the women's general population at [redacted]. Upon information and belief, Sara still faces imminent transfer to a men's facility.

85. Similarly, on or about January 24, 2025, pursuant to the Executive Order, the BOP removed Olivia Doe, Susan Doe, and the other Plaintiffs at [redacted] from the general population of that facility.

86. BOP officials placed these women in separate housing. BOP officials told these women that because of the Executive Order, they had to place all transgender female inmates into special housing pending transfer to a male facility.

87. On or about February 5, 2025, the Plaintiffs at [redacted] were returned to general population housing. BOP officials continue to state that they will be imminently transferred to men's facilities.

88. On February 20, 2025, BOP officials at [redacted] called the transgender women incarcerated at [redacted], including many of the Plaintiffs at that facility, into the warden's office. They were told that the Department of Justice had called the warden that morning and directed the warden to transfer all of them to men's facilities. The women were told that the transfers could happen as early as Monday, February 24, 2025, and that their medical treatment would be cut off in the men's facilities. Each of the women met with psychology staff for suicide assessments before being sent back to their units.

89. On or about February 21, 2025, BOP officials at [redacted] told Susan Doe, Lois Doe, and Olivia Doe that they were all being transferred to male facilities imminently.

**MATERIAL UNDER SEAL DELETED**

90. Plaintiffs' removal from general population, placement in segregated housing, and anticipated transfer to men's facilities have caused them significant distress and raise serious and imminent concerns regarding their safety and well-being.

**Plaintiffs Rachel and Ellen Doe's Transfer to a Men's Facility**

91. In early March 2025, BOP transferred Rachel and Ellen Doe to [redacted], a men's facility.

92. During the transfer, both of them were subjected to visual strip searches by male officers. Rachel and Ellen thus had to strip completely nude in front of male officers and lift up their breasts, bend over, spread their genital area, and remain completely exposed in the nude in front of men.

93. Being housed in a men's facility places Rachel and Ellen at an immediate risk of physical and sexual assault. Both Rachel and Ellen are being subjected to daily verbal sexual harassment by men in the facility, who whistle, clap, ogle, and bang on the windows of their rooms when Rachel or Ellen walk by.

94. They are housed in a room that does not lock, and they use the bathroom and shower in a room that does not lock.

95. Rachel and Ellen have both been propositioned for sex multiple times. [redacted] about one sexual solicitation she received and reported. Both women are frightened of being sexually assaulted.

96. Rachel and Ellen are also at serious risk of worsening gender dysphoria in men's facilities. Treating transgender women with gender dysphoria as men is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

**Gender Dysphoria**

97. Gender dysphoria is a serious medical condition marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex. The condition is highly treatable. When left untreated, however, it causes serious physical and emotional harms.

98. Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

99. The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

100. The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows a transgender person to live in their target sex. These protocols are endorsed by the major medical and mental health associations in the United States, including but not limited to the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

101. Under these accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications (including hormones), and a range of surgeries. The treatment prescribed for a particular patient depends on an individualized assessment of the patient's health and needs. Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

**Executive Order 14168 Will Cause Plaintiffs Irreparable Injury**

102. Executive Order 14168 began causing harm to Plaintiffs almost immediately. As a result of the Order, they have already suffered significant distress. The Order also raises serious concerns for their safety and well-being going forward.

103. Section 2 of the Order includes a definition of "sex" that is intentionally designed to discriminate against transgender people. Specifically, Section 2 of the Order defines "sex" as "an individual's immutable biological classification as either male or female." In turn, it defines "male" as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "female" as "a person belonging, at conception, to the sex that produces the large reproductive cell." It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

104. Section 4(a) of the Order then directs federal agencies to implement this discriminatory provision, including requiring the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security. That section acknowledges that the requirement contradicts federal regulations found at 28 C.F.R. § 115.41.

105. Evidence, research, case law, and practical experience show that transgender women housed in men's prisons face near constant sexual harassment and extremely high levels of violence and sexual assault. Federal regulations recognize transgender status as a risk factor for sexual assault. *See* 28 C.F.R. §§ 115.41(d)(7), 115.42(c)–(g). A 2013 study by the Department of Justice estimated that nearly 35% of transgender people in state and federal prisons were sexually assaulted between 2007 and 2012. U.S. Dep't of Justice Off. of Justice Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–12*, NCJ No. 241399, Supplemental Table 1 (2013).[2] From 2011 to 2012, transgender people were sexually assaulted at nearly ten times the rate for the general incarcerated population.[3]

---

[2] Available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

[3] *Compare id.* (noting a 39.9% sexual victimization rate for transgender people from 2011 to 2012), *with* the full report at 6 (reflecting a 4.0% rate of sexual victimization in the general

106. Further, Plaintiffs will predictably experience worsening gender dysphoria in men's facilities. They may be forced to wear men's clothing and undergarments, prevented from styling their hair as female, referred to as men, and addressed by their stereotypically male former names. Treating transgender women with gender dysphoria as men is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

107. Section 4(c) of the Order will also cause Plaintiffs serious, irreparable injury. That provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Section 4(c) eliminates Plaintiffs' ability to continue taking hormone medications to treat their gender dysphoria, which their bodies have adjusted to receiving.

108. The BOP is aware that each of the Plaintiffs has a diagnosis of gender dysphoria, that gender dysphoria is a serious medical condition requiring treatment, and that Plaintiffs have a serious medical need for such treatment. BOP policy expressly allows hormone medication as a treatment for gender dysphoria based on an "individualized assessment" by medical staff.[4] If providers determine that hormone medications are appropriate for an individual, that medication "will be provided."[5] Consistent with this policy, upon information and belief, the BOP has consistently provided hormone medications to Plaintiffs for years pursuant to treatment plans determined by BOP medical and mental health staff.

---

prison population from 2011 to 2012), available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112.pdf.

[4] U.S. Dep't of Just., Transgender Offender Manual § 8 (2022), *see* Dkt. 11-3.

[5] *Id.*

109. If Plaintiffs' medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), they will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormone medications recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts. Some of the Plaintiffs who have had surgery to treat their gender dysphoria can no longer produce hormones on their own. Without prescription hormone medication, these Plaintiffs will not have sufficient hormones of any kind in their systems, which will lead to serious medical difficulties.

**Executive Order 14168 Facially Classifies Based on Sex and Transgender Status and Was Motivated By Discriminatory Animus**

110. Executive Order 14168 classifies individuals on the basis of sex and transgender status. It was motivated by a sex-based discriminatory purpose and animus against transgender people.

111. President Trump has been transparent about his hostility toward transgender people and openly stated his intentions to eliminate legal protections for transgender people and to deter them from obtaining medical care or being able to live in a sex other than their birth sex. On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[6] He pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[7]

---

[6] ABC Action News, *(Full Speech) Former President Trump Announces 2024 Presidential Bid* at 48:40-49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJ1_htE; *id.* at 50:39-53 (suggesting he would attempt to ban transgender people from military service).

[7] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, Trump Vance: Make America Great Again! 2025 (Feb. 1, 2023), https://www.donaldjtrump.com/agenda47/president-trumps-plan-to-protect-children-from-left-

112. Throughout his campaign, President Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged"[8] and as victims of "madness"[9] and "insanity."[10] He falsely claimed transgender identity was "never heard of in all of human history" and described transgender healthcare as "mutilation."[11]

113. President Trump's campaign devoted substantial resources to promoting anti-transgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[12] These advertisements comprised over 40 percent of all pro-Trump campaign messaging in the weeks before the 2024 election.[13]

---

wing-gender-insanity.

[8] Gabriel Bertrand, *Trump's Shocking Admission Exposes GOP's Bigoted Agenda*, Medium (June 17, 2023), https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f.

[9] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[10] Jackson Walker, *Trump vows to remove 'transgender insanity' and critical race theory from US schools*, IdahoNews (Dec. 23, 2024, 8:37AM), https://idahonews.com/news/nation-world/trump-vows-to-remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoeniz-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-trans-gender-lgbt; *Trump and Vance make anti-transgender attacks central to their campaign's closing argument*, NBC News (Nov. 1, 2024, 10:23 AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy/donald-trump-jd-vance-transgender-2024-election-rcna178390; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; Gabriel Bertrand, *supra* note 8; Joe Middleton, *Trump attacks transgender rights at Waco rally saying he will ban 'disfigurement of our youth'*, The Independent (Mar. 26, 2023), https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html.

[11] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[12] Audrey Kemp, *What Trump's win – and $215m worth of anti-trans ads – mean for the future of campaigning*, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[13] Lauren Barrón-López et al., *Why anti-transgender political ads are dominating the airwaves this election*, PBS News (Nov. 2, 2024 5:35 PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

114. President Trump's official campaign platform included a "Plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[14]

115. On December 23, 2024, after winning the election, President Trump reaffirmed his intent to implement discriminatory policies through executive action, stating "with a stroke of [his] pen on day one," he would "stop the transgender lunacy" and "get transgender out of the military and out of our elementary schools and middle schools and high schools."[15]

116. Executive Order 14168, issued on President's Trump's first day in office, implements these campaign promises, demonstrating that the discriminatory animus expressed throughout his campaign was the driving force behind the Order's restrictions on medical care and housing for incarcerated transgender people.

117. The timing, content, and context of Executive Order 14168 demonstrate it was motivated by and implements the same discriminatory animus President Trump repeatedly expressed during his campaign, rather than any legitimate government purpose.

## CLAIMS FOR RELIEF

## COUNT I

**Challenge to Sections 4(a) and 4(c)**
**Fifth Amendment to the United States Constitution**
**Due Process Clause - Deprivation of Equal Protection of the Laws**
**Against All Defendants in Their Official Capacities**

118. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

---

[14] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[15] Azcentral.com and The Arizona Republic, *Turning Point USA Donald Trump full speech: The 'golden age of America' begins now, says Trump*, YouTube (Dec. 23, 2024), https://www.youtube.com/watch?v=XuIeXJw6BA8, at 57:02-24.

119. Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

120. Sections 4(a) and 4(c) unjustifiably discriminate based on sex. They are facial sex classifications and use individuals' birth sex to determine their housing placements and available medical care. Section 4(a) compels the BOP to exclude "males" from "women's prisons." Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance *to that of the opposite sex*." Section 4(c)'s express purpose is to deter all medical treatment deemed inconsistent with birth sex.

121. Sections 4(a) and 4(c) require BOP to treat incarcerated people differently depending on their birth sex. Under section 4(a), transgender women must be transferred to a men's facility based on their birth sex, while other women may remain in women's facilities. Similarly, under Section 4(c), transgender women are prohibited from obtaining medical treatments that are permitted for other women.

122. Under the Fifth Amendment, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

123. Sections 4(a) and 4(c) also discriminate based on transgender status. Section 4(a) requires dangerous transfers to men's facilities for all transgender women, solely because they are transgender. Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender. Discrimination based on transgender status is sex discrimination subject to heightened scrutiny.

124. Classifications based on transgender status are also subject to heightened scrutiny because transgender people constitute a quasi-suspect class. Transgender people are a discrete and identifiable group of people with one shared distinguishing characteristic: they identify and

seek to live as a sex different than their birth sex. This defining characteristic bears no relation to a transgender person's ability to contribute to society. Nevertheless, transgender people have faced historical discrimination in law and in fact, and they have been unable to secure equality through the political process.

125. There is no legitimate penological purpose or other legitimate basis for Section 4(a)'s dangerous transfer requirement or Section 4(c)'s categorical healthcare ban.

126. Neither Section 4(a) nor Section 4(c) is narrowly tailored to further a compelling government interest or substantially related to an important government interest. Sections 4(a) and 4(c) are not even rationally related to a government interest. Accordingly, these aspects of Executive Order 14168 violate the Fifth Amendment.

127. Finally, Sections 4(a) and 4(c) are motivated by discriminatory animus and are unconstitutional under any level of scrutiny.

128. If Section 4(a) and 4(c) are implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT II

**Challenge to Section 4(a)**
**Eighth Amendment to the United States Constitution**
**Failure to Protect**
**Against All Defendants in Their Official Capacities**

129. Plaintiff incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

130. Under the Eighth Amendment, Plaintiffs are entitled to be free from a known and substantial risk of serious harm while in BOP custody.

131. Transferring Plaintiffs to men's prisons will pose a substantial risk of serious harm, including an extremely high risk of violence and sexual assault from other incarcerated people and BOP staff. In a men's prison, Plaintiffs will also be at high risk of worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious physical and mental health conditions including severe depression and suicidality. These risks are obvious, well documented, and well known to BOP officials.

132. The risk of sexual violence to transgender people in prison is recognized in existing federal regulations. 28 C.F.R. § 115.41(d)(7) requires BOP officials to consider an individual's transgender status as a factor increasing their "risk of sexual victimization." An individual's sexual victimization risk must be considered as part of all housing and transfer decisions. *Id.* §§ 115.41, 115.42(a). Decisions about whether to house a transgender person in a men's or women's facility must be made "on a case-by-case basis" to ensure the individual's "health and safety" and the security of the facility. *Id.* § 115.42(c). Given the extremely high safety risks for transgender people in BOP custody, housing placements for transgender people "shall be reassessed at least twice each year to review any threats to [their] safety." *Id.* § 115.42(d).

133. Section 4(a) of the Order contains a citation to 28 C.F.R. § 115.41, indicating that President Trump was aware of transgender women's heightened risk of sexual victimization and the federal regulatory scheme that requires individualized housing placements to ensure their safety. Nevertheless, the Order intentionally directed the Attorney General to "amend[]" § 115.41 "as necessary" to ensure that all transgender women would be transferred to men's facilities, no matter how dangerous, without regard for their individual safety and security. The

Order's intentional disregard of a known and substantial risk of serious harm to transgender women in BOP custody, including Plaintiffs, violates the Eighth Amendment.

134. Defendants are well aware of the grave risks Plaintiffs will face if they are transferred to men's prisons, but they are actively implementing Section 4(a) and have caused BOP officials to initiate Plaintiffs' transfers anyway. Their decision to disregard the known and substantial risks of serious harm violates Plaintiffs' rights under the Eighth Amendment.

135. If Section 4(a) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT III

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

136. Plaintiffs incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

137. A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

138. Plaintiffs have serious medical needs for hormone therapy as treatment for their gender dysphoria, which is a rare and serious health condition. Abrupt termination of this treatment would violate the applicable standard of care and subject Plaintiffs to a known and substantial risk of serious harm.

139. Terminating Plaintiffs' hormone therapy and other transition treatments would contravene their medical providers' consistent professional judgment that they need continuous

treatment for their gender dysphoria. Denying Plaintiffs this medically necessary healthcare would constitute deliberate indifference to their serious medical needs and would violate the Eighth Amendment's prohibition on cruel and unusual punishment.

140. Section 4(c) of the Order, which is being implemented by Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment. As such, Section 4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

141. If Section 4(c) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT IV

**Challenge to Section 4(a)**
**Rehabilitation Act of 1973, Section 504**
**Failure to Accommodate a Disability**
**Against All Defendants in Their Official Capacities**

142. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

143. Plaintiffs have a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

144. Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself, among others.

145. Housing Plaintiffs in women's facilities is a reasonable accommodation for their gender dysphoria and is part of the recommended treatment protocol set forth by the applicable standards of care and clinical practice guidelines.

146. Involuntarily transferring Plaintiffs to men's facilities under Section 4(a) of the Order would be a cruel and unnecessary revocation of this reasonable accommodation and would deny them equal benefits of correctional and rehabilitative programs and services, including but not limited to safe housing, showers, and healthcare consistent with accepted medical standards. Accordingly, Section 4(a) violates Section 504 of the Rehabilitation Act of 1973.

147. If Section 4(a) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT V

**Challenge to Section 4(c)**
**Rehabilitation Act of 1973, Section 504**
**Disability Discrimination**
**Against All Defendants in Their Official Capacities**

148. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

149. Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"—meaning treatments are banned only if they are prescribed to treat gender dysphoria.

150. Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Plaintiffs, from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need. Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

151. If Section 4(c) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT VI

**Challenge to Sections 4(a) and 4(c)**
**Administrative Procedure Act**
**Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action**
**Taken Without Observance of Procedure Required By Law**
**Against All Defendants in Their Official Capacities**

152. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

153. Defendants' actions to implement Sections 4(a) and 4(c) of the Executive Order constitute final agency action that has harmed Plaintiffs, affected their legal rights, and subjected them to an imminent risk of further harm.

154. Defendants' decision to transfer Plaintiffs to men's facilities and the imminent threat to deny their necessary medical care solely because of their birth sex and transgender status are unconstitutional and violate their federal statutory rights.

155. Defendants' decision to transfer Plaintiffs to men's facilities solely because of their birth sex and transgender status is arbitrary and capricious.

156. Defendants' decision to deny Plaintiffs medically necessary care to treat their gender dysphoria solely because of their birth sex and transgender status is arbitrary and capricious.

157. Defendants' decision to transfer Plaintiffs to men's facilities solely because of their birth sex and transgender status is contrary to law as set forth in 28 C.F.R. §§ 115.41–42 and in 29 U.S.C. § 794.

158. Defendants' segregation of Plaintiffs in separate housing with only transgender women is contrary to law as set forth in 28 C.F.R. § 115.42(g) ("The agency shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates.").

159. For the transfer decision to comply with 28 C.F.R. §§ 115.41–42, amendments to 28 C.F.R. §§ 115.41–42 would have to be made through notice-and-comment rulemaking. Section 4(a) directs the Attorney General to make such an "amendment," but no amendment has been made at this time. Defendants' decision to transfer Plaintiffs prior to a valid amendment to 28 C.F.R. §§ 115.41–42 was made without observance of procedure required by law.

160. Defendants' decision to transfer Plaintiffs without conducting an individualized assessment of all relevant circumstances, including their safety, was made without observance of procedure required by law.

161. If Sections 4(a) and 4(c) are implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT VII

**Challenge to Section 4(c)**
**Violation of Separation of Powers**
**Ultra Vires Presidential Action in Excess of Authority**
**Usurping the Legislative Function**
**Violation of Bicameralism and Presentment Clauses**
**Against All Defendants in Their Official Capacities**

162. Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

163. Defendants, as part of the Executive branch of the United States government, cannot directly and unilaterally amend or cancel appropriations Congress has duly enacted, nor can Defendants order federal agencies to do so.

164. BOP receives federal funds to provide necessary medical care to incarcerated people, including medically necessary treatment for gender dysphoria. Section 4(c) of the Executive Order directs the withholding of this funding: by its terms, the Attorney General "shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." The Executive Order issues this directive without regard to any statute regarding funds appropriated to the Bureau of Prisons, or any applicable regulations.

165. By directing the Bureau of Prisons to terminate or withhold congressionally appropriated funds based on the President's own policy preferences, Section 4(c) of the Executive Order attempts to amend, repeal, rescind, or circumvent duly enacted federal appropriations.

166. By directing the Bureau of Prisons to terminate or withhold congressionally appropriated funds, Section 4(c) of the Executive Order attempts to allocate public funds to advance the President's policy preferences, rather than those of Congress. These actions exceed the President's Article II powers, unconstitutionally infringe upon Congress's powers, and attempt to amend federal legislation while bypassing Article I's Bicameralism and Presentment Clauses.

167. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that Section 4(c) of the Executive Order violates the separation of powers and impermissibly arrogates to the Executive power that is reserved to Congress.

168. Plaintiffs are further entitled to an injunction preventing Defendants from enforcing or implementing Section 4(c) of the Executive Order.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(1) Issue a judgment under 28 U.S.C. §§ 2201–02 declaring that Sections 4(a) and 4(c)of Executive Order 14168 violate Plaintiffs' rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, the Administrative Procedure Act, and the United States Constitution's division of powers among the separate branches of government, for the reasons and on the Counts set forth above;

(2) Enter a preliminary and permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from implementing Sections 4(a) and 4(c) of Executive Order 14168, and requiring Defendants to maintain Plaintiffs' housing and medical treatment consistent with the status quo before January 20, 2025;

(3) Award Plaintiffs damages, as well as their costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 12205, and other applicable laws; and

(4) Grant such other and further relief as the Court deems just and proper.

