[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 26-5238**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

JANE DOE; MARY DOE; SARA DOE; EMILY DOE; ZOE DOE; TORI DOE; OLIVIA DOE; SUSAN DOE; LOIS DOE; SALLY DOE; WENDY DOE; RACHEL DOE,

*Plaintiffs-Appellees,*

v.

TODD BLANCHE, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES; WILLIAM K. MARSHALL, III, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE FEDERAL BUREAU OF PRISONS,

*Defendants-Appellants.*

---

# REPLY IN SUPPORT OF OPPOSED EMERGENCY MOTION OF BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, AND KEISHA WILLIAMS FOR LEAVE TO INTERVENE

---

Brian J. Field
John Greil
*Counsel of Record*
Jessica Tong*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
bfield@schaerr-jaffe.com
jgreil@schaerr-jaffe.com
jtong@schaerr-jaffe.com

*Admission pending

*Counsel for Proposed Intervenors*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

GLOSSARY ........ iv

REPLY ........ 1

ARGUMENT ........ 4

I. Neither Defendants nor Plaintiffs represent Movants' interests ........ 5

II. This appeal may impair Movants' rights ........ 8

III. Movants sought intervention as soon as it became clear that no party would protect them. ........ 11

CONCLUSION ........ 14

CERTIFICATE OF COMPLIANCE ........ 16

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Ark. Dairy Coop. Ass'n, Inc. v. U.S. Dep't of Agric.*,
573 F.3d 815 (D.C. Cir. 2009) .......... 10

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) .......... 8

*Doe v. Blanche*,
172 F.4th 901 (D.C. Cir. 2026) .......... 11

*FEC v. NRA Pol. Victory Fund*,
513 U.S. 88 (1994) .......... 8

*Humane Soc'y of U.S. v. U.S. Dep't of Agric.*,
54 F.4th 733 (D.C. Cir. 2022) .......... 5

*Inst'l S'holder Servs., Inc. v. SEC*,
142 F.4th 757 (D.C. Cir. 2025) .......... 14

* *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*,
66 F.4th 282 (D.C. Cir. 2023) .......... 4

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) .......... 6

*Owlfeather-Gorbey v. Avery*,
119 F.4th 78 (D.C. Cir. 2024) .......... 13

*Sottera, Inc. v. Food & Drug Admin.*,
627 F.3d 891 (D.C. Cir. 2010) .......... 10

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... 4

* *United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) .......... 11

*United States v. Southers*,
866 F.3d 364 (6th Cir. 2017) .......... 5


*Authorities upon which we principally rely are marked with an asterisk.

**Statutes**

18 U.S.C. §3621 .......... 7

18 U.S.C. §3626 .......... 2, 9, 10

**Rules**

Fed. R. App. P. 10 .......... 5

Fed. R. Civ. P. 24 .......... 4

## GLOSSARY

| | |
|---|---|
| BOP | Federal Bureau of Prisons |
| FMC Carswell | Federal Medical Center-Carswell, Fort Worth, Texas |

## REPLY

Movants are incarcerated women who have already been harmed by an injunction Plaintiffs obtained in this litigation. In separate litigation, Movants secured their own preliminary injunction, over objections from the United States and Defendant Marshall. That injunction helps protect Movants from the harms of being incarcerated with biological males—many of whom are serving time for sex offenses. But the injunctions issued in this matter have impeded Movants' ability to obtain the preliminary injunction in their own litigation. Movants have been, and will continue to be, affected by what happens in this case. And neither party here has fought for the full legal protection that Movants have worked to obtain.

Each party opposes Movants' intervention in this case, saying that the Government adequately represents Movants' interests. But the Oppositions contradict each other, underscoring the importance of granting intervention. Plaintiffs say Movants' constitutional claim for bodily privacy "is encompassed within the Government's defense of the [Executive Order] and the BOP's challenged housing policies." Pls.' Opp. 20. Defendants say the reverse: whether Movants "independently

experienced constitutional violations … does not help directly answer the merits question under review." Defs.' Opp. 18.

The Government has consistently refused to argue that biological females have a constitutional right to not be imprisoned with biological males. That issue is necessary to decide the scope of judicial remedy. It is also necessary to consider the long-term impact of this case: the Executive's policy preferences might change, but a permanent injunction issued in this case would trump those preferences. In this situation, Movants say Plaintiffs' proposed relief violates their constitutional rights, Plaintiffs say it does not, and Defendants have not answered one way or the other. Neither party thus represents Movants' interests.