Dated: March 14, 2025

*/s/ Kara Janssen*

Kara J. Janssen (admitted *pro hac vice*)
Ernest Galvan (admitted *pro hac vice*)
Adrienne Spiegel (admitted *pro hac vice*)
Ben Hattem (admitted *pro hac vice*)
EGalvan@rbgg.com
KJanssen@rbgg.com

ASpiegel@rbgg.com
BHattem@rbgg.com
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830

Eve L. Hill (Bar No. 424896)
ehill@browngold.com
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

Christopher Stoll (admitted *pro hac vice*)
Amy Whelan (admitted *pro hac vice*)
CStoll@nclrights.org
AWhelan@nclrights.org
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Tel: (415) 365-1338
Fax: (415) 392-8442

Ernest Galvan (admitted *pro hac vice*)
Kara J. Janssen (admitted *pro hac vice*)
Adrienne Spiegel (admitted *pro hac vice*)
Ben Hattem (admitted *pro hac vice*)
EGalvan@rbgg.com
KJanssen@rbgg.com
ASpiegel@rbgg.com
BHattem@rbgg.com
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830

Jennifer L. Levi (admitted *pro hac vice*)
Sarah Austin (admitted *pro hac vice*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, *in his official capacity* as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, *in his official capacity* as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, *in his official capacity* as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL |

**DECLARATION OF JENNIFER FIORICA DELGADO IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Jennifer Fiorica Delgado, Esq., of full age, do hereby declare as follows:

1. I am an attorney in good standing with the United States District Court for the District of Columbia Bar and licensed to practice law in this Court, as well as in New York and New Jersey.

2. I make this declaration based on personal knowledge and pursuant to Federal Rule of Civil Procedure 65(b).

3. Plaintiffs are fifteen transgender women who are currently housed in women's prisons or women's halfway houses and who face the risk of imminent transfer to men's facilities and the deprivation of medically necessary treatment for gender dysphoria pursuant to Sections 4(a) and 4(c) of Executive Order 14168 and BOP policies implementing those provisions of the Executive Order.

4. Plaintiffs are filing an emergency motion for a temporary restraining order and a preliminary injunction, which seeks to preserve the status quo prior to January 20, 2025, while the parties litigate the constitutionality and lawfulness of Sections 4(a) and 4(c) of Executive Order 14168 as applied to Plaintiffs (the "Emergency Motion").

5. The Emergency Motion is supported by Plaintiffs' memorandum of law, declarations from Plaintiffs, declarations by expert witnesses, and other materials submitted concurrently with the Emergency Motion and in the record of these consolidated actions.

6. On April 20, April 24, May 1, and May 11, 2026, counsel for Plaintiffs provided notice via email and phone to Jared Littman, counsel for Defendants, that Plaintiffs would be making this Emergency Motion.

7. Copies of all pleadings and papers filed in the above-captioned actions to date have been provided to Defendants via electronic filing. All papers filed concurrently with the

Emergency Motion, and all papers to be presented to the Court at any hearing, will be provided to Defendants simultaneously via electronic filing and by email to counsel of record.

8. In conjunction with the Emergency Motion, Plaintiffs are also filing a Motion to File Documents Under Seal, based on the specific risks and harms that would follow from revealing Plaintiffs' identities, locations, personal histories, and medical information.

9. The requested temporary restraining order is necessary to prevent imminent harm to Plaintiffs while the Court considers the Plaintiffs' request for preliminary injunction and any response from Defendants.

Pursuant to 28 U.S.C. § 1746, I affirm under penalty of perjury that the above statements are true and correct.

Dated: May 13, 2026

Respectfully submitted,

/s/ *Jennifer Fiorica Delgado*

Jennifer Fiorica Delgado
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
(973) 422-6722
jdelgado@lowenstein.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF AMY JONES**

**MATERIAL UNDER SEAL DELETED**

I, Amy Jones, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am using the pseudonym Amy Jones to protect myself. I am submitting this declaration in support of my request for relief.

2. My inmate number is [redacted]. I have been incarcerated since [redacted] I was sentenced to [redacted] years in the Bureau of Prisons in [redacted]

3. I am a transgender woman. I was born on [redacted]. Since I was about 5 or 6 years old, I have always known I was a girl. The disconnect between who I was and my birth sex caused me significant distress. I have attempted many times [redacted].

4. Sometime in early [redacted], I remember reading an article about a person who had come out as transgender. After reading this article I came to the realization that I was a transgender woman. I always knew I was a woman, but I then understood there was something I could do to alleviate my pain.

5. At the time I was housed at a [redacted] male facility, [redacted].

6. During my time at [redacted] I was participating in therapy. After reading the article, I began talking to my psychologist about being a woman. Later, she diagnosed me with gender dysphoria.

7. I was then transferred to [redacted] a low-security male facility.

8. In [redacted], at [redacted], I was prescribed and began taking hormone medication. The BOP has prescribed hormones for me since that time.

9. Although I tried to keep my transition quiet to maintain my safety, while I was at [redacted], staff members outed me to other incarcerated people. Those were very dark times.

**MATERIAL UNDER SEAL DELETED**

10. In [redacted], [redacted] assaulted and raped me in a [redacted]

11. I went to the local emergency room to be treated for [redacted] that occurred during my attack.

12. I initially reported my injuries as [redacted] because I was fearful and did not want to end up in the SHU (Special Housing Unit).

13. When I revealed the real reason behind my injuries, I was sent back to the emergency room for a SANE (Sexual Assault Nurse Examiner) assessment.

14. The following day, BOP gave me a PREA evaluation.

15. As I initially feared, because of my attack, I spent [redacted] in the SHU. Investigators suggested that the assault was my fault because I was transgender. That made my experience in the SHU even more traumatizing and difficult.

16. I was then transferred to [redacted], another [redacted] male facility.

17. At [redacted], I saw psychologists and received therapy and medication. I began to more publicly socially transition at that time. But, despite the more supportive environment, I was still sexually harassed, assaulted, and targeted for being transgender. By then, I had been diagnosed with [redacted]. In [redacted], I attempted suicide [redacted]. I was hospitalized and then returned to the facility, where I was placed on suicide watch.

18. I was then transferred to another [redacted] male facility in [redacted].

**MATERIAL UNDER SEAL DELETED**

19. During my time at [redacted], still I was continuously harassed and threatened. For a period of more than six months, another incarcerated person continuously sexually assaulted me, verbally and physically harassed me, and flashed me.

20. I suffered immensely as a result and was placed on suicide watch in [redacted].

21. I was on suicide watch for approximately [redacted]. [redacted], I cut myself again, resulting in a [redacted]. The harassment and abuse I experienced in men's facilities triggered my existing [redacted].

22. I was then transferred to a [redacted] at [redacted]. This was a program to address my [redacted] resulting from the sexual assaults and harassment I experienced at previous facilities. However, I continued to experience symptoms and self-harmed again while there.

23. In [redacted], I legally changed my name and shortly thereafter I changed my sex marker to female on my birth certificate.

24. Later in [redacted], I was transferred to a women's facility at [redacted] but was then sent to [redacted], a men's facility.

25. In [redacted] I [redacted] because of the distress caused by a medical examination. I also [redacted]. I was sent to the emergency room where the [redacted] were repaired. But my mental health symptoms were still severe, and I inflicted injuries on myself again. I [redacted] was placed on suicide watch.

26. In [redacted], I was finally transferred to a women's prison at [redacted]. Since then, I have been housed exclusively in women's facilities.

**MATERIAL UNDER SEAL DELETED**

27. When I was in men's facilities, BOP took steps to comply with the Prison Rape Elimination Act but could not protect me from sexual assault. I was in danger every day. I have been sexually assaulted in every men's facility I've been in, including [redacted] facilities. The only place where I can be safe is a women's facility.

28. Even though hormone therapy improved my gender dysphoria symptoms significantly, I still had severe gender dysphoria, and my overall mental health was terrible when I was forced to live in a men's facility. I experienced intense nightmares about past sexual traumas, worsening startle reactions, and hypervigilance. I frequently considered and engaged in self-harm.

29. When I finally got transferred to a women's facility, my gender dysphoria symptoms and overall mental health improved. I was immediately less depressed, less anxious, and had fewer thoughts of self-harm.

30. Since then, I have finally been able to blossom and to begin to find peace and happiness.

31. On [redacted], I was transferred to the all-female section of [redacted].

32. On [redacted] I was transferred back to [redacted] on a [redacted].

33. In [redacted], I was transferred to [redacted], where I am currently housed. I am being told I will be transferred again soon.

34. In my time at women's facilities, I have received ongoing mental health treatment and hormone therapy. I have been able to access female commissary items and be treated like the woman I am.

**MATERIAL UNDER SEAL DELETED**

35. I have not been sexually abused or sexually assaulted by incarcerated people in a women's facility.

36. Since being housed at women's facilities, I have not had any PREA incidents involving physical trauma or sexual assault. My mental health has improved significantly.

37. Before I left [redacted] to come to [redacted], I was told by staff that the federal administration was going to be placing transgender women in men's facilities.

38. Although I was not transferred as a result of the Executive Order, I am terrified that I will be transferred to a male facility. I am also terrified that I will lose my medical care and that all of my mental health symptoms will come back in full force. If I go back to a men's prison, I know I will be the target of sexual violence again and feel hopeless.

39. I have been receiving hormone therapy continuously for [redacted] years and have lived fully as female for [redacted] years. Hormones have feminized my body so that I now have breasts, my hips and thighs have become bigger, and I have lost muscle mass. I also had [redacted] in [redacted] and [redacted] in [redacted]. I will be an easy target for harassment, abuse, and violence, including sexual assault, if the BOP moves me back to a men's prison.

40. The women I am incarcerated with often tell me that they would confuse me for a non-transgender woman.

41. In addition to my gender dysphoria diagnosis, I have other mental health diagnoses for which I take medication, including PTSD. None of these medications, alone or in combination, have substituted for hormone therapy in treating my gender dysphoria.

42. No mental health care provider has ever told me that mental health medications or therapy serve as a replacement for hormone treatments, or that they could treat my gender dysphoria.

43. This declaration was prepared by my attorney, Alexander Shalom, based on the facts I provided, and it was read to me by Alexander Shalom on May 7, 2026, on a telephone call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Alexander Shalom
Amy Jones c/o Alexander Shalom

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF BARBARA JONES** |

**MATERIAL UNDER SEAL DELETED**

I, Barbara Jones, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am submitting this declaration in support of my request for relief. I am using the pseudonym Barbara Jones to protect myself. I am over the age of 18 and fully competent to make this declaration.

2. I am currently [redacted]. I expect [redacted]

3. I was born on [redacted]. My birth sex was male, and my parents gave me a male name.

4. Since I was a child, I have always known I was a girl. The disconnect between who I was and how I presented to the world was confusing and made me feel like I was hiding my authentic self. It caused me significant pain, frustration, and anxiety. I have attempted to cut myself and attempted suicide on several occasions. I also have had thoughts of castrating myself. The anxiety caused by my gender dysphoria has led to sleeplessness, hypervigilance, and panic attacks. Before I was incarcerated, I dressed as a woman, I went by my female name, and my friends and family knew and accepted me as a woman.

5. When I began my incarceration in [redacted], I was housed in men's prisons. My depression and self-harm continued.

6. I began openly identifying as a transgender woman in [redacted] Although I did not have access to female commissary items then, I presented as a female in all ways I could at that time.

**MATERIAL UNDER SEAL DELETED**

7. In [redacted], I was formally diagnosed with gender dysphoria by a psychiatrist. A month later, I began receiving prescription hormone medication. I have continued receiving hormone therapy since then.

8. As a result of the hormone therapy, I developed breasts, I have less facial and body hair, my skin softened, my fat is distributed differently, with more fat around my hips and thighs. In addition, my mental health got significantly better, and I no longer had thoughts of self-castration.

9. In [redacted] I requested to be evaluated for vaginoplasty. At the time, I was housed at [redacted] male facility, [redacted]. Since then, I have made numerous additional requests for surgery, but I have been repeatedly denied. Although I am happy with the progress I have made due to the hormone therapy, the inability to receive this necessary treatment has been frustrating and painful.

10. In [redacted] I was transferred to a [redacted] all-women's facility, [redacted].

11. In [redacted] I was transferred to another [redacted] all-women's facility, [redacted].

12. In [redacted], I was moved to the Special Housing Unit and told by staff that I should prepare for a transfer to a men's prison. After about a week, I was returned to general population.

13. In [redacted], I was transferred to [redacted]. I have been housed [redacted] and in both I was exclusively housed with other women. I feel safe and comfortable in the women's facility I am now in.

14. Since [redacted] I have been housed exclusively in women's facilities.

15. Since then, my self-esteem and mental well-being have peaked. I have not had any incidents of self-harm while incarcerated with women.

**MATERIAL UNDER SEAL DELETED**

16. I am very concerned that I will be transferred to a male [redacted]. I am concerned about losing access to medical treatments I need for my health and safety. I am terrified at what could happen to me. The prospect of being transferred has left me feeling hopeless; I am a strong person, but I am worried that I would not be able to handle that. All of the progress that I have made with my mental health in the last several years would be ruined.

17. My treatment for gender dysphoria has also included monthly counseling sessions. However, psychotherapy and counseling to treat depression and anxiety are not enough to treat my gender dysphoria. I also need hormone therapy.

18. No mental health care provider has ever informed me that the psychiatric treatments I received could serve as a replacement for hormone treatments, nor that they could fully treat my gender dysphoria without further hormone treatment.

19. I have lived as a woman for approximately [redacted] years. I have undergone significant physical changes as a result of hormone therapy, including breast development. I fear that I will be an easy target for harassment, abuse, and violence, including sexual assault, if I am transferred to a [redacted].

20. Being placed in a men's facility would also deny that I am a woman, and that would cause me anxiety and depression.

21. This declaration was prepared by my attorney, Alexander Shalom, based on the facts I provided, and I reviewed it on May 11, 2026, during a phone call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Alexander Shalom
Barbara Jones, c/o Alexander Shalom

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF CARLA JONES** |

**MATERIAL UNDER SEAL DELETED**

I, Carla Jones, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am using the pseudonym Carla Jones to protect myself. I am submitting this declaration in support of my request for relief.

2. I am a transgender woman. I was born on [redacted]. I knew since early childhood that I was a girl. One of the first memories I have is wanting a baby doll for Christmas. Beginning as a child and through my adult life, I wore women's clothing as often as I could and tried to minimize masculine traits and make myself as feminine as possible in my appearance. My parents were aware that I was not a "regular boy," and my father physically abused me for that reason.

3. As a teenager, [redacted]. During my time there, I presented myself as a woman and used a female name. I did this again during a period of incarceration in the mid-[redacted]

4. After I was released from incarceration in [redacted], I attempted to live my life outwardly as a man, to conform to what I believed were my family's and society's expectations of me. All this was extremely difficult for me and was very challenging to my mental health.

5. At the age of 45, I began to more openly dress like a woman and to present myself as female in public. At the time, I was married and told my wife that I identified as a woman and was going to be true to myself and live my life as a woman. My wife could not accept this, and we divorced.

**MATERIAL UNDER SEAL DELETED**

6. During this time, I regularly obtained hormones on the black market, and self-medicated with estrogen daily. I noticed my physical appearance becoming more feminine, including the partial development of female breasts.

7. I entered BOP custody in [redacted]. For most of my time in BOP custody, I was placed in men's facilities. These included [redacted]. I was harassed by many incarcerated men over the years because of my feminine appearance and presentation, which increased my vulnerability significantly. When I complained about being harassed and targeted, BOP staff often ignored me. This was especially true in the early years of my incarceration before the PREA (Prison Rape Elimination Act) standards were published.

8. It took years for me to tell people inside the prison that I was a transgender woman. In [redacted], I began openly identifying as a woman, which made me a target. I started using a female nickname, had begun wearing my hair long and my facial appearance became more feminine due to grooming habits, all of which made me even more vulnerable in a men's facility.

9. In [redacted] I was attacked [redacted] I believe I was targeted because of my feminine presentation. I suffered multiple wounds on my [redacted] After this physical assault, I was placed in a two-person cell in protective custody. However, there was nothing safe about this placement. [redacted] and begged them not to house me there, but they would did not listen. [redacted] I finally had an opportunity to go to the recreation yard alone and found a BOP staff member who was willing to help me, and they

**MATERIAL UNDER SEAL DELETED**

moved me to another protective custody unit. This was not the first or only time I was sexually assaulted in BOP custody. I did not report everything that happened to me because I was scared of being locked up and targeted further.

10. I also experienced sexual harassment and threats of harm at various BOP male facilities over the course of more than [redacted]. At [redacted], the BOP staff told me not to remove my shirt in front of incarcerated men due to my partially developed breasts, but that did not stop the harassment. Everyone knew that I was transgender and that placed me in constant danger. By [redacted] I was reporting to BOP staff that sexual harassment was a daily occurrence, and I had to consistently remain hypervigilant and alert in order to evade men who were exposing their genitals to me and propositioning me for sexual favors. I made PREA reports of some of these incidents, but the abuse would follow me to every male facility. I felt like I was in constant survival mode in the men's facilities and that I would never be safe.

11. Though I was presenting as a woman since [redacted], I did not approach BOP clinicians to tell them that I was transgender and to seek treatment until about [redacted]. I didn't realize until around that time that treatment was even available.

12. At that time, I was experiencing high levels of distress, anxiety, and depression relating to my transgender identity, and I immediately sought medical help and began requesting hormone treatments. BOP providers were resistant to my requests for hormone treatments at first. Officers and staff reacted very negatively towards the idea for a long time.

13. Though I consistently requested hormone therapy starting in [redacted], it took until [redacted] for BOP clinicians to officially diagnose me with gender dysphoria. BOP first prescribed me hormone medication in [redacted]. While my treatment regimen has been

**MATERIAL UNDER SEAL DELETED**

adjusted over the years, I have taken hormone medication continually in the [redacted] years since that time

14. After beginning hormone treatment, I noticed substantial changes to my physical appearance. My partially developed female breasts developed fully, my body shape redistributed so that my figure appears more feminine, I have significantly less body hair, and my muscle mass decreased.

15. This treatment was a godsend, and I finally felt like I was starting to become the real me. My gender dysphoria symptoms immediately lessened. I was less sad and anxious and more clear-headed and positive about the future.

16. While my distress and symptoms lessened, they persisted. I continued to experience harmful thoughts and feelings about my body and my gender identity. I notified BOP staff of my ongoing struggle many times. I want to visually see my body reflect who I know I am inside, and I have for years sought approval for a vaginoplasty and facial hair removal.

17. Despite my best efforts to get BOP to provide me surgical care or explain why they would not, I never received straight answers from any BOP officials.

18. After many attempts over many years of trying to get more care, I became so desperate that [redacted]

**MATERIAL UNDER SEAL DELETED**

19. I have engaged in self-harm and been placed on suicide watch at different points while in BOP custody. Whenever BOP has stalled progress or dragged its feet in getting me answers relating to the surgical care I vitally need, my gender dysphoria symptoms re-emerge stronger than ever, and I experience and anguish over whether I will ever get that care. Sometimes those intense emotions have led me to harm myself out of despair, [redacted]

20. I lived as a woman in men's facilities in the BOP for many years, but in [redacted] I was transferred to [redacted] after the Transgender Executive Council (TEC) approved my transfer request. I have been housed in women's facilities ever since.

21. When I was transferred to [redacted] my sex designation was changed to "female" in BOP records. I was told by the TEC that I would be at [redacted] and then would be considered for gender-affirming surgery. I was then transferred to [redacted], which is a women's medical facility.

22. I felt incredible relief when I was finally transferred to a women's facility. As a result of my experiences in men's facilities, I felt like I was in constant danger there and that I would never be safe. My housing with women has alleviated the fears and terror I felt living in men's prisons.

23. My gender dysphoria symptoms also improved when I was transferred. I was immediately less distressed and anxious. I have not been sexually abused or sexually assaulted since entering women's facilities.