The chance that this appeal may impair Movants' rights is real. Plaintiffs tell this Court that Movants face "no immediate prospect" of sharing space with male inmates. Pls.' Opp. 16, 18. Yet under the Prison Litigation Reform Act's 90-day preliminary-injunction provision, *see* 18 U.S.C. §3626(a)(2), Movants' current relief expires on August 31. Meanwhile, as this appeal proceeds, Plaintiffs are asking the district

court to find that each Plaintiff "can be safely housed in women's general population." Dkt. 214-1 at 13.[1]

As to timeliness, each party points to the initiation of the *Doe* litigation as starting the clock. But Plaintiffs have chosen to litigate this case pseudonymously. "FMC Carswell" does not appear in their (redacted) complaint, the initial preliminary injunctions that were issued, or even this Court's earlier appellate decision. It appears that information was first disclosed in Defendants' May 29, 2026 opposition to the injunction currently on appeal. Dkt. 129 at 21–22. Movants' intervention in *Fleming v. Rule*, No. 4:25-CV-0157-D (N.D. Tex.), noted that it was "impossible" to determine if this litigation affected "any inmates currently housed at FMC Carswell." *Fleming*, ECF 69-1 at 26 n.22. And such an impossibly demanding timeliness standard would be particularly inappropriate to apply to incarcerated individuals without ordinary access to information, who were not attorneys, and who had no attorney representing them at that time.

---

[1] District court documents are cited "Dkt. # at #." References to case documents filed in *Fleming v. Rule*, No. 4:25-CV-0157-D (N.D. Tex.) are cited "*Fleming*, ECF #."

This appeal will affect Movants' lives one way or the other. Neither party argues that Movants' Fifth and Eighth Amendment rights forbid a court or the Executive from making them shower and live with biological males. Only Movants have put forth evidence documenting the array of harms women suffer when housed with biological males. Those questions are central to the scope of judicial remedy that this Court must review. This Court should grant intervention so that Movants may make those arguments and protect their rights.

## ARGUMENT

Intervention turns on the possibility that the intervenor could be affected. It asks whether disposition of the action "*may* as a practical matter impair or impede" an applicant's ability to protect an interest, Fed. R. Civ. P. 24(a)(2) (emphasis added); the applicant need only claim that interest, not conclusively demonstrate it; and the burden to show that representation "*may be*" inadequate is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*, 66 F.4th 282, 285 (D.C. Cir. 2023).

If this Court chooses to apply the "exceptional case" standard for appellate intervention, the unusual posture of this litigation satisfies it. *See Humane Soc'y of U.S. v. U.S. Dep't of Agric.*, 54 F.4th 733, 735 (D.C. Cir. 2022) (Tatel, J., concurring) (citation omitted). Movants seek intervention in this Court only because their motion to intervene below, which was filed before the district court issued its injunction, remains undecided.

Movants are incarcerated women who obtained an injunction that protects them. When their preliminary injunction (which the Government opposed) expires, the relief issued here will determine their daily experience. Movants have a right to intervene in this case and ensure that the relief issued here does not harm them.[2]

## I. Neither Defendants nor Plaintiffs represent Movants' interests.

Defendants call Movants' injuries "ancillary to the core merits question in this case." Defs.' Opp. 18. But the "core merits question in

[2] Plaintiffs assert that Movants seek to add evidence on appeal. Pls.' Opp. 8–9. They do not. The declarations were filed in the district court, Dkt. 167-2, and thus are part of the appellate record. *See* Fed. R. App. P. 10(a)(1). And "[t]he district court is presumed to have considered all the materials before it[.]" *United States v. Southers*, 866 F.3d 364, 370 n.3 (6th Cir. 2017).

this case" is not the *only* question in this case; it is one part of the four-part injunction test. The scope of the remedy, if a court believes a remedy is warranted, absolutely depends on its effects on third parties. *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) ("litigant must show … that an injunction would not substantially injure other interested parties" (citation omitted)).

Defendants' 62-page opening brief does not even *mention* the Fifth Amendment, which is the source of Movants' bodily privacy rights. Perhaps that is why the Government defendants, in the *Fleming* litigation, opposed the relief that Movants benefit from today.