24. During my time in women's facilities, most of the other incarcerated people there have acknowledged me as a woman. Most people use my chosen, female name rather than my former male-oriented name. I can live and present myself as a woman here without fear of being

MATERIAL UNDER SEAL DELETED

targeted as I had been in men's facilities. Female commissary items such as undergarments and hair dye have been available to me in these facilities.

25. The BOP's utilization review committee interviewed me in [redacted] to determine whether I would be able to get surgery to treat my gender dysphoria. As part of the process, the BOP performed pre-operation medical exams on me to make sure I was healthy enough for surgery, and I was seen by a social worker for a psychological evaluation. It was my understanding that my surgery would be approved as long as I passed these medical exams.

26. On [redacted] I had an appointment with [redacted] which I believed was one of the last steps to ensure I was healthy enough for surgery. However, the doctor informed me that she would not be performing [redacted] tests on me as planned. Instead, she told me that my pre-surgery medical exams were over, and that my surgery had been "cancelled." I asked her who canceled it and whether it was the Medical Director of the BOP. She told me it was someone "higher up" but did not say anything else.

27. As a result of all the uncertainty regarding my medical care and housing status due to the Executive Order, my mental health has been up and down since [redacted] including experiencing depression.

28. On [redacted], guards removed all of the transgender women in [redacted] from their housing units and housed us together. They told us we were being segregated because of the President's Executive Order.

29. I was told by staff that I would be transferred to a men's prison and the paperwork was already processed. They said the transfer would happen by [redacted]

30. On [redacted], I was allowed to go back to general population, but staff told me I was still being transferred to a men's prison.

**MATERIAL UNDER SEAL DELETED**

31. In [redacted], BOP staff told me again that they were moving ahead with my transfer and that my medical care would stop after the transfer. I understand that the injunction in this case is what prevented them from doing that. I am terrified of moving back to men's facilities. I am not safe in those facilities, and I fear that I will be targeted again for sexual and physical violence and harassment.

32. I have been diagnosed with recurrent [redacted] and have had [redacted]. I still have that [redacted]

33. As part of my treatment for [redacted] I was prescribed [redacted].

34. The [redacted] is intended to treat [redacted], not my gender dysphoria. The only medication that treats my gender dysphoria is hormone therapy.

35. I currently receive weekly mental health counseling for my [redacted]. My clinician and I do not discuss my gender dysphoria during those counseling sessions.

36. No mental health care provider has ever informed me that the [redacted] and mental health counseling I receive for [redacted] could serve as a replacement for hormone treatments, nor that it could fully treat my gender dysphoria without hormone treatment.

37. I understand that the Executive Order and the BOP want to take me off my hormone treatments. I am afraid that without medication, I will go back to how things were before I received treatment, when I was at my lowest and questioning whether I wanted to live like this. I fear that I will again become as desperate for care as I was [redacted] I would not be able to survive without hormone treatment for my gender dysphoria.

38. I have lived as a woman and taken hormones for the better part of [redacted] If I was forced to transfer back to men's facilities, I know that I would become a victim of

violence, sexual assault, harassment, ridicule, innuendo, and abuse. I never want to live like that again. I do not think I can handle that kind of distress and mental anguish.

**MATERIAL UNDER SEAL DELETED**

Executed on the 28th day of April in the year 2026.

Signature: [redacted] Date: 4/28/2026

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF DONNA JONES** |

**MATERIAL UNDER SEAL DELETED**

I, , make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons at [redacted]. My BOP register number is [redacted]. I am using the pseudonym Donna Jones to protect myself. I am submitting this declaration in support of my request for relief.

2. I was born on [redacted], in [redacted]. I am a transgender woman. I go by a female name and use she/her/hers pronouns. I identify as a woman.

3. I knew from a very young age that I was different. I first began to notice a difference between my internal sense of myself as female and my birth sex as early as age five. When I was eight years old, I expressed my desire to be a girl to my adoptive father.

4. In [redacted], while incarcerated at [redacted], I was formally diagnosed with gender dysphoria. Prior to this, I had struggled with these feelings my entire life. I first openly expressed my desire to live as a woman in approximately [redacted] while completing a psychology course called [redacted] with other incarcerated people.

5. I began hormone therapy in [redacted]. I was started on Estradiol and Spironolactone. I have continued receiving hormone therapy consistently ever since through weekly Estradiol injections and daily oral medications including Finasteride.

6. Hormone therapy has allowed my body to undergo physical changes, including the development of breasts and a more feminine distribution of body fat. The hormones have also alleviated the [redacted] and distress I experienced and allowed me to express my more feminine emotions.

7. I sought but have not yet received vaginoplasty and facial feminization surgery.

**MATERIAL UNDER SEAL DELETED**

8. I was previously married to a woman. We divorced in [redacted]. [redacted].

9. I have an extensive history of childhood trauma. [redacted] This abuse began after I expressed my desire to be a girl. My adoptive father passed away from a heart attack in [redacted]. Following his death, I struggled immensely and made my first suicide attempt at age thirteen by [redacted]. I have attempted suicide six times since then.

10. I was initially incarcerated at [redacted] a men's facility in [redacted], beginning in approximately [redacted]. I remained at [redacted] for approximately [redacted] years until [redacted].

11. While housed at [redacted], even before I transitioned, I was in danger. In [redacted], I was raped by an incarcerated man [redacted]. [redacted]. I blacked out from the event. It felt like a part of me died. I was [redacted] following the assault, but I did not tell anyone about the incident at the time because I was afraid.

12. At [redacted], I had to align myself with another incarcerated person who I thought could protect me. This was the only way I felt I could survive as a transgender woman in a men's facility.

13. The constant fear and harassment I experienced there contributed to my [redacted] and other mental health issues. For

**MATERIAL UNDER SEAL DELETED**

example, [redacted]

14. While at [redacted], I was diagnosed with gender dysphoria and began hormone therapy in [redacted]. Even so, I was limited in accessing female hygiene and clothing items.

15. I have been diagnosed with [redacted] in addition to gender dysphoria. These conditions are documented in my BOP medical records. The trauma I experienced in men's facilities, including being raped in [redacted], contributed significantly to these mental health conditions. When I was housed at [redacted], I reported increased frequency of nightmares, difficulty sleeping, and symptoms of [redacted] that worsened over time. I was prescribed [redacted] to treat my [redacted].

16. BOP did not take specific—or anything close to sufficient—steps to protect me from sexual assault in men's facilities. I was in danger every day. I was a target even before I was diagnosed with gender dysphoria because of my gender nonconformity and before I began hormones, and I would be an even bigger target now. In a women's facility I am not at ongoing risk of sexual assault.

17. Even after I started hormone therapy, I had terrible gender dysphoria symptoms when I was forced to live in a men's facility. I frequently considered self-harm and suicide. I felt like a blind, deaf mute, in a world where there was singing sound and music all around you. When I finally got transferred to a women's facility, my gender dysphoria improved. I was less [redacted], less anxious, and had fewer thoughts of self-harm. Before I started taking hormones, my mind was screaming "female" while my body screamed "male." After I started taking hormones, but while I was still housed with all men, my body and mind both screamed "female" but the world around me was screaming "male."

**MATERIAL UNDER SEAL DELETED**

18. Conditions for a transgender woman in men's prisons were terrible. Communal showers only had low curtains that covered genitals, but not my breasts. Later in my incarceration there were slightly higher curtains, but I still did not have privacy. Pat searches and strip searches were conducted mostly by men. There were many portions of the prison that did not have cameras and where I was especially vulnerable to sexual assault, and where, had I reported assaults, there would have been no way to verify my account. In addition to being raped, sexual assault and harassment were constant fixtures in my experience in men's prisons. I was frequently groped and received dozens of threatening notes. Often times people would say things along the lines of "if you want to be a woman, you can be a woman with me."

19. My transfer to a women's facility came about in [redacted], when I told a PREA coordinator who was visiting [redacted] that I had been raped by an incarcerated man because I was a transgender woman.

20. As a result, in [redacted], I was transferred to [redacted], a women's facility in [redacted]. I have lived there continuously other than [redacted].

21. Since being transferred to [redacted] in [redacted], I have lived my daily life as a woman. I dress in female clothes, keep my fingernails polished, use other cosmetics, use female pronouns, and am addressed by my female name by staff and other incarcerated women. I have access to female commissary items. My BOP records list my sex as "F" for female.

22. My gender dysphoria symptoms have improved significantly. I am less [redacted], less anxious, and feel more at peace with myself. The difference between living in a women's

**MATERIAL UNDER SEAL DELETED**

facility versus a men's facility is profound. I no longer fear for my safety every day as I did at [redacted].

23. I no longer [redacted] which my physician has attributed to the stress I experienced being housed at a male facility and the constant need I felt to escape the environment.

24. I have not been sexually abused or sexually assaulted in a women's facility.

25. On [redacted], BOP officials took me out of my cell and put me in separate housing with other transgender women. They informed me that I was being segregated because of the President's Executive Order.

26. They also stated that I was being transferred to a men's prison, and the paperwork was being processed. The warden said they were ordered to do the transfers, and the transfers were complete, but they were waiting for a designation of which facility.

27. My fear of how the Executive Order would impact me caused me significant distress. My stress was so severe that I was placed on suicide watch.

28. I was then transferred to a segregated suicide watch location, where I was required to be under constant watch by prison staff. I was housed alone in a small cell with nothing to do all day. I had no one to talk to and was not allowed to go outside or engage in any recreation whatsoever.

29. My mental health got worse and worse while I was waiting. I felt completely hopeless, fearful, and extremely anxious.

30. On [redacted], I was allowed to go back to the general population, but guards told me I was still being transferred to a men's prison and that my medical care would stop after transfer.

**MATERIAL UNDER SEAL DELETED**

31. I remain very scared of being transferred to a men's facility.

32. I also know the Executive Order requires the BOP to cut off hormone medications and other medical treatments for transgender people.

33. I have lived as a woman for [redacted] years. Hormone therapy has made substantial changes to my physical appearance. My appearance is feminine and I am recognized as female by others. If transferred to a men's prison, I will be an easy target for harassment, abuse, and violence, including sexual assault, because of my feminine appearance.

34. I was so distressed by the fear of transfer and the fear that I would lose access to medical care that had helped me so much. My performance at [redacted] suffered because I could not maintain focus. I became more socially reclusive and had fewer social interactions.

35. I have been receiving hormone therapy as part of my gender dysphoria treatment since [redacted]. I currently receive Estradiol Cypionate injections weekly, along with Finasteride taken orally each day. My hormone levels are regularly monitored through blood tests to ensure my Estradiol levels remain between 100–200 pg/mL, which is typical female range, and my Testosterone levels are appropriately suppressed. BOP medical staff have adjusted my dosages over time based on these lab results.

36. After beginning hormone treatments, I developed female breasts. I wear a [redacted] bra.

37. I also noticed marked changes in the way my body fat was distributed. My body now has curves and a more feminine shape. My skin is softer.

38. My muscle mass decreased dramatically as well.

**MATERIAL UNDER SEAL DELETED**

39. I also have other mental health diagnoses for which I receive treatment, including [redacted]. When my gender dysphoria is untreated, my symptoms are more severe.

40. My untreated gender dysphoria resulted in severe [redacted], anxiety, and feelings of disconnection from my body. Before I began hormone treatment, I struggled constantly with the fact that my external appearance did not match my internal sense of self.

41. During that time, I felt confused, alone, and in constant distress. I would avoid looking at my body and felt "icky" whenever I had to see or touch my male genitalia. My facial hair was a daily reminder of my "male" past that required me to shave twice a day.

42. Before I began treatment, I made multiple suicide attempts. I first attempted suicide at age thirteen following the death of my adoptive father. I have made approximately seven suicide attempts throughout my life. I also experienced suicidal ideation nearly every day when my mental health symptoms were at their worst.

43. Once I began hormone therapy, my [redacted] and distress significantly improved. The hormones allowed me to feel more comfortable in my own body and reduced the anger I felt towards myself. I no longer felt as disconnected from who I truly am.

44. The difference between my emotional and mental states before and after treatment was substantial. After treatment I began to feel a sense of peace and comfort that I had never experienced before.

45. When I was informed that the President's Executive Order would result in me being transferred to a men's facility and that my treatment would be stopped, I felt a sharp decrease in mental clarity. It felt like I was going from standing still to 100 miles an hour in just a few seconds.

MATERIAL UNDER SEAL DELETED

46. The prospect of having my hormone treatment tapered and abruptly ended has resulted in increased anxiety, [redacted], and fear. For years, my brain was telling me that I was female, but my body presented as male; the medicine has helped bridge the imbalance between my brain and body.

47. I received mental health counseling before and after my diagnosis and treatment for gender dysphoria.

48. Psychotherapy and counseling alone are not enough to treat my gender dysphoria. I also need hormone therapy. I have tried to treat my [redacted] with psychiatric medications like [redacted], but these medications do not address my gender dysphoria. No mental health care provider has ever told me that counseling or psychiatric medications alone could fully treat my gender dysphoria without hormone treatment.

49. No mental health care provider has ever informed me that the treatments I received could serve as a replacement for hormone treatments, or that they could fully treat my gender dysphoria without further hormone treatment.

50. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. I know from my own experience what it is like to be a transgender woman in a men's facility—I was sexually assaulted and suffered terrible symptoms of gender dysphoria. I lived in constant fear, and my mental health deteriorated severely. I cannot go through that again. I am also terrified of losing my hormone treatment, which is the only medication that has effectively treated my gender dysphoria. Without it, I know my [redacted], anxiety, and thoughts of self-harm will return.

51. If I am forced to return to a men's facility, I am afraid that the people who work there and are incarcerated there will learn that I came from a women's facility, which would

place me at even greater risk than before. It is common in prisons to ask where people transferred from. If people learn that I have been in women's prisons, there will be an even larger target on my back than there was before. If I do not answer the question about where I was transferred from, I will be targeted for violence. I also present as more female now than I did when I was housed with men; that will also place a target on my back and make me vulnerable to sexual violence.

**MATERIAL UNDER SEAL DELETED**

Executed on the 28 day of April in the year 2026.

Signature: [redacted] Date: 4-28-26

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF EMILY DOE**

**MATERIAL UNDER SEAL DELETED**

I, Emily Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am using the pseudonym Emily Doe to protect myself. I am submitting this declaration in support of my request for relief.

2. I am a transgender woman. I was born on [redacted], in [redacted].

3. I have always known I was different from others. Ever since I can remember I have felt like I was in the wrong body.

4. Between ages 4 to 12 years old, I was sexually abused [redacted].

5. I was physically, emotionally, and verbally abused by my father my entire childhood and into adulthood.

6. When I was incarcerated in [redacted] in [redacted], I was sexually assaulted by an incarcerated man. I had stayed in my cell when incarcerated people were provided with out-of-cell time. A man who was far larger and stronger than me came into my cell. At first we just talked, but he later pinned me down and tried to rape me. I did not feel comfortable reporting the incident until I transferred to another institution.

7. When I first entered BOP custody at [redacted] on [redacted], I was originally placed in a men's facility. I had also been placed in men's facilities when I was housed in [redacted]. In the [redacted], I had roommates and had to shower with men. On more than one occasion when housed with men – including [redacted] facilities – I had to fight off sexual assaults in showers. I had to deal with harassment on

**MATERIAL UNDER SEAL DELETED**

a daily basis. I had thoughts of suicide around this time too. I began thinking about hanging myself in a supply closet because I hated not being recognized as a woman or able to live as a woman.

8. I have a long history of mental health issues that I now understand are related to my gender dysphoria and the trauma and abuse that I experienced.

9. When I was 14 or 15 years old, I thought about jumping in front of a train. I felt like I did not fit in anywhere; I had no connection to anyone or anything. The abuse I suffered from my father left me feeling worthless. I stood waiting for a train to come, planning to jump in front of it; only an unexpected conversation with a stranger prevented me from doing so. I still think about suicide and self-harm frequently.

10. When I first began my incarceration in [redacted] in [redacted], I tried to kill myself by [redacted] I spent significant time on suicide watch.

11. I used to have a diagnosis of [redacted] for which I took [redacted] medication. I later tried other medications, but BOP doctors later determined that I [redacted] and I had been suffering from [redacted] and gender dysphoria. My [redacted].

12. BOP staff diagnosed me with gender dysphoria in [redacted].

13. In [redacted], the BOP prescribed me hormone medication to treat my gender dysphoria.

**MATERIAL UNDER SEAL DELETED**

14. Over the years, clinicians have done blood work to monitor my hormones and adjusted my medications. I have now taken hormone medication continuously for almost [redacted].

15. Hormone therapy helped alleviate my gender dysphoria and made substantial changes to my physical appearance. After beginning hormone treatments, I developed large female breasts, which require a [redacted] bra. I also noticed changes in the way my body fat was distributed, with less fat in my stomach and more fat in my hips and thighs. I also have more fat in my neck. My muscle mass decreased significantly as well. My skin is far softer and I have less hair on my face and body.

16. Even after beginning hormone therapy, I still suffered from severe [redacted] from being forced to live in a men's facility and not being treated as a woman.

17. On [redacted], I requested gender transition surgery and a transfer to a women's facility due to the mental health issues I experience from my strong hatred of being identified and treated as a male.

18. Being housed in a men's facility triggered [redacted] due to the history of abuse I have suffered at the hands of men my entire life. I have talked with counselors about my fear of men many times. Being forced to live in a men's facility where I was not recognized as a woman compounded this trauma. I have always known I am a woman.

19. The BOP moved me to a women's facility in [redacted] I have remained in women's facilities since then.

20. Since transferring to a women's facility in [redacted], my mental health has vastly improved and I am starting to actively engage in the available programming.

**MATERIAL UNDER SEAL DELETED**

21. At the women's facility, my gender dysphoria and mental health have improved. I was immediately [redacted], and it has been much easier to manage thoughts of self-harm. I was again comfortable to engage in programing.

22. At men's facilities I was typically pat- and strip-searched by male officers. They frequently groped my breasts and made demeaning comments about my body. At women's facilities, I am searched by female officers and treated with more respect.

23. At men's prisons, I could barely access any female commissary items (though I understand that now men's federal prisons provide even fewer options then they did when I was housed there). There was no access to good make-up, perfume, bras other than sports bras, or any variety of underwear. In a women's prison, I have access to all of those items.

24. Although BOP took steps to try to protect me from sexual assault in men's facilities, those steps were not enough. I was still in danger every day. The only place where I am safe is a women's facility.

25. I have not been sexually abused or sexually assaulted in a women's facility.

26. On [redacted], I was removed from general population and placed in a segregation unit following the issuance of the executive order.

27. When I was placed in segregation, my mental health declined and suicidal thoughts became more acute and harder to deal with constructively. I [redacted] because I was so deeply distressed at being removed from general population and terrified at the possibility of returning to a men's facility. I felt hopeless. I was crushed.

28. Only after meeting with a licensed clinical psychologist, and after the preliminary injunction was entered in my case, was I returned to general population.

**MATERIAL UNDER SEAL DELETED**

29. When I was housed in a men's facility, BOP staff identified me as being at risk of victimization given my prior sexual assault in prison and because I am a transgender woman.

30. On a weekly basis when I had been housed in men's facilities, sometimes multiple times per week, male inmates made coercive sexual propositions that felt threatening.

31. I am deeply concerned about returning to a men's facility and re-experiencing sexual victimization or being "pimped" by other inmates.

32. I have lived as a female for [redacted] years though I have known I was a woman my entire life. I face a severe and immediate risk of harassment, abuse, and sexual violence, including sexual assault, if BOP transfers me to a men's prison.

33. I know that the BOP has a policy to taper people off hormones. The only medication that helps my gender dysphoria is hormone therapy. Psychiatric medications that treat [redacted] are not enough. I have tried to treat my gender dysphoria with [redacted] medications in the past. They did not work. I still experienced severe [redacted] and thoughts of self-harm and suicide related to my gender dysphoria while taking these medications. These symptoms did not improve until I was able to get hormone therapy. Without hormone therapy I am afraid that I will literally go insane.

34. If I am forced to return to a men's facility, I am afraid that the people who work there and are incarcerated there will learn that I came from a women's facility, which would place me at even greater risk than before. It is common in prisons to ask where people transferred from. If people learn that I have been in women's prisons, there will be an even larger target on my back than there was before. If I do not answer the question about where I was transferred from, I will be targeted for violence.