Plaintiffs answer that Movants' constitutional argument is "encompassed within the Government's defense of the [Executive Order] and the BOP's challenged housing policies." Pls.' Opp. 20. Elsewhere, Plaintiffs describe the Government's interest more accurately: a justification for "implementing the Executive Order at issue." *Id.* at 2. But Defendants argue that the Eighth Amendment does not forbid them from implementing a same-sex housing policy; Movants argue that the constitution *forbids* the government from placing males in female housing.

Defendants are defending a policy preference that the last Executive did not share and the Executive may in the future reverse. Movants assert constitutional rights that bind every administration. So Movants' constitutional rights are not "encompassed" within BOP's policy. And the permanent injunction Plaintiffs seek will affect those rights.

The Government's belief that Movants lack a constitutional right against being housed with biological males may explain their conduct in the *Fleming* litigation. There, after Fleming and Herrera won party-specific relief, BOP moved only them to a female-only unit and left hundreds of other women at Carswell to suffer the harms of living with biological males. The Government created the current segregated unit only because Movants won the preliminary injunction currently in effect; the Government opposed that injunction. Dkt. 167-1 at 6 (citing *Fleming,* ECF 83); Mot. 23.

Moreover, Defendants present many arguments that are antagonistic to Movants' interests. For instance, Defendants argue that housing decisions are "not reviewable by any court." Appellants' Br. 60–61 (quoting 18 U.S.C. §3621(b)).

And finally, Defendants explicitly acknowledge that the broad, public interests they are pursuing conflict with Movants' narrower, private interests. Defendants argue Movants would "usurp" their authority if allowed to participate in this litigation. Defs.' Opp. 21. Defendants say the Solicitor General's "broad[] view" permits him to weigh systemwide costs and benefits that others with more "parochial view[s]" cannot. *Id.* at 20 (quoting *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 96 (1994)). But this Court has recognized that this divergence *supports* intervention, because it explains why government litigants cannot always adequately represent narrower private interests. *See Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986).

Neither side here represents Movants' interests.

## II. This appeal may impair Movants' rights.

Movants claim a right not to be subjected to share living space with biological males as a part of their confinement. They obtained a preliminary injunction in *Fleming* protecting that right.

But both Oppositions assume that the *Fleming* preliminary injunction will last forever. Plaintiffs say Movants "are not housed with or required to share any common spaces with transgender women, and

*there is no immediate prospect they will be*." Pls.' Opp. 16, 18 (emphasis added). Defendants say that "regardless of the outcome, this appeal will not affect movants' interests in not being housed with male inmates at FMC Carswell." Defs.' Opp. 13. But the preliminary injunction they invoke expires on August 31 by force of §3626(a)(2). The *Doe* order before this Court did not bless that arrangement; it stated that it would not order Plaintiffs into women's general population only "at this juncture." Dkt. 147 at 4. An expiring injunction and an expressly conditional order do not guarantee future separation.

Recent developments below make clear that Plaintiffs are asserting a right to placement in women's general population. Plaintiffs are currently asking the district court for a successor injunction, and for a finding of no adverse impact on public safety, because each Plaintiff "can be safely housed in women's general population, subject to the same rules and regulations that bind all other women in women's facilities." Dkt. 214-1 at 13. They now assert that their complaints "directly challenged their segregation as unlawful agency action." *Id.* at 6. So if Plaintiffs prevail, there is certainly a prospect of Movants suffering harm.

Defendants' argument against impairment is to take credit for the preliminary injunction that Movants obtained *over Defendants' repeated objections*.

In *Fleming*, the defendants have already argued that the *Doe* orders barred the relief Movants sought (segregated housing)—an argument on which both Plaintiffs and Defendants agree. Pls.' Opp. 5; *see* Mot. 22 (citing *Fleming,* ECF 166, 190-1, 198). If the *Fleming* injunction dissolves, and the *Doe* injunction prohibits segregated housing, then Movants' rights have been impaired by this case.

Movants' rights may also be impaired based on the scope of the remedy this Court issues. Preliminary relief requires a court to consider whether "an injunction would substantially injure other interested parties." *Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891, 893 (D.C. Cir. 2010) (quoting *Ark. Dairy Coop. Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009)). And under the Prison Litigation Reform Act, a court "shall give substantial weight to any adverse impact on public safety." 18 U.S.C. §3626(a)(2). The district court found "no adverse impacts on public safety" without a word from any female who has lived with the consequences. Dkt. 147 at 3.

This creates a potential remedial problem neither existing party can address. This Court could conclude that transferring some Plaintiffs to men's facilities would violate the Eighth Amendment, while placing those same Plaintiffs in women's general population at FMC Carswell would violate Movants' rights. Defendants reject the first possibility; Plaintiffs reject the second. Only Movants have promoted this remedy so far.