**MATERIAL UNDER SEAL DELETED**

Executed on the 28 day of April in the year 2026.

Signature [redacted] Date: 28 APR 2026

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF JANE JONES** |

# MATERIAL UNDER SEAL DELETED

I, JANE JONES, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am in the custody of the Bureau of Prisons and am currently in [redacted]. I am using the pseudonym Jane Jones to protect myself. I am submitting this declaration in support of my request for relief.

2. I was born on [redacted]. I am a transgender woman. From a young age, I gravitated toward traditionally feminine activities, including playing with dolls. I recall my earliest memories as being shaped by tendencies that I recognized as intrinsically female. As I grew older, my sense of being a woman intensified. When I closed my eyes and pictured myself, the vision was female.

3. Initially, I did not want to transition because I feared the societal stigma associated with it. There were a few times during and after college that I tried using a medication to lower my testosterone in an attempt to treat my gender dysphoria symptoms and reduce my self-loathing without an official diagnosis. This helped, but only to a certain extent.

4. I attended [redacted] and became an [redacted]. I eventually owned and operated [redacted] in [redacted].

5. I began seeing a therapist in approximately [redacted]. I was diagnosed with gender dysphoria.

6. In [redacted], I began hormone therapy and in [redacted] I began living as a woman.

7. After beginning hormone treatment, I developed female breasts, lost a significant amount of weight and muscle mass, had a redistribution of body fat, and developed a more feminine shape and appearance. My body hair also thinned out and my skin got softer.

**MATERIAL UNDER SEAL DELETED**

8. The hormone therapy made my gender dysphoria symptoms immediately subside. I experienced a significant reduction in self-loathing and improved mental health. For the first time in my life, I felt like my mental self-image was starting to match what I was seeing in the mirror. This was a revelation and I finally felt content with who I was.

9. [redacted].

10. Around [redacted] I legally changed my name and my sex marker to female on my driver's license, my [redacted], with [redacted], and with the social security office.

11. I met my wife and we began a relationship in [redacted]. On [redacted] I was convicted of a non-violent crime [redacted] and was sentenced to [redacted]. My wife and I had been planning to marry for a long time and married in [redacted] in [redacted] shortly before I began my sentence.

12. In [redacted], I was placed in a women's facility: [redacted] I was placed in general population and had multiple cellmates. BOP clinicians prescribed me the same hormone therapy I had been taking before my incarceration. I was also permitted to [redacted]. I continued living as a woman in all respects.

13. In [redacted] I was transferred to a [redacted] in [redacted] also a women's facility.

14. At [redacted], I became involved with a program where incarcerated women [redacted]

**MATERIAL UNDER SEAL DELETED**

15. In both female prisons in which I have been housed, I have been subjected to searches by female corrections officers only.

16. In or around [redacted], I learned that a bill was introduced in Congress to require federal prisons to house incarcerated individuals based on their birth sex. I grew concerned about the possibility of being transferred to men's facilities, so I [redacted]

17. On [redacted], I learned that President Trump signed the executive order at issue in this case. [redacted].

18. In the evening, on [redacted], BOP officials informed me that I would be transferred to a men's facility. They handcuffed me, made me change into an orange jumpsuit and shoes, gave me men's boxer shorts, and transferred me to the men's prison, which is a [redacted] facility at [redacted]. I was shocked by this news given [redacted], and terrified for my safety. I was also shocked to be handcuffed because no one at the [redacted] is handcuffed or shackled, even when we leave [redacted]

19. I asked why I was being transferred, and the corrections officers said that they had been told to bring me to the men's unit. I asked if I could bring my possessions and I was denied that request, except that the corrections officers allowed me to bring what remained of my hormone therapy medications (a less than 30-day supply). They advised, however, that I may not be permitted to obtain another prescription from the prison once these medications run out.

**MATERIAL UNDER SEAL DELETED**

20. While at the men's prison, I was housed in the Special Housing Unit ("SHU"). I was in solitary confinement in a tiny cell with nothing to do all day. I had no one to talk to and was not allowed to go outside or engage in any recreation whatsoever. While I was able to call my wife once a day, I had no access to email, and my access to calls were limited and cut short. I was only provided with men's toiletries.

21. While in the SHU, I was under 24/7 video surveillance. There was both a toilet and shower in my cell. This meant that I was observed by male corrections officers when I used the restroom. I was provided with a towel no bigger than a letter-sized piece of paper. Because male corrections officers would have been able to observe [redacted] while showering and drying off, I was not comfortable using the shower while I was in the SHU.

22. I asked various guards, medical staff, and prison officials why I had been transferred, who had ordered the transfer, and whether I could speak with the warden or another prison administrator. No one would answer these questions; instead, the guards walked by the small window in my cell and looked at me as if I was a zoo animal.

23. On one occasion, a prison official told me he was surprised that I had been transferred to the SHU in a male facility. He believed that I was going to be transferred to the SHU in a different women's facility. I asked why I would be housed in the SHU. He told me that it was because of President Trump's executive order.

24. My mental health began to suffer while I was in the SHU. I felt completely hopeless, fearful, and extremely anxious. Isolation is very triggering for me given the isolation from family and friends I experienced when I transitioned. It felt as if I was being forcefully de-transitioned. I also had no idea how long I would be there, which made me feel completely out of control and depressed.

**MATERIAL UNDER SEAL DELETED**

25. Being transferred to the male facility was dehumanizing, and made me feel like I was being punished for who I am.

26. On [redacted], a high-ranking prison official informed me that I would be transferred to another men's prison and released to the general population. Later, a prison psychologist came to ask me which men's facility I would prefer to be transferred to. I explained that there was no men's prison that was safe for me.

27. On [redacted], I was transferred back to the women's [redacted].

28. On [redacted], I was transferred to [redacted] that houses only women. Since entering [redacted]. I also began getting my hormone treatment [redacted] and have been able to continue on my hormones without interruption.

29. Despite my transfer back to the women's facility and placement in a female [redacted], I remain deeply concerned for my safety. I live in fear that I may, at any time, be transferred to a men's facility. Every time I heard the intercom at the [redacted], I had a physical reaction out of fear of being transferred. On one occasion, my name was called over the intercom and I began crying uncontrollably. And, any time the intercom was turned on, as I waited to see if my name would be called, I broke out in sweats, my heart rate went up, and I got nauseous. This is very unlike me; I had never had these symptoms before.

30. I am female [redacted]. This is how I have lived for [redacted] years. I will be an easy target for harassment, abuse, and violence, including sexual assault, if I am transferred to a men's facility. [redacted]

31. I am also concerned that BOP will deny my access to hormone therapy medications. I have been taking hormones for [redacted] years without interruption. If I stop

**MATERIAL UNDER SEAL DELETED**

taking hormones, the physical and psychological impact will be devastating. This will cause extreme emotional distress and could cause physical harm. This is the only medication that treats my gender dysphoria and no BOP clinician has ever told me I do not need it. [redacted].

32. Before the Executive Order, I had only ever been housed in women's facilities. There is no reason to transfer me to a men's facility. If I am forced to live in a men's facility, I will experience significant physical and emotional harm. I am terrified even thinking about this.

33. This declaration was prepared by my attorneys, Jennifer Fiorica Delgado and Jillian Friedmann, based on the facts I provided, and it was read to me by Ms. Friedmann on May 8, 2026, on a telephone call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in New York, NY on this 13th day of May, 2026.

/s/ Jillian Friedmann
Jane Jones c/o Jillian Friedmann

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF LOIS DOE**

# MATERIAL UNDER SEAL DELETED

I, Lois Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am using the pseudonym Lois Doe to protect myself. I am submitting this declaration in support of my request for relief.

2. I am a transgender woman. I was born on [redacted], in [redacted] I have known I was a woman since I was 18 years old, though I hid this from the world for a long time.

3. I have always felt more comfortable around girls and enjoyed playing with dolls and other traditionally feminine activities as a child. In my teenage years, I began wearing female clothes, which felt much more comfortable to me.

4. I grew up [redacted] I was physically and emotionally abused, [redacted] I was also neglected [redacted].

5. hen I was 19 years old, I was raped [redacted]

6. I tried to live as a man and to do things I thought a man was supposed to do. I got married [redacted]. But it never felt right, and I could no longer live as a man because I knew that I am a woman.

7. I began transitioning in [redacted] (I was [redacted] at the time) and living as a woman. I changed my legal name and began taking hormones. My mental health improved a lot when I transitioned. I suddenly felt optimistic and like the whole world was open to me.

**MATERIAL UNDER SEAL DELETED**

8. I was incarcerated in a state prison in [redacted] and was raped [redacted] I reported these assaults, which had a profound impact on me. After that, I was always fearful, hypervigilant, and checking my surroundings for any dangers. I felt isolated and started to close myself off from everyone. The men in the prison knew that I was transgender and would often harass me by whistling at me or making suggestive comments. I never felt safe and experienced feelings of deep sadness and helplessness.

9. I entered BOP custody [redacted]. I told staff that I was transgender and said I needed hormone medication. A BOP doctor diagnosed me with gender dysphoria in [redacted] and prescribed hormone medication in about [redacted] of that year, which I have taken since that time.

10. I feel much better on my hormones—I finally feel like the person I was always meant to be. Since being on hormone therapy, I have developed breasts, my skin has become softer, my hair has grown, I have lost muscle mass and noticed a different distribution of body fat. I feel more comfortable in my body and generally feel more hopeful and less anxious.

11. I have experienced [redacted] for most of my life and was officially diagnosed with both in [redacted]. BOP doctors also diagnosed me with [redacted] when I entered custody in [redacted] I take medications to treat my [redacted].

12. In addition to my [redacted] I have also been diagnosed with [redacted] stemming from my sexual assaults.

13. The first BOP facility I was housed at was [redacted] in [redacted], and I was transferred to [redacted] the next month. Both were [redacted]. Because they were male prisons, I continued to be fearful and on constant alert of my surroundings given my prior sexual assaults.

**MATERIAL UNDER SEAL DELETED**

14. I was sexually harassed by a male incarcerated person at [redacted] in [redacted]. This individual said sexual things to me and called me derogatory names for transgender people. I reported this harassment to staff, but as long as I was in a men's prison, they could not keep me safe from it. At men's facilities, I was routinely "catcalled" and threatened with violence. For example, some of the men would proposition me and [redacted]. hile I reported some things, I didn't report every incident because I was afraid of being treated like a "snitch."

15. In [redacted] when I was still housed in a men's facility, I felt anxious and afraid all the time. I could never let my guard down and it was exhausting living like that every day. I was always scared that I might get raped again and afraid someone was going to attack me for being transgender. I told a BOP psychologist that I was anxious all the time.

16. I started asking to go to a women's prison in about [redacted]. I was sent to [redacted], a men's facility, in [redacted] and I felt the same fear and anxiety as I did in all the other men's prisons.

17. In [redacted], BOP finally moved me to [redacted], a women's facility, and I have been there ever since. I get along with people at [redacted] and most people treat and accept me as a woman. I'm focusing on my mental health and learning about healthy relationships and communication. I participate in [redacted] twice per month and they are helpful.

18. At [redacted], I am more open and more comfortable being myself. hile I remain vigilant and am always in survivor mode, my day-to-day is much better. I am less fearful and have not experienced any sexual assaults or harassment.

**MATERIAL UNDER SEAL DELETED**

19. hen the Executive Order came down in January of 2025, and we were told that we would lose our medical care and be moved to a men's prison, I panicked and became extremely upset. Staff took me out of general population and put me in the Special Housing Unit ("SHU") for a weekend. They said, " e don't want to alarm you, but according to the Executive Order, we have no choice but to take you off the compound and put you in SHU." They told me I would stay there until I was moved to a men's facility. I paced the entire weekend in fear of going back to a men's facility and then was allowed to go back to my housing unit.

20. I fear going back to a men's prison. I am a woman and have the body of a woman. I am extremely afraid that if I was moved back to a men's facility, I would be sexually assaulted especially since I have developed breasts and incarcerated people at the men's facility might see me as a plaything. The idea of going back brings up the memories of being sexually harassed and being raped, like I was before. That's a big fear of mine.

21. I was also referred for a suicide risk evaluation on [redacted]. I told BOP staff how upset I was about potentially being transferred back to a men's facility. I understand that BOP staff then increased my mental health care level [redacted] and put me on a psychology watch list related to that.

22. hen I am pushed past my breaking point and become overwhelmed, I think about hurting myself. If I lose my hormones and go to a men's prison, I'm afraid that will push me far beyond that point.

23. I need my hormone medications, which I have now taken in the BOP consistently since [redacted] and previously before that. This medication has helped me to feel much better and has changed my body and mood. I am not sure I could live without these medications, and I definitely do not want to try that. If they ended my treatment, it would feel like a part of myself

**MATERIAL UNDER SEAL DELETED**

was being taken away. I have serious [redacted], and I am afraid these conditions will become overwhelming if I lose my hormone treatment.

24. hile I have medications that I take for my [redacted], they only treat those illnesses. The only medication that helps my gender dysphoria is hormone therapy.

25. I am concerned that if my hormone therapy is abruptly stopped, my male characteristics will return, my mood will change, and it will impact the positive relationships I have built since starting hormone therapy because I am much more comfortable being my true self when I have the right treatment.

26. If I am transferred to a men's facility, I know I will not be safe. I will be a target for sexual harassment because I am a transgender woman. I have already been raped [redacted] in men's prison and am afraid it will happen again if I am transferred. I have also been sexually harassed because of my transgender identity.

27. hen I was housed with men, I was always in survival mode and felt anxious in the housing unit and scared that someone will attack me. I always felt like I had eyes on me when I was in the men's facilities because I am transgender. I am terrified about my physical safety if I am forced into a men's facility.

28. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. The recent policy changes have already caused me so much stress and anxiety.

29. This declaration was prepared by my attorney, Natalie raner, based on the facts I provided, and I reviewed it on May 11, 2026 during a phone call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Natalie raner
Lois Jones, c/o Natalie raner

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF MARIA MOE** |

**MATERIAL UNDER SEAL DELETED**

I, Maria Moe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons at [redacted]. My BOP register number is [redacted]. I am using the pseudonym Maria Moe to protect myself. I am submitting this declaration in support of my request for relief.

2. I was born on [redacted], in [redacted]. I am a transgender woman.

3. Although I was born male, I knew from a very young age that I was different. As early as age seven, I began to notice a difference between my birth sex and my internal sense of who I am. At age ten or eleven, I saw a transgender woman on television, and that sparked my understanding of who I was and my desire to live as a female.

4. When I was twelve years old, I came out to my mother and my aunt. They were both very supportive and helped answer my questions. A year later, at age thirteen, I began working with a therapist who specialized in gender dysphoria and began discussing hormone therapy.

5. I was formally diagnosed with gender dysphoria by my primary care physician in [redacted] when I was fourteen years old. I was also diagnosed with [redacted] by a psychiatrist in [redacted]. I experienced depressive symptoms including sadness, insomnia, fatigue, lack of appetite, and intermittent suicidal ideation stemming from my gender dysphoria.

6. I began hormone therapy in the summer of [redacted], at age [redacted] under the care of [redacted]. I have been on

**MATERIAL UNDER SEAL DELETED**

hormone therapy continuously since that time—for [redacted] years. Hormone therapy has helped me feel much better and more like myself.

7. The same doctor who provided my transgender healthcare also treated me for a [redacted] that I have had since childhood. He ensured that the prescribed hormones worked in conjunction with my [redacted] medication.

8. I have a history of serious depression and self-harm. I attempted suicide [redacted], while I struggled with my gender dysphoria. In [redacted], I [redacted]. In [redacted], I [redacted]. I graduated from [redacted] in [redacted]. After graduation, I worked for a nonprofit organization until my arrest in [redacted]. This is my first incarceration.

9. I have a history of being sexually abused [redacted]

10. [redacted]

11. After my arrest, I was initially housed at the [redacted] in [redacted], where I continued to receive hormone therapy and was housed with women. I entered BOP custody in approximately [redacted] and was processed through [redacted] before being transferred to [redacted] a women's facility.

12. At my BOP intake in [redacted], my health screening documented my status as a transgender female who had been on hormone therapy since age [redacted]. BOP continued my estradiol

**MATERIAL UNDER SEAL DELETED**

and spironolactone. I was also continued on [redacted] for my [redacted].

13. In my time at [redacted] a women's prison, I continued to receive the hormones I was prescribed to treat my gender dysphoria as well as [redacted] medication. I was housed exclusively with women.

14. In [redacted], while at [redacted] my providers and I began exploring next steps for gender transition surgery including vaginoplasty.

15. In [redacted], I was transferred to [redacted], in [redacted], another women's prison.

16. At [redacted], I was involved in the [redacted]. Because [redacted] is a women's prison, the commissary provided things like makeup, female undergarments, and other female items.

17. In [redacted] I was in the process of getting approval for vaginoplasty based on multiple medical and multidisciplinary assessments. My surgery never happened.

18. On [redacted], I was told by BOP staff that because of an Executive Order signed by the President, I was being transferred to a men's prison. I and another transgender woman at [redacted] were segregated from the rest of the prison and placed in the Special Housing Unit ("SHU"). I was told that I would be held in the SHU until my transfer, and that I did not have the ability to challenge my transfer because it was required by Executive Order. I was not given any ability to contest my placement in the SHU before being sent there.

19. When I learned I was being transferred, I was frantic and in tears. Because people held in the SHU do not have access to the telephone, I was unable to speak with my mother. I did not know when, exactly, I would be transferred.

**MATERIAL UNDER SEAL DELETED**

20. As I understand it, a court order prevented my transfer at that time and so I was allowed to remain at [redacted].

21. In [redacted], I sought to transfer to a prison where I was able to participate in the [redacted] program. I was transferred to [redacted]. I have remained in general population there.

22. I have continued to receive hormone therapy. There have been times where the BOP has not provided me with medication when it was supposed to, but my lawyers have been able to reach out to officials and my therapy has been restored.

23. I also know the Executive Order requires the BOP to cut off hormone therapy and other medical treatments for transgender people. I am terrified of what it would mean to be cut off from my hormone therapy. I have been taking hormones since I was [redacted] years old; they have shaped me and my body for over half my life [redacted]. Hormone therapy is the only treatment that has effectively treated my gender dysphoria. Without it, my [redacted] and distress would return. No clinician has ever informed me that mental health counseling or psychotherapy could replace my hormone treatments or fully treat my gender dysphoria. I also wear female underclothing, use female products, and do my hair and makeup almost daily. My BOP records have always listed my sex as "F" for female. I have the same characteristics as other women: breasts, lower muscle mass and strength, soft skin and a feminine voice. I appear female and am recognized as a woman by others.

24. For the entirety of my [redacted] in BOP custody, I have been housed exclusively with women. I have never been sexually abused or assaulted in a women's facility. If the BOP moved me to a men's prison, I would be an easy target for harassment, abuse, and violence, including sexual assault. The prospect of being forced into a men's prison—where I would be

**MATERIAL UNDER SEAL DELETED**

surrounded by men who would see me as a target—terrifies me. Given my history of sexual abuse as a child and my prior suicide attempts, I am deeply afraid that an assault or even the threat of assault would cause me to harm myself.

25. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. I know that being transferred to a men's facility would devastate my mental health, put my physical safety at severe risk, and deny everything I am. I cannot imagine facing that while also being cut off from the hormone therapy that has been part of my body [redacted]

26. This declaration was prepared by my attorney, Alexander Shalom, based on the facts I provided, and I reviewed it on May 6, 2026, during a legal call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Alexander Shalom
Maria Moe c/o Alexander Shalom

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF MARY DOE** |

**MATERIAL UNDER SEAL DELETED**

I, Mary Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am submitting this declaration in support of my request for relief. I am using the pseudonym Mary Doe to protect myself. I am over the age of 18 and fully competent to make this declaration.