## III. Movants sought intervention as soon as it became clear that no party would protect them.

According to Plaintiffs, "The sheer length of the delay is dispositive." Pls.' Opp. 10. But raw time-counting is never the appropriate standard. *Cf. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390, 394–96 (1977) (intervention timely where movant did not seek relief from the district court during five years of litigation). But it is a standard bordering on absurd here.

Plaintiffs note that they filed "their original Complaints in January and February 2025." Pls.' Opp. 10. One would search in vain for the word "Carswell" in those pseudonymous, redacted complaints. "Carswell" does not appear in this Court's prior opinion (or the dissent). *See generally Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026); *see also id.* at 905.

Plaintiffs say that "Movants were aware of this litigation at least nine months ago when they explicitly referenced the *Doe* case in their proposed complaint in *Fleming*." Pls.' Opp. 11 (citing *Fleming,* ECF 69-1 ¶¶95–97). But the *Fleming* complaint tells a different story: "Although Plaintiffs suspect that one or more of the *Doe* plaintiffs may be housed at FMC Carswell, the anonymous and redacted nature of the *Doe v. Bondi* court filings makes it impossible to determine whether the preliminary injunctions in that case directly affect any inmates currently housed at FMC Carswell." *Fleming,* ECF 69-1 ¶95 n.22.[3]

Plaintiffs have chosen to litigate this case to intentionally *avoid* identifying the individuals or facilities involved in this litigation. *See* Dkt. 57 (protective order). That choice should not be held against Movants.

Finally, the Court should consider the real-world situation of Movants—incarcerated individuals who are not attorneys and were not represented by any legal counsel for much of the *Doe* litigation. Movants were "*pro se* prisoner litigants [who] sit in a uniquely vulnerable position" and could not "take the steps other litigants can take to monitor"

[3] Based on counsel's review, it appears the first publicly accessible reference to FMC Carswell in this litigation was May 29, 2026. *See* Dkt. 129 at 27–28 (Gov't Opp. to TRO/PI).

litigation. *See Owlfeather-Gorbey v. Avery*, 119 F.4th 78, 87 (D.C. Cir. 2024) (citation omitted).

Movants sought intervention within days after the Government's May 29 opposition confirmed that it would neither present affected women's evidence nor assert their constitutional theories.

As for timing in *this* Court, Movants were stuck between a rock and a hard place. Had they filed a motion to intervene in this Court as soon as the notice of appeal was filed below, this Court would likely (and rightly) have waited for the district court to address the outstanding motion below. Movants filed here only when it became clear that was a necessity.

Finally, an *amicus* brief will not adequately serve Movants' interests. This Court may affirm or modify the injunction below. The *Fleming* preliminary injunction may have expired by that time. Movants' Fifth and Eighth Amendment rights could be infringed by an order that is not appropriately fashioned. That is a legal stake in this appeal, not the role of a friend-of-the-court with a useful perspective.

Standing follows from the same facts. Movants' declarations describe biologically male inmates watching them shower and entering a

restroom while a Movant was inside. Dkt. 167-2 at 19, 22–23, 26, 29. BOP's placement practices caused those injuries, and a ruling that preserves lawful sex-separated measures redresses them. *Cf. Inst'l S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764–65 (D.C. Cir. 2025). Plaintiffs answer that those injuries are not presently ongoing. But they only stopped because the *Fleming* court ordered them stopped. That injunction will expire, and Plaintiffs are now asking for relief that would undo that arrangement.

## CONCLUSION

Defendants claim that Movants' constitutional rights do not bear on the question presented. Plaintiffs told the district court on August 18 that Plaintiffs belong in women's general population. Together those filings describe an appeal that will decide who lives with Movants, litigated by two parties who will not speak for them. The Court should grant leave to intervene.

August 20, 2026

Respectfully submitted,

*/s/ John Greil*
Brian J. Field
John Greil
*Counsel of Record*
Jessica Tong*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
bfield@schaerr-jaffe.com
jgreil@schaerr-jaffe.com
jtong@schaerr-jaffe.com

*Admission pending

*Counsel for Proposed Intervenors*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) and the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it uses 14-point Century Schoolbook and contains 2,595 words. The word count was determined using the word-count function of the word-processing system used to prepare this document.

*/s/ John Greil*
John Greil