2. I am a transgender woman. I was born on [redacted] in [redacted].

3. I knew I was different from others when I was approximately eight years old and tended to play with traditionally feminine toys such as dolls. Most of my friends were girls. I have a vivid memory of entering my kindergarten classroom for the first time and being told that students were placing their backpacks on different color-coded sides of the room – blue for boys and pink for girls. I was reprimanded for placing my bag on the pink side, where I knew I belonged.

4. Between the ages of approximately eleven and fourteen, I began feeling like I was in the wrong body and developed a strong desire to be rid of my male characteristics. I also began having resentment toward my penis and experienced urges to castrate myself.

5. When I was thirteen years old, I had my first romantic relationship with a non-transgender male, and I felt like a girl dating him.

6. I wanted to express my femininity for a long time but I was scared. I grew up in the [redacted], and being gay or transgender was frowned upon. People were assaulted or even killed for it. I feared that I could be assaulted or killed if I came out. I feared what my family would think, too, and whether they would disown me.

**MATERIAL UNDER SEAL DELETED**

7. Moreover, my father took issue with my femininity and always pushed me to be more masculine. My father was physically and emotionally abusive, and he often called me names such as "sissy" and made fun of me for wanting to be a girl.

8. When I was eighteen years old, I [redacted], in part to get away from my father, and in part in an attempt to force away my thoughts of being a woman and to conform to social norms regarding gender roles. I [redacted] and then, after leaving [redacted] for a year, I [redacted]. During my [redacted], I continued to try to force myself to be someone I was not by dating women; however, it felt unnatural and confusing. I began spending time with openly gay [redacted] and started to think of myself as transgender though I didn't have the language for it yet. I tried to keep my identity secret because of the potential consequences from the [redacted]

9. When I was twenty-one, I married a woman.

10. When I was twenty-three, I began dressing as a woman when I could. Because I was still in the [redacted] at the time, I felt that I could not express myself fully.

11. After I left the [redacted], I became estranged from my wife and began buying female clothing and wearing it in the privacy of my home. However, I would then feel ashamed of myself for doing so and throw that clothing out, and then I would buy new female clothing and repeat the cycle. I also began painting my toenails around this time.

12. I began officially considering myself a female when I was approximately twenty-eight years old.

13. I have a long-standing history of [redacted], dating back to my childhood. I attribute a lot of that to the rejection I experienced from my family and others relating to my gender identity.

**MATERIAL UNDER SEAL DELETED**

14. I first attended counseling sessions while in the [redacted] for marital difficulties, [redacted].

15. When I was twenty-eight, I attempted suicide for the first time. I had been feeling sad and hopeless about never being able to express my true self.

16. I was arrested at age twenty-nine and initially incarcerated in [redacted] in men's housing at [redacted], where I served the first five years of my sentence. Out of fear of the potential consequences from the [redacted], I did not express my identity as a female in prison. I felt extremely depressed over having to hide my identity.

17. While in [redacted], I made four more attempts at suicide because I was feeling the same sense of sadness and hopelessness about my inability to be my true self.

18. After I transferred from [redacted] to BOP custody in [redacted], I was housed at a number of men's facilities over the years, including [redacted], and [redacted].

19. Being housed in these facilities with men had a substantial negative impact on my mental health and the gender dysphoria symptoms I experienced.

20. I started taking antidepressants in or around [redacted] and was formally diagnosed with [redacted] in [redacted]. The antidepressants helped my mood to a certain extent, but they did not alleviate the symptoms associated with my gender dysphoria (which was not yet diagnosed) and the resentment that I had towards my masculine appearance and male body parts.

21. Between [redacted], I made several attempts to [redacted]

22. Shortly after being transferred into BOP custody, at age thirty-five, I started to identify as transgender to a small group of people around me. A year or two later, I began identifying as a woman and started to grow my nails and hair long.

**MATERIAL UNDER SEAL DELETED**

23. When I was thirty-nine, I was transferred to a [redacted] facility where I told more people, including Psychology Services, about my gender identity. It was at this time that I officially came out as transgender.

24. In [redacted], I was formally diagnosed with gender dysphoria. Shortly thereafter, I started hormone medication and began using the name that I use now. I have been taking hormones consistently since then – except for a brief period when I had to be off of them because I had surgery for [redacted]. During that time, I remained on testosterone blockers, but temporarily stopped taking estrogen.

25. Living in a men's facility exacerbated the gender dysphoria I experienced even after I started hormone therapy. I considered self-harm and suicide. When I finally got transferred to a women's facility, my gender dysphoria symptoms improved dramatically. I was less [redacted], less [redacted] and had fewer thoughts of self-harm.

26. While housed in men's facilities, I was sexually assaulted and twice raped. I also was groped or fought off attempted rapes many more times, including when I was housed in [redacted] men's facilities. Although BOP took steps to try to protect me from sexual assault in men's facilities, the efforts were not enough, and I was in danger every day.

27. BOP's own psychology staff repeatedly assessed me as being at an elevated risk for sexual victimization in men's facilities due to my history of prior sexual assaults, my identification as transgender, and my mental health conditions. BOP psychologists recommended that I not be housed with males identified as being at increased risk for sexual abusiveness and that I receive a greater level of supervision regarding my work and education assignments. Despite these assessments and precautions, the assaults continued.

**MATERIAL UNDER SEAL DELETED**

28. In [redacted], while I was at [redacted], an incarcerated man forced me to [redacted]. I was moved to a different cell within a few days of that. In [redacted], just before I was transferred out of that institution, I was raped by a different incarcerated man.

29. In [redacted], I requested protective custody after hearing incarcerated men making threatening comments about my transgender status. The BOP determined that substantial evidence existed for protective custody, and I was placed in a double-celled Restricted Housing Unit ("RHU") pursuant to the BOP's recommendation that I be placed with a compatible cellmate.

30. In [redacted], my cellmate in the RHU forced me to engage in non-consensual [redacted].

31. In [redacted] I was woken from my sleep by an incarcerated man who was [redacted]. He then forced me to [redacted]

32. In [redacted] I was woken from my sleep by an incarcerated man attempting [redacted]. He then proceeded to [redacted] without my consent. I was able to push him away before it escalated any further, though on his way out of my cell, he [redacted]

33. In [redacted], an incarcerated man woke me from my sleep by [redacted] without my consent.

34. I reported each of these incidents to BOP officials.

35. I was also sexually harassed regularly in men's facilities. This included instances in which other incarcerated people would follow me around, make lewd or inappropriate comments to me, proposition me for sex, leave sexual notes in my cell, expose themselves to me, and masturbate in front of me – all without my consent.

**MATERIAL UNDER SEAL DELETED**

36. I had bad [redacted] at the men's facilities. I became hypervigilant, paranoid, and avoidant of others. I did not feel safe at night and often got little sleep and/or had recurring nightmares in which I relived the assaults. I also started arranging the furniture in my room in a manner that would alert me if someone attempted to enter my room while I was sleeping.

37. I also had terrible gender dysphoria symptoms when I was forced to live in a men's facility, even after I started hormone therapy. This – along with the sexual assaults and harassment – contributed to my [redacted], and overall negative emotional state.

38. In [redacted] I was finally transferred to a female facility. I had previously requested a transfer, but that had been denied. I was subjected to another attempted sexual assault in the men's facility. I was afraid of retaliation, so I did not report it; but other incarcerated people who witnessed it did report it. I met with a psychologist who recommended that I be transferred to a female facility. I have been housed in female facilities ever since.

39. In BOP records, my sex was listed as female, and notations were made indicating my pronouns and name

40. Women's facilities have been much safer for me. My [redacted] symptoms became less severe and less frequent. I have been able to sleep better, am less jumpy and afraid, and have fewer nightmares.

41. I have never been sexually abused or sexually assaulted in a women's facility, and I do not feel at risk of being assaulted. I no longer feel the [redacted] associated with the constant harassment and assault. And I am not being retraumatized by being made to live with men who assaulted me and men who threaten my safety.

**MATERIAL UNDER SEAL DELETED**

42. On [redacted], guards took me out of my cell and put me in separate housing with other transgender women. They told me I was being segregated because of the President's Executive Order.

43. The guards told me I was now listed as male in the BOP system, and they started calling me and the other transgender women "gentlemen" and "Mr." Doe. That caused me a lot of distress and anxiety.

44. On [redacted], I was allowed to go back to general population, but guards told me I was still being transferred to a men's prison. They said that the designation center at [redacted] was finalizing the paperwork that day so that we could be transferred by the end of the week. They also told us that our hormone medication would be stopped.

45. I was so afraid of being housed with men and of the strong possibility of being raped or assaulted again. I know that I would be a target and am not sure I could handle that again. If the BOP transferred me, I know that my fear and jumpiness would come back at once. I feel so much safer being housed with women and I do not know if I could handle the fear I had in men's prisons. It feels like a lamb being thrown back into the lion's den. That is really what it feels like.

46. Being placed in a men's facility would also deny that I am a woman, and that would also cause me [redacted], [redacted], and self-doubt.

47. I also know the Executive Order requires the BOP to cut off medical treatments for transgender people.

48. I have lived as a female for many years. The female hormones I take have resulted in my significant breast development (I wear a C-cup bra), fat redistribution to my hips, increased hair growth on top of my head, decreased body and facial hair, decreased muscle mass, and softer

MATERIAL UNDER SEAL DELETED

facial features. I will again become an easy target for harassment, abuse, and violence, including sexual assault, if I am transferred to a men's prison.

49. As noted above, I have been on hormone therapy since [redacted] More specifically, in [redacted], I began spironolactone. The hormone therapy caused a significant reduction in my [redacted] and thoughts of self-harm. I was able to look in the mirror for the first time in my life and feel acceptance of myself. When I was housed at [redacted], I used to cover mirrors so I did not have to see a "male." My urge to castrate myself significantly decreased once I started hormone therapy.

50. Due to various medical concerns, I have gone on and off estrogen several times. Initially, I was not prescribed estrogen due to medical concerns arising from my history of [redacted]. In [redacted], however, I started on the estrogen patch and my gender dysphoria significantly subsided. Later, because of concerns about [redacted], I was taken off estrogen. At around the same time, my spironolactone dose was reduced. These decreases had a substantial negative impact on my mood, and I began exhibiting numbness, sadness, isolative behaviors, decreased concentration and appetite, and an overall hopelessness regarding my ability to maintain my feminine characteristics.

51. As part of my gender dysphoria treatment, I also have received mental health treatment, including individual therapy, psychiatric medication [redacted], and clinical contacts with psychologists. I have maintained a [redacted] mental health classification since [redacted], which provides for monthly psychology contacts. However, psychotherapy and counseling to treat [redacted] are not enough to treat my gender dysphoria. I also need hormone therapy. I still experienced severe [redacted], and thoughts of self-harm and suicide related to my gender

**MATERIAL UNDER SEAL DELETED**

dysphoria while receiving counseling alone. These symptoms did not improve until I was able to get hormone therapy.

52. No mental health care provider has ever informed me that the psychiatric treatments I received could serve as a replacement for hormone treatments, nor that they could fully treat my gender dysphoria without further hormone treatment.

53. After the Court issued the preliminary injunction, I was allowed to remain at [redacted] in the women's facility with no disruptions to my hormone treatment (I have had some unrelated medical issues, which have caused slight variations in hormone therapy, but have not led to the discontinuation of my treatment). I was relieved and grateful. My [redacted] decreased, and I was able to resume my daily routine and focus on my programming and treatment.

54. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. I know from my own experience what it is like to be a transgender woman in a men's facility – I was sexually assaulted and raped multiple times, I lived in constant fear, and my mental health deteriorated severely. I cannot go through that again. I am also terrified of losing my hormone treatment, which is the only medication that has effectively treated my gender dysphoria. Without it, I know my [redacted] and thoughts of self-harm will return and intensify.

55. Being in a women's facility has made me feel so much better. There have been some hard times when I felt the other women did not fully accept me. Those times were frustrating for me. But I know that despite any difficulties, I am far safer in women's prisons, which is why I have tried to stay in women's facilities. If I am forced to return to a men's facility, I am afraid that the people who work there and the men who are incarcerated there will learn that I came from a women's facility, which would place me at even greater risk than before. It is common in prisons to ask where people transferred from. I won't be able to answer. If I tell people that I have been in

women's prisons, I will be an enormous sexual assault target. If I don't answer, I will also be a sexual assault target because people will think I am hiding something and will victimize me for that. In any case, I have been housed in many prisons over the years; many people know me. Men in whatever men's facility in which I land will know I am being transferred from a women's facility.

**MATERIAL UNDER SEAL DELETED**

Executed on the 28th day of April in the year 2026.

Signature: [redacted]

Date: 4-28-26

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF OLIVIA DOE**

**MATERIAL UNDER SEAL DELETED**

I, Olivia Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons at [redacted] and have a release date of [redacted]. I am using the pseudonym Olivia Doe to protect myself. I am submitting this declaration in support of my request for relief.

2. I was born on [redacted], in [redacted].

3. I am a transgender woman and have known this ever since I was a little girl. When I was four or five years old, I told my mom that how I felt on the inside didn't match how I looked on the outside.

4. I grew up in a [redacted] where it was practically unheard of to be transgender. I have had a female gender identity from as early as I can remember.

5. I experienced severe abuse as a child. From birth until approximately age thirteen, I lived with my mother and her boyfriend, [redacted]. As a result of my childhood trauma, I received mental health treatment and was diagnosed with [redacted]

6. In [redacted], when I was [redacted] years old, I was diagnosed with gender identity disorder and began receiving hormone treatment. However, I was not able to continue that treatment consistently due to financial constraints my grandparents' declining health, and their opposition to me taking them.

**MATERIAL UNDER SEAL DELETED**

7. Once I left my family's home as an adult, I moved to [redacted], and lived openly as a woman for five years. I dressed as a woman, used female pronouns, and felt like I could finally be myself. After losing my job, I had to return to [redacted] to live with my grandmother since I no longer had a salary. I had to hide my female identity during that time because my grandmother did not accept me. This made me feel deeply anxious and depressed.

8. In [redacted], while I was incarcerated in a state facility, I was severely assaulted [redacted]. I lost consciousness and was rushed to [redacted]. As a result of the assault, [redacted]. Approximately three to four months after the assault, [redacted]

9. I entered the BOP in [redacted] and was placed at [redacted], a male facility. In [redacted], I met with two psychologists and went through an extensive psychological evaluation and was again diagnosed with gender dysphoria. The BOP started me on hormone medication in [redacted]. I was very relieved to finally receive treatment again.

10. After beginning hormone treatments, I noticed physical changes, including increased breast growth and softer skin.

11. In [redacted], I legally changed my name.

**MATERIAL UNDER SEAL DELETED**

12. Though hormone therapy improved my overall well-being, it was very difficult for me to be housed in men's facilities. In [redacted], I wrote a suicide note and [redacted]. Afterwards, I was placed on suicide watch for two days.

13. While I was housed at [redacted], I was brutally raped by another inmate on [redacted]. The same inmate attempted to rape me again the next day. The rape was extremely traumatic, and I remember feeling like I was being ripped open. I continue to suffer medical complications, including nightmares, [redacted], and rectal bleeding, as a result. Since I never know when the bleeding will start, I have to wear a pad at all times. I also experienced worsening mental health symptoms.

14. I reported the rape by filing a PREA report at [redacted]. After filing the report, I was placed in the SHU for several months before I was transferred to [redacted], another men's facility. Being in the SHU was isolating and worsened my mental health. I felt like the BOP was supposed to keep me safe and they failed to do that. In [redacted], I was placed on suicide watch again.

15. In [redacted], I was transferred to [redacted], another men's facility. At [redacted] I was bullied and harassed by other inmates because I am transgender. During one incident in [redacted], I was assessed and again placed on suicide watch for approximately two days because of the hopelessness and helplessness that I felt.

16. In [redacted], I was transferred to [redacted], another men's facility. At [redacted], I continued to experience significant mental health difficulties. I did not feel safe or comfortable in men's facilities given my prior rape. I continued to request placement at a women's facility.

**MATERIAL UNDER SEAL DELETED**

17. In [redacted], I was placed on suicide watch at [redacted] for approximately two days because I was targeted for harassment again for being transgender.

18. I had been fighting to be transferred to a female facility through the Transgender Executive Council since I was diagnosed with gender dysphoria by BOP in [redacted]. I jumped through every hoop and hurdle but continued receiving denials. After one of the denials in [redacted], I became extremely depressed, and I attempted suicide by [redacted]. I was placed on suicide watch. Each of my suicide watches occurred while I was housed in men's facilities. Being housed with men exacerbated my depression and despair.

19. Around [redacted] transfer to a women's facility and seeking essential medical care to treat my gender dysphoria. I was transferred to the women's facility at [redacted] in [redacted].

20. I felt extreme relief to be at a female facility. I was accepted by other women, and felt like they saw me as one of them. While incarcerated, I've never felt safer or more comfortable than I have here. I can finally be myself. I don't want to be treated differently than everyone around me. Here, I'm treated as just another woman who is trying to do her time and go home.

21. I have been involved in programming consistently since arriving at [redacted]. If I were transferred to a men's facility, I know that I would again feel despair, anxiety, and depression.

22. I have not been sexually assaulted in a women's facility and feel safe here. On arrival at [redacted], I was rated at low risk of victimization, and no housing or programming modifications were recommended. This is in stark contrast to my experience in men's facilities.

**MATERIAL UNDER SEAL DELETED**

23. On [redacted], I learned that the President had signed an executive order related to transgender individuals. I immediately experienced increased stress and anxiety.

24. On [redacted], I and a number of the other transgender women at [redacted] were called to Health Services. Staff told us that because of the President's Executive Order, we were being placed in special housing pending transfer to a male facility. [redacted] At that time, I remember feeling like I would rather die surrounded by people who supported and loved me, than return to a male facility. I also had an intense physical reaction to hearing about my transfer to a male facility. [redacted] I was, and still am, terrified of returning to a male environment.

25. As I understand it, a court order prevented my transfer at that time, and I was allowed to remain at [redacted]

26. Around [redacted], I was returned to general population housing. I was told that everything had been put on hold, and that my medical care will continue for now.

27. I continue to experience mental health symptoms as a result of the Executive Order. I feel like I have not been the same since I was on suicide watch. My mental health care level was raised from [redacted] after that happened, but I believe I have been moved back down to a [redacted] now that more time has passed and I am feeling more stable. I receive weekly appointments with a psychologist, which sometimes occur more frequently. The uncertainty around my placement and safety is taking an immense toll on my wellbeing.

28. I have been receiving hormone therapy consistently since [redacted], for approximately [redacted]. Hormone therapy has been the most important treatment for my gender dysphoria.

**MATERIAL UNDER SEAL DELETED**

29. I have never been told by a mental health care provider that psychotherapy or counseling alone could replace my hormone treatments or fully treat my gender dysphoria without further hormone therapy.

30. Over the years, hormone therapy has produced physical changes. I have developed breasts, softer skin, and increased hair growth on my head. I have also experienced decreased muscle mass and changes in my body fat distribution.

31. I know the Executive Order may require the BOP to end my hormone medication, which terrifies me. Being taken off hormone medication would be devastating. My outside finally mostly matches how I feel on the inside. It's difficult to put into words, but taking my medication away would take an immense toll on me physically and mentally.

32. For almost [redacted] years I have been housed in a women's facility, having never been sexually assaulted. But my appearance, developed over years of hormone therapy, means that I will be an easy target for harassment, abuse, and violence, including sexual assault, if I am transferred to a men's prison.

33. I am [redacted] years old. [redacted] all of which make me particularly vulnerable. Given my history of childhood sexual abuse, the sexual assault I experienced at [redacted], my serious medical conditions, and my prior suicide attempts, I do not believe I would survive being returned to a men's facility.

34. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. I know that being transferred to a men's facility would devastate my mental health, put

my physical safety at severe risk, and deny everything that I am. I cannot imagine facing that while also being cut off from the hormone therapy that has become essential to who I am.

35. This declaration was prepared by my attorney, Jennifer Delgado, based on the facts I provided, and I reviewed it on May 12, 2026, during a legal call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Jennifer Fiorica Delgado

Olivia Doe c/o Jennifer Fiorica Delgado

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF RACHEL DOE** |

**MATERIAL UNDER SEAL DELETED**

I, Rachel Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am submitting this declaration in support of my request for relief. I am using the pseudonym Rachel Doe to protect myself. I am over the age of 18 and fully competent to make this declaration.

2. I am currently in the custody of the Bureau of Prisons, [redacted]

3. I was born on [redacted]. I am a transgender woman.

4. I first started dressing and appearing more feminine while I was in middle school.

5. I began experiencing symptoms of [redacted] around the age of 17 or 18. These symptoms were brought on and heightened in part by my untreated gender dysphoria.

6. I began seeing a therapist in [redacted] and was formally diagnosed with gender dysphoria. I started receiving hormone treatment around that same time. I finally felt like I was able to be who I was meant to be. Hormone therapy started to help my [redacted] subside, though it did not solve everything.

7. I was prescribed [redacted] and have [redacted] since then. [redacted] help my mood to a certain extent, but they do not alleviate the symptoms of my gender dysphoria.

8. In [redacted], I started using a female name.

9. In [redacted] I take prescribed hormone medication to treat my gender dysphoria.

MATERIAL UNDER SEAL DELETED

[redacted]

10. I got married in [redacted], and I love my husband dearly. [redacted]

11. [redacted]

12. In [redacted] BOP transferred me to [redacted] where I was housed initially with women. About a week and a half after arriving in [redacted] BOP transferred me from the women's unit to the men's unit. I was terrified. BOP psychology staff assessed me as being at elevated risk for sexual victimization because of [redacted] and because I am transgender. They also increased my mental health care level from [redacted] which required weekly psychology contacts.

13. Being housed with men in [redacted] was horrible. I felt extremely anxious and like I had to be constantly alert and aware of my surroundings.

14. BOP staff put me in a space [redacted] I think they did this because they thought I would be safer, but I did not feel safe and this placement did not stop men from sexually harassing me.

**MATERIAL UNDER SEAL DELETED**

15. One of the guards told an incarcerated male that [redacted] Those comments terrified me and made me acutely aware of the risk I was facing.

16. On [redacted], BOP decided to send me from [redacted] to [redacted]. When I was leaving [redacted], two male officers, with no female officer present, strip searched me. I had to bend over, squat, cough, and lift my breasts in front of them. It was humiliating and degrading. I was sick to my stomach and felt like I might vomit when it was happening. I had never been strip searched by male officers before.

17. I was then transferred to [redacted], which is a men's prison. Again, BOP psychology staff assessed me as being at elevated risk for sexual victimization.

18. Like in [redacted], I was terrified. When I walked to main line to go eat, the men would stare, whistle, clap, and knock on their windows. In addition to the constant sexual innuendos and harassment, I was propositioned for sex at [redacted] One man threw a note into my lap when I was sitting in the recreation area. It told me [redacted]. The men terrified me and I constantly felt like I would be attacked.

19. I reported these incidents to staff and an officer from SIS interviewed me. BOP staff took steps to try to protect me from sexual harassment and assault in men's facilities, but my feminine appearance [redacted] made me a constant target and I never felt safe. The only place where I can avoid this is a women's facility.

**MATERIAL UNDER SEAL DELETED**

20. I was also denied a bra at the men's facilities. I have very large breasts [redacted] so not having a bra is a major problem. I felt like men stared at me even more because I did not have any support.

21. Being held in men's facilities amped up my [redacted]. I was never sure when the tide would turn and things would get especially dangerous. Some incarcerated people, staff, and vendors were kind and helped me without judgment or bias. But others laughed at my struggles and kept me in a state of constant fear. Being on high alert all the time really took a toll on me. I was unable to sleep and had trouble eating. I was determined to get through whatever was thrown at me – I didn't have another choice – but my time in a men's facility was among the most difficult of my life.

22. My attorneys in this case added me as a Plaintiff on [redacted], and asked the Court on [redacted] to order the BOP to give me medical care for my gender dysphoria and move me back to a women's prison. After the Court granted that motion, the BOP transferred me to [redacted] on [redacted], where I was able to live my daily life as a woman again. This was life-changing for me. I was not afraid anymore and my nervous system could finally relax. I felt safe and had my medications again, which made me feel much better. I have only lived with women since that time.

23. In [redacted], the BOP sent me to [redacted].

24. I was then transferred to [redacted]. I have been in BOP custody [redacted], and I currently have a release date scheduled for [redacted] though credits could allow me to be released even sooner.

**MATERIAL UNDER SEAL DELETED**

25. Hormone medication [redacted] are the only things that have treated my gender dysphoria. I have also taken mental health medication throughout my life, but this did not treat my gender dysphoria.

26. No clinician has ever told me that mental health medication or counseling could replace my hormone treatments or fully treat my gender dysphoria.

27. I have lived as a woman for over [redacted] years and have received extensive hormone treatment [redacted]. I know from my experience at men's facilities before the court order protecting me that I will be constantly sexually harassed and propositioned in men's prisons. BOP staff know this and have already recorded my elevated risk for sexual victimization at men's prisons. I am terrified that if the BOP moves me to a men's prison or halfway house, I will be an easy target for harassment, abuse, and violence, including sexual assault.

28. Being placed in a men's facility would also be terrible for my gender dysphoria. Living as a woman and being seen and treated as one by others is extremely important to me and to my mental health. I am afraid that if BOP moves me, I will experience serious anxiety and depression.

29. This declaration was prepared by my attorney, Alexander Shalom, based on the facts I provided, and I reviewed it on May 11, 2026, during a legal call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Alexander Shalom
Rachel Doe c/o Alexander Shalom

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF SALLY DOE**

**MATERIAL UNDER SEAL DELETED**

I, Sally Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am currently in [redacted] I am using the pseudonym Sally Doe to protect myself. I am submitting this declaration in support of my request for relief.

2. I am a transgender woman. I was born on [redacted], in [redacted]

3. I have always known I was different, but I did not fully understand I am transgender until later in life. I began my transition when I was in [redacted] and that made a huge difference in my life.

4. [redacted]

5. [redacted] This traumatic experience has stayed with me throughout my life.

6. I have a history of thoughts of suicide, dating back to [redacted]. In [redacted], I had a nervous breakdown and was hospitalized. I felt hopeless and did not see any reason to continue living.

7. In [redacted] I tried to kill myself. I was hospitalized for about two days. By that time, I had struggled with a lot of mental health issues and tried several medications to help me. Looking back, I think most of my mental health issues were actually because of my undiagnosed gender dysphoria.

8. When I entered BOP custody in [redacted], I was housed at [redacted], a men's facility. I was not aware of any other transgender women at this facility other than me. At the time, I did not present myself as transgender because I feared for my safety.

**MATERIAL UNDER SEAL DELETED**

9. I later transferred to another men's facility, [redacted] I began hormone therapy in the BOP in [redacted] which treats my gender dysphoria. I have received ongoing hormone medication since then. In [redacted], the BOP formally diagnosed me with gender dysphoria. The BOP also specified that I should only be searched by female staff unless there was an emergency.

10. My time at [redacted] was really hard and I often felt targeted and harassed for being transgender. Other incarcerated people wouldn't let me sit in certain areas of the common room, for example, and didn't want me to enter even my own housing unit. BOP staff would frequently misgender me, including in front of other incarcerated people.

11. I have now taken hormone medication for nearly [redacted] years in the BOP. Because of this medical care, I have breasts and my body looks more like a woman's body. My hormone medication has really helped my gender dysphoria and my mood and overall functioning.

12. The BOP moved me to a women's facility in [redacted].

13. Moving to a women's facility really helped me. I have built friendships and began participating in programming. I feel comfortable for the first time.

14. Before I started treatment for my gender dysphoria, I felt like I was stuck in a man's body. Since I transitioned and especially since moving into a women's prison, I now feel like myself and my [redacted] have gotten much better. I used to be negative, but I am now happy and positive. It felt like a switch that just flipped and from then on, I have been a much happier person.

15. In [redacted], I was informed that I would be transferred to a men's facility and was removed from general population and placed in segregation with other transgender

**MATERIAL UNDER SEAL DELETED**

women. Following this news, my mental health care level was increased and I was placed on a [redacted]. I was in segregation for one week.

16. Between that time and my transfer to [redacted] I lived in constant fear and stress thinking I would be transferred to a men's facility. Every time I was called by BOP staff, for any reason, I was overcome with severe anxiety and distress that it would be the day I would be transferred to a men's facility.

17. BOP psychologists have specifically noted that my mental health destabilizers include being targeted for discrimination. I was harassed in men's facilities for being transgender and because of this, I know firsthand what awaits me if I return to a men's facility.

18. The other women at [redacted] accept me as a woman and treat me that way. This has really helped my gender dysphoria.

19. If I am transferred to a men's facility, I am afraid I will be targeted, mistreated, and harassed just as I was before. I know that returning to a men's facility will mean enduring that same hostility again, but this time with a feminized body that will make me an even bigger target.

20. If the BOP moved me to a men's facility and stopped my hormone medication, or even placed back in segregation, I would be devastated. Hormones and moving to a women's prison have been the only effective treatment for my gender dysphoria. I finally feel like myself.

21. I am afraid if these things are taken away that I will become incredibly depressed and anxious. Before my treatment, I had thoughts of suicide, panic attacks and felt hopeless. I do not want to return to that time.

**MATERIAL UNDER SEAL DELETED**

22. No mental health care provider has ever informed me that other treatments could serve as a replacement for hormone treatments, or that they could fully treat my gender dysphoria without further hormone treatment.

23. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. The recent policy changes have already been devasting and stressful.

24. If I am forced into a male facility, I am terrified for my physical safety and mental health. After nearly [redacted] years of hormone therapy in the BOP and physical feminization, I would be an even bigger target than I was before. I cannot go back to that environment.

25. This declaration was prepared by my attorney, Jennifer Delgado, based on the facts I provided, and I reviewed it on May 8 and 11, 2026, during legal calls. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in New York, NY on this 13th day of May, 2026.

/s/ Jennifer Delgado
Sally Doe, c/o Jennifer Delgado

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL<br><br>**DECLARATION OF SARA DOE** |

**MATERIAL UNDER SEAL DELETED**

I, Sara Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am using the pseudonym Sara Doe to protect myself. I am submitting this declaration in support of my request for relief.

2. I am a transgender woman. I was born on [redacted]

3. I have known I was a woman since I was young. I was always drawn to wearing girls' clothing, playing with girls' toys, and would often wear my older sister's hand-me-down clothing instead of my older brother's clothes.

4. I had a terrible childhood and was repeatedly abused. [redacted] When I was 15 years old, I became suicidal because I was so distraught about not being able to live as a woman and was trying to deal with so much trauma. I was involuntarily committed in a hospital in [redacted]

5. The therapist I saw as a result of that hospitalization tried to "convert" me to a heterosexual male. He told me that I was hurting my family by being transgender. That made me feel like a broken person.

6. When I was in high school, I began to transition and live as a woman. I began dressing as a woman, wearing makeup, wearing earrings, and growing out my hair.

7. I was formally diagnosed with gender dysphoria when I was 18. When I was 19 years old, my doctor prescribed me hormone therapy.

**MATERIAL UNDER SEAL DELETED**

8. I have also [redacted] Those all happened outside of prison.

9. Because of my long-term hormone therapy and [redacted]

10. All my legal documents identify me as female.

11. hen I was first arrested in [redacted] and when I entered BOP custody in [redacted], I was immediately treated as female. Before and after my sentencing, I have always been housed in women's facilities.

12. On [redacted], guards removed other transgender women from my housing unit but did not remove me. The following day, in the middle of the night, they came for me and told me someone had found me "on a list" and I had to be transferred to a male prison because of the Executive Order. I was placed in the Special Housing Unit. I was terrified. I was frightened that I would be physically assaulted, raped, and even killed, especially because [redacted]. BOP records acknowledged that " p lacement in restrictive housing results in increased risk for death by suicide and can contribute to decompensation in overall mental health."

13. On [redacted], staff moved me back to general population. I am very afraid that BOP will try to move me again.

14. If I am transferred to a men's facility, I will not be safe. hen I was first moved out of the Special Housing Unit after I was told I was being transferred, staff told me that I [redacted] They were right. I know I will be at an extremely high risk of violence and sexual assault because I am a transgender woman. I will also be forced to be strip searched by men, pat searched by men, and will have to shower and change in front of men. Just thinking about what

**MATERIAL UNDER SEAL DELETED**

that would be like fills me with fear and dread, particularly given my history of sexual abuse by men.

15. Ever since I was first pulled from my cell in the middle of the night and told I would be transferred back in [redacted], I have struggled with increasing anxiety, night terrors, and depression. I have nightmares at night that I am being raped by groups of men and am afraid when I hear keys coming down the hall that they are going to pull me out again to tell me I am being transferred.

16. Because of the anxiety and stress, I had to seek psychiatric help and was started on [redacted]. It helps but I still struggle to sleep and have nightmares about the prospect of going to a men's facility.

17. I began hormone therapy before my incarceration. I have received ongoing hormone medication since I came into BOP custody.

18. Around the same time I was told I would be transferred, a nurse and doctor from the BOP regional office told me that the dosage of the hormones I have received for years would be lowered and they would soon taper me off. I was so scared when I heard this. Not only have I been on hormones since before I came to BOP, [redacted]

19. I also need hormones to treat my gender dysphoria. Throughout my time in the BOP, doctors prescribed estradiol valerate injections and daily oral medroxyprogesterone. In [redacted], BOP medical staff initiated a taper to discontinue my estradiol. They said this was because of a change in policy. My provider wrote orders to reduce my dosage and then to discontinue the medication entirely. My daily medroxyprogesterone was also discontinued at that time. This reduction was not based on any medical indication or adverse reaction.

**MATERIAL UNDER SEAL DELETED**

20. About five days later, on [redacted], BOP staff told me the taper of my hormone medications was put on hold and that I was being placed back on my most recent dosage of hormones. Although my hormones were restored at that time, the experience caused me significant emotional distress. During the period when the taper was in effect, I was already experiencing severe emotional stress from the changes in the medical policy.

21. [redacted]

22. [redacted]

23. [redacted] The only medication that helps my gender dysphoria is hormone therapy. No mental health care provider has ever informed me that other treatments could serve as a replacement for hormone treatments, nor that they could fully treat my gender dysphoria without further hormone treatment.

24. I fear that the physical changes from losing access to hormones, combined with the threat of being housed in a male facility, would be devastating to both my mental health and my physical safety.

25. I am deeply afraid of what will happen if the preliminary injunction is no longer in place. I have already experienced what it is like to be suddenly removed from general population and placed in the Special Housing Unit solely because of my transgender status. I was so upset and scared. I told BOP staff that I feared I would be raped and killed if transferred to a male

facility. The recent policy changes have already caused me so much emotional distress that I needed to be placed on psychiatric medication.

26. This declaration was prepared by my attorney, Alexander Shalom, based on the facts I provided, and I reviewed it on May 8, 2026, during a legal call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Alexander Shalom
Sara Doe c/o Alexander Shalom

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF WENDY DOE**

**MATERIAL UNDER SEAL DELETED**

I, Wendy Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am submitting this declaration in support of my request for relief. I am using the pseudonym Wendy Doe to protect myself. I am over the age of 18 and fully competent to make this declaration.

2. I have been serving my sentence in the Federal Bureau of Prisons ("BOP") since the end of [redacted] and have only ever been housed in women's facilities. I am currently living in [redacted].

3. I was born on [redacted].

4. I am a transgender woman.

5. Since around the age of four, I began realizing I was female and feeling like I was in the wrong body.

6. When I was around [redacted] years old, I was told I had [redacted] and [redacted]. Around this time, I also began engaging in [redacted] self-harm behavior. I attribute these symptoms and my self-harm to my then-undiagnosed gender dysphoria. In addition, I was physically, sexually, and emotionally abused throughout my childhood and was diagnosed much later in life with [redacted]

7. I started living as a woman in [redacted], at the age of nineteen, and began hormone therapy in or around [redacted]. I received a formal diagnosis of gender dysphoria in or around [redacted]

8. My mother did not approve of my transition and refused to continue our relationship after that.

**MATERIAL UNDER SEAL DELETED**

9. In [redacted], I legally changed my name and my sex marker to female on my driver's license as well as my birth certificate, social security card, and passport.

10. [redacted]

11. While incarcerated prior to my sentencing, I was housed in a female facility and in [redacted]. During that time, there was a six-month period where I was not given hormone medication.

12. In [redacted], I was placed in BOP custody and housed in [redacted], a women's facility. During the first four months there, I was not given my hormone medication. I had to repeatedly complain and advocate for the medication that I so desperately needed. [redacted] I was, however, provided with necessary female toiletries through commissary.

13. When I didn't have my hormone medication in pre-sentence custody and at [redacted], my physical and mental health suffered. I felt tired and achy all the time and had intense bone pain. My moods and emotions were all over the place. I could not think clearly and I felt detached. I was still on mental health medications during those periods, but they were not helping me regulate my emotions or managing my symptoms or mental distress. When I had previously been on my hormone medication, my [redacted] significantly abated. Without hormones, my [redacted] got worse. Those were really bad times when I did not feel like myself.

**MATERIAL UNDER SEAL DELETED**

14. During my first year and a half at [redacted], the other women housed there did not know I was a transgender woman.

15. In [redacted], I was transferred to [redacted] another women's prison. [redacted] provided all the commissary items I needed to live fully as a woman. I was also able to continue on my hormone therapy [redacted] without significant interruption.

16. At [redacted], I participated in all programs available to me. I successfully completed the [redacted] program, which is designed to provide treatment to those with [redacted]. I also participated in the [redacted] – which I still participate in while [redacted] – and I served as an [redacted] mentor, [redacted], and [redacted] to other women housed at [redacted]. These programs have had a profoundly positive impact on my mental health.

17. In all of the institutions in which I have been housed, I have been subjected to searches by female corrections officers only.

18. On or about [redacted], BOP officials transferred me to a mixed sex facility at the [redacted]. I was told I was being transferred because of the executive order and that I could no longer be housed in a BOP women's facility.

19. They kept me in segregation for all five days I was there because they said they did not know what else to do with me.

20. In this Special Housing Unit ("SHU"), I was housed alone in a small cell with nothing to do all day. I was also placed on suicide watch after BOP clinicians determined that the transfer to a men's facility and disruption of my hormone treatment could be a significant source of distress.

**MATERIAL UNDER SEAL DELETED**

21. The prospect of being housed with men was terrifying. It also did not help that I was unable to participate in [redacted] during these five days.

22. On or about [redacted], I was sent back to [redacted]. No one explained to me why I came back and no one could tell me if it would be permanent. I later learned that this was because of the injunction in this case.

23. Even after I was back in the women's facility, I was extremely anxious and upset that I might still be housed with men or taken off my hormone medication. I know I cannot be housed safely with men and that I need my hormone medication.

24. On or about [redacted], BOP staff told me again that I would be transferred to a men's facility.

25. The prospect of this – and the associated looming risk of physical and sexual abuse – further increased my anxiety. I became hypervigilant, my startle response increased, and every time I heard keys coming towards my cell, it brought flashbacks to the night I was transferred to [redacted]. I had developed good relationships with several staff members and other women at [redacted] and I was scared of losing this support system.

26. On [redacted], BOP upgraded my mental health care level [redacted], which provides for monthly psychology contacts.

27. But counseling is not enough to treat my gender dysphoria. I also need hormone therapy. I know exactly how it feels to lose my hormone treatment and what it does to my body and mental health, and I never want to experience that again.

28. No mental health care provider has ever informed me that mental health medications or counseling could serve as a replacement for hormone treatments, or that they could fully treat my gender dysphoria.

**MATERIAL UNDER SEAL DELETED**

29. In late [redacted], the BOP moved me to [redacted]

30. I feel safe in women's facilities. I have not been sexually abused or sexually assaulted in a women's facility, and I do not feel at risk of being assaulted.

31. I am terrified that I would face violence and sexual assault if I am transferred to a men's facility. When I was sent to [redacted], I did not know if at any time I would be put in general population with the men. I am scared of being the target of sexual violence. I have been living as a woman since [redacted] and have undergone significant feminization through hormone therapy [redacted]. If I get housed in a men's facility, I truly believe I will be threatened, harassed, assaulted, or even killed.

32. Being placed in a men's facility would also be horrible for my gender dysphoria. I did not have any symptoms of gender dysphoria when I was in a women's prison and had my hormone medication. I am terrified my gender dysphoria would get much worse if the BOP moves me to a men's facility where I will be surrounded by and forced to live with men, and my existence as a female will not be recognized.

33. I am also terrified about losing access to my hormone therapy. As I know from past experience, this would have a horrible effect on my physical and mental wellbeing. I have lived as a woman for [redacted] and there is no way I could handle losing that.

34. This declaration was prepared by my attorney, Natalie Kraner, based on the facts I provided, and I reviewed it on May 8, 2026, during a phone call. I approve of the contents of this declaration. If given the opportunity, I will add my signature to this declaration.

Executed in Roseland, NJ on this 13th day of May, 2026.

/s/ Natalie Kraner
Wendy Doe, c/o Natalie Kraner

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE DOE, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00286-RCL

JANE JONES, et al.,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,

Defendants.

Case No. 1:25-cv-00401-RCL

MARIA MOE, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 1:25-cv-00653-RCL

**DECLARATION OF ZOE DOE**

**MATERIAL UNDER SEAL DELETED**

I, Zoe Doe, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am incarcerated in the Bureau of Prisons. I am using the pseudonym Zoe Doe to protect myself. I am submitting this declaration in support of my request for relief.

2. I am a woman. I was born on [redacted], but ever since I was little, I felt and knew that I was a girl. I fought it for a long time and tried to live as a man, but I could not deny or change who I am.

3. When I was a young child, I used to dress as a girl with my sisters until I got in trouble for it around age 5 or 6. After that, I would take my sisters' clothes and dress as a girl in secret at night. I was often teased for playing hopscotch or skipping, crying easily, wanting to be a ballerina, and having no interests in sports. Starting around age 6, I would push my penis and testicles up inside my body so that they could not be outwardly seen.

4. By age 8, I had clear thoughts that I was in the wrong body. I used to pray that I would be changed into a girl. By age 12, I was routinely dressing as a woman secretly in the evenings; it was an impulse I could not control. I had intrusive thoughts about becoming a woman and dressing like one, while at the same time receiving negative messages from my peers and others in my community that I was acting too much like a girl. It was a very confusing time.

5. When I was [redacted], I was incarcerated in an adult men's state prison in [redacted] During that incarceration, I was raped and experienced multiple additional attempted rapes before the end of my sentence. I believe I was targeted and sexually assaulted due to my feminine presentation. I told the mental health staff that I identified as a woman, and their advice to me was to not share this "problem" with other inmates and to seek treatment after being released from custody.

MATERIAL UNDER SEAL DELETED

6. I got married on [redacted]. My marriage ended when I told my wife that I was transgender and wanted to live my life as a woman. When my divorce became final in [redacted]. I did not believe that I could pursue a female identity without [redacted], so I pushed those feelings down again. I wanted to be a hairdresser, nurse, or office worker, but at the time there were very few men working in those fields and I did not feel like I could comfortably pursue them. Instead, I found employment as a [redacted], and I focused on [redacted].

7. At night, I would dress and go out as a woman without [redacted] or family members knowing that I was living what felt to me like a double life. When I was presenting as female, I felt like I was finally myself, but I lived in constant fear of being caught and ridiculed. Beginning in around [redacted], I also started self-administering hormone treatments that I purchased on the black market and attending a support group for transgender people.

8. I was first diagnosed with what was then called "gender identity disorder" by a psychiatrist in [redacted]. I was thirty-eight years old at the time. It is my understanding that "gender identity disorder" was then eliminated and replaced by "gender dysphoria" in the DSM-5.

9. I was held pre-trial in a federal detention center from [redacted]. [redacted] Even so, BOP refused to treat me at that time, and my treatment did not begin until many years later after significant advocacy.

10. In the time since then, I have been diagnosed with gender dysphoria multiple times by BOP medical staff.

**MATERIAL UNDER SEAL DELETED**

11. I entered BOP custody in [redacted] after being held at a federal detention center for the duration of my arrest and pretrial proceedings. The BOP was very scary, and staff initially told me to not tell anyone that I am transgender because I would not be safe.

12. I was placed into men's facilities from the start of my time in BOP custody through [redacted]. Those facilities included [redacted]

13. Even before I began living as a woman, BOP recognized the risks I faced due to my gender identity diagnosis and my appearance, classifying me as "high risk for sexual assault" when I was housed at [redacted] in [redacted]. At that facility, I can recall at least one other inmate specifically threatening me with sexual assault. While at [redacted], I was referred to the [redacted] Program because the staff viewed me [redacted]" due to my "[redacted]"

14. In [redacted], when I was housed at [redacted], I began presenting in an even more feminine manner, shaving my face and braiding my hair. Later that year, a [redacted], and word spread throughout the facility about my identity. I was constantly harassed and threatened due to my identity and feminine appearance. I had to remain hypervigilant to threats of harm at all times.

15. As I explained to a BOP mental health provider, during my time in male facilities, each day felt like one giant battle to not be raped. This caused me immense distress and profoundly strained my mental health.

16. I sought hormone medications and other treatment for my gender dysphoria from the very beginning of my time in BOP custody. I filed administrative remedies and repeatedly

**MATERIAL UNDER SEAL DELETED**

asked medical staff. At the time, I felt like if I was not able to take hormones, I might end up killing myself. I often had thoughts of suicide and self-surgery and made mental plans of how I would do that, though I did my best to control those thoughts without treatment.

17. While in men's facilities, whenever I was in a cell alone and had some degree of privacy, I would use the opportunity to express myself as a woman. I would make improvised cosmetics for myself and create makeshift nightshirts and female undergarments to wear.

18. Once I was outed [redacted], I felt additional urgency to get treatment, as I was being increasingly targeted for sexual assault by male inmates. After fighting for medical care for [redacted], BOP finally put me on hormone treatments in [redacted], [redacted] years after I was first diagnosed with gender identity disorder. That was a very important milestone for me. I was approved to begin hormone therapy in [redacted] at [redacted]. I was admitted as a voluntary mental health inpatient specifically to initiate hormone therapy to alleviate gender dysphoria.

19. Once I was on hormones, I started to grow breasts, had emotional changes, and my features became more feminine. Some of my gender dysphoria symptoms immediately began to subside, and I was less depressed, less anxious, and by and large stopped experiencing thoughts of self-harm. I felt more comfortable in my own body, though I still felt lingering discomfort in my body and that my transition to becoming a woman was incomplete.

20. Even after my body began changing due to my hormone treatments, BOP staff refused me access to female commissary items until [redacted]. In [redacted], one BOP officer even went so far as to engage in a retaliatory body inspection of my breasts after I made a request for a sports bra.

**MATERIAL UNDER SEAL DELETED**

21. Around [redacted] I was transferred to [redacted], another men's facility, where I experienced significant harassment from the men incarcerated there. My breasts had started to develop from the hormone treatments, which attracted attention in the form of sexual harassment. I was repeatedly stalked by another incarcerated individual when I would go to the showers. I also received threats of physical harm and was being harassed and pressured for sexual favors. I saw that facility as a death trap for me and requested protective custody and a transfer for my safety. The BOP's investigation concluded that my safety would be in jeopardy if I were to return to the general population because [redacted] The decision explained that [redacted]

22. After keeping me in protective custody for approximately four months, BOP agreed that I could not safely return to the general population and transferred me to [redacted]. But there too I was a target and experienced harassment and threats daily.

23. I was then sent to [redacted]. In [redacted], a male on my housing unit exposed himself to me and masturbated while staring at me. When I reported this, a BOP officer became angry with me for making the report. I was eventually transferred again to [redacted]

24. In [redacted], I was assessed for suicide risk after making the following statement: [redacted]." I was so depressed and tired from constantly being harassed by staff and inmates just for living my life as a woman.

**MATERIAL UNDER SEAL DELETED**

25. I reported some of the violence and harassment I experienced in men's facilities, but not all of it. I knew the PREA reports made the guards angry. When BOP did not move fast enough to transfer me, the reporting put me at even greater risk of harm and retaliation. Also, there were many areas within the prisons where I was very vulnerable and a camera could not capture an incident.

26. BOP tried to protect me through repeated transfers and placements in protective custody, but these efforts could not protect me. I was housed in medium, high, and low-security facilities, and there was no place where I was not a target due to my female body and identity—[redacted]. I was in danger every day. I spent my days and nights hypervigilant and actively avoiding threats of sexual violence and harm.

27. No men's facility has ever been safe for me, regardless of its security level. Whenever I was moved to a new facility, I would be subject to a PREA assessment of my risk of sexual victimization, and I was routinely found to be "at risk" and even to have a moderate or high risk based on my history of sexual assault, LGBTI status, small stature and feminine appearance. The only place where I could be safe is a women's facility.

28. When I was at [redacted] in [redacted], BOP determined that I had a high risk of sexual victimization; when a risk assessment was conducted upon a transfer to a women's facility just weeks later, BOP reduced it to a "low risk."

29. I was transferred to [redacted], a women's facility, in [redacted]. I have been here ever since. [redacted] has been much safer for me. I no longer have to live in fear of sexual assault, and I have not been sexually abused or harassed here. Most incarcerated individuals here recognize me as a woman and call me by my female name. People I meet typically do not know

**MATERIAL UNDER SEAL DELETED**

that I was not born a woman unless someone tells them. I feel like I live in and am a part of a society of women here.

30. When I finally got transferred to a women's facility, my mental health improved greatly. I was immediately less depressed, less anxious, and had no more thoughts of self-harm. I was able to obtain female items at the Commissary. I felt safer in my room and could take a shower or walk in the facility without constantly scanning for immediate threats. I routinely receive cosmetology services, wear make-up, style my hair, and dress as a woman.

31. While at [redacted], I also started to recognize and process all the sexual violence and trauma I had experienced while incarcerated. In [redacted], I requested and was provided [redacted]. I was diagnosed with [redacted] prior to beginning treatment in the [redacted]. I completed the [redacted] and Phase I of the [redacted] in [redacted]

32. Despite feeling much safer and more like myself at [redacted], I was still experiencing distress. Since entering the BOP in [redacted], I have requested treatments to alleviate my gender dysphoria and be able to live my life as female. I requested a [redacted]. I needed these treatments because while hormones were lifesaving care for me, I still struggled and experienced symptoms of gender dysphoria. For example, whenever someone would call me a man or use my former male name, I would experience a great deal of mental anguish.

33. [redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

34. [redacted]

35. [redacted] My fears of being sent back to live as a woman in men's prison largely went away because, at the time, [redacted] In fact, an official with the TEC told me in early [redacted], just before the Executive Order was issued, that [redacted]

36. I have received hormone treatments for about [redacted] years. The types, methods of administration, and dosages of medications I have taken have evolved over that time, but I have consistently received hormone treatment over that period of time.

37. On [redacted], guards told me I was being transferred to a men's prison and that the paperwork had already been processed. They took me out of my housing unit and put me in separate housing with other transgender women. They told us we were being segregated because of the President's Executive Order. They said we would be transferred within a week. Up until that time, staff told me that I would not be transferred to a men's prison [redacted]

**MATERIAL UNDER SEAL DELETED**

38. When I heard I was being transferred, I was devastated. I felt terrorized and felt huge anxiety and panic. I was afraid for my life and bodily sanctity. It was my worst nightmare come to life.

39. A few days later, around [redacted], I met with a healthcare provider about my fear and anxiety of being transferred to a men's prison. I explained to her that "I can't be safe at any male institution [redacted]." She noted that I had a diagnosis of [redacted] and recommended that I be taken out of the restricted housing unit and returned to the general population in [redacted] because "[p]lacement in restrictive housing results in increased risk for death by suicide and can contribute to decompensation in overall mental health."

40. That same day, I was allowed to go back to the general population, but guards told me I was still being transferred to a men's prison. I was not transferred at that time because, as I understand it, a court order prevented my transfer.

41. Then, on [redacted] the same thing happened again. Staff told me I was going to be transferred because the court order did not cover me. Again, I was devastated. I was having recurring nightmares of being sent to a men's prison, and it felt like the sword of Damocles hanging over me. My care level was elevated to [redacted] and the provider concluded that a [redacted] assignment was clinically warranted.

42. Since that time in [redacted], I have remained at [redacted] due to the court order protecting me. But BOP's treatment of me as a "male" has impacted me here. I was previously a part of the [redacted] program at [redacted]. Because the BOP changed the program statement for this assignment to only allow "women," as defined by the Executive Order, I can no longer

**MATERIAL UNDER SEAL DELETED**

participate. I have also heard my name called on the public address system here using my former male name, which never occurred before the Executive Order and triggers my gender dysphoria symptoms.

43. In my first year or so in BOP custody, I took psychiatric medication as treatment for my "gender identity disorder." It did not help my symptoms. I stopped taking it and have not taken any such medication since that time.

44. I know the Executive Order and recent medical care policies requires BOP to cut off hormone therapy and other medical treatments for transgender people. I am terrified of what it would mean to be cut off from my hormone therapy. I [redacted] have been taking hormones for over [redacted]; [redacted] It is my understanding [redacted]. When my hormone levels have been low in the past, I noticed pre-menopausal symptoms and body hair regrowth. BOP provided me with this life-saving care and now they are trying to undo it.

45. I also need hormones to treat my gender dysphoria. The difference between my emotional and mental states before and after receiving hormone therapy was substantial. The medication helped alleviate my depression, anxiety, and thoughts of suicide and self-harm. I can not go back to that dark place. I am currently undergoing routine mental health counseling, but counseling cannot replace my hormone treatments or fully treat my gender dysphoria.

46. [redacted]

**MATERIAL UNDER SEAL DELETED**

47. Since the Executive Order was issued, I have lived in terror of losing my healthcare and moving to a men's prison. I am anxious, depressed, scared, have difficulty sleeping, and am hyperalert—symptoms I have not experienced [redacted]. If I am transferred to a male facility, it will be like a tidal wave of despair crashing down on me. And I cannot even imagine what it would be like to face that while being cut off from my hormone therapy.

48. I have lived as a woman for [redacted], and I will be an easy target for threats, harassment, abuse, and violence, including sexual assault, if I am transferred to a men's prison. I will be treated like a sex object and will always be in extreme danger. The guards and other incarcerated males will know that they are living with a woman. After so many years of hormone therapy [redacted], my body and my physical appearance are fully female; they will also know I'm a transgender woman because I'm coming from [redacted].

49. When I was housed in men's prisons, the conditions were awful for transgender women. Although the showers had curtains, they provided only limited privacy. Pat searches and strip searches were conducted mostly by men. Every day was an exercise in survival.

50. I spent [redacted] in men's facilities fighting for my life and escaping sexual violence and harassment. I don't think I can do it again—especially now, [redacted] I am absolutely terrified of what will happen to me if the preliminary injunction is no longer in place.

51. This declaration was prepared by my attorney, Natalie Kraner, based on the facts I provided, and I reviewed it on April 28, 2026 during a legal visit and again on May 12, 2026 during a phone call. I approve of the contents of this declaration.

**MATERIAL UNDER SEAL DELETED**

Executed on the 28th day of April in the year 2026.

Signature: [redacted] Date: 4/28/2026

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br>Plaintiffs,<br>v.<br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br>Plaintiffs,<br>v.<br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE,<br>Plaintiffs,<br>v.<br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br>Defendants. | Case No. 1:25-cv-00653-RCL |

**DECLARATION OF RYAN NICHOLAS GORTON, M.D., IN SUPPORT OF PLAINTIFFS' MOTION FOR A TRO AND PRELIMINARY INJUNCTION**

**DECLARATION OF RYAN NICHOLAS GORTON, M.D.**

I, Ryan Nicholas Gorton, M.D., state as follows:

**BACKGROUND AND QUALIFICATIONS**

1. I am a physician licensed in California. I received my medical degree from the University of North Carolina School of Medicine in 1998 and completed my residency and chief residency in emergency medicine at Kings County Hospital in Brooklyn, New York.

2. In addition to working as an emergency medicine physician at Sutter Davis Hospital, for over 25 years I have also served as a primary care physician at Lyon-Martin Community Health ("Lyon-Martin") in San Francisco since 2005 where I have provided primary care and transition-related care to more than 1000 transgender patients. I provide medical assessments including the diagnosis of gender dysphoria, initiate and monitor hormonal treatment, and both provide and refer for mental health treatments. I also determine whether and when patients are appropriate for referral for transition-related surgeries, provide pre-operative preparation and clearance, and provide post-operative care in consultation with the appropriate surgeon.

3. I am also the Director of Gender Affirming Care at Lyon-Martin and provide supervision to nurse practitioners and physician assistants treating transgender patients at Lyon-Martin. Lyon-Martin is an historically LGBT clinic that has been serving transgender patients for over 35 years. Lyon-Martin is also one of just a handful of sites in the United States that trains medical students, residents, and fellows to provide transgender primary care, and I have been a primary clinical instructor for these trainees. I have provided extensive clinical instruction to over 100 trainees during this time.

4. I also serve as lead clinician and clinical consultant for TransLine, a national transgender medical consultation service for clinicians needing expert advice about the care of their individual patients. I am a member of the World Professional Association for Transgender Health (WPATH) and serve on their institutionalized persons committee. I am also a WPATH Global Education Initiative Certified Practitioner.

5. I have presented lectures and grand rounds on transgender health issues at numerous medical school and residency programs throughout the United States as well as national and international conferences. I have also co-authored numerous publications addressing transgender health, including professional journal articles and chapters and sections in professional texts, and publications aimed at the transgender community itself.

6. Additional information about my background and experience is also included in my *curriculum vitae,* which is attached hereto.

7. I am being compensated at the hourly rate of $400.00 for my time spent preparing this declaration. I agreed with plaintiffs' counsel to charge a daily maximum of $1,920 and an overall limit of $8,000 for the scope of work provided. My compensation does not depend on the outcome of this litigation, the opinions I express, or the testimony I may provide.

8. Over the past four years, I have given expert testimony by deposition or trial in the following cases: *Hundley v. Aranas*, No. 3:19-cv-458 (D. Nev.); *Tucker v. Utah Dep't of Corrections*, No. 2:25-cv-1108 (D. Utah); *Wagoner v. Winkelman*, No. 3:18-cv-211 (D. Alaska); *Edmo v. Corizon Inc., et al.*, No. 1:17-cv-00151-BLW (D. Idaho); *Levy v. Scruggs, et al.*, No. 8:18-cv-01291-TDC (D. Md.); *Dostie v. Marowitz, et al.*, No. RG20082410 (Cal. Super. Ct. Alameda Cty.).

**MATERIAL UNDER SEAL DELETED**

9. To the best of my recollection, I have not given expert testimony at a trial or at a deposition in any other case during this period.

10. I have reviewed the Bureau of Prisons medical and mental health records of Mary Doe, Olivia Doe, Sally Doe, Sara Doe, Zoe Doe, Amy Jones, and Maria Moe, which were provided to me by plaintiffs' counsel. I have not met with any of these plaintiffs or clinically evaluated them. I understand that additional records pertaining to these plaintiffs may become available in the future. I may supplement this as additional records become available and/or I am able to perform a personal evaluation of the plaintiffs.

11. All of the above-mentioned women have confirmed diagnoses of gender dysphoria

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

[redacted]

[redacted]

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**SARA DOE**

MATERIAL UNDER SEAL DELETED

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

[redacted]

[redacted]

---

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

MATERIAL UNDER SEAL DELETED

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

---

[redacted]

MATERIAL UNDER SEAL DELETED

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

**MATERIAL UNDER SEAL DELETED**

[redacted]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of May, 2026

Ryan Nicholas Gorton, M.D.

# EXHIBIT A

**Ryan Nicholas Gorton, MD, DABEM**
901 Douglass Ave, Davis CA 95616
(504) 261-8379 (mobile)
nickgorton@gmail.com

## Professional Practice

| | |
|---|---|
| February 2005 – Current | Emergency Medicine Physician<br>Sutter Davis Hospital<br>Davis, CA<br>Chairman, Quality and Patient Safety Committee 2009 to Current |
| September 2009 – Current | Chairman, Quality and Patient Safety Committee<br>Sutter Davis Hospital<br>Davis, CA<br>Responsible for monitoring hospital performance on state, federal, and Joint Commission quality measures/performance and implementing performance improvement primarily using the LEAN process (for example FMEA, SBAR, and root cause analysis). |
| July 2002 – February 2005 | Emergency Medicine Physician<br>St Tammany Parish Hospital<br>Covington, LA |

## Professional Practice: Volunteer Activities

| | |
|---|---|
| March 2005 – Current | Primary Care Provider and Clinical Instructor<br>Lyon-Martin Community Health<br>San Francisco, CA. |
| August 2005 – February 2006 | Acting Medical Director<br>Lyon-Martin Community Health<br>San Francisco, CA. |
| Sept 2023 – February 2026 | Acting Medical Director<br>Lyon-Martin Community Health<br>San Francisco, CA. |
| February 2026 – Current | Director of Gender Affirming Care<br>Lyon-Martin Community Health<br>San Francisco, CA. |
| September 2008 – Current | Executive Committee Member and Lecturer<br>Project HEALTH http://www.project-health.org/<br>San Francisco, CA. |
| January 2011 – Current | Lead Clinician TransLine National Clinical Consultation Line |

Medical-Legal Consultant: Sylvia Rivera Law Project, New York, NY
Lambda Legal Defense and Education Fund, Inc., New York, NY
Transgender Law Center, San Francisco, CA
National Center for Lesbian Rights. San Francisco, CA
Northwest Justice Project, Seattle, WA
The Legal Aid Society, New York, NY
National Center for Transgender Equality, Washington, DC
TGI Justice Project, Oakland, CA.
ACLU Florida

**Post Graduate Training**

June 2001 – June 2002 Chief Resident, Department of Emergency Medicine
Kings County Hospital Center/SUNY Downstate
Brooklyn, NY

July 1998 – June 2002 Emergency Medicine Residency
Kings County Hospital Center/SUNY Downstate
Brooklyn, NY

**Education**

August 1994 – May 1998 Doctor of Medicine
University of North Carolina School of Medicine
Chapel Hill, NC

August 1988 – August 1991 Bachelor of Science in Biochemistry, Summa Cum Laude
North Carolina State University
Raleigh, NC

**Professional Affiliations**

World Professional Association for Transgender Health (formerly HBIGDA)
- WPATH GEI Certified Practitioner
- Institutionalized Persons Committee
- Instructor WPATH Health Plan Provider Training program

University of California at San Francisco Center of Excellence for Transgender Health
- Medical Advisory Board 2010-2013 (during initial development of original Primary Care Protocols)

American Medical Association
- GLBT Advisory Committee 2009-2011

Gay and Lesbian Medical Association
- LGBT Medical Experts Panel

**Licensure/Certification**

Nov 2003 – Present Diplomate American Board of Emergency Medicine
Nov 2004 – Present CA State Medical License A89440
Feb 2002 – 2009 LA State Medical License 14466R

June 2001 – 2010 NY State Medical License 221808

**<u>Publications and Papers</u>**

Gorton, R and Grubb, M. (2022), General, Sexual, and Reproductive Health, In Erickson-Schroth, L (Ed) *Trans Bodies, Trans Selves: A Resource for the Transgender Community*. New York, NY: Oxford University Press.

Gorton, R, and Berdahl, C. *Improving the Quality of Emergency Care for Transgender Patients. Annals of emergency medicine*. 71(2): 189-192. 2018.

Gorton, R, and Erickson-Schroth, L. *Hormonal and Surgical Treatment Options for FTMs*. Psychiatric Clinics of North America. Psychiatric Clinics of North America. 40(1): 79-97. 2017.

Gorton, R, and Jaffe, J.M., *Transline Medical Consultation Service: Four Years of Clinician Support.* USPATH Poster Presentation: February, 2017.

Ingram, N., Pratt V., and Gorton, R. *Counting trans* patients: A Community Health Center Case Study*. TSQ: Transgender Studies Quarterly. 2(1): 136-147. 2015.

Gorton, R and Grubb, M. (2014), General, Sexual, and Reproductive Health, In Erickson-Schroth, L (Ed) *Trans Bodies, Trans Selves: A Resource for the Transgender Community*. New York, NY: Oxford University Press.

Gorton R. Transgender as Mental Illness: Nosology, Social Justice, and the Tarnished Golden Mean. In Stryker S and Aizura A (Eds.), *The Transgender Studies Reader, Vol 2*. New York, NY Taylor and Francis. 2013.

Ehrbar R, Gorton R, and Winters K. Sugerencias para la revisión de los diagnósticos relacionados con el genero en el DSM y el CIE. In Miquel Missé and Gerard Coll-Planas (Eds.), *El Género Desordenado - Críticas en torno a la patologización de la transexualidad.* Madrid: EGALES. 2010.

Ehrbar R, and Gorton R. *Exploring Provider Treatment Models in Interpreting the Standards of Care*. International Journal of Transgenderism, 12(4):198-210. 2010.

Pittsburgh Transgender Health Research Summer Institute: *A Review and Guidance for Future Research—Proceedings from the Summer Institute at the Center for Research on Health and Sexual Orientation, University*

*of Pittsburgh t.* International Journal of Transgenderism, 12(4):211-229. 2010.

Haraldsen I, Ehrbar R, Gorton R, and Menvielle E. *Recommendations for Revision of the DSM Diagnosis of Gender Identity Disorder in Adolescents.* International Journal of Transgenderism, 12(2):75-79. 2010.

Gorton R. *Transgender Health Benefits: Collateral Damage in the Resolution of the National Health Care Financing Dilemma*. Sexuality Research and Social Policy: Journal of NSRC. 4(4):81-91. Dec 2007.

Gorton R. *Health Care and Insurance Issues for Transgender Persons.* American Family Practitioner. 74(12):2022. December 2006. https://www.aafp.org/afp/2006/1215/p2022.html

Gorton R. *Current Summary of the Medical Knowledge Base and Current Clinical Standards Surrounding the Treatment of Patients with Gender Identity Disorder.* Report prepared for the Lambda Legal Defense Fund. May 2005.

Gorton R, Buth J, and Spade D. *Medical Therapy and Health Maintenance for Transgender Men: A Guide For Health Care Providers.* Lyon-Martin Women's Health Services. San Francisco, CA. 2005. ISBN 0-9773250-0-8 (www.nickgorton.org)

Gorton R. *A Critical Analysis of the Hayes Report: "Sex Reassignment Surgery and Associated Therapies for Treatment of GID."* Report prepared for the Lambda Legal Defense Fund. May 2005.

*Greenberg's Text Atlas of Emergency Medicine*, Michael Greenberg Ed. Lippincott Williams & Wilkins. ISBN 0-7817-4586-1 2004. Contributing Author: Chapter 4 – Eyes/Ophthalmic.

Gorton R. "Toward a Resolution of GID, the Model of Disease, and the Transgender Community." MAKE. March 2005. http://www.makezine.org/giddisease.htm https://web.archive.org/web/20080524033311/http://www.makezine.org/giddisease.htm

Sinnert R, et al, Gorton R. "The ratio of ionized calcium to magnesium modifies the bronchodilatory effects of magnesium therapy in acute asthma." Aced Emerg Med 2002 9(5) 436-437.

Morris D, Rosamond W, Hinn A, Gorton R. "Time delays in accessing stroke care in the emergency department." Acad Emerg Med 1999 Mar; 6(3) 218-23.

Rosamond W, Gorton R, Hinn A, Hohenhaus S, Morris D. "Rapid response to

stroke symptoms: the Delay in Accessing Stroke Healthcare (DASH) study." Acad Emerg Med 1998 Jan; 5(1) 45-51.

**Selected Conference Presentations and Invited Talks**

Gorton, R. Sexual Health Services for TG/NG/GNC clients. California Department of Public Health. STD Prevention and Control Local Capacity Building Webinar Series. November 2021

Gorton, R. Transgender Medicine. Touro University College of Osteopathic Medicine. March 2021.

Gorton, R. LGBTIQ in the Emergency Department. WellSpan Department of Emergency Medicine, Grand Rounds. York, PA. February 2021.

Del Rios, M, Ennis, K, Gorton, R, Kass, D, Moreno-Walton, L, & Purakal, J. The Other Public Health Emergency How Inherent Bias Affects Healthcare. ACOEP Scientific Assembly. October 2020

Gorton, R, Gruberg, S, Tobin, Harper Jean. Plenary IV: Fighting for LGBT Health Policy Protections: Health Providers' Crucial Role in Advocacy. GLMA 2019. New Orleans, LA, September 2019.

Gorton, R. Genital Gender Affirming Surgery for the Transgender Patient: A Didactic and Hands-on Fresh Cadaver-Based Course: "Hormone Replacement for Transgender Patients". American Urological Association 2018. San Francisco, CA. May, 2018.

Gorton, R, Jaffe, JM, Tescher, J, and Baker, K. "Mini-Symposium: As California Goes, So Goes the Nation (Hopefully)". USPATH. February, 2017.

Gorton, R. Session Moderator. USPATH Symposium. San Francisco CA. February, 2017.

Gorton, R. "Acute and Long Term Complications of Silicone Pumping: Primary, Secondary, and Tertiary Prevention". WPATH Symposium. Amsterdam, The Netherlands. June, 2016.

Gorton, R, Ettner, R, Brown, G, Bermudez, F, Orthwein, J and Mazur, T. "Orange isn't the New Black (Yet)". WPATH Symposium. Amsterdam, The Netherlands. June, 2016.

Gorton R. "Transgender Patient Care in the Emergency Department". American Academy of Emergency Medicine Scientific Assembly. Las Vegas, Nevada. February 2016.

Gorton R. "Transgender Patients in the Emergency Department". Stanford University Department of Emergency Medicine SimWars. Stanford, CA. February 2016.

Gorton R. "History of Transgender Medicine". UCSF School of Medicine Transgender Health elective. San Francisco, CA. February 2016.

Gorton R. "Free Silicone Complications and Management". National Transgender Health Summit. Oakland, CA. April 2015.

Gorton R. "History of Transgender Medicine". UCSF School of Medicine Transgender Health elective. San Francisco, CA. March 2015.

Gorton R. "Transgender Healthcare". UC Davis School of Medicine. Sacramento, CA. December 2015.

Gorton R. "Engaging and Retaining Transgender Patients in Ongoing Primary Care". National Association of Community Health Centers Health Institute and Expo. San Diego, CA. August 2014.

Gorton R. "Sexual and Reproductive Health: A Focus on Transgender Patients". California Family Health Council. Webinar. March 2014.

Gorton, R, Green, J and Tescher, J. "California Dreaming: Two Decades of Change in Health Insurance Law and Policy". WPATH Symposium. Bangkok, Thailand. February, 2014.

Gorton, R and Chung, C. "From Grassroots Health Advocacy to Expanding Clinician Competency: Project HEALTH (Harnessing Education, Advocacy & Leadership for Transgender Health)". WPATH Symposium. Bangkok, Thailand. February, 2014.

Gorton, R and Tescher, J. "Minding the Gap: Development and Implementation of a Clinical Rotation in Transgender Health". WPATH Symposium. Bangkok, Thailand. February, 2014.

Gorton R and Keenan C. "LGBT Sexual and Reproductive Health Issues". California Family Health Council Women's Health Update. San Francisco, CA. April, 2013.

Gorton R. "Transgender Medicine". California AHEC Webinar. San Francisco, CA. April, 2013.

Gorton R. "Transgender Aging Issues". Institute on Aging Conference on LGBT Aging. San Francisco, CA. November, 2012.

Gorton R and Branning N. "Transgender Primary Care". California Academy of Physician Assistants Annual Conference. Palm Springs, CA. October, 2012.

Gorton R. "Primary care and Hormonal Treatment for Transgender Clients".

Samuel Merritt University. Oakland, CA. June 2012.

Gorton R. "Primary care and Hormonal Treatment for Transgender Clients" Grand Rounds for the VA Medical Center. San Francisco, CA. June 2012.

Gorton R and Wertz K. "Transgender Health Care" Webinar for the California Family Health Council. San Francisco, CA. June, 2012.

Eichenbaum J, Gorton R and May A. "Transgender Health, the VA, and Barriers to Care." San Francisco Veterans Administration Mental Health Services Grand Rounds. San Francisco, CA. May, 2012.

Gorton R and Wertz K. "Working With GLBT Clients" California Family Health Council Webinar. Los Angeles, CA. May, 2011.

Gorton R. "Improving Access to Transgender Health Care: Outcomes from Project HEALTH" World Professional Association for Transgender Health. Atlanta, GA. September, 2011.

Gorton R and Wertz K. "Trailblazing for Transgender Health" Southern Comfort Conference. Atlanta, GA. September, 2011.

Gorton R. "Nuts and Bolts of Transgender Primary Care" Gay and Lesbian Medical Association Annual Conference. Atlanta, GA. September, 2011.

Gorton R. "Transgender Medicine and Cultural Competency" Kaiser Department of OB/Gyn Grand Rounds. San Francisco, CA. April, 2011.

Gorton R. "Evidence Based Transgender Medicine" Opening Plenary UCSF National Transgender Health Summit. San Francisco, CA. January, 2011.

Green J and Members of the Center of Excellence for Transgender Health Medical Advisory Board. "Primary Care Protocols" Morning Plenary UCSF National Transgender Health Summit. San Francisco, CA. January, 2011.

Freshel K, Gorton R, Hansom C and Barnes A. "Communities Working Together to Become Culturally Competent" California State Rural Health Association Conference. Sacramento, CA. November, 2010.

Gorton R, Spade D and Wilkinson W. "Transposium: Healthcare Access and Quality For Transgender Individuals" Shaking the Foundations: The West Coast Conference on Progressive Lawyering, Primary Care Associate Program, Stanford School of Law. Stanford CA. October, 2010.

Gorton R. "Improving Access to Transgender Healthcare: Outcomes from

Project HEALTH (Harnessing Education, Advocacy, and Leadership for Transgender Health)" Gay and Lesbian Medical Association Annual Conference. San Diego, CA. September 2010.

Gorton R, Gould D and Wertz K. "Trailblazing for Transgender Health" National Gay and Lesbian Task Force Creating Change Conference. March 2010.

Gorton R. "Grand Rounds: Transgender Medicine" Highland General Hospital Department of Internal Medicine. Oakland, CA. January, 2010.

Gorton R. "Grand Rounds: Transgender Medicine" Kaiser Permanente Department of Internal Medicine. San Francisco, CA. December, 2009.

Keatley J and Gorton R. "Transgender Health Care Issues in California Today" Equality California and the California LGBT Legislative Caucus Briefing on LGBTI Health Care Issues. Sacramento, CA. December 2009.

Ehrbar R, Winters K, and Gorton R. "Revision Suggestions for Gender Related Diagnoses in the DSM and ICD" WPATH XXI Biennial Symposium. Oslo, Norway. June, 2009.

Gorton R. "A Place at the Table" American College Health Association Annual Meeting. San Francisco, CA. May, 2009.

Famula M, Hall A, Pardo S, Gorton R. "Providing Trans-Specific Health Care to Transgender Students in the College Setting." American College Health Association Annual Meeting. San Francisco, CA. May, 2009.

Gorton R. "Transgender Health" American Medical Student Association: Regional Conference. Lubbock, TX. March, 2009.

Gorton R. "Medical Ethics and Evidence Based Transgender Medicine" Equality and Parity II: A Statewide Action for Transgender HIV Prevention and Care. Los Angeles, CA, January 2009.

Gorton R. "Transgender Medicine 101" AMSA Regional Conference. Lubbock, TX. December, 2008.

Gorton R, Djordjevic M, and Brownstein M. "Female to Male (FTM) Health Update" (Provider Session) The 7th Annual Mazzoni Center Trans-Health Conference. Philadelphia, PA. May 2008.

Gorton R. "FTM Hormones 201." (Community Session) The 7th Annual Mazzoni Center Trans-Health Conference. Philadelphia, PA. May 2008.

Green J, Gorton R, Razza R, and Tamar-Mattis A, "Healthcare and Access Issues Panel." University of California Hastings College of the Law Transposium Conference. April 2008.

Arkles G, Gorton R, Sanchez D, Suarez C. "Trans Issues in Health Care Panel." Harvard Law School Lambda Legal Advocacy Conference. February 2008.

Gorton R, Thaler C, and Keisling M. "Drawing the Curtain: An Overview of Medical Privacy Protections and Risks for Transgender Patients and Providers." WPATH Symposium, 2007, Chicago.

Gorton R. "Transgender Medicine 2007: A Medical Ethics and Evidence Based Paradigm Shift." (Provider Session) The 6th Annual Mazzoni Center Trans-Health Conference. Philadelphia, PA. April 2007.

Gorton R. "FTM Hormones 201." (Community Session) The Sixth Annual Mazzoni Center Trans-Health Conference. Philadelphia, PA. April 2007.

Gorton R. "Medical Ethics and Evidence Based Transgender Medicine." FORGE Forward. Milwaukee WI. March 2007.

Gorton R. "FTM Hormonal Treatment: Beyond 101." FORGE Forward. Milwaukee WI. March 2007.

Gorton R. "Transgender Healthcare in 2007: Its Time to Take it Seriously." Humboldt State University 13th Annual Diversity Conference and Education Summit. Arcata CA. March 2007.

Spade D, Gehi P, Arkles G, and Gorton R. "Barriers to health care access for transpeople." UCLA School of Law, Williams Institute Annual Update. Los Angeles, CA. February 2007.

Marksamer J and Gorton R. "Legal Support and Advocacy for Transgender Youth and Their Families." Gay and Lesbian Medical Association Annual Conference. San Francisco, CA. October 2006.

Gorton R. "Hormone Therapy 101." FTM-Gender Odyssey 2006. Seattle, WA. September 2006.

Gorton R. "Hormone Therapy 201." FTM-Gender Odyssey 2006. Seattle, WA. September 2006.

Gorton R. "Transgender Medicine." California Department of Health Early Intervention Program Statewide Conference. May 2006.

Gorton R. "Primary Care and Hormonal Therapy for Transgender Males." (Provider Session) The 5th Annual Mazzoni Center Trans-Health Conference. Philadelphia, PA. March 2006.

Gorton R. "Health Maintainence for Transgender Men." (Community Session)

The 5th Annual Mazzoni Center Trans-Health Conference. Philadelphia, PA. March 2006.

Gorton R. "Primary Care and Hormonal Therapy for Transgender Males." The 23rd Annual Conference of the Gay and Lesbian Medical Association. Montreal, Canada. September, 2005.

Spade, D, and Gorton R. "Medical-Legal Policy Update in the Quest for Trans Health Care and Justice." The 23rd Annual Conference of the Gay and Lesbian Medical Association. Montreal, Canada. September, 2005.

Arkles Z, and Gorton R. "Medical-legal Collaboration in the Quest for Trans Health Care and Justice" The 19th Biennial Symposium of the Harry Benjamin International Gender Dysphoria Association. Bologna, Italy. April, 2005.

**Professional Advocacy**

Supported as physician member of the American Medical Association for adoption of inclusive language for transgender people within AMA policy. "Recommendations to Modify AMA Policy to Ensure Inclusion for Transgender Physicians, Medical Students and Patients." Accepted by the AMA Board of Delegates July 2007. See "AMA Meeting: Anti-discrimination policy extended to transgendered." AMA News July 16, 2007. http://www.ama-assn.org/amednews/2007/07/16/prsk0716.htm. Policy amendment available at: http://www.ama-assn.org/ama1/pub/upload/mm/467/bot11a07.doc

Authored and proposed with Vernon A, and Maxey K. *Resolution to amend the American College of Emergency Physicians 'Code of Ethics for Emergency Physicians.'* Accepted as policy October 2005. Now reads (amended language underlined): "Provision of emergency medical treatment should not be based on gender, age, race, socioeconomic status, sexual orientation, real or perceived gender identity, or cultural background."

**Awards**

Claire Skiffington Vanguard Award. Transgender Law Center. San Francisco, CA. 2012.